**NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
3090 Bristol Street #400
Costa Mesa, CA 92626
Tel: 949.312.1377
Fax: 949.288.2054
*ben@nexusbk.com*

Attorney for Jeffrey Gomez

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No: 8:24-bk-12527-TA |
| KRISTINA LYNN SMITH, | **Chapter 7** |
| Debtor. | **REPLY IN SUPPORT OF OBJECTION TO CLAIM 6-1 (KERRY KAVANAUGH)** |
| | **Hearing:**<br>Date: May 13, 2025<br>Time: 11:00 AM<br>Courtroom: 5B |

Jeffrey Gomez respectfully submits this reply in further support of his objection to the claim filed by Kerry Kavanaugh.

### INTRODUCTION

The Court should view these ghostwritten oppositions for what they are: another calculated abuse of the judicial process by Kristina Smith. This is a debtor who lies reflexively, including under oath, and fabricates evidence when it serves her interests. She has demonstrated in other courtrooms, repeatedly and without remorse, that she has no regard for the truth or for the authority of the judiciary. Her conduct in this case follows the same pattern. These oppositions, clearly ghostwritten by her, are simply the latest example of her ongoing misconduct and bad-faith litigation tactics.

Both oppositions bear unmistakable signs of having been written by the Debtor herself. They contain identical formatting errors and typographical quirks, including unusual spacing and the lowercase "i" in "DIVISiON", and the same pleading paper template that she has used in the family court where she is self-represented. Most conspicuously, one document uses a serif font and the other a sans serif font in a very deliberate attempt to make them look different at a brief glance. This clumsy attempt at deception raises real doubt as to whether Howard Smith and Kerry Kavanaugh are even actively participating in this case.

Both oppositions concede that the promissory notes submitted with their claims are not originals, but supposed "recreations" of lost documents. This admission came only after the Debtor's objections exposed the fabricated nature of the documents. If the notes truly were lost, the claimants could have submitted other evidence in accordance with California Code of Evidence §1523 or Federal Rule of Evidence 1004. Instead, they fabricated backdated documents and attempted to pass them off as authentic.

This "lost document" excuse falls apart under even just a minimal amount of scrutiny. The online template used to generate the documents did not exist until 2021, yet the documents are dated 2017 and claim to memorialize the same terms.

The timing is equally implausible. According to the documents, Howard Smith allegedly loaned $500,000 for legal fees just a few months after the family law case was filed. But anyone familiar with family court litigation knows that legal costs escalate slowly, not all at once. There is no credible explanation for why such a massive sum would have been needed so early in the proceeding.

Rather than address the substance of Debtor's objections, the oppositions launch irrelevant and ad hominem attacks on Mr. Gomez that are clearly irrelevant. Furthermore, these attacks lose what little force they might have given that Ms. Smith almost certainly wrote the oppositions herself.

Finally, the oppositions seem to argue that the claims should be allowed simply because Howard Smith and Kerry Kavanaugh helped the Debtor. But that is what families often do – help one another <u>without any expectation of repayment</u>. Just because someone has received help from

their family does not mean that, if that person later files bankruptcy, they should be allowed to bring in their family members to meddle around in the case disguised as creditors.

## ARGUMENT

### I.

### THE DEBTOR'S CONDUCT IN OTHER PROCEEDINGS HAS REVEALED THAT SHE HAS REPEATEDLY LIED UNDER OATH AND FABRICATED EVIDENCE

For example, in April 2022, the debtor attempted to have Mr. Gomez arrested and charged with assault by filing a false police report accusing him of attacking her boyfriend during a custody exchange on Easter Sunday. A five-day evidentiary hearing followed in Department C-66 of the Orange County Superior Court, presided over by the Hon. Sandy Leal. During the hearing, a deputy from the Orange County Sheriff's Department testified that, after reviewing surveillance footage of the alleged incident, it was conclusive that no crime had occurred.

Shortly thereafter, at a hearing on August 31, 2022, Judge Claudia Silbar referenced a conversation she had with Judge Leal regarding that proceeding and admonishment to the debtor:

> **"Now you just spent five, six days in the courtroom across the hall with your boyfriend. Another judge wholly unrelated to your case found you and your boyfriend were not telling the truth…. She denied the restraining order and she found credibility problems."**

(Smith v. Gomez, Aug. 31, 2022 Tr. at 38:19–39:1). **See Exhibit A.**

At that same hearing, after Mr. Gomez informed the court that the debtor had cut off the children's contact with their paternal grandmother, the Ms. Smith retorted:

> **"That's not true. I am the only link between his mother and the children, and she has thanked me and praised me, and we give gifts to each other, and we have a good relationship."**

(Smith v. Gomez, Aug. 31, 2022 Tr. at 32:18–22).

To test this assertion, Judge Silbar invited Mr. Gomez to place a live phone call to his mother on speakerphone, which led to the following exchange:

**The Court:** "Just ask her, is she allowed to speak to her grandchildren at any time?"

**Mr. Gomez:** (speaking to his mother) "Are you allowed to call Kristina and speak to the grandchildren at any time?"

**Respondent's Mother:** "No. She basically told me that she wanted nothing to do with me."

*(Smith v. Gomez, Aug. 31, 2022 Tr. at 36:17–22).* **See Exhibit B.**

It is emblematic of the debtor's broader pattern of deception and manipulation across every legal forum she enters. Whether in family court, civil harassment proceedings, or now in bankruptcy, the debtor demonstrates a consistent willingness to lie under oath, fabricate evidence, and weaponize the judicial process for personal advantage. Her conduct reflects not just a lack of credibility, but a fundamental lack of respect for the truth and for the integrity of the courts themselves. She treats every courtroom as a stage for her personal vendettas, and every judge as an obstacle to be misled.

## II.

## THE DOCUMENTS IN SUPPORT WERE FRAUDULENTLY CREATED

As stated above, the opposition concedes that these documents were created several years after their purported dates, yet offers no explanation as to why this was not disclosed until after the objection was filed, nor why no attempt was made to authenticate the terms through permissible means under California Evidence Code or the Federal Rules of Evidence.

## III.

## THE CLAIMS ARE BEYOND THE STATUTE OF LIMITATIONS

The objection raised that the claim is barred by the applicable statute of limitations under California law. Specifically, it noted that even if a valid promissory note once existed, it would be unenforceable due to the passage of time. The opposition does not meaningfully respond to

this argument. It fails to identify any statute that would extend or toll the limitations period, and it does not provide any factual basis to rebut this timeliness issue. Because the opposition offers no legal or evidentiary response to this objection, the statute of limitations remains a complete bar to enforcement of the claim. See *In re Hess*, 404 B.R. 747 (Bankr. S.D.N.Y. 2009); *In re Chaussee*, 399 B.R. 225 (B.A.P. 9th Cir. 2008).

## IV.

## THE PERSONAL ATTACKS AGAINST MR. GOMEZ ARE IRRELEVANT

The opposition relies heavily on ad hominem attacks against Jeffrey Gomez. These inflammatory personal grievances are clearly intended to distract from the complete lack of admissible evidence supporting the claim. Whether or not Mr. Gomez is "the most vile human being [she has] ever known" has no bearing on whether the claimant has met her burden to prove the existence of a valid, enforceable debt.

Importantly, the opposition was clearly drafted by Ms. Smith herself, and this is not an isolated instance of her trying to compensate for lack of evidence by launching into personal attacks. Ms. Smith has a long, documented history of making unsubstantiated and defamatory accusations against Mr. Gomez, including in other court proceedings, many of which were ultimately rejected or discredited, and she has repeatedly been found to be lacking in credibility.

The opposition offers no facts, no documents, and no legal authority – only hostility, which is not a substitute for evidence. The burden remains on the claimant to prove the existence of a valid and enforceable debt, disparaging the Objector does nothing to move the needle.

## V.

## THE OPPOSITION ATTEMPTS TO RECAST HELP FROM FAMILY AS ENFORCEABLE DEBTS

Equally misplaced is the opposition's repeated assertion that the claim should be allowed simply because the claimant helped the Debtor. But helping a family member does not transform that assistance into a legally binding obligation. Many people assist their children or relatives

with financial support, very often during divorce and custody disputes, without expecting repayment. The Debtor is attempting to seize control over certain aspects of this case by claiming that this help resulted in enforceable debts which gives her family members standing to participate. Notably, allowance of these claims gives the appearance of a large pool of unsecured claims, when in fact there are minimal claims which would not justify any inquiry into the Debtor's baseless claim that she has an ownership interest in Mr. Gomez's separate property real estate.

## VI.
## SERVICE WAS PROPER

Service of the Objection to Claim (Docket No. 63) and the Zoom Hearing Instructions (Docket No. 73) was properly executed. As set forth in the attached Declaration of Benjamin Heston, these documents were mailed via first-class U.S. Mail to Kerry Kavanaugh at the address listed on the proof of claim using a professional mailing service routinely employed by counsel.

## CONCLUSION

The oppositions fail to address the core defects raised in the objections and offer no competent evidence to support the claims. Instead, they rely on fabricated documents, legally irrelevant personal attacks, and a misguided attempt to convert informal family support into enforceable debt. The burden rests with the claimants, and they have not come close to meeting it. Accordingly, the Court should disallow both claims in their entirety pursuant to 11 U.S.C. § 502(b).

    Respectfully,

    **NEXUS BANKRUPTCY**

Date: May 6, 2025    /s/Benjamin Heston
    BENJAMIN HESTON,
    Attorney for Jeffrey Gomez

**DECLARATION OF BENJAMIN HESTON**

I, Benjamin Heston, declare as follows:

1. I am the attorney of record for Jeffrey Gomez. I have personal knowledge of all matters stated herein. On all matters stated on information and belief, I believe those allegations to be true. I could competently testify to the allegations contained herein.

2. I am in possession of the full certified transcript of the August 31, 2022 proceedings in <u>Smith v. Gomez</u>, held in Department C-63 of the Orange County Superior Court before the Honorable Judge Claudia Silbar. The excerpts cited and attached as Exhibits A and B are true and correct copies taken directly from that certified transcript.

3. I caused to be served a copy of the Objection to Claim (Docket No. 63) and the Zoom Hearing Instructions issued by the Court (Docket No. 73) via first-class U.S. Mail to the following address:

    **Kerry Kavanaugh**

    **4511 Isabella Lane**

    **Dallas, TX 75229**

4. This mailing was processed through a professional mailing service routinely used by my office for outgoing court documents.

5. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Date: May 6, 2025                                                                    /s/Benjamin Heston
                                                                                                  BENJAMIN HESTON

# EXHIBIT A

```
 1   IS ALWAYS SOMETHING WITH HIM.  HE DOESN'T MAKE IT ABOUT

 2   THE KIDS.  IT IS ABOUT HIM AND ME.

 3           MR. GOMEZ:  THAT IS IMPOSSIBLE.

 4           MS. SMITH:  EVERY TIME IT IS ABOUT --

 5           THE COURT:  WHAT IS IT YOU ARE ASKING ME TO DO

 6   IN ORDER TO --

 7           MS. SMITH:  I JUST WANT YOU TO FIND OUT WHAT IS

 8   REALLY GOING ON WITH HIM AND THE CHILDREN, BECAUSE SHE

 9   SAID SHE WOULDN'T SEE MORE THAN --

10           THE COURT:  IF I FIND OUT WHAT IS GOING ON, AND

11   IT IS YOUR SIDE OF THE STORY, WHAT WOULD YOU WANT ME TO

12   DO?

13           MS. SMITH:  I DON'T KNOW.  I JUST -- I JUST --

14   I AM JUST SCARED FOR THE KIDS.  I JUST WANT THEM TO BE

15   HEALTHY.

16           THE COURT:  HERE IS THE STORY.  YOU BOTH NEED

17   TO TAKE RESPONSIBILITY FOR WHAT YOUR PART IN THE

18   SITUATION OF GETTING HERE.  YOU BOTH DO.

19           ==NOW YOU JUST SPENT FIVE, SIX DAYS IN THE==

20   ==COURTROOM ACROSS THE HALL WITH YOUR BOYFRIEND.  ANOTHER==

21   ==JUDGE WHOLLY UNRELATED TO THIS THAT FOUND YOU AND YOUR==

22   ==BOYFRIEND NOT TELLING THE TRUTH.==

23           MS. SMITH:  AND HIM EITHER.  WE DID TELL THE

24   TRUTH.  THE VIDEO DID NOT COVER.  IT DIDN'T END THERE.

25   IT WENT DOWN TO HIS CAR.

26           THE COURT:  ==SHE DENIED THE RESTRAINING ORDER==
```

1 | AND SHE FOUND CREDIBILITY PROBLEMS.

2 |     MR. HATHERLEY: YOUR HONOR, MAY I CLARIFY?

3 | MR. GOMEZ WAS ALSO REQUESTING A RESTRAINING ORDER

4 | AGAINST MISS SMITH'S BOYFRIEND.

5 |     MR. GOMEZ: ABSOLUTELY NOT --

6 |     THE COURT: STOP IT. YOU ARE INTERRUPTING.

7 |     MR. HATHERLEY: AND THE COURT DECLINED TO GRANT

8 | EITHER REQUESTS FOR RESTRAINING ORDER.

9 |     THE COURT: MR. HATHERLEY IS THE ONLY ONE THAT

10 | CAN BE EVEN CLOSE TO SOMEWHERE IN THE MIDDLE OF ALL OF

11 | THIS. THAT'S WHY I AM DIRECTING MY COMMENTS TO HIM.

12 | EITHER WAY, I AM NOT HEARING AND HAVEN'T HEARD ANYTHING

13 | TO CAUSE ME TO TAKE ANY OF THESE CHILDREN AWAY FROM

14 | EITHER PARENT. THAT'S WHY I ASKED YOU, WHAT WOULD YOU

15 | WANT ME TO DO IF I BELIEVED EVERYTHING YOU SAID.

16 |     MS. SMITH: I THINK THAT FINDING OUT THAT HE IS

17 | MAKING FINLEY SLEEP IN URINE, BECAUSE SHE IS WETTING HER

18 | BED. AND IS MAKING HER SLEEP IN HER URINE SHEETS. AND

19 | THEN HE IS PUTTING HER WEIGHT DOWN, TAKING A SPOON FROM

20 | HER MOUTH WHEN SHE TRIES TO EAT, TELLING HER TO LOSE

21 | WEIGHT.

22 |     HAVING TATUM, WHO DID DRINK ALCOHOL, SOMEONE

23 | ELSE TOOK THE CUP AWAY FROM HER AND SHE GOT SICK AFTER

24 | AND HE DIDN'T GET HER ANY HELP.

25 |     TAKING THE -- HAVING TO GO ON THE LIFT ON THE

26 | 4TH OF JULY BECAUSE HE TOLD THE CHILDREN HIS GIRLFRIEND

# EXHIBIT B

```
 1             MR. GOMEZ:  IS IT ON A SUNDAY.
 2             MS. SMITH:  EASTER SUNDAY.
 3             THE COURT:  BEGINNING OF SPRING BREAK OR THE
 4   END OF SPRING BREAK; WHEN IS EASIER?
 5             MS. SMITH:  IT IS NOT ATTACHED.  IT IS JUST
 6   SPRING BREAK THIS YEAR.
 7             MR. GOMEZ:  IF EASTER IS ON A SUNDAY, IT ALWAYS
 8   IS.  I DON'T KNOW IF IT IS.
 9             THE COURT:  DO YOU HAVE PARENTS?
10             MR. GOMEZ:  YES.  ONE IS DECEASED.  ONE IS
11   ALIVE.
12             THE COURT:  WHERE IS THE ONE THAT IS ALIVE?
13             MR. GOMEZ:  OREGON.
14             THE COURT:  DO YOUR KIDS KNOW THE ONE THAT IS
15   ALIVE?
16             MR. GOMEZ:  YES.  HOWEVER --
17             THE COURT:  DAD OR MOM?
18             MR. GOMEZ:  MY MOM.  HOWEVER, PETITIONER HAS
19   NOW BLOCKED HER FROM THE KIDS HAVING ANY COMMUNICATION
20   WITH HER.  AND MADE UP SOME ELABORATE STORY THAT SHE WAS
21   SUPPOSED TO COME TO COURT TO TESTIFY ON MY BEHALF AND
22   THEN CUT OFF ALL COMMUNICATION WITH HER.  ==THE ONLY WAY
23   THE GIRLS CAN TALK TO THEIR GRANDMOTHER IS THROUGH ME
24   NOW.==
25             MS. SMITH:  ==THAT'S NOT TRUE.  I AM THE ONLY
26   LINK BETWEEN HIS MOTHER AND THE CHILDREN, AND SHE HAS==
```

1    THANKED ME AND PRAISED ME, AND WE GIVE GIFTS TO EACH
2    OTHER, AND WE HAVE A GOOD RELATIONSHIP.  SO THAT IS
3    ACTUALLY THE OPPOSITE.  WE ACTUALLY HAVE POSTS ABOUT HIS
4    MOTHER BEING AN ALIENATOR AND BEING A HIPPIE AND ABUSING
5    HIM HIS WHOLE LIFE.  THAT IS ACTUALLY NOT TRUE.  HIS
6    MOTHER AND I HAVE COME TOGETHER BECAUSE WE BOTH HAVE
7    BEEN VICTIMS OF WHAT HE SAYS AND DONE TO BOTH OF US.
8              MR. GOMEZ:  YOUR HONOR, ANOTHER FALSIFICATION.
9    I CAN CALL MY MOM RIGHT NOW ON SPEAKER PHONE.  SHE WILL
10   TELL YOU THE TRUTH.  IT IS NO DIFFERENT THAN HER COMING
11   IN THE FIRST DAY OF COURT.  IT IS NO DIFFERENT THAN THE
12   FIRST DAY SHE COMING IN AND SAYING THAT SHE IS A VICTIM
13   OF DOMESTIC VIOLENCE, AND THAT I HAD BEEN CONVICTED OF
14   DOMESTIC VIOLENCE.  IT NEVER HAPPENED.  I NEVER HAVE
15   BEEN CONVICTED OF DOMESTIC VIOLENCE.  THERE IS NO CLETS,
16   THERE IS NOTHING.  EVEN THE RESTRAINING ORDER TRIAL HER
17   BOYFRIEND'S ATTORNEY ASKED ME, WERE YOU CONVICTED OF
18   DOMESTIC VIOLENCE?  I SAID, NO.  SO SHE PULLS UP THE
19   JUDGMENT AND IT SAYS OH, THE 730 EVALUATION SAYS IT IS
20   LIKELY THAT PETITIONER WAS A VICTIM OF INTIMATE
21   WHATEVER.  IT DOESN'T SAY ANY NAMES.  AND JUDGE LEAL
22   GOES, HE HAS NEVER BEEN CONVICTED.  THERE IS NO CLETS TO
23   ORDER.  THERE IS NOTHING HERE, BUT YET PETITIONER
24   MAINTAINS THAT EVERYBODY --
25             THE COURT:  THAT IS ENOUGH.  I AM NOT GOING TO
26   RELIVE ALL YOUR DISPUTES.

1       MR. GOMEZ:  OKAY.  SO EASTER, IF IT IS ON A
2  SUNDAY.  HOW DO MOST PEOPLE DO EASTER?  I THINK MORE
3  THAN SIX HOURS WARRANT.
4       THE COURT:  SHOULD WE CALL YOUR MOM RIGHT NOW
5  TO SEE WHO IS TELLING ME THE TRUTH.
6       MR. GOMEZ:  I AM GOING TO CALL HER RIGHT NOW.
7       THE COURT:  I AM TEMPTED.
8       MR. GOMEZ:  I AM GOING TO CALL HER RIGHT NOW.
9       MS. SMITH:  I HAVE ALL THE TEXT MESSAGES TOO.
10      MR. GOMEZ:  I WILL CALL HER RIGHT NOW, YOUR
11 HONOR.  YOU CAN HEAR THE TRUTH ONCE AND FOR ALL.
12      THE COURT:  I AM GOING TO LET HIM DO IT.
13      MR. GOMEZ:  GOOD.
14      MS. SMITH:  I HAVE ALL THE TEXTS THAT SHOW THE
15 SERIES OF --
16      THE COURT:  MAYBE SHE IS PLAYING BOTH OF YOU.
17      MR. GOMEZ:  MY MOM IS THE THERAPIST.
18      THE COURT:  CALL HER UP.
19      (TELEPHONE CALL TO MR. GOMEZ'S MOTHER.)
20      RESPONDENT'S MOTHER:  HI JEFF.
21      MR. GOMEZ:  HI MOM.  HOW ARE YOU DOING,
22 SWEETHEART?  HOW ARE YOU DOING?
23      RESPONDENT'S MOTHER:  WE ARE AT A -- ON A
24 LITTLE CAMPING TRIP.
25      MR. GOMEZ:  HOW WAS JERRY'S 80TH BIRTHDAY?
26      RESPONDENT'S MOTHER:  HIS BIRTHDAY -- HE IS

```
 1  RIGHT HERE -- WAS VERY -- WAS VERY SWEET.
 2          MR. GOMEZ:  THAT IS GREAT.
 3          RESPONDENT'S MOTHER:  WAS VERY SWEET.
 4          MR. GOMEZ:  SO HOW LONG AGO WAS IT THAT
 5  CHRISTINA --
 6          THE COURT:  WAIT.  WAIT.  ASK HER WHEN THE LAST
 7  TIME SHE SAW HER GRANDKIDS?
 8          MR. GOMEZ:  WHEN WAS THE LAST TIME YOU SAW YOUR
 9  GRANDKIDS?
10          RESPONDENT'S MOTHER:  WHO ARE YOU -- WHO IS
11  THERE THAT IS TALKING TO YOU?
12          MR. GOMEZ:  THE JUDGE.
13          RESPONDENT'S MOTHER:  I JUST HEARD SOMEBODY
14  TALKING TO YOU.
15          MR. GOMEZ:  NO.  THE JUDGE, BECAUSE KRISTINA
16  SAID YOU GUYS HAVE A GREAT RELATIONSHIP, AND THE JUDGE
17  SAID, CALL YOUR MOM.
18          RESPONDENT'S MOTHER:  THE JUDGE IS THERE RIGHT
19  NOW?
20          MR. GOMEZ:  YES.  AND KRISTINA SAID YOU GUYS
21  HAVE A GREAT RELATIONSHIP, AND YOU SEND EACH OTHER GIFTS
22  AND THERE IS NOTHING, NO PROBLEM.  I SAID, "THAT'S NOT
23  TRUE."
24          THE COURT:  AH.  AH.  AH.
25          MR. GOMEZ:  OKAY.  ANYWAYS.  GO AHEAD.
26          RESPONDENT'S MOTHER:  NO.  OKAY.  SO NO, WHAT
```

```
 1   HAPPENED WAS THAT SHE TRIED TO SAY A BUNCH OF BAD THINGS
 2   ABOUT YOU, WHICH IS --
 3           MR. GOMEZ:  GO AHEAD.  START OVER.
 4           THE COURT:  PUT IT BY THE MICROPHONE.
 5           RESPONDENT'S MOTHER:  CAN THE PERSON WHO IS
 6   THERE HEAR ME?
 7           THE COURT:  YES.
 8           RESPONDENT'S MOTHER:  OKAY.  IT SEEMED LIKE
 9   EVERYTHING WAS REALLY GOOD AND THEN YOU AND HER STARTED
10   HAVING SOME CONFLICTS WITH HER BOYFRIEND AND STUFF.  AND
11   SO THEN SHE WANTED ME TO -- I DON'T KNOW -- DO SOMETHING
12   RELATED TO THE COURTS, AND --
13           THE COURT:  STOP HER THERE.  I DON'T WANT TO.
14   STOP.  STOP.
15           MR. GOMEZ:  STOP FOR A SECOND.  STOP FOR A
16   SECOND.
17           THE COURT:  JUST ASK HER, IS SHE ALLOWED TO
18   SPEAK TO HER GRANDCHILDREN AT ANY TIME?
19           MR. GOMEZ:  ARE YOU ALLOWED TO CALL KRISTINA
20   AND SPEAK TO THE GRANDCHILDREN AT ANY TIME?
21           RESPONDENT'S MOTHER:  NO.  SHE BASICALLY TOLD
22   ME THAT SHE WANTED NOTHING TO DO WITH ME.
23           MR. GOMEZ:  OKAY.  ANY OTHER QUESTIONS?
24           THE COURT:  WHEN DID SHE TELL YOU THAT?
25           MR. GOMEZ:  WHEN DID SHE TELL YOU THAT?
26           RESPONDENT'S MOTHER:  I THINK IT HAS BEEN ABOUT
```

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**3090 Bristol Street #400**
**Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **REPLY IN SUPPORT OF OBJECTION TO CLAIM 6-1 (KERRY KAVANAUGH)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 5/6/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David Coats    dacoats@raslg.com
Richard G. Heston    rheston@hestonlaw.com, yflores@hestonlaw.com,docs@hestonlaw.com,HestonRR41032@notify.bestcase.com,hestonlaw@recap.email
Richard A Marshack (TR)    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
Matthew J Stockl    matthew.stockl@dinsmore.com, katrice.ortiz@dinsmore.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Julie J Villalobos    julie@oaktreelaw.com, oakecfmail@gmail.com;villalobosjr51108@notify.bestcase.com;gus@oaktreelaw.com
Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) 5/6/2025 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Kerry Kavanaugh
4511 Isabella Lane
Dallas, TX 75229

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed (state method for each person or entity served):

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/6/2025 | **Benjamin Heston** | /s/Benjamin Heston |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.