Yosina M. Lissebeck (SBN 201654)
Jacob R. Bothamley (SBN 319457)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800(might
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501
yosina.lissebeck@dinsmore.com
jacob.bothamley@dinsmore.com

Attorneys for Richard A. Marshack, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:24-bk-12527-SC |
| KRISTINA LYNN SMITH, | Chapter 7 |
| Debtor. | TRUSTEE'S MOTION FOR: (1)  ORDER AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 27591 KATHY COURT, LAGUNA NIGUEL, CALIFORNIA 92677: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS UNDER 363(F); (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M); MEMORANDUM OF POINTS AND AUTHORITIES |
| | Hearing Date:<br>Date:      January 15, 2026<br>Time:      9:00 a.m.<br>Ctrm:      5C<br>Location: 411 West Fourth Street<br>                Santa Ana, CA 92701 |

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT .................................................................................. 5

II.     FACTUAL BACKGROUND ................................................................................... 6

        A.      The Orange County Superior Court Sale Order ........................................ 6

        B.      Bankruptcy Case ..................................................................................... 6

        C.      Title and Liens ......................................................................................... 7

        D.      Employment Of Broker & marketing of the Property ............................. 9

        E.      Description of the Property .................................................................... 10

        F.      Reimbursement of Maintenance Costs ................................................. 11

        G.      Stipulation With Lienholders To Sell Property ..................................... 11

        H.      Claims Against the Estate ..................................................................... 12

        I.      Other Claims Asserted Against The Property ....................................... 14

                1.      San Joaquin Hills Community Association - $3,222 .................. 14

        J.      Estimated Allocation of Sale Proceeds ................................................. 14

        K.      Good Faith Buyer ................................................................................... 17

        L.      Overbid Procedure ................................................................................. 17

III.    LEGAL ARGUMENT .......................................................................................... 19

        A.      There Is A Sound Business Purpose For the Sale .................................. 20

        B.      The Sale of the Property May Be Free and Clear of All Liens, ............... 21

        Claims, and Interests Pursuant To 11 U.S.C. § 363(f). .................................... 21

                1.      The Property May Be Sold Free and Clear of All Liens .............. 22

                2.      **Error! Bookmark not defined.**

                3.      Buyer Is Entitled to a Good Faith Determination. ...................... 24

                4.      Waiver of the Fourteen-Day Period for Effectiveness of Sale Order ............ 25

IV.     CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*,
200 B.R. 653, (9th Cir. BAP 1996) ................................................................. 20

*Ewell v. Diebert (In re Ewell)*,
958 F.2d 276, (9th Cir. 1992) ....................................................................... 24

*In re Ancor Exploration Co.*,
30 B.R. 803 (Bankr. N.D. Okla. 1983) .......................................................... 19

*In re Baldwin United Corp.*,
43 B.R. 888 (Bankr. S.D. Ohio 1984) ........................................................... 19

*In re Canyon Partnership*,
55 B.R. 520 (Bankr. S.D. Cal. 1985) ............................................................ 19

*In re Continental Air Lines, Inc.*,
780 F.2d 1223 (5th Cir. 1986) ...................................................................... 20

*In re Gerwer*,
898 F.2d 730 (9th Cir. 1990) ........................................................................ 22

*In re Lionel Corp.*,
722 F.2d 1063 (2d. Cir. 1983) ....................................................................... 19

*In re Wilde Horse Enterprises, Inc.*,
136 B.R. 830 (Bankr. C.D. Cal. 1991) ..................................................... 20, 24

*McCarthy v. Goldman (In re McCarthy)*, 2008 Bankr.
LEXIS 4688 at *56 (B.A.P. 9th Cir. 2008) ................................................... 19

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*,
163 F.3d 570 (9th Cir. 1998) ........................................................................ 24

*Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148 (9th Cir. 2017) ............................................... 22

*Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*,
325 B.R. 282 (B.A.P. 9th Cir. 2005) ............................................................. 20

*Thomas v. Namba (In re Thomas)*,
287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ..................................................... 24

*Walter v. Sunwest Bank (In re Walter)*,
83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ..................................................... 20

**STATUTES**

11 U.S.C. § 363(b)(1) ................................................................................................. 19, 20

11 U.S.C. § 363(b), ....................................................................................... 5, 19, 20, 24, 25

11 U.S.C. § 363(f) ........................................................................................................ 21, 22

11 U.S.C. § 363(f)(2) ......................................................................................................... 22

11 U.S.C. § 363(f)(3) ......................................................................................................... 23

11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) ............................................................................... 16

11 U.S.C. § 507(a)(8) ......................................................................................................... 16

11 U.S.C. § 510(c)(2) .................................................................................................... 12, 22

11 U.S.C. § 541(a) .............................................................................................................. 19

11 U.S.C. 541(a)(2) ............................................................................................................ 19

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2020) ............................................... 25

**RULES**

FRBP Rule 6004(h) ............................................................................................................ 25

Richard A. Marshack, solely in his capacity as the duly appointed, qualified, and acting Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Kristina Lynn Smith ("Debtor"), hereby moves this Court for order authorizing the sale of real property ("Motion") located at and commonly known as 27591 Kathy Court, Laguna Niguel, California 92677 ("Property" or "Kathy Court Property"). In support of the Motion, the Trustee represents as follows:

## I.    <u>SUMMARY OF ARGUMENT</u>

Under 11 U.S.C. § 363(b), a Chapter 7 Trustee may sell property of the estate if the proposed sale is in the best interest of creditors. By this motion, Trustee is seeking an order approving the sale of the Kathy Court Property to Philip Muljana and Shu Rong Chang (collectively "Buyer"), for the amount of $1,800,000, subject to qualifying overbid.

Debtor and her husband, Jeffrey Adams Gomez ("Gomez") have been in marriage dissolution proceedings in Orange County Superior Court for many years. Just days prior to Debtor filing her bankruptcy petition, the Orange County Superior Court issued an order requiring the Kathy Court Property to be sold (the "Sale Order"). Now in bankruptcy, Trustee has devised a plan that, in his business judgment, not only complies with the Sale Order, but is likely to result in a substantial distribution to unsecured creditors. This is possible in large part to an agreement between Trustee and the Court-approved real estate broker to carve out a percentage of the broker's commission and earmark those funds specifically for unsecured creditors.

Trustee also stipulated with all known lienholders, with one exception (discussed further below), to sell the Property free and clear of the liens, with the proceeds of the sale to be collected and held until further order of the Court. All liens will attach to the proceeds of the sale according to priority. The sale of the Property is expected to generate sufficient funds for the non-consenting lienholder's lien to attach in its full amount.

The Court should approve Trustee's proposed sale free and clear of monetary liens, claims and encumbrances, subject to overbid, because a sale is in the best interests of the unsecured creditors and because the Buyer is a good faith purchaser. The terms of the sale to the Buyer are set forth in the residential purchase agreement ("RPA"), which is attached to the Declaration of Richard A. Marshack ("Marshack Declaration") as **<u>Exhibit 1.</u>**

1    In sum, the Court should approve the sale because Trustee has a sound business purpose for

2    selling the property, the lienholders have either consented to the sale, the lien is disputed, or the sale

3    will generate sufficient proceeds to cover the non-consenting lienholder's lien, and the buyer is a

4    good faith purchaser.

5    ## II.    FACTUAL BACKGROUND

6    **A.    THE ORANGE COUNTY SUPERIOR COURT SALE ORDER**

7    On October 1, 2024, just a few days prior to the Petition Date (defined below), Debtor and

8    Gomez appeared before Judge Carmen Luege in Orange County Superior Court to address the sale of

9    the Kathy Court Property as part of the marriage dissolution proceedings. At that hearing, the Court

10    Ordered the sale of the Property. Thus, the sale was Ordered pre-petition, even though the order was

11    not entered until October 21, 2024, that was just a "ministerial" act, which related back to the date of

12    the hearing. A true and correct copy of the Sale Order is attached to the Declaration of Richard A.

13    Marshack as **Exhibit 2**.

14    **B.    BANKRUPTCY CASE**

15    On October 3, 2024 ("Petition Date"), Debtor filed a voluntary petition for Chapter 7 of Title

16    11 of the United States Code commencing Case No. 8:24-12527-SC ("Bankruptcy Case").

17    Trustee was appointed as the Chapter 7 Trustee on the Petition Date. *See* Dkt. 4.

18    On October 17, 2024, Debtor filed her Schedules. *See* Dkt. 9. On November 5, 2024, Debtor

19    filed Amended Schedules A/B and C. *See* Dkt. 15. In her Amended Schedules, Debtor scheduled an

20    interest in eight real properties, including the Kathy Court Property. Debtor holds title to the Kathy

21    Court Property with her ex-husband, Gomez, as joint tenants.

22    As of the Petition Date, the Kathy Court Property was in an abysmal state of disrepair. As

23    discussed further below, on August 20, 2025, Trustee and Gomez entered into the Stipulation re:

24    Cooperation With Trustee During Marketing And Sale Of Real Property Located At 27591 Kathy

25    Court, Laguna Niguel, California ("Cooperation Stipulation"). *See* Dkt. 126. The Court approved the

26    Cooperation Stipulation on August 21, 2025. *See* Dkt. 127. Under the Cooperation Stipulation,

27    Gomez was authorized to incur necessary costs of repair and maintenance on the Property, subject to

28    Trustee's approval, with such authorized expenses to be reimbursed from proceeds of the sale of the

1   Property as part of the Administrative Costs. A true and correct copy of such expenses submitted for

2   reimbursement is set forth in the Declaration of Richard A. Marshack as **Exhibit 3**.

3        On September 26, 2025, Trustee, along with all known lienholders (excepting one), entered

4   into a stipulation for the sale of the Kathy Court Property free and clear of liens ("Sale Stipulation").

5   *See* Dkt. 129. The only lienholder that did not sign this stipulation was the Neshanian Law Firm.  The

6   stipulation was approved by the Court on October 6, 2025. *See* Dkt. 130.

7   **C.    TITLE AND LIENS**

8        Debtor acquired title to the Property on January 27, 2014.

9        In connection with Trustee's investigation of the Property, a preliminary title report was

10  requested from Lawyers Title. A true and correct copy of the preliminary title report ("PTR") dated

11  June 5, 2025, is attached to the Marshack Declaration as **Exhibit 4**. The Property will transfer with

12  the exceptions identified in paragraphs 1 – 16 of the PTR. The PTR reflects a number of liens recorded

13  against the Property:

14       Paragraph 17 of the PTR identifies a Deed of Trust as follows:

15      a.  Amount: $700,000
    b.  Date: January 27, 2014

16      c.  Trustor/Grantor: Jeff Gomez a married man as his sole and separate property
    d.   Trustee: Unionbancal Mortgage Corporation

17      e.  Beneficiary: Union Bank N.A. – Loan No.: 6962417114
    f.  Recording Date: January 29, 2014

18      g.  Recording No.: 2014-37516;
       i.  Substituted Trustee: Quality Loan Service Corp.

19           1.  Recording Date: June 6, 2024
         2.  Recording No.: 2024-140614;

20         ii.  Notice of default
         1.  Recording Date: June 27, 2024

21           2.  Recording No. 2024-159460;

22         iii.  Notice of Trustee's Sale
         1.  Time and Place of Trustee's sale – November 15, 2024 at 9:00

23             a.m.
         2.  Recording Date: September 30, 2024

24           3.  Recording No.: 2024-251941.

25       Paragraph 18 of the PTR identifies Pending Court Action as follows:

26      a.  Plaintiff: Kristina Smith
    b.  Defendant: Jeffrey Gomez

27      c.  County of Orange
    d.  Court: Superior Court of California

28      e.  Case No. 17 D 00-05-90
    f.  Nature of Action: Title affects to real property

g. Recorded: May 10, 2018
h. Recording No.: 2018-170624.

Paragraph 19 of the PTR identifies and Abstract of Judgment as follows:

a. Amount: $353,500
b. Debtor: Jeffrey Gomez
c. Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP
d. Date Entered: March 11, 2019
e. County: Orange
f. Court: Superior Court of California
g. Case No.: 17 D 00-05-90
h. Recording Date: April 1, 2019 as instrument no. 2019-102304 of Official Records
i. Acknowledgement of Satisfaction of Judgment (Partial)
    iv. Recording Date: July 22, 2020 instrument no. 2020-352459.

Paragraph 20 of the PTR identifies an Abstract of Judgment as follows:

a. Amount: $3,373.56
b. Debtor: Jeff Gomez aka Jeffre A. Gomez, aka Jeffrey Adam Gomez, aka Jeffrey A. Gomez, an individual
c. Creditor: American Express National Bank, successor by Merger to American Express Bank, FSB
d. Date: August 13, 2021
e. County: Orange
f. Court: Superior Court of California
g. Case No. 30-2020-01125756-CL-CL-CJC
h. Recording Date: September 9, 2021
i. Recording No.: 2021-564588.
    1. Lien released on September 4, 2025 due to full satisfaction of judgment.
    2. Recording No.: 2025000244699.

Paragraph 21 of the PTR identifies an Abstract of Judgment as follows:

a. Amount: $3,373.56
b. Debtor: Jeff Gomez aka Jeffrey A. Gomez, aka Jeffrey Adam Gomez, aka Jeffrey A. Gomez, an individual
c. Date: August 13, 2021
d. County: Orange
e. Court: Superior Court of California
f. Case No. 30-2020-01125756-CL-CL-CJC
g. Recording Date: September 9, 2021
h. Recording No.: 2021-564869.
    1. Lien released on September 4, 2025 due to full satisfaction of judgment.
    2. Recording No.: 2025000244699.

Paragraph 22 of the PTR identifies an Abstract of Judgment as follows:

a. Amount: $73,681.88
b. Debtor: Jeffrey Gomez
c. Creditor: The Neshanian Law Firm, Inc.
d. Date Entered: July 8, 2021

e.  County: Orange
f.  Court: Superior Court of California
g.  Case No.: 30-2021-01191914-CU-PA-CJC
h.  Recording Date: February 8, 2022
i.  Recording No.: 2022-52681.

Paragraph 23 of the PTR identifies a Family Law Attorney Real Property Lien ("FLARPL")

as follows:

a.  Amount: $300,000
b.  Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP.
c.  Case No. 17 D 00-05-90
d.  County: Orange
e.  Court: Superior Court of California
f.  Recording Date: January 5, 2023
g.  Recording No.: 2023-2404.

Paragraph 24 of the PTR identifies an Abstract of Judgment as follows:

a.  Amount: $131,143.94
b.  Debtor: Jeffrey Gomez
c.  Creditor: R&S Law Group, APC
d.  Date Entered: March 14, 2023
e.  County: Orange
f.  Court: Superior Court of California
g.  Case No.: 30-2022-01280774-CU-Co-CJC
h.  Recording Date: March 31, 2023
i.  Recording No.: 2023-74125.

Paragraph 25 of the PTR identifies an Abstract of Judgment as follows:

a.  Amount: $77,396.19
b.  Debtor: Kristina Smith aka Kristina Smith Gomez
c.  Creditor: White Zuckerman Warsavsky Luna and Hunt, LLP
d.  Date Entered: June 14, 2023
e.  County: Los Angeles
f.  Court: Superior Court of California
g.  Case No.: 23VECV00570
h.  Recording Date: June 30, 2023
i.  Recording No.: 2023-157395.

Paragraph 26 of the PTR identifies a state tax lien as follows:

a.  Amount: $4,936.75
b.  Debtor: Kristina Smith
c.  Creditor: The Franchise Tax Board of the State of California
d.  State ID No.: 25285000516
e.  Recording Date: October 14, 2025
f.  Recording No.: 2025-281304

/ / /

/ / /

**D.      EMPLOYMENT OF BROKER & MARKETING OF THE PROPERTY**

On April 11, 2025, Trustee filed an Application by Chapter 7 Trustee to Employ Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties as Real Estate Agent to sell the Rental Properties. *See* Dkt. 67. On May 5, 2025, the Court entered the Order Granting Application by Chapter 7 Trustee to Employ Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties as Real Estate Agent ("Agent Order"). *See* Dkt. 79. Thereafter, Clarence Yoshikane (the "Broker") acted as the broker for Trustee. Under the Agent Order, the overall realtor commission is 6%, which is subject to a voluntary carve-out of 2% of the total commission to the Estate. The Property was listed at an asking price of $1,799,900 in October of 2025.

In terms of marketing efforts, the Property was listed on the Multiple Listings Service ("MLS") and appeared on several well-known real estate websites, including realtor.com, zillow.com, and trulia.com. *See* Declaration of Clarence Yoshikane. The listing received significant attention between October of 2025, when it was listed, and November of 2025, amassing nearly 6,000 views across all websites. *Id.* As of the filing of this motion, the Property has been viewed over 7,500 times across the real estate websites. *Id*. The Property was also shown multiple times to prospective buyers.

The marketing efforts were successful. To date, the Property has received three offers. The first offer came in at $1.5 million. *Id.* The second offer came in at $1.65 million. *Id.* These two offers were rejected as being too low. *Id.* The third offer of $1.8 million, which is the subject of this sale motion, is the highest and best offer to date. *Id.*

**E.      DESCRIPTION OF THE PROPERTY**

The Property is a single-family home legally described as follows:

Parcel 1:
LOT 94 OF TRACT NO. 15962, IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 804, PAGES 5 THROUGH 9, INCLUSIVE OF MISCELLANEOUS MAPS, AS AMENDED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JANUARY 29, 2001 AS INSTRUMENT NO. 01-48700 OF OFFICIAL RECORDS, ALL IN RECORDS OF ORANGE COUNTY, CALIFORNIA.

Parcel 2:
NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE AND ENCROACHMENT, SUPPORT, AND FOR OTHER PURPOSES ALL AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, RECORDED JUNE 26, 1997 AS INSTRUMENT NO. 1997-296011, AS AMENDED BY INSTRUMENT

RECORDED JULY 21, 1997 AS INSTRUMENT NO. 1997-342349, AND THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, (KNOLLS/PHASE 17)  RECORDED APRIL 30, 2002 AS INSTRUMENT NO. 2002-362793, ALL OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

APN: 636-632-34

## F.    REIMBURSEMENT OF MAINTENANCE COSTS

As noted above, on August 20, 2025, Trustee and Gomez entered into the Cooperation Stipulation, under which Gomez was authorized to incur necessary costs of repair and maintenance on the Property to restore it to a condition where it could be shown for sale. As set forth in the Declaration of Richard A. Marshack, the Property was in dire need of , among other things, deep cleaning, landscaping, new carpeting and flooring, repairs to interior and exterior walls, interior and exterior paint, and a moving company to empty the Property. In sum, the Property required not less than $26,622.33 worth of repairs and maintenance to restore it from its dilapidated state so that it could be shown to potential purchasers. A true and correct copy of such expenses submitted for reimbursement is set forth in the Declaration of Richard A. Marshack as **Exhibit 3**.

In addition to the maintenance costs described above, the Broker was required to rent storage units to temporarily store items left on the Property so that the Property could be properly marketed. *See* Declaration of Clarence Yoshikane. In total, Broker was required to spend $1,572.93 for the costs of renting storage units from October 13, 2025 through December 1, 2025. *See* Declaration of Clarence Yoshikane, **Exhibit 1**. This amount is to be reimbursed from the proceeds of the sale.

## G.    STIPULATION WITH LIENHOLDERS TO SELL PROPERTY

On September 26, 2025, Trustee entered into a stipulation with the Debtor, Mr. Gomez, and lienholders to sell the Property free and clear of liens (previously defined as the "Sale Stipulation"). *See* Dkt. 129. The Sale Stipulation was approved by this Court on October 6, 2025. *See* Dkt. 130. The Sale Stipulation provides for the disposition of liens, Debtor's homestead exemption, and any remaining funds as summarized follows:

1.     The first priority lienholder, Union Bank N.A., will be paid through escrow as part of the sale.

2.      The sale of the Kathy Court Property is with the consent of all lienholders, with the exception of the Neshanian Law Firm.

3.      The Debtor, Mr. Gomez, and all signed off lienholders (except the Neshanian Law Firm) will subordinate payment of their liens, the homestead, or interests to the costs of the sale (including commissions and maintenance), payment of all applicable taxes, and allowed administrative claims (collectively, "Administrative Costs"). Under 11 U.S.C. § 510(c)(2), the liens securing the amounts necessary to pay the Administrative Costs are transferred to the Estate.

4.      One half of the homestead is claimed by Gomez. Trustee will receive such funds from escrow upon closing and hold them pending further court order. Debtor has agreed to limit her share of the homestead exemption to $25,000, which she will receive directly from escrow upon closing to facilitate her relocation. Debtor waives remaining homestead exemption with respect to all amounts necessary to pay all administrative fees and costs and timely filed unsecured claims, other than the claim of Gomez. The Trustee shall make distributions to such creditors only pursuant to further court order. The Debtor reserves the right to claim a further homestead exemption in any remaining sales proceeds. The Trustee likewise retains the right to file an objection to any such further claimed exemption.

5.      As to Gomez, the Trustee will hold his half of the homestead exemption, subject to the liens identified in the stipulation, which will attach with the same validity, priority, and extent, and the Trustee will only distribute such funds pursuant to further court order.

Debtor's counsel will also receive fees of $7,000 for assisting the Estate with facilitating the Debtor's move-out from the Property, and sale of the Property. Such funds shall be considered Administrative Costs.

A chart breaking down the proposed allocation of sale proceeds is provided in Section I below.

**H.      CLAIMS AGAINST THE ESTATE**

Twelve proofs of claim, in the amount of $670,725.67 were filed against the Estate. However, several of these claims have had objections sustained or are not liabilities of the Estate.  The Trustee has not reviewed these claims, and in no way waives his right to object to any claims.  The total amount of unsecured claims is $300,054.14.

For completeness, the twelve proofs of claim filed in this case are as follows:

Claim 1-1: Franchise Tax Board - $4,210.35 – Priority claimed: $3,368.28 - 11/01/2024

Claim 2-1: The Neshanian Law Firm – (Secured) $98,229.59 - 11/05/2024

Claim 3-1: AT&T Services, Inc. - $289.96 - 12/03/2024

Claim 4-1: The Neshanian Law Firm – (Secured) $98,229.59 - 12/09/2024

Claim 5-1: Howard Smith - $689,000.00 - 01/17/2025 – Objection sustained (see below)

Claim 6-1: Kerry Kavanaugh - $33,000.00 - 01/17/2025 – Objection sustained (see below)

Claim 7-1: Jeffrey Adams Gomez - $ TBD - 01/30/2025 – (unsecured)

Claim 8-1: R&S Law Group, APC – (Secured) $158,172.71 – 03/26/2025

Claim 9-1: Heston & Heston, Attorneys at Law – (Secured) $36,873.04 - 04/15/2025 – (Disputed as not a liability of Debtor). See below.

Claim 10-1: Drew Hunt – (listed as unsecured, but lien shows up on PTR) $77,396.19 - 04/29/2025

Claim 11-1: A Center For Children and Family Law - $20,553.83 -   Priority Claimed: $20,553.83 06/16/2025

Claim 12-1: Jeff Gomez - $275,000.00 - 10/09/2025 – (unsecured)

**Disallowed & Disputed Claims Liens**

On April 11, 2025, Gomez filed an objection to Claim 5-1 filed by Howard Smith in the amount of $689,000 ("Howard Smith Claim"). *See* Dkt. 62. Also on April 11, 2025, Gomez filed an objection to Claim 6-1 filed by Kerry Kavanaugh in the amount of $33,000 ("Kerry Kavanaugh Claim"). *See* Dkt. 63. On August 8, 2025, the Court sustained both objections. *See* Dkts. 119 and 120.

On October 14, 2025, the Franchise Tax Board for the State of California recorded a lien against the Property. *See* para. 26 of the PTR. The FTB did not have relief from the automatic stay when it recorded the lien, making the recording of the lien a violation of the automatic stay. As such, Debtor disputes the lien. However this lien relates to Proof of Claim 1-1, which is a priority claim. Trustee has notified the FTB of the stay violation and asked the FTB to withdraw the lien.  The Trustee will file an adversary proceeding disputing the FTB lien as a stay violation. *See* Declaration of Richard A. Marshack. As of the filing of this motion, Trustee has not received a response. *Id.*

**I.     OTHER CLAIMS ASSERTED AGAINST THE PROPERTY**

Trustee is aware of the following claim asserted against the Property:

　　　　1.     San Joaquin Hills Community Association[1] - $3,222

**J.     ESTIMATED ALLOCATION OF SALE PROCEEDS**

At a sale price of $1.8 million, and under the distribution structure, which is being presented separately, the proceeds would be **estimated** to be distributed as follows:

| Item | Amount | Running Remainder of Estate Funds |
|---|---|---|
| Purchase Price | $1,800,000 | $1,800,000 |
| Mortgage | $900,000 | $900,000 |
| Trustee's Fees[2] | $48,250 | $851,750 |
| Dinsmore & Shohl LLP Fees[3] | $95,000 | $756,750 |
| Misc. Taxes and Costs (including reimbursement to Gomez pursuant to Cooperation Stipulation) | $100,000 (including $26,622.33 in reimbursement to Gomez for maintenance on the Property) | $656,750 |
| Broker Commission at 6% with 2% of total commission carved out for Estate's unsecured creditors | $72,000 | $584,750 |

Estimated Homestead Exemptions

| Estimated Available Funds | Estimated Debtor's/Estate's Share | Estimated Gomez's Share |
|---|---|---|
| $584,750 (this amount is subordinated via the stipulation; including to administrative fees which continue to accrue) | $292,375 ($25,000 paid directly to Debtor pursuant to Sale Stipulation) | $292,375 |

---

[1] Identified in Debtor's Schedule D as Seabreeze Management Company Inc.
[2] Trustee Fees and Dinsmore Fees are subject to a properly filed fee application and approval of the Court, and are only estimates.
[3] Dinsmore Fees continue to accrue.

Allocation of Liens Attaching To Debtor's/Estate's Share of "Homestead" Funds

| Lienholder | Asserted Value of Lien | "Homestead" Funds Available | Running Remainder |
|---|---|---|---|
| Stegmeier, Gelbart, Schwartz and Benavente, LLP (FLARPL)[4] | $300,000 | $267,375 | $0 |
| White Zuckerman Warsavsky Luna and Hunt, LLP[5] | $77,396.19 | $0 | $0 |

Allocation of Liens Attaching To Gomez's Share of Homestead Funds

| Lienholder | Asserted Value of Lien | "Homestead" Funds Available | Running Remainder |
|---|---|---|---|
| Stegmeier, Gelbart, Schwartz and Benavente, LLP[6] | $85,000 | $292,375 | $207,375 |
| The Neshanian Law Firm | $98,229.59 | $207,375 | $109,145.41 |
| R&S Law Group[7] | $158,172.71 | $109,145.41 | $0 (- $49,027.30) |

As the tables above show, the disputed FLARPL, if allowed in its entirety, will eclipse the Estate's "homestead" funds to which it attaches. Any under secured remainder becomes an unsecured claim. The White Zuckerman lien, being only against Debtor and junior to the FLARPL, will attach to any proceeds remaining should the FLARPL be disallowed or reduced. Otherwise, the White Zuckerman lien will be an unsecured claim. Importantly, both Stegmeier, Gelbart, Schwartz and Benavente, LLP (as holder of the FLARPL) and White Zuckerman consented to the sale. *See* Sale Stipulation.

As to the liens attaching to Gomez's portion of the homestead funds, both the Stegmeier, Gelbart, Schwartz and Benavente, LLP and The Neshanian Law Firm liens are oversecured. The lien

---

[4] This lien is disputed as unsupported by evidence. This lienholder also consented to the Sale. *See* Sale Stipulation.
[5] This lienholder consented to the sale. *See* Sale Stipulation
[6] This lienholder consented to the sale. *See* Sale Stipulation
[7] This lienholder consented to the sale. *See* Sale Stipulation

held by R&S Law Group is under secured by the Kathy Court Property. However, as noted in footnote 5, R&S Law Group consented to the sale, and the R&S Law Group lien attaches to Gomez's other properties (see below for list of other Gomez properties). *See* Sale Stipulation. As set forth in the Sale Stipulation, the actual distribution of proceeds will be the subject of a further Court order.

<u>Remaining Unsecured Claims To Be Paid From Broker Carve-Out</u>

| Unsecured Claim Holder | Amount of Unsecured Claim | Priority Claimed |
|---|---|---|
| Franchise Tax Board – Claim 1-1[8] | $4,210.35 | Yes - $3,368.28 - Taxes or penalties owed to governmental units under 11 U.S.C. § 507(a)(8) |
| A Center For Children and Family Law – Claim 11-1 | $20,553.83 | Yes - $20,553.83 - Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| AT&T Services, Inc. – Claim 3-1 | $289.96 | No |
| White Zuckerman Warsavsky Luna and Hunt, LLP – Claim 10-1 | $77,396.19 | No |
| San Joaquin Hills Community Association | $3,222 | No |
| Jeffrey Adams Gomez – Claim 7-1 and Claim 12-1 | Claim 7-1: TBD; Claim 12-1: $275,000 | No |

Importantly, Trustee has not yet examined and vetted the proofs of claim, and may still object. As there is a limited carve-out for unsecured creditors, Trustee will make the distributions on a *pro rata* basis, taking into account the appropriate priorities.

---

[8] This proof of claim relates to the disputed Franchise Tax Board lien mentioned above, and as noted, this proof of claim will be paid from the sale proceeds.

**K.    GOOD FAITH BUYER**

This Motion seeks approval for Trustee to sell the Property on the terms and conditions set forth in the RPA, which reflects the material terms agreed to between Buyer and Trustee. Also, this motion seeks an order determining that the Buyer is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m). A separate declaration for the Buyer will be filed. The Buyer did not and will not receive any preferential treatment in this sale negotiation, and the sale is being set subject to open marketing and overbidding procedures. *See* Declaration of Clarence Yoshikane. Therefore, if Buyer is the winning and successful bidder for the Property, it is entitled to a good faith determination.

**L.    OVERBID PROCEDURE[9]**

To maximize the benefit to the Estate, Trustee is setting this sale subject to overbid pursuant to the procedures stated below. Accordingly, Trustee requests that the Court authorize him to implement an overbid procedure regarding the sale of the Property on the terms stated below. Trustee will continue to market the Property through the date of the proposed sale.

Any potential overbidder is encouraged to obtain a copy of the Motion and contact Trustee's counsel and/or Trustee's broker prior to the hearing. The Property will be sold subject to overbid at an open auction ("Auction") to be conducted by Trustee in open court at the time that this Motion is heard. Trustee has established the following overbid procedures, which shall govern any bidding:

1.    Any person or entity interested in purchasing the Property must serve Trustee and his counsel with an initial bid in conformance with these provisions ("Overbid"), such that any qualifying overbid is actually received no later than the close of business on January 14, 2026 ("Bid Deadline"), which is the day before the hearing on this Motion.

2.    Any entity that submits a timely, conforming Overbid shall be deemed a "Qualified Bidder" and may bid for the Property at the hearing. Any entity that fails to submit a timely, conforming bid shall be disqualified from bidding for the Property. The Trustee may also, in his discretion, consider back-up offers lower than the initial price of $1,800,000 and permit a Qualified Bidder at a back-up offer price.

---

[9] The overbid procedures are found in Addendum One to the RPA, which is attached to the Declaration of Richard A. Marshack as **Exhibit 1**.

3.      Trustee, subject to the rights of a bidder or party in interest to raise an issue with the Court, shall have sole discretion to determine whether a party is a Qualified Bidder.

4.      Any Overbid must remain open until the conclusion of the auction ("Auction") of the Property to be held at the hearing on this Motion.

5.      Any Overbid must provide for a minimum purchase price of at least $1,810,000 (i.e. $10,000 more than the accepted offer from Buyer). Overbidder must match all terms and conditions of original bid.

6.      Any Overbid must be for the Property "as is," "where is," and "with all faults" and shall not contain any financing, due diligence, or any other contingency including any termination fee, or any similar fee or expense reimbursement, and must agree to the same terms as set forth in the RPA.

7.      If Trustee receives a timely, conforming Overbid for the Property, the Court will permit Trustee to conduct an auction of such property at the hearing, in which all Qualified Bidders may participate. The Auction shall be governed by the following procedures: (a) All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the sale of the Property; (b) The minimum bidding increment during the Auction shall be $1,000; (c) Bidding shall commence at the best bid presently received and accepted by Trustee; (d) the Trustee will determine in his business judgment, after consideration of all relevant factors including but not limited to the bid price, the "Best Bid" for the Property; and (e) the Court will resolve any disputes over whether Trustee has properly exercised his business judgment in determining the "Best Bid" and the prevailing party ("Successful Bidder").

8.      As set forth in Addendum No. One to the RPA, if a successful overbidder is accepted and confirmed by the Court, then the successful overbidder is to reimburse the original bidder up to $2,000 costs incurred. Only physical inspection termite inspection, and loan appraisal are reimbursable expenses. These costs incurred are to be collected by Escrow. Proof of monies spent are to be given to Overbidder.

/ / /

9.    The Successful Bidder must pay, at the closing, all amounts reflected in the Best Bid in cash and such other consideration as agreed upon, *including that* pursuant to Addendum No. One to the RPA, a Successful Bidder other than the initial Buyer shall reimburse the Buyer up to $2,000 in reimbursable actual costs incurred noted above.

10.    Any bidder other than the Successful Bidder may be deemed, upon their consent, as the Back-Up Bidder who may be substituted for the Successful Bidder without further court order in the event that the Successful Bidder fails to close escrow, at a set price.

Trustee believes that the requested overbid procedures, including the minimum initial overbid of $10,000 and the minimum bidding increments of $1,000 is reasonable, and the bidding procedures including the minimum overbid and the bidding increments both encourage the Buyer to participate as the first bidder, and the procedures will not chill bidding. *See McCarthy v. Goldman (In re McCarthy)*, 2008 Bankr. LEXIS 4688 at *56 (B.A.P. 9th Cir. 2008).

### III.    LEGAL ARGUMENT

Section 363(b)(1) of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Property of the estates includes "all legal or equitable interest of the debtor in property as of the commencement of the case," regardless of where the property is located, or by whom it is held. *See* 11 U.S.C. § 541(a). The court's power to authorize the sale under § 363(b) is to be exercised at its discretion. *See In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d. Cir. 1983); *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr. S.D. Ohio 1984); *In re Ancor Exploration Co.*, 30 B.R. 803, 808 (Bankr. N.D. Okla. 1983). Here the Trustee seeks court approval of the sale of Real Property pursuant to 363(b)(1), which governs the sale of property of the estate. He also seeks the authority to sign all documents needed to transfer the entire property interest to the Buyer, including but not limited to a quit claim deed.

The Property is titled as Joint Tenants. In California, joint tenancy property is presumed community property. *In re Brace*, 9 Cal. 5th 903, 938 (2020). Community property is property of Debtor's Estate and under the control of the Trustee. *In re Moreno*, 622 B.R. 903, 907 (Bankr. C.D. Cal. 2020) ("Section 541(a)(2) of the Bankruptcy Code provides that property of a bankruptcy estate

1   includes all community property of the debtor and the debtor's spouse.").  Thus, the Trustee seeks

2   authority to sign all documents to effectuate this sale.

3       Since the Property is property of the estate pursuant to 541(a)(2) the standard to be applied in

4   determining whether a sale should be authorized under § 363(b)(1) is whether such sale is in the best

5   interest of the estate and whether the price is fair and reasonable.  See *In re Canyon Partnership,* 55

6   B.R. 520 (Bankr. S.D. Cal. 1985).  A trustee is given substantial deference and discretion in this

7   regard.  *Id.*  Further, a sale under § 363(b) must be proposed in good faith and supported by a valid

8   business justification.  *See 240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N.*

9   *Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. BAP 1996). "'Good faith' encompasses fair value,

10  and further speaks to the integrity of the transaction." *Id.*

11      As show above and as detailed in the  Declaration of Clarence Yoshikane, the Property was

12  adequately marketed. As noted above, the Property was listed on the MLS in October of 2025 and

13  attracted significant attention. To date, across the various real estate websites, the Property has been

14  viewed more than 7,500 times. *See* Declaration of Clarence Yoshikane. The Property was also

15  multiple times to prospective buyers. *Id.* Prior to the accepted offer that is the subject of this motion,

16  there were two prior offers. *Id.* The first offer was in the amount of $1.5 million, and the second offer

17  was in the amount of $1.65 million. *Id.* Both of these prior offers were rejected because, in both

18  Trustee's and Broker's view, these offers were too low. *Id.* The present offer of $1.8 million, which

19  Trustee accepted, is the highest and best offer to date. *Id.*

20  **A.    THERE IS A SOUND BUSINESS PURPOSE FOR THE SALE**

21      "The court's obligation in § 363(b) sales are to assure that optimal value is realized by the

22  estate under the circumstances." *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R.

23  282, 288 (B.A.P. 9th Cir. 2005). For a trustee to sell property of the estate, "there must be some

24  articulated business justification for using, selling, or leasing the property outside the ordinary

25  course of business…whether the proffered business justification is sufficient depends on the case."

26  *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (adopting the

27  language of *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). The court

28  should approve a sale of property under Section 363(b)(1) if the trustee has established a sound

business purpose for the proposed transaction. *Walter*, 83 B.R. at 16*; In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold."). The business judgment standard is deferential. *Lahijani*, 325 B.R. at 289 ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").

Here, the Property was under a sale order issued by the Orange County Superior Court (previously defined as the "Sale Order"). In Trustee's business judgment, he was in the best position to negotiate an arrangement that would not only comply with the Sale Order, but that would also maximize the recovery for unsecured creditors. To that end, Trustee negotiated a carve-out agreement with the Broker, ensuring there would be funds available for unsecured creditors. Trustee also negotiated stipulation with Gomez that authorized Gomez to take necessary measures to pull the Kathy Court Property out of its severely dilapidated state, which in Trustee's judgment, would ensure the highest possible sale price.

In dealing with the lienholders, a trustee might be expected to dispute those liens and file a declaratory relief action against the lienholders to proceed with a sale. However, given that the majority of the liens are attaching to Gomez's portion of the sale proceeds, such actions would not have been appropriate. Instead, Trustee negotiated a stipulation with the known lienholders to allow their liens, regardless of whether the liens are truly Estate liabilities, to attach to Gomez's share of the Homestead proceeds, with precise distribution of to be decided later, by further Court order, giving Mr. Gomez the opportunity to settle or dispute those liens if warranted.

The Property is being sold after a fair and open marketing process and will be sold subject to overbids. Thus, the sale should be approved as a valid exercise of Trustee's business judgment.

**B.      THE SALE OF THE PROPERTY MAY BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(F).**

Trustee seeks authority to complete the sale free and clear of all liens, claims, and interests. Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

/ / /

(1)    Applicable non-bankruptcy law permits a sale of such property free and clear

of such interest;

(2)    Such entity consents;

(3)    Such interest is a lien and the price at which such property is to be sold is

greater than the aggregate value of all liens on such property;

(4)    Such interest is in bona fide dispute; or

(5)    Such entity could be compelled, in a legal or equitable proceeding, to accept

money satisfaction of such interest.

11 U.S.C. § 363(f); s*ee e.g., Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148, 1153-54 (9th Cir. 2017). Section 363(f) is written in the disjunctive, such that satisfaction of any one of the five conditions is sufficient to allow a trustee to sell property of the estate free and clear of liens. *In re Gerwer*, 898 F.2d 730 (9th Cir. 1990).

### 1.    The Property May Be Sold Free and Clear of All Liens.

#### (i)    The Stipulation with Lienholders

As noted above, Trustee, along with all known lienholders (excepting one), entered into a stipulation for the sale of the Kathy Court Property free and clear of liens (previously defined as the "Sale Stipulation"). *See* Dkt. 129. Also as noted, the only lienholder that did not sign this stipulation was the Neshanian Law Firm. The Sale Stipulation provides in pertinent part:

"The lienholders… except for The Neshanian Law Firm, agree to subordinate payment of their liens or interests to the costs of the sale (including commissions and maintenance), payment of all applicable taxes, and allowed administrative claims (collectively, "Administrative Costs"). Under 11 U.S.C. § 510(c)(2), the liens securing the amounts necessary to pay the Administrative Costs are transferred to the estate. In other words, the Administrative Costs will be secured by liens and the lienholders will retain the balance of their liens and the full amount of their claims." (*See* Sale Stipulation, ¶3.)

Thus, with the exception of the Neshanian Law Firm, all lienholders have consented to the sale of the Property within the meaning of 11 U.S.C. §363(f)(2).  As further set forth above, those liens will attach to either the Estate/Debtor's homestead proceeds or the Gomez homestead proceeds.

1    The Trustee will hold those funds pending a resolution of the liens amounts and priorities.  The

2    Trustee will distribute those funds upon obtaining a Court order directing how those funds will be

3    disbursed.

4                              (ii)      The Neshanian Law Firm's Lien

5          As noted, the Neshanian Law Firm was the only lienholder not to sign the Sale Stipulation.

6    However, Trustee proposes to treat the Neshanian Law Firm's lien in manner identical to the

7    consenting lienholders, such that no prejudice will accrue to any lienholder. The Neshanian Law

8    Firm's lien will attach to Gomez's share of the Homestead proceeds according to appropriate priority,

9    as set forth above. Since the sale price of the Property will generate sufficient funds to protect the

10   Neshanian Law Firm Lien, given the priority of the Neshanian lien, the Property may be sold free and

11   clear of the Neshanian Law Firm lien pursuant to 11 U.S.C. § 363(f)(3). As noted above, all other

12   lienholders have consented to the sale.  No money will be disbursed until all liens priority and amount

13   are adjudicated and further Court order is issued to the Trustee directing him to disburse those funds.

14                             (iii)     Franchise Tax Board Lien

15         As noted above, the Franchise Tax Board for the State of California recorded a lien on October

16   14, 2025, without first obtaining relief from the automatic stay, making the recording of the lien as

17   violation of the automatic stay.  As mentioned above, the FTB has been notified of the stay violation.

18   As such, Debtor disputes the validity of the lien. Thus, the sale may proceed free and clear of this lien

19   under 11 U.S.C. section 363(f)(4).

20                             (iv)      The *Lis Pendens* On the Property

21         Trustee is requesting that the *lis pendens* identified in paragraph 18 of the PTR, only to the

22   extent that it encumbers the Property, be released by and through an order approving the sale of the

23   Property. This *lis pendens* was filed by the Debtor, and was not intended to cloud title of the Property,

24   But to preserve Debtor's assertion that other properties titled in Mr. Gomez' name, may also be

25   community. The Debtor does not object to the removal of the *lis pendens* on the Property.

26   / / /

27   / / /

28   / / /

1                              (v)      Gomez's Other Properties

2          In addition to the Kathy Court Property, Gomez has an interest in at least seven

3    other properties[10]:

4                  (1) 1010 Moffatt Street, Rialto, California 92377;

5                  (2) 4343 Alamitos Street, Montclair, California 91763;

6                  (3) 739 West H Street, Ontario, California 91762;

7                  (4) 14227 Weeping Willow Lane, Fontana, CA 92337;

8                  (5) 7013 Ramona Avenue, Rancho Cucamonga, California 91701;

9                  (6) 3588 N. Lugo Avenue, San Bernardino, California 92404; and

10                 (7) 137 South Terrace Road, San Bernardino, California 92410.

11         These properties are also encumbered by all judgment lienholders noted above.  Thus, their

12   liens will be protected not only by the proceeds as shown above, but also by these seven properties

13   that these lienholders still retain an interest in, unless their liens are paid in full.  Thus, they are over

14   protected.

15   **C.      BUYER IS ENTITLED TO A GOOD FAITH DETERMINATION.**

16         "A good faith buyer is one who buys in good faith and for value." *Paulman v. Gateway*

17   *Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal

18   quotation marks omitted). "[A]n actual finding of good faith is not an essential element for approval

19   of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir.

20   2002). "Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In*

21   *re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks

22   omitted). "Lack of good faith is typically shown by fraud, collusion between the purchaser and other

23   bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re*

24

25

26   _____

27   [10] The Trustee does not admit herein that these properties are Gomez's alone. The Trustee believes
     he may have grounds to bring forth an appropriate declaratory relief action to determine if these
28   properties are indeed the separate property of Gomez or community property due to transmutation
     principles.

*Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992));

*see also Thomas*, 287 B.R. at 785.

At the sale hearing, the Trustee will seek a determination of good faith on behalf of the successful bidder. The sale of the Property is subject to overbid with no preferential treatment given to the Buyer. *See* Declaration of Clarence Yoshikane and Declaration of Philip Muljana and Shu Rong Chang. The best and highest bidder for the Property should be entitled to receive a good faith buyer determination.

**D.     WAIVER OF THE FOURTEEN-DAY PERIOD FOR EFFECTIVENESS OF SALE ORDER**

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h). The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court.  Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Collier's states that "if an objection [to the sale] has been filed and is overruled, the court should eliminate or reduce the 14-day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2020).

In order to facilitate the timely and speedy close of escrow, Trustee respectfully requests that the 14-day stay of effectiveness of the sale order be waived in order to allow escrow to proceed without delay. The sale of the property should be permitted to close as soon as possible to avoid any unanticipated issues such as those related to the overall global market conditions.

## IV.     <u>CONCLUSION</u>

Based on the foregoing, Trustee respectfully requests that the Court grant this Motion and enter an order that provides that:

/ / /

1.      Trustee is authorized to sell the Property pursuant to 11 U.S.C. § 363(b), As is Where Is, for the Purchase Price on the terms and conditions set forth in the Purchase Agreement,  and that he has the authority to sign all documents needed to transfers the entire property interest to a Buyer, including but not limited to executing a quit claim deed;

2.      The Court approves each of the terms of the Purchase Agreement, authorizes the Trustee to perform the Purchase Agreement, and determines that the Purchase Agreement is in the best interest of the estate, that the sale is made for fair market value and in good faith.

3.      The proposed overbid procedures are approved and adequate notice was given;

4.      The first priority lienholder, as identified in paragraph 17 of the PTR and all applicable costs of sale and taxes shall be paid in full from proceeds of the sale through escrow;

5.      The *lis pendens* identified in paragraph 18 of the PTR, to the extent it encumbers the Property, is released;

6.      The Property may be sold free and clear of the judgment lien held by Stegmeier, Gelbart, Schwartz and Benavente, LLP as identified in paragraph 19 of the PTR as consented to in the Sale Stipulation, and the lien will attach to Gomez's share of the homestead proceeds as set forth in the Sale Stipulation and this motion;

7.      The judgment liens held by American Express National Bank as identified in paragraphs 20 and 21 of the PTR have been satisfied in full and the liens released, and thus the property is sold free and clear. *See Acknowledgement and Satisfaction of Judgment* attached to the Declaration of Richard A. Marshack as **Exhibit 5**;

8.      The Property may be sold free and clear of the judgment lien held by The Neshanian Law Firm, Inc. as identified in paragraph 22 of the PTR and as addressed in this motion. The lien will attach to Gomez's share of the homestead proceeds as set forth in this motion;

9.      The Property may be sold free and clear of the FLARPL held by Stegmeier, Gelbart, Schwartz and Benavente, LLP as identified in paragraph 23 of the PTR as consented to in the Sale Stipulation, and the lien will attach to the Estate's/Debtor's share of the homestead proceeds as set forth in the Sale Stipulation and this motion;

/ / /

10.    The Property may be sold free and clear of the judgment lien held by R&S Law Group, APC as identified in paragraph 24 of the PTR as consented to in the Sale Stipulation, and the lien will attach to Gomez's share of the homestead proceeds as set forth in the Sale Stipulation and this motion; and to the extent it is under secured, R&S Law Group, APC has consented to the sale;

11.    The Property may be sold free and clear of the judgment lien held by White Zuckerman Warsavsky Luna and Hunt, LLP, identified in paragraph 25 of the PTR, as consented to in the Sale Stipulation, and the lien will attach to the Estate's/Debtor's share of the homestead proceeds as set forth in the Sale Stipulation and this motion; and to the extent it is under secured, White Zuckerman has consented to the sale;

12.    The Trustee is authorized to retain 2% of the amount from the 6% Broker's commission, or approximately $36,000, to pay all unsecured claims in his sole discretion, pursuant to the distribution scheme set forth in the Bankruptcy Code. The Trustee has not reviewed all claims, and may still object to those as needed or required.

13.    Trustee is authorized to pay directly from Escrow the agent/brokerage commissions previously authorized by the Court, all customary costs of sale out of escrow, and reasonable reimbursements to his agents for actual expenses incurred, as set forth in the Agent Order;

14.    Pursuant to the Cooperation Stipulation and this Motion, Trustee is authorized to reimburse Gomez directly from escrow in the amount of $26,622.33 for the costs of repairs and maintenance on the Property;

15.    The Broker shall be reimbursed in the amount of $1,572.93 for the costs of renting storage units from October 13, 2025 through December 1, 2025;

16.    Pursuant to the Sale Stipulation and this Motion, Trustee is authorized to pay Debtor's counsel the amount of $7,000 directly from escrow;

17.    Escrow is authorized to turnover any remaining balance of the sale proceeds to the Trustee, and the Trustee is authorized to hold sufficient funds to pay all identified administrative expenses from the sale proceeds, pending Court approval authorizing distribution of same;

18.    The Trustee is authorized to receive and hold all remaining "homestead" proceeds from Escrow consistent with the Sale Stipulation, this Motion and pending further order of the Court;

19.     The Buyer (or any Successful Bidder otherwise) is a good faith purchaser entitled to protection under 11 U.S.C. § 363(m);

20.     Should Buyer not timely complete the purchase of the Property pursuant to the terms of the RPA, Buyer's deposit shall be forfeited and the Back-Up Bidder, if any, may be substituted for the Successful Bidder without further order of the Court, and Trustee is authorized to proceed to sell the Property to such Back-Up Bidder;

21.     The 14-day stay regarding the effectiveness of the order is waived; and the Order is immediately enforceable and the sale shall close even if there is an appeal or other challenge to the order excepting only instances where a stay of the order is issued prior to any such closing by separate order of the Court or any higher Federal Court.

22.     Trustee is authorized to execute all necessary documentation to facilitate the sale of the Property.

23.     Such other and further relief as the Court may deem just and proper.


DATED:  December 23, 2025                    Respectfully submitted,

                                            DINSMORE & SHOHL LLP


                                            By:___/s/ Yosina M. Lissebeck_____
                                                Yosina M. Lissebeck
                                                Jacob R. Bothamley
                                                Attorneys for Richard A. Marshack,
                                                Chapter 7 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A TRUE AND CORRECT COPY OF THE FOLLWING DOCUMENTS:

TRUSTEE'S MOTION FOR: (1)  ORDER AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 27591 KATHY COURT, LAGUNA NIGUEL, CALIFORNIA 92677: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS UNDER 363(F); (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M); MEMORANDUM OF POINTS AND AUTHORITIES;

DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE'S MOTION FOR: (1)  ORDER AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 27591 KATHY COURT, LAGUNA NIGUEL, CALIFORNIA 92677: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS UNDER 363(F); (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M);

DECLARATION OF CLARENCE YOSHIKANE INI SUPPORT OF TRUSTEE'S MOTION FOR: (1)  ORDER AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 27591 KATHY COURT, LAGUNA NIGUEL, CALIFORNIA 92677: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS UNDER 363(F); (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M)

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 23, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On December 23, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

⊠      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 23, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐       Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 23, 2025 | Bonnie Connolly | /s/ Bonnie Connolly |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

David Coats on behalf of Creditor Wells Fargo Bank, N.A.
dacoats@raslg.com

Benjamin Heston on behalf of Creditor Jeffrey Adams Gomez
bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net

Richard G. Heston on behalf of Creditor Richard G Heston
rheston@hestonlaw.com,
yflores@hestonlaw.com,docs@hestonlaw.com,HestonRR41032@notify.bestcase.com,hestonlaw@recap.email

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com,
caron.burke@dinsmore.com;ayrton.celentino@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Jacob Newsum-Bothamley on behalf of Trustee Richard A Marshack (TR)
jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com

Matthew J Stockl on behalf of Trustee Richard A Marshack (TR)
mstockl@otterbourg.com, katrice.ortiz@dinsmore.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Julie J Villalobos on behalf of Debtor Kristina Lynn Smith
julie@oaktreelaw.com,
oakecfmail@gmail.com;villalobosjr51108@notify.bestcase.com;gus@oaktreelaw.com

Jennifer C Wong on behalf of Interested Party Courtesy NEF
bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**:

State of California Franchise Tax Board
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
PO Box 2952
Sacramento CA 95812-2952

R&S LAW GROUP, APC
400 W First St
Tustin, CA 92780

R&S LAW GROUP, APC
c/o: Tina M. Talbot, ESQ.
230 Newport Center Drive, Suite 210
Newport Beach, CA 92660-7525

Stegmeier, Gelbart, Schwartz and Benavente, LLP
Attn: Saul M. Gelbart, Esq.
19762 MacArthur Blvd, Suite 200
Irvine, CA 92612-2497

The Neshanian Law Firm
Attn: Eric Neshanian, Esq.
5 Corporate Park, Suite 250
Irvine, CA 92606-5169

A Center For Children and Family Law
Attn: Tracy Willis, Esq.
1111 W Chapman Ave
Orange, CA 92868-2828

Union Bank N.A.
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
8248 Mercury Court, Suite B
San Diego, CA 92111

Union Bank N.A.
Residential Loan Department
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
P.O. Box 85643
San Diego, CA 92186-5643

Quality Loan Service Corporation
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
2763 Camino Del Rio South
San Diego, CA 9210899

White Zuckerman Warsavsky Luna and Hunt, LLP
Attn: Drew Hunt
4 Park Plaza, Suite 200
Irvine, CA 92614-8533

White Zuckerman Warsavsky Luna and Hunt, LLP
c/o: Law Office of Howard Goodman
18321 Ventura Blvd, Suite 755
Tarzana, CA 91356-4250

Seabreeze Property Management
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
PO Box 92799
Aliso Viejo, CA 92656

San Joaquin Hills Community Association
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
27380 Aliso Niguel Road
Laguna Niguel, CA 92677

American Express National Bank N.A.
c/o: Lourdes R. Slinsky, Esq.
Modlin Slinsky, P.A.
1551 Sawgrass Corporate Parkway,
Suite 110, Sunrise, FL  33323

Jeffrey Adams Gomez
P.O. Box 1718
Upland, CA 91785

Kristina Lynn Smith
27591 Kathy Ct
Laguna Niguel, CA 92677-6025

State of California Franchise Tax Board
Bankruptcy Section MS A340
Attn: Officer, A Managing Or General Agent,
Or To Any Other Agent Authorized By Appointment
Or Law To Receive Service Of Process
PO Box 2952
Sacramento CA 95812-2952