Yosina M. Lissebeck (SBN 201654)
Jacob R. Bothamley (SBN 319457)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501
yosina.lissebeck@dinsmore.com
jacob.bothamley@dinsmore.com

Attorneys for Richard A. Marshack, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>KRISTINA LYNN SMITH,<br><br>    Debtor. | Case No. 8:24-bk-12527-SC<br><br>Chapter 7<br><br>DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE'S MOTION FOR: (1) ORDER AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 27591 KATHY COURT, LAGUNA NIGUEL, CALIFORNIA 92677: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS UNDER 363(F); (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M)<br><br><u>Hearing Date:</u><br>Date:  January 15, 2026<br>Time:  9:00 a.m.<br>Ctrm:  5C<br>Location: 411 West Fourth Street<br>     Santa Ana, CA 92701 |

I, RICHARD A. MARSHACK, declare as follows:

   1.  I am an individual over 18 years of age and competent to make this Declaration.

   2.  I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts.

/ / /

/ / /

**DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY**

3.	I am the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Kristina Lynn Smith ("Debtor").

4.	I seek approval to sell real property commonly known as 27591 Kathy Court, Laguna Niguel, California 92677 ("Property" or "Kathy Court Property"). A true and correct copy of the residential purchase agreement for the sale of the Property negotiated between myself, Philip Muljana and Shu Rong Chang (collectively "Buyer"), is attached as **Exhibit 1**.

5.	Shortly after my appointment as Trustee, I became aware that the Divorce Court had ordered the Sale of the Property. A true and correct copy of the Sale Order is attached as **Exhibit 2**.

6.	In my judgment, selling the Property during the bankruptcy case was an opportunity to come to a creative arrangement that not only complied with the Sale Order and protected existing lienholders, but also allowed for a recovery by unsecured creditors who might otherwise get nothing.

7.	To market the Property, I employed Clarence Yoshikane due to his skill and good reputation. Mr. Yoshikane's employment was approved by the Court on May 5, 2025.

8.	In negotiating the terms of Mr. Yoshikane's employment, we agreed that his commission would be 6% of the sale price, but his commission would include a carve-out of 2% the sale price to be retained by the Estate and earmarked specifically for unsecured creditors.

9.	However, before Mr. Yoshikane could begin marketing the Property in earnest, the Property needed significant repairs and maintenance as it had fallen into a dilapidated state, and in my judgment, would not obtain its highest sale price without such maintenance and repairs being performed.

10.	To arrange such maintenance and repairs, I entered into the Stipulation re: Cooperation With Trustee During Marketing And Sale Of Real Property Located At 27591 Kathy Court, Laguna Niguel, California ("Cooperation Stipulation") with Debtor's ex-husband, Jeffrey Adams Gomez ("Gomez") on August 20, 2025.

/ / /

/ / /

/ / /

**DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY**

11.     Under the Cooperation Stipulation, Gomez was authorized, with my approval, to engage the services of landscapers, interior and exterior repairmen, deep cleaners, and movers, as well as to purchase new carpeting and flooring for a total cost of $26,622.33. True and accurate copies of the receipts for the work performed and materials purchased are attached as **Exhibit 3**.

12.     My broker's approved the vendors and oversaw the work, and I  have reviewed the receipts and the results from the work performed, and I believe the costs incurred were both necessary and justified in that they helped achieve the highest and best sale price possible for the Property.

13.     On September 26, 2025, I entered into a stipulation with the Debtor, Mr. Gomez, and lienholders to sell the Property free and clear of liens (defined as the "Sale Stipulation"). See Dkt. 129. The Sale Stipulation was approved by this Court on October 6, 2025. See Dkt. 130. The Sale Stipulation provides for the disposition of liens, Debtor's homestead exemption, and any remaining funds as set forth in that Stipulation, and as summarized in this Motion.

14.     I now seek approval from the Court to sell the Property free and clear of the specified liens, claims, and interests set forth in the Motion, with such liens, claims, and interests to attach to either the Estate's/Debtor's homestead share or Gomez's homestead share, as set forth in the Motion,  with the same validity, priority, and extent as they would attach to the Property. A true and correct copy of the Preliminary Title Report listing the liens encumbering the Property is attached as **Exhibit 4**.

15.     Upon review of the Preliminary Title Report, I noted a lien ostensibly held by American Express National Bank in paragraphs 20 and 21. I followed up with American Express and found that the lien was satisfied and released. A true and correct copy of the *Acknowledgement and Satisfaction of Judgment* is attached to this declaration as **Exhibit 5**.

16.     I will not disburse any of the proceeds to any lienholder without further order by the Court.

17.     To the best of my knowledge, the Motion satisfies the standards for approval of a sale of the Property outside of the ordinary course of business pursuant to § 363(b).

/ / /

**DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY**

18.    The overbid procedures proposed in the Motion regarding the qualification of overbidders, the first overbid of $10,000, and the subsequent minimum increment of $1,000 are appropriate and reasonable bidding procedures.

19.    I believe that it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and that the Property may be sold immediately upon entry of the order.

20.    There is no connection between me and the Buyer except through this sale. There has been no preferential treatment given to the Buyer and all of the negotiations were done at arm's length. The Property was publicly listed according to my instructions. The sale will be set for overbids to ensure that any other interested party has a full and fair opportunity to bid on the Property and obtain a fair market value. Accordingly, I believe good cause exists to make a finding that the Buyer or any overbidders are purchasing the Property in "good faith" pursuant to Section 363(m).

21.    On October 14, 2025, the Franchise Tax Board for the State of California recorded a lien against the Property. See para. 26 of the PTR. The FTB did not have relief from the automatic stay when it recorded the lien, making the recording of the lien a violation of the automatic stay. Upon learning of the FTB lien, my office notified representatives of the FTB and requested that the FTB withdraw lien or else I will dispute the lien through an adversary proceeding. As of the date of this declaration, my office has not received a response from the FTB.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 22, 2025.

_____
RICHARD A. MARSHACK

**DECLARATION OF RICHARD A. MARSHACK ISO TRUSTEE MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY**

# EXHIBIT 1

Exhibit 1

Page 5





### CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
(C.A.R. FORM RPA, 12/21)

Date Prepared: 11/17/2025

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** Philip Muljana, Shu Rong Chang _____ ("Buyer").
   B. **THE PROPERTY** to be acquired is 27591 Kathy Court _____, situated
      in Laguna Niguel (City), Orange ... (County), California, 92677-6025 (Zip Code),
      Assessor's Parcel No(s). 636-632-34 _____ ("Property").
      **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
      **Seller's Brokerage Firm** Berkshire Hathaway HomeServices CA Properties License Number 01317331
      Is the broker of (check one): [x] the Seller; or ☐ both the Buyer and Seller (Dual Agent).
      **Seller's Agent** Clarence Yoshikane License Number 00801398
      Is (check one): [x] the Seller's Agent. (Salesperson or broker associate); or ☐ both the Seller's and Buyer's Agent (Dual Agent).
      **Buyer's Brokerage Firm** The CREM Group License Number 02029217
      Is the broker of (check one): [X] the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
      **Buyer's Agent** Mark Cianciulli License Number 01990266
      Is (check one): [x] the Buyer's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   C. ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

|  | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ 1,800,000.00 | [X] All Cash |
| B |  | **Close of Escrow (COE)** | [X] within 30-days from Court Confirmation Hearing | |
| ~~C~~ | ~~32A~~ | ~~Expiration of Offer~~ | ~~3 calendar days after all Buyer Signature(s)~~ ~~or~~ ~~at 5PM or ☐ AM/ ☐ PM~~ ~~(date),~~ | |
| D(1) | 5A(1) | **Initial Deposit Amount** **Cashier's Check Made Out to: Richard A. Marshack, Ch 7 Trustee** | $ 60,000 (_____% of purchase price) ~~(% number above is for calculation purposes and is not a contractual term)~~ | within 3 (or ___) business days after Acceptance by wire transfer OR ☐ |
| ~~D(2)~~ | ~~5A(2)~~ | ~~Increased Deposit~~ ~~(Money placed into escrow after the initial deposit. Use form DDA at time increased deposit is made.)~~ | ~~$~~ ~~(_____% of purchase price)~~ ~~(% number above is for calculation purposes and is not a contractual term)~~ | ~~Upon removal of all contingencies~~ ~~OR ☐~~ ~~(date)~~ ~~OR ☐~~ |
| ~~E(1)~~ | ~~5C(1)~~ | ~~Loan Amount(s):~~ ~~First~~ ~~Interest Rate~~ ~~Points~~ | ~~$ (_____% of purchase price)~~ ~~Fixed rate or ☐ initial adjustable rate not to exceed _____%~~ ~~Buyer to pay zero points or up to _____% of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ FHA ☐ VA~~ ~~(CAR Forms FVAC, HID attached)~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| | | ~~If FHA or VA checked, Deliver list of lender required repairs~~ | ~~17 (or ___) Days after Acceptance~~ | |
| ~~E(2)~~ | ~~5C(2)~~ | ~~Additional Financed Amount~~ ~~Interest Rate~~ ~~Points~~ | ~~$ (_____% of purchase price)~~ ~~Fixed rate or ☐ initial adjustable rate not to exceed _____%~~ ~~Buyer to pay zero points or up to _____% of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, ☐ Secondary ☐ Investment | |
| F | 5D | **Balance of Down Payment** | $ 1,740,000.00 | |
| | | **PURCHASE PRICE TOTAL** | $ 1,800,000.00 | |

© 2021, California Association of REALTORS®, Inc.

RPA 12/21 (PAGE 1 OF 16)    Buyer's Initials PM / SRC    <mark>Seller's Initials</mark> ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660    Phone: (555)555-5555    Fax: 9496407429    BK Purchase
Jennifer Toyama    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 1
Page 6

**27591 Kathy Ct, Laguna Niguel, CA 92677-6025**

Property Address: ....., ...., ...                                Date: 11/17/2025

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | $ _____ (_____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or ___) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or ___) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or ___) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| J | | **Intentionally Left Blank** | | |
| J | 16 | Final Verification of Condition | 5 (or ___) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or ___) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or ___) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or ___) Days after Acceptance | ☐ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or ___) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or ___) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or ___) Days after Acceptance, or 5 Days after receipt, whichever is later | CR) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or ___) Days after Acceptance, or 5 Days after receipt, whichever is later | See paragraph 8H. |
| L(6) | 8F, 11K | Common Interest Disclosures required by Civil Code § 4526 or this Agreement | 17 (or ___) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(7) | 8G, 9B(5) | Review of leased or liened items (Such as solar panels or propane tanks or PACE or HERO liens) | 17 (or ___) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ ___ AM/___ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked here, ☐ ___ days after COE (29 or fewer days) ☐ ___ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | Tenant Occupied units | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or ___) Days after Acceptance | |
| N(2) | 19D | Sign and return Escrow Holder Provisions and Instructions | 5 (or ___) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or ___) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ___) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | **Intentionally Left Blank** | | |

RPA 12/21 (PAGE 2 OF 16)       Buyer's Initials _PM_ / _SRL_    Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com       BK Purchase

Exhibit 1
Page 7

27591 Kathy Ct, Laguna Niguel, CA 92677-6025

Property Address: ................    Date: 11/17/2025

| P | Items Included and Excluded |
|---|---|

**P(1)** 9  Items Included - All items specified in Paragraph 9B are included and the following, if checked:

[X] Stove(s), oven(s), stove/oven combo(s);
[X] Refrigerator(s);
~~Wine Refrigerator(s);~~
~~Washer(s);~~
~~Dryer(s);~~
[X] Dishwasher(s);
[X] Microwave(s);

~~Video doorbell(s);~~
~~Security camera equipment;~~
~~Security system(s)/alarm(s), other than separate video doorbell and camera equipment;~~
~~Smart home control devices;~~
Wall mounted brackets for video or audio equipment;

~~Above-ground pool(s) / spa(s);~~
[X] Bathroom mirrors, unless excluded below;
~~Electric car charging systems~~ and stations;
[X] Potted trees/shrubs;

**Additional Items included:** _____  _____  _____

**P(2)** 9  Excluded Items: _____ ; _____  _____

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | Paragraph # | Item Description | Who Pays (if Both is checked, cost is to be split equally unless Otherwise Agreed) | Additional Terms |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both<br>[X] Provided by: **MyNHD** | ~~Environmental~~<br>~~Other~~ |
| ~~Q(2)~~ | | ~~Report~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| ~~Q(3)~~ | | ~~Report~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [X] Buyer [ ] Seller [ ] Both | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | [X] Buyer [ ] Seller [ ] Both    **If Applicable** | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | [X] Buyer [ ] Seller [ ] Both    **If Applicable** | |
| Q(7) | 19B | Escrow Fees | [ ] Buyer [ ] Seller [ ] Both<br>[X] Each to pay their own fees | Escrow Holder:<br>**A & A Escrow** |
| Q(8) | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both | Title Company (if different from Escrow Holder):<br>**Lawyers Title** |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both    **If Applicable** | |
| Q(11) | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both    **If Applicable** | |
| Q(12) | 11K(2) | HOA fee for preparing disclosures | ~~Seller~~    Buyer | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | [ ] Buyer [ ] Seller [X] Both    **Split 50/50** | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both    **If Applicable** | |
| ~~Q(16)~~ | | ~~fees or costs~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| ~~Q(17)~~ | | ~~fees or costs~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| Q(18) | 10C | Home warranty plan: _____ | [ ] Buyer [ ] Seller [ ] Both<br>[ ] Buyer waives home warranty plan<br>Issued by: _____ | Cost not to exceed $ _____ |

| R | OTHER TERMS: PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED. PEST CONTROL/ TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER. TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY. |
|---|---|

RPA 12/21 (PAGE 3 OF 16)    Buyer's Initials [PM] / [SRC]    Seller's Initials _____ / _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    BK Purchase

Exhibit 1
Page 8

27591 Kathy Ct, Laguna Niguel, CA 92677-6025

Property Address: ___ ..., ..., ___                                                              Date: 11/17/2025

**4.  PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A.  PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ ~~Probate-Agreement Purchase Addendum (C.A.R. Form PA PA)~~
- ☐ ~~Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)~~
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ ~~Tenancy-in-Common Purchase Addendum (C.A.R. Form TIC PA)~~
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Other ___

**B.  OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☒ Addendum # __One__ (C.A.R. Form ADM)          ☐ ~~Short-Sale Addendum (C.A.R. Form SSA)~~
- ☐ ~~Back Up Offer Addendum (C.A.R. Form BUO)~~          ☐ ~~Court Confirmation Addendum (C.A.R. Form CCA)~~
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ ~~Buyer-Intent-to-Exchange Addendum (C.A.R. Form BXA)~~          ☐ ~~Seller-Intent-to-Exchange Addendum (C.A.R. Form SXA)~~
- ☒ Other __Addendum to Purchase Agreement__          ☐ Other ___

**C.  BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ ~~Buyer's Investigation Advisory (C.A.R. Form BIA)~~          ☒ ~~Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)~~
- ☒ ~~Wire Fraud Advisory (C.A.R. Form WFA)~~          ☒ ~~Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)~~
                                                                 (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ ~~Wildfire Disaster Advisory (C.A.R. Form WFDA)~~          ☐ ~~Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)~~
- ☐ ~~Trust Advisory (C.A.R. Form TA)~~          ☐ ~~Short-Sale Information and Advisory (C.A.R. Form SSIA)~~
- ☐ ~~REO Advisory (C.A.R. Form REO)~~          ☐ ~~Probate Advisory (C.A.R. Form PA)~~
- ☐ Other ___          ☐ Other ___

**5.  ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A.  DEPOSIT:**                                                        Listing Broker's Office
(1)  **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to ~~Escrow Holder.~~ If a method other than wire transfer is specified in **paragraph 3D(1)** ~~and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.~~

(2)  ~~**INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.~~

(3)  **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. ~~Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.~~ <mark>Buyer agrees that if they backout prior to Court Hearing or are unable to Close Escrow they forfeit the Deposit.</mark>

**B.  ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C.  LOAN(S):**
(1)  **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

(2)  ~~**ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.~~

(3)  **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

(4)  **FHA/VA: If FHA or VA is checked in paragraph 3E(1),** a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. ~~Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing,~~ Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D.  BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E.  LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then ~~(i) the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and~~ (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6.  ADDITIONAL FINANCING COSTS:**

**A.  VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B.  VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA 12/21 (PAGE 4 OF 16)          Buyer's Initials  _PM_ / _SRL_          Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          BK Purchase

Exhibit 1
Page 9

Property Address: ....., ..., ...    **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**    Date: 11/17/2025

**C.** **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Buyer has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7.** **CLOSING AND POSSESSION:**

**A.** **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

**B.** **CONDITION OF PROPERTY ON CLOSING:**

(1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. ~~Buyer, after first Delivering to Seller written notice to remove the items within 3 Days, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.~~

(2) Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.

~~**C.** **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed, **(i)** the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; **(ii)** Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and **(iii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.~~

~~**D.** **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.~~

~~**E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarm systems, intranet and internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.~~

**8.** **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A.** **LOAN(S):**

~~(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s).~~ **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. ~~Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.~~

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, ~~unless Otherwise Agreed.~~

~~(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.~~

(5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller ~~may~~ be entitled to Buyer's deposit ~~or other legal remedies.~~

**B.** **APPRAISAL:**

~~(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.~~

(2) NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller ~~may~~ be entitled to Buyer's deposit ~~or other legal remedies.~~

~~**C.** **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.~~

~~**D.** **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A**.~~

RPA 12/21 (PAGE 5 OF 16)    Buyer's Initials  Initial PM / Initial SRC    <mark>Seller's Initials</mark> _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Exhibit 1
Page 10

Property Address: ......  ...  ...                    27591 Kathy Ct, Laguna Niguel, CA 92677-6025                    Date: 11/17/2025

E.  TITLE:
(1) This Agreement is, as specified in paragraph 3L(5), contingent upon Buyer's ability to obtain the title policy provided for in paragraph 13G and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or net specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
(2) Buyer has 5 Days after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE): This Agreement is, as specified in paragraph 3L(6), contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under paragraph 11K ("CI Disclosures").

G.  BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY: Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to paragraph 9B(6), is, as specified in paragraph 3L(7), a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in paragraph 3L(7), refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller disclosed leased or liened items.

H.  REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency. If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.

I.  REMOVAL OF CONTINGENCY OR CANCELLATION:
(1) For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.
(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in paragraph 3L or 5 Days after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

J.  SALE OF BUYER'S PROPERTY: This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in paragraph 3L(8).

9.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:
A.  NOTE TO BUYER AND SELLER: Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or paragraph 3P or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.
B.  ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and equipment to which special openings or encasements have been made (whether or not checked in paragraph 3P), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in paragraph 3P, if currently existing at the time of Acceptance.
Note: If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in paragraph 3P or excluded by Seller in a counter offer.
(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in paragraph 3P, all such items are included in the sale, whether hard wired or not.
(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use paragraph 3P(1) or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
(5) Non-Dedicated Devices: If checked in paragraph 3P, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
(6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in paragraph 3N(1), shall (i) disclose to Buyer if any item or system specified in paragraph 3P or 9B or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning such item.
(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to paragraph 9B(6), and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

RPA 12/21 (PAGE 6 OF 16)          Buyer's Initials  PM / SRG      Seller's Initials _____ / _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          BK Purchase

Exhibit 1
Page 11

Property Address: ....., ..., ...   **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**   Date: 11/17/2025

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

  **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3),** and **(5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; ~~it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).~~

  **B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

  (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be ~~completed within the time specified in paragraph 3N(4) and~~ paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow ~~or directly to the vendor completing the repair or installation. Prior to Close of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.~~

  ~~(2) POINT OF SALE REQUIREMENTS:~~

  ~~(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in paragraphs 3Q(5) and 3Q(5). Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall (i) directly pay to the vendor completing the repair or (ii) provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.~~

  ~~(B) Buyer shall be provided, within the time specified in paragraph 3N(1), unless Parties Otherwise Agree to another time period, a Copy of any required government conducted or point of sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.~~

  ~~(3) REINSPECTION FEES: If any repair in paragraph 10B(1) is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.~~

  (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

  **C. HOME WARRANTY:**

  (1) Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, ~~that exceeds the amount allocated to Seller in paragraph 3Q(18).~~ Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

  (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

~~**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**~~

  ~~**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES.**~~

  ~~(1) Seller shall, within the time specified in paragraph 3N(1), Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordinance location (C.A.R. Form SPQ or ESD) and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).~~

  ~~(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and answered all questions and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Agent.~~

  ~~(3) Seller shall, within the time specified in paragraph 3N(1), provide "Supplemental Disclosures" as follows: (i) unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer, (ii) if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.~~

  ~~(4) In the event Seller or Seller's Agent, prior to Close of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering these items. Any such document shall be deemed an amendment to the TDS or SPQ. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.~~

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   BK Purchase

Exhibit 1
Page 12

Property Address: ..............    **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**    Date: 11/17/2025

B.  ~~LEAD DISCLOSURES:~~
~~(1)  Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").~~
~~(2)  Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.~~

C.  ~~HOME FIRE HARDENING DISCLOSURE AND ADVISORY: For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a home hardening disclosure required by law; and (ii) a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and (iii) a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).~~

D.  ~~DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM: For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer (i) a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and (ii) an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).~~

E.  ~~WAIVER PROHIBITED: Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C**, and **11D** are prohibited by Law.~~

F.  ~~RETURN OF SIGNED COPIES: Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C or D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.~~

G.  **TERMINATION RIGHTS:**
(1)  **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
(2)  **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

H.  **WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

I.  **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

J.  **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

K.  **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1)  Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
(2)  If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

L.  **NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

RPA 12/21 (PAGE 8 OF 16)    Buyer's Initials  [ Initial ] PM  /  [ Initial ] SRC    <mark>Seller's Initials</mark> _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com    BK Purchase

Exhibit 1
Page 13

Property Address: .......... ...                **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**                Date: 11/17/2025

**M.  KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12.  BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.**  Buyer shall, ~~within the time specified in paragraph 3L(3),~~ have the right, at Buyer's expense ~~unless Otherwise Agreed,~~ to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.**  Buyer Investigations include, but are not limited to:

(1)  Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

(A)  A general home inspection.

(B)  An inspection for lead-based paint and other lead-based paint hazards.

(C)  An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

(D)  Any other specific inspections of the physical condition of the Land and improvements.

~~(2)  All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.~~

~~(3)  A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to paragraphs 3, 10, 11, and 14A.~~

**C.**  Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.**  Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. ~~Seller shall have water, gas, electricity and all operable pilot-lights on for Buyer's Investigations and through the date possession is delivered to Buyer.~~ Buyer shall, ~~(i) by the time specified in paragraph 3L(3),~~ complete Buyer Investigations and satisfy themselves as to the condition of the Property, ~~and either remove the contingency or cancel this Agreement, and (ii) by the time specified in paragraph 3L(3) or 3 Days after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement.~~ This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.  Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction.  Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13.  TITLE AND VESTING:**

**A.**  Buyer shall, ~~within the time specified in paragraph 3N(1),~~ be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. ~~If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified.~~ The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. ~~The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.~~

**B.**  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.**  Seller shall ~~within 7 Days~~ after request, give Escrow Holder necessary information to clear title.

**D.**  Seller shall, ~~within the time specified in paragraph 3N(1),~~ disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.**  If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.**  Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

RPA 12/21 (PAGE 9 OF 16)            Buyer's Initials  PM / SRC            <mark>Seller's Initials</mark>  ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com            **3K Purchase**

Exhibit 1
Page 14

**27591 Kathy Ct, Laguna Niguel, CA 92677-6025**

Property Address: ...... ... ...                                    Date: 11/17/2025

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

~~14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).~~

~~A. SELLER DELIVERY OF DOCUMENTS: Seller shall, within the time specified in paragraph 3N(1), Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.~~

~~B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION~~
~~(1) Buyer has the time specified in paragraph 3 to: (i) perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 9B(6), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with paragraph 11.~~
~~(2) Buyer may, within the time specified in paragraph 3L(3), request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.~~
~~(3) Buyer shall, by the end of the times specified in paragraph 3L (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in paragraph 11A or 11B, is not Delivered within the time specified in paragraph 3N(1), then Buyer has 5 Days after Delivery of any such items, or the times specified in paragraph 3L, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under paragraph 11G.~~
~~(4) Continuation of Contingency: Even after the end of the time specified in paragraph 3L and before Seller cancels, if at all, pursuant to paragraph 14C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14C(1).~~

~~C. SELLER RIGHT TO CANCEL:~~
~~(1) SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.~~
~~(2) SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS: Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3D(1) or 3D(2) or if the funds deposited pursuant to paragraph 3D(1) or 3D(2) are not good when deposited; (ii) Deliver updated contact information for Buyer's lender(s) as required by paragraph 5C(3); (iii) Deliver a notice of FHA or VA costs or terms, if any, as described by paragraph 5C(4) (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 5B or 6A; (v) Deliver a letter as required by paragraph 6B; (vi) In writing assume or accept leases or liens specified in paragraph 8G; (vii) Return Statutory and Other Disclosures as required by paragraph 11F; (viii) Cooperate with the title company's effort to comply with the GTO as required by paragraph 13E; (ix) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 5A(2) and 29; (x) Provide evidence of authority to Sign in a representative capacity as specified in paragraph 28; or (xi) Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.~~
~~(3) SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES: Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.~~

~~D. BUYER RIGHT TO CANCEL:~~
~~(1) BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES: If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.~~
~~(2) BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS: If, by the time specified, Seller has not Delivered any item specified in paragraph 3N(1) or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.~~
~~(3) BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES: Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed in writing.~~

RPA 12/21 (PAGE 10 OF 16)        Buyer's Initials  PM / SRC     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        BK Purchase

Exhibit 1
Page 15

Property Address: _____    27591 Kathy Ct, Laguna Niguel, CA 92677-6025    Date: 11/17/2025

E. ~~NOTICE TO BUYER OR SELLER TO PERFORM: The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 Days after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than 2 Days prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.~~

F. ~~EFFECT OF REMOVAL OF CONTINGENCIES:~~
   (1) ~~REMOVAL OF BUYER CONTINGENCIES: If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.~~
   (2) ~~REMOVAL OF SELLER CONTINGENCIES: If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding such contingency; (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.~~

G. ~~DEMAND TO CLOSE ESCROW: Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 Days after Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.~~

H. ~~EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.~~

~~15. REPAIRS: Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.~~

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, ~~or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.~~
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA 12/21 (PAGE 11 OF 16)    Buyer's Initials  PM / SRC    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    BK Purchase

Exhibit 1
Page 16

27591 Kathy Ct, Laguna Niguel, CA 92677-6025

Property Address: ............. ......   Date: 11/17/2025

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13** (except 13D) **14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

~~**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 30A.~~

**23. ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A. "Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

RPA 12/21 (PAGE 12 OF 16)   Buyer's Initials _PM_ / _SRC_   Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    3K Purchase

Exhibit 1
Page 17

Property Address: ....., ..., ...      **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**      Date: 11/17/2025

B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I. **"Counting Days"** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J. **"Day" or "Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

L. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

Q. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. ~~The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.~~ Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

27. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA 12/21 (PAGE 13 OF 16)      Buyer's Initials  PM / SRC      Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Exhibit 1
Page 18

Property Address: ...., ..., ...  27591 Kathy Ct, Laguna Niguel, CA 92677-6025        Date: 11/17/2025

29. ~~LIQUIDATED DAMAGES (By initialing in the space below, you are agreeing to Liquidated Damages):~~
~~If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).~~

~~Buyer's Initials ____ / ____        Seller's Initials ____ / ____~~

30. ~~MEDIATION:~~
   A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B. ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply ~~even if the Arbitration of Disputes paragraph is not initialed.~~

31. ~~ARBITRATION OF DISPUTES:~~
   A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR ☐ _____ _____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
   B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
   C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
   D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
   E. "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

   "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

   ~~Buyer's Initials ____ / ____        Seller's Initials ____ / ____~~

RPA 12/21 (PAGE 14 OF 16)        Buyer's Initials [PM] / [SRC]   Seller's Initials ____ / ____
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     BK Purchase

Exhibit 1
Page 19

Docusign Envelope ID: F661A064-759F-4392-AEFC-257CA56520A0
Docusign Envelope ID: EDF0A47C-6723-4D87-80DD-39BF6B377DBA

Case 8:24-bk-12674-SC    Doc 83-1    Filed 12/23/25    Entered 12/23/25 13:28:38    Desc
Declaration of Richard A. Marshack    Page 20 of 92

27591 Kathy Ct, Laguna Niguel, CA 92677-6025

Property Address: ....., ..., ...                                    Date: 11/17/2025

**32. BUYER'S OFFER**

~~A.   EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the by the date and time specified in paragraph 3C, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. Seller has no obligation to respond to an offer made.~~

B.  ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
   (1)  One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
   (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
   (3)  The name(s) of the Legally Authorized Signer(s) is/are: _____ .
   (4)  If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
   _____ .

C.  The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D.  **BUYER SIGNATURE(S):**

(Signature) By, _Philip Muljana_____    Date: 11/20/2025
Printed name of BUYER: 5B3905EB3808486... Philip Muljana
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _Shu Rong Chang_____    Date: 11/20/2025
Printed name of BUYER: 5FDFD3472... Shu Rong Chang
☐ Printed name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

A.  **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
   **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.
   ☐ ~~Seller Counter Offer (C.A.R. Form CO or SMCO)~~
   ☐ ~~Back-Up Offer Addendum (C.A.R. Form BUO)~~

B.  ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
   (1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
   (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
   (3)  The name(s) of the Legally Authorized Signer(s) is/are: _____ .
   (4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

C.  The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D.  **SELLER SIGNATURE(S):**

(Signature) By, _____    Date: _____
Printed name of SELLER:    **Richard A. Marshack, Ch 7 Trustee**
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _____    Date: _____
Printed name of SELLER: _____
☐ Printed name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

OFFER NOT ACCEPTED: _____/_____   No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
                    Seller's Initials

---

RPA 12/21 (PAGE 15 OF 16)          Buyer's Initials  PM   SRC    Seller's Initials _____/_____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK Purchase

Exhibit 1
Page 20

Property Address: ....., ..., ...    **27591 Kathy Ct, Laguna Niguel, CA 92677-6025**    Date: 11/17/2025

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A.  Buyer's Brokerage Firm The CREM Group _____    Lic. # 02029217
       By Mark Cianciulli _____ _____ 11/19/2025 Lic. # 01990266 _____ Date 11/17/2025
       By _____ 58DE5C4DF6B94F2... _____ Lic. # _____ Date _____
       ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
       ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

       **Designated Electronic Delivery Address(es):**
       Email mark@cremgroupre.com _____    Text # 323-683-5100
       Alternate: _____
       ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
       Address 630 S Victory Blvd.    City Burbank    State CA    Zip 91502

   B.  Seller's Brokerage Firm **Berkshire Hathaway HomeServices CA Properties**    Lic. # __01317331__
       By _____ **Clarence Yoshikane** _____ Lic. # __00801398__ _____ Date _____
       By _____ Lic. # _____ Date _____
       ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
       ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

       **Designated Electronic Delivery Address(es)** (To be filled out by Seller's Agent)**:**
       Email _____    Text # _____
       Alternate: _____
       ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
       Address _____    City _____    State _____ Zip _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____    Escrow # _____
By _____    Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____    Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RPA 12/21 (PAGE 16 OF 16)    Buyer's Initials PM / SRC    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    BK Purchase

Exhibit 1
Page 21

Docusign Envelope ID: F661A064-759E-4392-AEFC-257CA56520A0
Docusign Envelope ID: EDF0A47C-6729-4D87-80DD-3B5F6B877BBA



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | Richard A. Marshack, Ch 7 Trustee for the Estate of: Kristina Lynn Smith | Date | |
| Seller | | Date | |
| Buyer | *Philip Mulyana* | Philip Muljana | Date 11/19/2025 |
| Buyer | *Shu Rong Chang* | Shu Rong Chang | Date 11/19/2025 |
| Buyer's Brokerage Firm | The CREM Group | DRE Lic # 02029217 | Date 11/19/2025 |
| By | | Mark Cianciulli DRE Lic # 01990266 | Date 11/19/2025 |
| Seller's Brokerage Firm | Berkshire Hathaway HomeServices CA Properties | DRE Lic # 01317331 | Date January 28, 2025 |
| By | Clarence Yoshikane | DRE Lic # 00801398 | Date |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660          Phone: (555)555-5555          Fax: 9496407429          BK / Listing
Jennifer Toyama          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 1
Page 22



# ADDENDUM

**(C.A.R. Form ADM, Revised 4/12)**

No. *One*

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ Other

dated 11/17/2025 , on property known as 27591 Kathy Ct, Laguna Niguel, CA 92677-6025

in which Philip Muljana, Shu Rong Chang is referred to as ("Buyer/Tenant") and Richard A. Marshack, Ch 7 Trustee is referred to as ("Seller/Landlord").

The sale of the property is subject to overbid, and the offer herein shall be treated as a qualifying overbid. Minimum initial overbid to be at least $10,000 with subsequent overbids to be $1,000 or an amount acceptable to the Trustee. Overbidder to match all terms and conditions of original bid. If a successful overbidder is accepted and confirmed by the court, then the successful overbidder is to reimburse the original bidder up to $2,000 costs incurred. Aforementioned Costs incurred to be collected by Escrow. Proof of monies spent to be given to Overbidder. Overbidder acknowledges that the trustee is a fiduciary and is obligated to obtain the best transaction for the estate. Trustee may terminate this agreement if he has a better transaction. Or if a motion to sell has been filed Trustee may recommend acceptance of another offer. Overbidder acknowledges that Trustee is signing this agreement so the Overbidder can start the process to obtain loan approval, so the Overbidder is prepared to bid in the event there is an auction. Overbidder acknowledges that the Trustee may terminate this agreement an accept another offer if it is a better offer.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date 11/19/2025

Buyer/Tenant *Philip Muljana* — Signed by: — signed 5380280B486...

Buyer/Tenant *Shu Rong Chang* — 5907C78DBFD3472...

Date

Seller/Landlord

Seller/Landlord **Richard A. Marshack, Ch 7 Trustee**

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 4/12 (PAGE 1 OF 1)**

## ADDENDUM (ADM PAGE 1 OF 1)

BHHSCP / Berkshire Hathaway Home Services - California Properties, 2405 McCabe Way # 100 Irvine, CA 92614    Phone: (714) 606-5765    Fax:    Addendum
CLARENCE YOSHIKANE    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Exhibit 1
Page 23

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement (hereinafter called "Agreement") is entered into on ___11/17/2025___, 2025, by and between _Philip Muljana, Shu Rong Chang___, (hereinafter "Buyer") and **Richard A. Marshack, as Chapter 7 Trustee for the Estate of: Kristina Lynn Smith 8:24-bk-12527-SC,** (hereinafter called "Seller" or "Trustee") pursuant to the terms and conditions as follows:

## RECITALS

WHEREAS: The Debtor in the bankruptcy proceeding entitled **Kristina Lynn Smith ("Estate"),** is the owner of record of certain real property commonly known as: **27591 Kathy Ct, Laguna Niguel, CA 92677-6025 (APN: 636-632-34),** (Hereinafter the "Subject Property"), which is now property of the Estate.

WHEREAS: **Kristina Lynn Smith**("Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 on **October 3, 2024**, initiating **Case No. 8:24-bk-12527-SC,** in the United States Bankruptcy Court, Central District of California.

WHEREAS: As a result of the Chapter 7 petition, **Richard A. Marshack**, was appointed as the Trustee to administer the assets of the bankruptcy estate, one of which was the Debtor's interest in the Subject Property.

WHEREAS: Pursuant to 11 U.S.C. Section 363, **Richard A. Marshack**, Chapter 7 Trustee and/or his attorneys will seek a Court Order authorizing the sale of the Subject Property.

WHEREAS: Buyers have made an offer on the Property by way of a Purchase Agreement.

WHEREAS: Any sale of the Property is subject to certain terms and conditions imposed by the Bankruptcy Code and ancillary procedures, and any sale requires an Order of the Bankruptcy Court.

Exhibit 1
Page 24

## NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

## <u>CONDITIONS OF SALE</u>

<u>Court Approval</u>: Seller agrees to proceed in good faith to obtain Court approval for the sale of property located at **27591 Kathy Ct, Laguna Niguel, CA 92677-6025 (APN: 636-632-34)**, contemplated herein, within reasonable time period after said offer.

1.    <u>Broker's Compensation</u>: Brokers and Agents are entitled to compensation only upon recordation of a deed or other evidence of title.

2.    <u>No Assignment:</u> This agreement is between Buyer and Seller. Buyer shall have no right to assign the Escrow, this agreement, or transfer the Subject Property concurrent with closing without consent of Seller.

3.    <u>Title Insurance</u>: The title insurance policy shall be subject only to liens, encumbrances, clouds and other matters as may appear on the preliminary title report, that are not to be removed at the close of Escrow, and have not been objected to by Buyer. Should Seller be unwilling or unable to eliminate those title matters disapproved by Buyer as above, the Seller may terminate this Agreement or; should Seller fail to deliver good and marketable title as provided above, Seller or Buyer may terminate this Agreement. In either case, the Buyer's deposit shall be returned to Buyer, and Buyer shall have no recourse against Seller, **Richard A. Marshack** as Bankruptcy Trustee, individually, or the **Law Offices of MARSHACK HAYS WOOD LLP, the bankruptcy estate of Kristina Lynn Smith 8:24-bk-12527-SC**, or the Debtor, or any real estate agent, broker or attorney involved in this transaction including **Clarence Yoshikane of Berkshire Hathaway HomeServices CA Properties.**

4.    <u>Limitations of Sale:</u> The parties acknowledge that the operation of the law has placed the Bankruptcy Trustee in a unique role as the Seller of the Subject Property, which is the subject of this agreement. Due to the nature of the Trustee's role in administering the bankruptcy estate, there are limitations as to the extent, type and character of the agreement under which the Trustee can convey the Subject Property. The Trustee proposes to sell this asset subject to certain limitations. The parties hereby acknowledge that they understand the terms under which this Subject Property is to be conveyed may vary substantially from the normal customs and trade within the real estate industry. Except where expressly mandated by operation of law, the Buyer consents to any such modifications and amendments.

Exhibit 1
Page 25

Purchase without Warranties: Buyers acknowledge that they are purchasing the Subject Property from the Seller "AS IS" without warranties of any kind, expressed or implied, being given by the Seller, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Property. Buyer represents and warrants that they are purchasing the Subject Property as a result of their own investigations and are not buying the Subject Property pursuant to any representation made by any Broker, Agent, Accountant, Attorney or Employee acting at the direction, or on the behalf of the Seller. Buyers acknowledge that Buyers have inspected the Subject Property, and upon closing of Escrow governed by this Agreement, Buyer forever waives, for himself, his heirs, successors and assigns, any and all claims against the Debtors, their attorneys, agents and employees, the bankruptcy estate of **Kristina Lynn Smith**, **Richard A. Marshack**, as Bankruptcy Trustee and individually, and his Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Subject Property including **Clarence Yoshikane of the Yoshikane-Toyama Real Estate Group at Berkshire Hathaway HomeServices California Properties.**

5.  <u>Trustee's Liability</u>: Buyer acknowledges that the Trustee is acting in his official capacity only. No personal liability shall be sought or enforced against the Trustee with regard to this Agreement, including the Addendum, the assets, the sale of the Subject Property, or the physical condition of the Subject Property. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to return any money paid to the Trustee by the Buyer, without deduction. Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Assets of this transaction and Agreement; and all disputes arising before and after closing shall be resolved in said Court.

6.  <u>Hold Harmless</u>:

Buyer understands the terms and conditions of the entire purchase contract and holds the estate, realtors, brokers, agents, **Richard A. Marshack**, and The **Law Offices of MARSHACK HAYS WOOD LLP**, his attorneys, agents and employees harmless from any liabilities arising from this contract

Exhibit 1
Page 26

7.     Any and all disputes, which involve in any manner the Bankruptcy Estate or **Richard A. Marshack**, realtors, brokers, agents, arising from this Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

**10.     Seller will not provide a pest control report nor pay for any corrective work; nor shall Buyer receive any credit for corrective work.**

**11.     Buyer is aware that this offer is contingent upon Chapter 7 Bankruptcy Trustee approval, Bankruptcy Court confirmation & overbid procedures.**

**12.     Buyer has NO CONTINGENCIES in this transaction; including but not limited to the contingency of obtaining financing & appraisal, inspections, etc.**

**13.     Deposit is refundable only if Bankruptcy Court accepts overbid.**

> **Deposit:**
>
> **(a)     The Deposit will be applied to the Purchase Price. Said Deposit will be fully refundable if the Bankruptcy Court accepts an overbid or if the Court does not approve this sale. Should the Buyer default and fail to perform his obligations and timely close escrow, the Deposit shall become nonrefundable and shall be forfeited by the Buyer and retained by Seller as liquidated damages in the event of default by Buyer.**
>
> **(b)     Upon approval by the Court of a Winning Bidder, the Deposit of such Winning Bidder shall become non-refundable if the Purchase Agreement of such Winning Bidder is thereafter terminated by the Trustee as a result of a breach by the Winning Bidder of its obligations thereunder. The Deposit of a Back-Up Bidder shall remain on deposit with the Trustee, pending the closing date, and such deposit shall become non-refundable if the Back-Up Bidder becomes the Winning Bidder and its Overbid Purchase Agreement is thereafter terminated by the Trustee as a result of a breach by such Back-Up Bidder. In either case, the forfeiture of the Deposit shall constitute liquidated damages and the Debtor, the Trustee, and the bankruptcy estate shall retain no other rights, remedies, claims, counterclaims and defenses against the Buyer, Back-Up Bidder or such other Qualified Bidder, as applicable.**

Exhibit 1
Page 27

14.   In addition to the **$60,000 deposit**, Buyer will deposit the additional sum of $ 1,740,000.00 _____ **(Balance of purchase price)** into escrow on or before the close of escrow.

**I, the Buyer herein, have reviewed the foregoing Agreement and understand the terms and conditions set forth herein, and further agree to purchase the Subject Property pursuant to said terms and conditions.**

**Date:** 11/19/2025

Signed by:

Philip Muljana
4AB0803826DB4B6...    Philip Muljana , **Buyer**

**Date:** 11/19/2025

Signed by:

Shu Rong Chang
5907C78DBFD347...Shu Rong Chang , **Buyer**

Exhibit 1
Page 28

**I, Seller, agree to sell the Subject Property pursuant to the terms and conditions set forth herein.**

**Date:**

---

**Richard A. Marshack, in his sole capacity as Bankruptcy Trustee for the Estate of Kristina Lynn Smith 8:24-bk-12527-SC and not in his individual capacity or as a member of the Law Offices of MARSHACK HAYS WOOD LLP**

**SO AGREED.**

**Date:**

---

**Clarence Yoshikane, Trustee's Agent**
**CA BRE License # 00801398**

**714.606.5765, Direct Line**

**Clarence.Yoshikane@gmail.com**

**Date:** 11/19/2025

DocuSigned by:

58DE5C4DF6B94F2.. Mark Cianciulli **, Buyer's Agent**

Exhibit 1
Page 29

# EXHIBIT 2

Exhibit 2
Page 30

FL-340

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| *Order of the Court* | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br><br>**OCT 2 1 2024**<br><br>DAVID H. YAMASAKI, Clerk of the Court<br>BY: ___C. MENDOZA___ DEPUTY |

TELEPHONE NO.:                                FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF *Orange*
STREET ADDRESS:
MAILING ADDRESS: **LAMOREAUX JUSTICE CENTER**
CITY AND ZIP CODE: **341 THE CITY DRIVE**
BRANCH NAME: **ORANGE, CA 92868**

PETITIONER/PLAINTIFF: *Kristina Smith*
RESPONDENT/DEFENDANT: *Jeffrey Gomez*
OTHER PARTY:

| **FINDINGS AND ORDER AFTER HEARING** | CASE NUMBER:<br>*17D000590* |
|---|---|

1. This proceeding was heard
   on *(date)*: 10/1/24    at *(time)*: 8:30am    In Dept.: L66    Room:
   by Judge *(name)*: Judge Carmen Luege    ☐ Temporary Judge
   On the order to show cause, notice of motion or request for order filed *(date)*:    by *(name)*:

   a. ☒ Petitioner/plaintiff present    ☐ Attorney present *(name)*:
   b. ☒ Respondent/defendant present    ☒ Attorney present *(name)*: Patrick McCall
   c. ☐ Other party present    ☒ Attorney present *(name)*: Tracy Mills

**THE COURT ORDERS**

2. Custody and visitation/parenting time:    As attached    ☐ on form FL-341    ☐ Other    ☐ Not applicable
3. Child support:    As attached    ☐ on form FL-342    ☐ Other    ☐ Not applicable
4. Spousal or family support:    As attached    ☐ on form FL-343    ☐ Other    ☐ Not applicable
5. Property orders:    As attached    ☐ on form FL-344    ☐ Other    ☐ Not applicable
6. Attorney's fees:    As attached    ☐ on form FL-346    ☐ Other    ☐ Not applicable
7. Other orders:    ☒ As attached    ☐ Not applicable
8. All other issues are reserved until further order of court.
9. ☐ This matter is continued for further hearing on *(date)*:    at *(time)*:    in Dept.:
   on the following issues:

Date:    ▶ *See last page*
                                                    JUDICIAL OFFICER

Approved as conforming to court order.

▶ _____
SIGNATURE OF ATTORNEY FOR    ☐ PETITIONER / PLAINTIFF    ☐ RESPONDENT/DEFENDANT    ☐ OTHER PARTY

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
FL-340 [Rev. January 1, 2012]
**FINDINGS AND ORDER AFTER HEARING**
**(Family Law—Custody and Support—Uniform Parentage)**
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]    [ Save this form ]    [ Clear this form ]

Exhibit 2
Page 31

## FINDINGS AND ORDER AFTER HEARING 10/1/2024

On June 11, 2024, Jeffrey Gomez, Respondent, filed an emergency request for orders (RFO) seeking the sale of the marital residence, located at 27591 Kathy Ct., Laguna Niguel, CA 92677 ("the Subject Property"), prior to trial to prevent the foreclosure of the property. Petitioner opposed Respondent's request. The Court set the matter for hearing on January 29, 2025. On October 1, 2024, at a hearing before the Court, the parties brought to the Court's attention that the mortgage lender had scheduled a auction, to be held in November 2024, to sell the Subject Property. The parties represented that if the Subject Property was listed for sale by the parties, the lender would most likely stop the sale auction and prevent foreclosure proceedings. The parties agreed on the record to list the property for sale forthwith. The parties, on the record, went over terms that would be included in a stipulation to implement the sale agreement reached by the parties. Respondent's counsel prepared a written stipulation with the terms agreed upon during the October 1, 2024 hearing. Petitioner, however, declined to sign the stipulation for the sale of the property despite the fact that time is of the essence.

Pursuant to Fam. Code § 2108, at any time, pending dissolution proceedings, upon a showing of "good cause," the court may order the liquidation of community or quasi-community assets so as to "avoid unreasonable market or investment risks, given the relative nature, scope and extent of the community estate." Here, at the October 1, 2024 hearing, the parties agreed that they were at risk of losing the equity in the property if the mortgage lender proceeds with the auction sale or foreclosure proceedings. Accordingly, and pursuant to the agreement of the parties, as stated on the record on October 1, 2024, Court finds that there is good cause to order the sale of the Subject Property forthwith.

The parties are further ordered to follow the following rules in connection with the sale of the Subject Property:

- The Subject Property shall be listed for sale on or before October 4, 2024 with such real estate broker as the parties shall agree. If parties cannot agree on a real estate broker, the parties shall use the broker whose office is closest to the residence.

- Petitioner shall have the right to continue to reside at the Subject Property provided she complies with this Order.

- The party residing at the Subject Property shall make the Subject Property available for inspection by the broker and the other party, upon the giving of 24 hours' written notice.

- The Subject Property shall be listed at the highest price as recommended by the broker.

1

Exhibit 2
Page 32

- A lock box may be placed on the Subject Property at the discretion of the realtor in order to show the Subject Property at all reasonable times. The party residing at the Subject Property shall have the obligation to cooperate with the broker and any prospective buyers.  This includes being available by telephone, keeping appointments, maintaining the Subject Property in good condition and presentable.

- The party residing in the Subject Property shall maintain it in clean and presentable condition in order to obtain the maximum sales price and shall do any necessary minor repair for such purposes so long as they shall occupy the home. Major repairs shall be defined as any repair which costs $1000.00 or more.  Such major repairs shall be made only after consultation with the realtor, and written notification to the other party.  Said major repairs shall be paid equally by the parties or shall be equally borne by the parties upon payment after close of escrow.

- All offers shall be immediately conveyed to both parties for their respective consideration; if either party desires to accept an offer for the purchase of the Subject Property which is not acceptable to the other party, the party desiring to accept the offer may file a motion to have the sale approved by the court. The burden to show that the sale is NOT in the best interest of the parties shall be on the party opposing the offer. The party opposing the offer shall support his/her position with an appraisal and shall pay the cost and expense of said appraisal.

- In the event that the occupying party does not comply with the requirement for the maintenance of the home, or does not cooperate with the realtor to show the home, then that party's right to occupy the Subject Property may be terminated by an ex parte motion brought to this Court, with a declaration under penalty of perjury setting forth the facts relied upon.  The court, upon such hearing of an ex parte motion, may issue an order ejecting the party from the Subject Property.

- The net proceeds from the sale of the Subject Property, after deduction of normal real estate commissions and costs of sale, shall be disbursed as follows:
    o payment to mortgage lenders and lienholders.
    o payment of real property taxes directly to the government agency.
    o payment of state or federal taxes due as a result of the sale directly to the government agency.

- Remaining proceeds shall be deposited into the client trust accounts of Respondent's counsel. Respondent's counsel shall not used any portion of the sale proceeds to cover the parties' attorney fees or costs of litigation. Respondent's counsel shall not disburse to anyone any portion of the proceeds unless both parties sign a stipulation which shall be submitted to the court for approval or by court order if the parties cannot agree on distribution.

2

Exhibit 2
Page 33

This Court retains jurisdiction to enforce the provisions of this Order and to make further orders that may be required to consummate the sale and distribution of proceeds.

**IT IS SO ORDERED:**

DATE: 10/21/24

By: _____
CARMEN R. LUEGE, JUDGE
Department L66

Judge Carmen Luege

3

Exhibit 2
Page 34

# EXHIBIT 3(a)

Exhibit 3(a)
Page 35

# COMBINED AGREEMENT FOR MOVING SERVICES AND FREIGHT BILL

MOVE DATE: _____
PACK DATE: _____
DEL. DATE: _____
TAKEN BY: _____

SHIPPER IS REQUESTED TO READ THIS DOCUMENT CAREFULLY, INCLUDING TERMS & CONDITIONS ON REVERSE SIDE BEFORE SIGNING and ask for an explanation of anything not clear or inconsistent with any previous representation. THIS WILL CONFIRM INSTRUCTIONS AND AUTHORIZE YOU TO MOVE, SHIP, PACK, STORE AND/OR PERFORM THE SERVICES HEREIN.

**FROM** 22591 KATY
IRVINE MICHEL    APT. NO. _____

PHONE

**TO** 51 ARCOLINNE    APT. NO. _____

PHONE

**ADD'L PICK UP ADDRESS**

**ADD'L DELIVERY ADDRESS**

READ THIS CONTRACT

| 6 A.M./P.M. | 7 | 8 | 9 | 10 | 11 | 12 P.M./A.M. | 1 | 2 | 3 | 4 | 5 | 6 |

C=Explanation
P=Packing
L=Loading
D=Driving
UL=Unloading
UP=Unpacking
X=Time Out For

**DELIVERY INSTRUCTIONS** NOTE: Additional charges for storage, extra handling and transportation will accrue if goods not accepted at destination. Notify: ___ Address/Phone: ___ Shipper Can't Furnish

**STORAGE ORDERED** ☐ In Transit ☐ Regular

The Company is hereby authorized to wrap and moth treat. A charge will be made for handling in and out of storage and for wrapping, moth treating and accessorial services. Notice of Change of address of depositor must be given to company in writing. Store in any depository in

Name of _____
Bill and Notify Address _____

First Day ___ @ ___ c/cwt.
Add'l Days ___ @ ___ c/cwt./day
Warehouse Handling ___ lbs @ ___ c/cwt.

**DESCRIPTION OF ARTICLES** ☐ HIGH VALUE PRODUCTS & ELECTRONICS  ☐ USED OFFICE & STORE FIXTURES & EQUIPMENT  ☐ USED HOUSEHOLD GOODS & PERSONAL EFFECTS

Does Shipper Request Advice of Weight and Charges? ☐ Yes ☐ No

**HUNDREDWEIGHT RATE** Tariff applying to this shipment is BHGS MAX 4

| (Bet. Points Named) | AQ-B/P | 1,000 lbs. | 2,000 lbs. | 5,000 lbs. | 8,000 lbs. |
| --- | --- | --- | --- | --- | --- |

| 12,000 lbs. | 16,000 lbs. | Min. Weight | Miles | Gross | Tare | Net |
| --- | --- | --- | --- | --- | --- | --- |

| Long Carry Pickup and del. at other than ground floor | Per Cwt. Per Flight ¢ Add'l Chg. | Extra pickup and/or Delivery at $ | | Transit Store Rate |
| --- | --- | --- | --- | --- |
| | | | ea. $ | CWT |

**HOURLY RATE** Min. Chg. ___ Hours ___

| Van and Men $ | Men $ | Per Hr. at $ | Additional helpers if requested minimum chg. | per man per hr. |
| --- | --- | --- | --- | --- |

Calculated on basis of loading and unloading time PLUS DOUBLE DRIVING TIME between point of pickup and delivery. (Plus all materials used on the job)

| Loading | 260 | Hrs. |
| Double Driving | 30 MIN | Hrs. |
| Unload | | Hrs. |

**NO. OF PACKERS**

| PACKING/CRATING ☐ @ $ | Per Man Per Hr. | Or Hourly Chg. of $ | Min. Chg. Per. | Det. or pickup of ship. containers |
| UNPACKING/UNCRATING ☐ @ $ | Per Man Per Hr. $ | Min. of Hours | |

| Driver | |
| Helper | |
| Helper | |
| Van No. | |

**PIECE MOVING** (Not over 5 pieces)

| 1st Article | Add'l Articles | Miles |

**ITEMS OF EXCEPTIONAL VALUE**

| QTY | DESCRIPTION | VALUE |
| --- | --- | --- |

## MATERIALS

| MATERIALS | CONTAINERS | | | PACKING | | | UNPACKING | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Qty. | Rate | Amount | Qty. | Rate | Amount | Qty. | Rate | Amount |
| Dishpack (not over 6 cu. ft) | | | | | | | | | |
| Ctns: 1 1/2 cu. ft. | | | | | | | | | |
| 3 cu. ft. | | | | | | | | | |
| 4 1/2 cu. ft. | | | | | | | | | |
| 6 cu. ft. | | | | | | | | | |
| Mattress: Single | | | | | | | | | |
| Mattress: Double | | | | | | | | | |
| King or Queen Size | | | | | | | | | |
| Crib | | | | | | | | | |
| Mirror Ctns. | | | | | | | | | |
| Wardrobe | | | | | | | | | |
| Crates | | | | | | | | | |
| Sales Tax | | | | | | | | | |
| | Total Container Charges | | | Total Packing Charges | | | Total Unpacking Charges | | |

| | AMOUNT |
| --- | --- |
| DELIVERY / PICK-UP OF CONTAINER @ $ | |

| PACKERS NAME | HOURS | DATE |
| --- | --- | --- |
| | | |
| | | |

| | | | Per Hr. |
| --- | --- | --- | --- |
| TOTAL HOURS @ $ | | | |

| No. of Packers ☐ Origin ☐ Dest. | TOTAL PACKING | |
| --- | --- | --- |
| **HOURS** | **CARTAGE @ $** | Per Hr. |
| Overtime | Hours @ $ | Per Hr. |
| Extra Man ( ) | Hours @ $ | Per Hr. |
| **APPLIANCES** to be serviced | If none write "NONE" | |
| EXTRA PICK-UP OR DELIVERY | | |
| Weight | Lbs. @ $ | Per Cwt. |
| Flight Charge/Long Carry | @ | ¢ Per Cwt. |
| VALUATION CHARGE | | |

## CONSUMER PROTECTIONS AND/OR WAIVERS

**IMPORTANT INFORMATION BOOKLET:** In accordance with the rules of the Bureau of Household Goods and Services, before your move, the mover (the moving company) is required to ensure you (the shipper) have been given the booklet, "IMPORTANT INFORMATION FOR PERSONS MOVING HOUSEHOLD GOODS." You may choose not to receive it from this mover if you previously received one from another source. By initialing below, the shipper acknowledges receipt of the booklet either before or on day of the move.

**I HAVE RECEIVED THE IMPORTANT INFORMATION BOOKLET** _____ INITIALS _____ DATE

**ISSUANCE OF AGREEMENT FOR MOVING SERVICES**

The BHGS requires that an "Agreement for Moving Services" be issued to you by the mover three days or more in advance of the move. An exception to this requirement is where the arrangement to move occurs on short notice (less than 3 days). You may also choose to waive this agreement entirely, at any time prior to the move.

- Did you choose to waive this requirement entirely?    Yes_____ No_____
- Was the moving date agreed to between you & the carrier less than 3 days prior to the day of the move?  Yes_____ No_____

Please Print Shipper's Name: _____

Shipper's Signature: _____    Date _____

CUSTOMER AGREES THAT TITLE TO ALL PACKING MATERIALS AND OTHER PROPERTY SOLD TO CUSTOMER PASSES TO CUSTOMER PRIOR TO THE TRANSPORTATION OF SUCH PROPERTY TO THE CUSTOMER BY CARRIER.

| 5 SMALL BIKE | $2.512 |
| 10 MEDIUM BOXES | |
| 50 LARGE BOXES | $1 |
| 6 WARDROBE BOXES | $35 |

| | |
| --- | --- |
| ESTIMATED COST OF SERVICES (if any) | |
| TOTAL CHARGES ON CHANGE ORDER | |
| NOT TO EXCEED PRICE (subject to Change Order for Service) | |
| NO WRITTEN/VISUAL ESTIMATE ☐ | TOTAL PAID |
| BALANCE DUE | 2700 |
| TO BE PAID BY ☐ CASH ☐ CHECK ☐ CERTIFIED CHECK ☐ MONEY ORDER ☐ CREDIT CARD ☐ APPR. BILLING | |

**VALUATION DECLARATION:** There are three (3) options available to cover loss or damage:

1. 60 cents per pound per article. This minimum coverage for lost or damaged items is based on 60 cents times the weight of the article. This coverage is provided at no additional charge.
2. Actual Cash Value. This option provides for lost or damaged based on actual cash value, including depreciation, at the time of loss or damage, up to the total dollar amount of valuation declared by you. You may be charged for this coverage.
3. Full Value Protection. This option provides for the lost or damaged items based on current replacement value at the time of loss or damage, up to the total dollar amount of valuation declared by you. This is subject to a deductible. You may be charged for this coverage. Coverage for loss and damage is limited to the Actual Cash Value of losses up to the amount of $20,000 unless the Shipper signing this Agreement inserts in the space below, in his or her, own handwriting, another amount. _____ named for coverage provided other than 60 cents per pound per article. Shipper hereby relieves the carrier in the entire shipment to a value not exceeding  $ _____

OPTIONAL: Minimum valuations based on weight

Exhibit 3(a)
Page 36

**Move-In : Completed Items Below**

Case 8:24-bk-12527-SC    Doc 139-1    Filed 12/23/25    Entered 12/23/25 13:28:38    Desc
Declaration of Richard A. Marshack    Page 37 of 92

**Move-In**
10 x 15 Drive Up Drive Up
**Unit Number: C121**

**Rental Date: 09-02-2025**

| | |
|---|---:|
| Administrative Fee: | $25.00 |
| Monthly Rent Fee: | $368.00 |
| Item Taxes: | $0.00 |
| Item Price: | $393.00 |
| Item Total: | $393.00 |

Order Complete

| | |
|---|---:|
| Order total taxes: | $0.00 |
| Order Total: | $393.00 |

**Paid Today:**     **$393.00**

Please do not reply to this email as this inbox is not monitored. Instead, please send any questions to your store manager.

**Stor-It Self Storage** | 51 Argonaut, Aliso Viejo, CA 92656 USA | 949-770-1212 | aliso@stor-it-selfstorage.com | https://www.stor-it-selfstorage.com/

Exhibit 3(a)
Page 37

Stor-It Self Storage - Aliso Viejo
51 Argonaut
Aliso Viejo, CA 92656
(949)-770-1212

Case 8:24-bk-12527-SC    Doc 139-1    Filed 12/23/25    Entered 12/23/25 13:28:38    Desc
Declaration of Richard A. Marshack    Page 38 of 92

# Payment Receipt

| | | |
|---|---|---|
| **Tenant** | JEFF A GOMEZ | |
| **Company** | | |
| **Address** | 27591 KATHY CT | |
| **City, State, Zip** | LAGUNA NIGUEL CA 92677 | |

| | |
|---|---|
| **Date Printed** | August 30, 2025 |
| **Payment Date** | August 30, 2025 2:14 PM |
| **Unit** | F116 |
| **Available Credit** | 0.00 |
| **Current Balance** | 0.00 |

**Paid Thru** September 29, 2025
**Receipt Number** 46681

**By** GS

| Date | Unit | Description | Charge | Discount | Tax | Total | Payment | Method |
|---|---|---|---|---|---|---|---|---|
| 08/30/25 | F116 | Administrative Fee | 25.00 | 0.00 | 0.00 | 25.00 | 25.00 | Cash |
| 08/30/25 | F116 | Rent 8/30-9/29 | 402.00 | 0.00 | 0.00 | 402.00 | 402.00 | Cash |

| | |
|---|---|
| Taxes | 0.00 |
| Payment (less tax) | 427.00 |
| Payment Subtotal | 427.00 |
| Credits Applied | 0.00 |
| Refunds Applied | 0.00 |
| Total Applied to Account | 427.00 |
| Current Account Balance | 0.00 |
| Paid By | Cash |
| Paid Thru Date | September 29, 2025 |

Exhibit 3(a)

Page 38

Stor-It Self Storage - Aliso Viejo
51 Argonaut
Aliso Viejo, CA 92656
(949)-770-1212

# **Payment Receipt**

**Date Printed** August 30, 2025
**Payment Date** August 30, 2025 2:04 PM
**Tenant** JEFF A GOMEZ
**Unit** F112
**Company**
**Available Credit** 0.00
**Address** 27591 KATHY CT
**Current Balance** 0.00
**City, State, Zip** LAGUNA BEACH  CA  92677

**Paid Thru** September 29, 2025
**Receipt Number** **46679** **By** GS

| Date | Unit | Description | Charge | Discount | Tax | Total | Payment | Method |
|------|------|-------------|--------|----------|-----|-------|---------|--------|
| 08/30/25 | F112 | Administrative Fee | 25.00 | 0.00 | 0.00 | 25.00 | 25.00 | Cash |
| 08/30/25 | F112 | Rent 8/30-9/29 | 402.00 | 0.00 | 0.00 | 402.00 | 402.00 | Cash |

Taxes 0.00
Payment (less tax) 427.00
Payment Subtotal 427.00
Credits Applied 0.00
Refunds Applied 0.00
Total Applied to Account 427.00

Current Account Balance 0.00
Paid By Cash
Paid Thru Date September 29, 2025

Exhibit 3(a)
Page 39





# Complete Carpet Restoration
## 909.455.4936
**2934 E. Garvey Ave S., Ste 250 West Covina, CA 91791**
gary.ccr@gmail.com
www.CompleteCarpetRestoration.net

☐ Estimate Good for 30 Days

*We clean your carpets; not your wallet!*

yelp    Google
★★★★★

**Write Us a Review!**
"Your comments are key to our success!"

| Customer: PC ☑ | Y-- Gomez | Date: | 9 / 10 / 2025 |
|---|---|---|---|
| Address: | 24541 Kathy Ct | Phone: | |
| City: | Laguna Niguel | Cell: | 909-477-9821 |
| Job Location: | | PO Number: | |

| PAYMENT METHOD | CHECK | ZELLE | VISA | MASTERCARD | DISCOVER | AMEX |
|---|---|---|---|---|---|---|
| CCR to BILL: ☑ | Number: | Authorization: | c/c last 4 digits: | Exp: | | CVV: |
| | | | Authorization: | | | |

| THE FOLLOWING SERVICES ARE TO BE PERFORMED SUBJECT TO THE PRICE AND CONDITIONS STATED BELOW: | ESTIMATE | COST |
|---|---|---|

**CARPET:**
___L ___D/R ___H ___B ___BA ___Stairs ___F ___Den ___Office ___Loft
___Closet ___Entry
Other: ☐ COMMERCIAL: ___ sq.ft.=

**CARPET PROTECTION (Teflon):**
___L ___D/R ___H ___B ___BA ___Stairs ___F ___Den ___Office ___Loft
___Closet ___Entry
Other:

**UPHOLSTERY:**
___Sofa ___Loveseat ___Sectional ___Recliner ___Chair ___Ottoman ___Mattress
Other:

**UPHOLSTERY PROTECTION (Teflon):**
___Sofa ___Loveseat ___Sectional ___Recliner ___Chair ___Ottoman
Other:

**PET ODOR/STAIN CONTROL:**
___Injections ___Enzyme Spray ___Backing Treatment ___Deodorizer ___Sanitizer
___Padding Treatment ___Padding Replacement ___Floor Treatment ___Water Claw
Other:

**TILE/GROUT with SEALER:** ___
Floors: ___L _1_D/R _1_H _3_BA _1_F _1_K _1_Laundry   T/G sq.ft. = 1,500   | 1,500 -
___Pantry _1_Closet _1_Entry ___Shower ___Shower Walls   Countertops sq.ft. =
Countertops: ___BA ___K ___GRANITE   Granite sq.ft. =

**RUGS** ___Type ___Qty ___X___Size $___ea | ___Type ___Qty ___X___Size $___ea
___Type ___Qty ___X___Size $___ea | ___Type ___Qty ___X___Size $___ea

| | SUBTOTAL | 1,500 - |
|---|---|---|
| | TIP | |
| | TOTAL PAID | 1,500 - |

**UPON INSPECTION OF THE ARTICLES TO BE CLEANED; THE TECHNICIAN NOTES THE FOLLOWING CONDITIONS AND/OR RECOMMENDATIONS:**
COLOR: ___ AGE: ___ TYPE: ___ LAST TIME CLEANED: ___/___/___ WAS PROTECTION APPLIED? ☐ Y ☐ N

**CARPET ANALYSIS and/or STAINS:**

| | | | | |
|---|---|---|---|---|
| ☐ ASSORTED COLOR SPOTS | PERMANENT DISCOLORATION | | ☐ PERMANENT | ☐ EXCESSIVE SOAP DUE TO PRIOR CLEANING |
| ☐ SODA / COFFEE | ☐ BLEACH / GREASE | ☐ ANIMAL STAINS | ☐ MILDEW | ☐ CARPET SPLITTING AND/OR SEPARATION OF SEAMS |
| ☐ JUICE / WINE | ☐ BURN HOLES | ☐ PET ODOR | ☐ WATER | ☐ BODY OIL STAINS IN TRAFFIC AREAS OR ON UPHOLSTERED FURNITURE |
| ☐ COSMETICS | ☐ FILTER DUST | ☐ FECES: HUMAN | ☐ RUST | ☐ CARPET NAP RUNS IN OPPOSITE DIRECTION - MAY SHOW UP DIRTY |
| ☐ PAINT | ☐ GROUT LINES | ☐ FECES: OTHER | ☐ TRAFFIC LANE GRAY | ☐ CARPET SWELLS OR RIPPLES DUE TO POOR INSTALLATION |
| ☐ KOOL-AID / FRUIT PUNCH / BLOOD | | ☐ URINE / VOMIT | ☐ FURNITURE | ☐ SUN FADING OF CARPET OR UPHOLSTERY |
| ☐ CARPET OXIDATION | ☐ EXCESSIVE CARPET WEAR AND FIBER BREAKDOWN | | | ☐ CARPET DETERIORATION |

*CAUTION: Wet carpets can be a slip and fall hazard. CCR will not be held responsible for any injuries or damages that occur from floors that may be left damp or wet. Do not remove protective pads under furniture for 48 hours.*

CONDITIONS: CCR agrees to perform the services indicated in a proper and workmanlike manner, using equipment detergents standard for the cleaning industry. The customer agrees that CCR shall not be liable for the failure to REMOVE STAINS nor for any DISCOLORATION from non-water fast dyes or backing threads, nor for any CHANGE IN COLOR of the fabrics regardless of the cause nor CHANGES IN TEXTURE OR SHADING that may appear either before or after cleaning, nor for any SHRINKAGE, opening of pasted seams, or FADING OF FABRICS which may appear in the process of cleaning. FRAYING of fabrics in areas of normal wear will not be a responsibility of CCR. All fabrics cleaned only at customers risk. CCR will accept no liability for conditions existing prior to cleaning. Customer has been advised that the above visible conditions can be corrected by cleaning & herewith gives permission to clean furniture and/or carpet having full knowledge of the visible conditions prior to cleaning. Customer understands that if payment method by check is returned unpaid, agrees to pay the current bank fees for a returned check. If returned check is not paid within 30 days of the dated issued, further agrees that the responsibility for any court fees, bank service charges & to pay attorney fees, interest & other expenses incurred as related. Any questions concerning CCR services must be reported within 7 days after completion of work. Customers requesting re-service on spot re-appearance(s) are subject to a $20.00 travel charge & notification must be made within 72 hours. WARNING: Customer recognizes being informed & understands: 1) carpet is damp during, & after cleaning, 2) care should be taken stepping onto non-carpeted surfaces to avoid slipping. **Customers signature constitutes acknowledgement of this contract and noted conditions.**

| Technician: Dad | CUSTOMER SIGNATURE: | Exhibit 3(a) |
|---|---|---|
| | | Page 40 |

9/11/25, 4:4 PM    77907192636    363632C8-E929-4F20-8C71-A6F3AAFE44FE.jpg

Case 8:24-bk-12527-SC    Doc 139-1    Filed 12/23/25    Entered 12/23/25 13:28:38    Desc
Declaration of Richard A. Marshack    Page 41 of 92

# INVOICE

DATE 9/8 20 25

NAME & ADDRESS  Mr Gomez
27591 Kathy ct

| LAWN SERVICE | FULL | YES ☐ NO ☐ | |
| MOW, EDGE, AND CLEAN | WEEKLY ☐ | OTHER ☐ | |
| GARDEN SERVICE | | | |
| PRUNE AND TRIM | | | |
| CLEAN-UP | and Dump | # 600.00 | |
| FERTILIZER | | | |
| SEED & TOPPING | | # 200.00 | |
| PLANTS & COLOR | | | |
| IRRIGATION SPRINKLERS | Fix | # 150.00 | |
| PLANTER WORK | | | |
| SPRAY | | | |

Pd 10/11/25

**Hugo's Gardening Servives**
830 W. Wilson St.       TOTAL # 950.00
Costa Mesa, CA 92627
GARDENER C: 714-222-7715
Gardening Services

STAR GARDEN SUPPLY, INC.

# INVOICE

**Queen's Cleaning Services**
1808 W Sumac LN
7
Anaheim CA 92804
United States

19495454932
customer@queenscleanings.com
https://www.queenscleanings.com/

**BILL TO**
Jeff Adams

| | | |
|---|---|---|
| Invoice No.: | | **111** |
| Issue date: | | **9/7/2025** |
| Due date: | | **9/9/2025** |

| DESCRIPTION | QUANTITY | UNIT PRICE ($) | DISCOUNT % | AMOUNT ($) |
|---|---|---|---|---|
| Deep Cleaning 12 hours<br>Crew of 3 Cleaners plus pressure washing | 1 | 2,000.00 | 0.00 | 2,000.00 |

| | |
|---|---|
| TOTAL (USD): | $2,000.00 |

**TOTAL DUE (USD)** $2,000.00

Exhibit 3(a)
Page 42

Issued by, signature:

## THE HOME DEPOT

**How doers get more done.**

SM: MO KALHOR@HOMEDEPOT.COM
LAGUNA NIGUEL, CA 92677 (949)831-3698

1077 00052 07881        09/10/25  01:44 PM
SALE SELF CHECKOUT

```
-----------Military Discount-----------
6925699963884 ARNETTE 8 IN <A> <M>
  ARNETTE 8" 2HDL BATH FAUCET CH
  2@89.00                          178.00
  MAX REFUND VALUE $160.20/2
026508279618 BRECKLYN CH <A,S> <M 89.00
  BRECKLYN PULL-OUT KITCH FAUCET CH
  MAX REFUND VALUE $80.10
031949618643 20X30 FPR5 <A> <M>    6.37
  20X30X1 HDX FPR 5 FILTR
  MAX REFUND VALUE $5.73
  Military Discount               -27.34
-------Pro Xtra Preferred Pricing-------
084691818540 JVM6175SKSS <A,S>    268.00
  JVM6175SKSS - STAINLESS OTR
  MAX REFUND VALUE $248.00
  Pro Xtra Preferred Pricing      -20.00

                SUBTOTAL           494.03
                SALES TAX           38.29
                TOTAL            $532.32
XXXXXXXXXXXXX0962 DEBIT

                                USD$ 532.32
AUTH CODE 000688
Chip Read                    Verified By PIN
AID A0000000980840               US DEBIT
```

PRO XTRA MEMBER STATEMENT

PRO XTRA ###-###-0661 SUMMARY
THIS RECEIPT PO/JOB NAME: kathy

2025 PRO XTRA SPEND 09/09:    $4,154.55

Get the CREDIT LINE your business needs
PLUS earn Perks 4X FASTER when you join
Pro Xtra, register, & use your Pro Xtra
Credit Card. Apply and SAVE UP TO $100.
Learn more at homedepot.com/credit

<M> = Military Appreciation

1077  09/10/25  01:44 PM

1077 52 07881 09/10/2025 4672

RETURN POLICY DEFINITIONS
POLICY ID    DAYS    POLICY EXPIRES ON
A            1       90       12/09/2025

---

## THE HOME DEPOT

**How doers get more done.**

SM: MO KALHOR@HOMEDEPOT.COM
LAGUNA NIGUEL, CA 92677 (949)831-3698

1077 00053 77767       09/13/25  11:10 AM
SALE SELF CHECKOUT

```
031949620646 12X30 FPR 9 <A>       20.97
  12X30X1 HDX FPR 9 FILTR
192968029091 A19 4PK <A>           13.98
  ECS (75W) A19 SMT 6CCT 4PK DIM CA
071121100962 RK GL RAT <A>
  REAL KILL RAT GLUE TRAPS         17.91
  3@5.97                           32.47
047871314669 10-YEAR SEAL <A>
  SMOKE 10YR BATTERY
047871295081 CODE1 BAT CO <A>
  CODEONE BASIC BATTERY CO ALARM   42.94
  2@21.47                           9.98
01780115454 60W A15 2PK <A>
  FEIT (60W) A15 FR DIM LED DL 2PK
072868002052 PLASTIC PEDA <A>
  PLASTIC PEDAL RAT SNAP TRAP       4.54
  2@2.27                           11.30
852944007788 1G CV CLEAR <A>
  NM IN-USE COVER 1-GANG CLEAR
082269520604 HDXSMOOTHIND <A>      12.97
  HDX SMOOTH SWEEP INDR BROOM/DUSTPAN

                SUBTOTAL           167.06
                SALES TAX           12.95
                TOTAL            $180.01
XXXXXXXXXXXXX0962 DEBIT

                                USD$ 180.01
AUTH CODE 002837
Chip Read                    Verified By PIN
AID A0000000980840               US DEBIT
```

1077  09/13/25  11:10 AM

1077 53 77767 09/13/2025 1869

RETURN POLICY DEFINITIONS
POLICY ID    DAYS    POLICY EXPIRES ON
A            1       90       12/12/2025

Exhibit 3(a)
Page 43

# LOPEX PAINTING

7750 vineyard ave rancho cucamonga ca 91730

LIC#: 61-2061150

(909) 297 0968

10/13/2025

**INVOICE**

BILL TO JEFF GOMEZ
27591 KATHY CT
LAGUNA NIGUEL CA.

FOR PAINT
REPAIRS

**ITEM DESCRIPTION**                                      **AMOUNT**

| ITEM DESCRIPTION | AMOUNT |
|---|---|
| Exterior paint house (material included) | $5000.00 |
| Interior Pain house (Labor only) | $3300.00 |
| Miscellaneous repairs | $1000.00 |

TOTAL $ 9,300

Make all checks payable to Company Name or zelle 909 569 4924

**THANK YOU FOR YOUR BUSINESS!**

Exhibit 3(a)
Page 44

MERCHANT COPY

CUSTOMER # Agair

Please

T

I AGREE TO PAY ABOVE TOTAL
IN ACCORDANCE WITH
MERCHANT AGREEMENT
RETAIN THIS C

YES

AID: A000000031010
VISA DEBIT
TVR: 80 80 00 80 00
TSI: 60 00

**AMOUNT**
**APPROVED**
**$1,000.00**

APPR CODE: 796137
VISA
Batch #: 414
Bank ID: 000000
10/02/25

Chip

**SALE**
REF#: 00000003
RRN: 275443067370
Best Carpet
8961 Central Avenue
Montclair, CA  91763
(909) 621-1470
16:42:40
'0962

EOR1
, 30 yards

| TERMS ARE NET — C.O.D. | | | DELIVERY DATE | |
|---|---|---|---|---|
| NAME Jeff Gomez | | SALESMAN Mario | DATE 10-2-25 | |
| ADDRESS 27591 Kathy Ct | | JOB NAME | | |
| CITY, STATE, ZIP Laguna Niguel | | INSTALLATION ADDRESS | | |
| PHONE (909) 477 9821 | SOURCE | PHONE (S) | INSTALLER | |

**NOTES:**

Best P

| ROOM | FLOORING DESCRIPTION | SQ. YARDS | $ PER YARD | AMOUNT |
|---|---|---|---|---|
| | CA Carpet Stewardship Assessment | | | |
| | 1388 Avgusta Dr | | | |
| | | | | |
| | | | | |
| | | | | |
| | paid in full 10/2/25 | | | |
| | | | | |
| | | | TOTAL | |
| | | | DEPOSIT | |
| | | | BALANCE | |

**"NOTICE TO OWNERS"**
"CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRAC-
TORS' STATE LICENSE BOARD, ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED
TO THE REGISTRAR, CONTRACTORS STATE LICENSE BOARD, 3132 BRADSHAW ROAD, SACRAMENTO
CALIFORNIA. MAILING ADDRESS, P.O. BOX 26000, SACRAMENTO, CALIFORNIA, 92586

IF EITHER PARTY BECOMES INVOLVED IN LITIGATION ARISING OUT OF THE PERFORMANCE OF INTERPRETATION OF THIS CONTRACT, THE COURT IN SUCH LITIGATION, OR IN A SEPARATE
SUIT, SHALL AWARD REASONABLE COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, TO THE PREVAILING PARTY. IN AWARDING ATTORNEY FEES, THE COURT WILL NOT BE BOUND
BY ANY COURT FEE SCHEDULE, BUT SHALL AWARD THE FULL AMOUNT OF COSTS, EXPENSES, AND ATTORNEY FEES PAID OR INCURRED IN GOOD FAITH.

**ACCEPTANCE:** I hereby accept the proposal outlined above & authorize work to start on date specified.
ALL DEPOSITS ON SPECIAL ORDER MERCHANDISE ARE NON-REFUNDABLE.
_____ Date _____

Customer _____

Customer is responsible for doors which need to be trimmed for carpet clearance. ALL FURNITURE INCLUDING KITCHEN APPLIANCES IS MOVED AT CUSTOMERS RISK.

Exhibit 3(a)

# EXHIBIT 3(b)

Exhibit 3(b)
Page 46



# INVOICE

DATE 10 / 23 20 25

NAME & ADDRESS Mr Jeff Gomez
27591 Kathy Ct

| | | |
|---|---|---|
| LAWN SERVICE | FULL ✓  YES ✓  NO ☐ | |
| MOW, EDGE, AND CLEAN | WEEKLY ✓  OTHER ☐ | |
| GARDEN SERVICE | Sep / Oct #$300.00 | |
| PRUNE AND TRIM | | |
| CLEAN-UP | | |
| FERTILIZER | | |
| SEED & TOPPING | | $60.00 |
| PLANTS & COLOR | | |
| IRRIGATION SPRINKLERS | 1. New Timer $120.00 | |
| PLANTER WORK | | |
| SPRAY | | |

Make Check to: Hugo Calderon
830 W. Wilson St.
Costa Mesa, CA 92627
Cr 714-222-7715
GARDEN Gardening Services

TOTAL $480.00

pd 11/7/25

STAR GARDEN SUPPLY, INC

Exhibit 3(b)
Page 47

| Jul 25, 2025 | Completed | Hugo "landscaping " | In moments ⓘ | ▼Hide details | $400.00 |

✅ We sent money from TOTAL CHECKING (...9823).

Mobile number    714-222-7715

Transaction number    JPM99bgz746n

Exhibit 3(b)
Page 48

TRASH HAULING

| Sep 5, 2025 | Completed | Romiro Calderon | In moments ⓘ | ▼Hide details | $1,000.00  |

✅ We sent money from TOTAL CHECKING (...9823).

Mobile number      909-236-2559

Transaction number      JPM99bm8ly0t

Exhibit 3(b)
Page 49



Sep 3, 2025    Completed    Romiro Calderon
"hauling trash "

In moments (i)    ▼Hide details    $500.00

✅ We sent money from TOTAL CHECKING (...9823).

Mobile number    909-236-2559

Transaction number    JPM99blwvinz

Exhibit 3(b)
Page 50



✔ We sent money from TOTAL CHECKING (...9823).

| | |
|---|---|
| Mobile number | 909-236-2559 |
| Transaction number | JPM99bm8ly0t |

| Sep 4, 2025 | Completed | BZB Lock & Key "Rental Rekey" | In moments ⓘ | ▼Hide details | $415.00 |

Exhibit 3(b)
Page 51

*Coit — Floors (Travertine) - Stone*

| Oct 10, 2025 | Completed | Coit | | In moments ⓘ | ▾Hide details | $1,349.00 |
|---|---|---|---|---|---|---|
| | | "floors" | | | | |

🖨

✅ We sent money from TOTAL CHECKING (...9823).

Mobile number      951-236-6078

Transaction number      26543654202

Exhibit 3(b)
Page 52

# EXHIBIT 3(c)

Exhibit 3(c)
Page 53

IMG_1624.jpg

Case 8:24-bk-12527-SC    Doc 139-1    Filed 12/23/25    Entered 12/23/25 13:28:38    Desc 11/29/25, 5:39 PM
Declaration of Richard A. Marshack    Page 54 of 92

# INVOICE

DATE 11/27 20 25

NAME & ADDRESS Jeff Gomez

27591 Kathy Ct

| LAWN SERVICE | FULL | YES ☐ | NO ☐ | |
|---|---|---|---|---|
| MOW, EDGE, AND CLEAN | WEEKLY ☐ | | OTHER | /1/1/$150.00 |
| **GARDEN SERVICE** | | | | |
| PRUNE AND TRIM | | | | |
| CLEAN-UP | | | | |
| FERTILIZER | | | | |
| SEED & TOPPING | | | | $60.00 |
| PLANTS & COLOR | | | | |
| IRRIGATION SPRINKLERS | 1. New Timer | | | $120.00 — (PAID LAST MONTH) |
| PLANTER WORK | | | | |
| SPRAY | | | | |

Make Check to: Hugo Calderon
830 W. Wilson St.     TOTAL $330.00
Costa Mesa, CA 92627
GARDENER C: 714-222-7715
**Gardening Services**

STAR GARDEN SUPPLY, INC

TOTAL PAID → $210.00

Exhibit 3(c)    Page 1 of 1

Page 54

# EXHIBIT 4

Exhibit 4
Page 55

**PRELIMINARY REPORT**



Prelim Number:

**LT1257804157
Update 2**

7530 N Glenoaks Blvd
Burbank, CA 91504
Phone No.: 800-747-7777

---

Issuing Policies of **Commonwealth Land Title Insurance Company**

---

Order No.: LT1257804157

A&A Escrow Services
15250 Ventura Blvd #715
Sherman Oaks, CA 91403
Attn: Antonia Delgado
Email: antonia@aaescrow.com

Title Officer: Michael Chediak & Ed Amaya Title Unit 78
Phone No.: 818-252-3778
Fax No.:
Email: TU78@Ltic.com

**Ref No.:**

Property: 27591 Kathy Ct, Laguna Niguel, CA

In response to the application for a policy of title insurance referenced herein, **Lawyers Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of a defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Exclusions from Coverage, and Conditions of said policy forms.

With respect to any contemplated owner's policy, the printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA/ALTA Homeowner's Policy of Title Insurance, which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a binder or commitment should be requested.

Countersigned By:

*Michele Weill*

Authorized Officer or Agent
Michele Weill, County Manager

---

Exhibit 4
Page 56

**PRELIM NO. LT1257804157**
**UPDATE 2**

**LAWYERS TITLE COMPANY**

**Effective date:  July 2, 2025 at 07:30 AM, Update 2**

The form of Policy or Policies of Title Insurance contemplated by this Report is:

  ALTA Homeowner's Policy of Title Insurance 2021

  ALTA Loan Policy 2021

1.  The estate or interest in the Land hereinafter described or referred to covered by this Report is:

  **Fee simple as to Parcel(s) 1;**
  **Easement(s) more fully described below as to Parcel(s) 2**

2.  Title to said estate or interest at the date hereof is <u>vested in:</u>

  **Jeff Gomez and Kristina Smith Gomez, husband and wife as joint tenants, subject to proceedings pending**
  **in the bankruptcy court where a petition for relief was filed.**

  **Name of Debtor: Kristina Lynn Smith**
  **Date of Filing: October 3, 2024**
  **U.S. district Court: District of Central**
  **Case No.: 8:24-bk-12527-SC**

3.  The Land referred to in this Report is described as follows:

  SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

# EXHIBIT A
Legal Description

**For <u>APN/Parcel ID(s):</u>    <u>636-632-34</u>**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 94 OF <u>TRACT NO. 15962</u>, IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN <u>BOOK 804, PAGES 5</u> THROUGH 9, INCLUSIVE OF MISCELLANEOUS MAPS, AS AMENDED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JANUARY 29, 2001 AS <u>INSTRUMENT NO. 01-48700</u> OF OFFICIAL RECORDS, ALL IN RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE AND ENCROACHMENT, SUPPORT, AND FOR OTHER PURPOSES ALL AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, RECORDED JUNE 26, 1997 AS <u>INSTRUMENT NO. 1997-296011,</u> AS AMENDED BY INSTRUMENT RECORDED JULY 21, 1997 AS <u>INSTRUMENT NO. 1997-342349,</u> AND THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, (KNOLLS/PHASE 17) RECORDED APRIL 30, 2002 AS <u>INSTRUMENT NO. 2002-362793,</u> ALL OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

CLTA Preliminary Report Form (02/03/2023)

Page 3

Printed: 11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 58

**PRELIM NO. LT1257804157**

<u>LAWYERS TITLE COMPANY</u>                                                              **UPDATE 2**

## EXCEPTIONS

At the date hereof, items to be considered and exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2025-2026.

2.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

3.    Water rights, claims or title to water, whether or not disclosed by the public records.

4.    Non-exclusive easements over and through the common area for ingress, egress, public utility, enjoyment, support and repair of the common area and each unit, as provided in the above mentioned declaration and as disclosed by various deeds of record.

      Affects:  Common Area

5.    Matters contained in that certain document

      Entitled: Lease Agreement
      Executed by: Moulton Niguel Water District and Los Angeles SMSA limited partnership, a California limited partnership
      Recording Date: September 3, 1996
      Recording No.: 1996-448970, of Official Records

      Reference is hereby made to said document for full particulars

6.    Matters contained in that certain document

      Entitled: Covenant and Agreement
      Executed by: S&S Construction Co., a Division of Shapell Industries, Inc., a
      Delaware corporation and the City of Laguna Niguel, a Municipal
      Corporation
      Recording Date: May 21, 1997
      Recording No.: 97-235461, of Official Records

      Reference is hereby made to said document for full particulars

7.    All easements, recitals, offers and dedications as shown on the official map

      Tract of: 15962

8.    The matters set forth in the document shown  below which, among other things, contains or provides for: certain easements; liens and the subordination thereof; provisions relating to partition; restrictions on severability of component parts; and covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

      Recording Date:      June 26, 1997
      Recording No.:      1997-296011, Official Records

CLTA Preliminary Report Form (02/03/2023)

Page 4

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 59

**LAWYERS TITLE COMPANY**

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

9.      Modification(s) of said covenants, conditions and restrictions

Recording Date: July 21, 1997
Recording No: 1997-342349, of Official Records

10.     The provisions of said covenants, conditions and restrictions were extended to include the herein described land by an instrument

Recording Date: April 30, 2002
Recording No.: 2002-362793, of Official Records

11.     Modification(s) of said covenants, conditions and restrictions

Recording Date: December 22, 2011
Recording No.: 2011-671693, of Official Records

12.     Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

Granted To: Pacific Bell Telephone Company, a California corporation
Purpose: Underground communication facilities
Recording Date: November 2, 2000
Recording No: 2000-593934, of Official Records
Affects: said land more particularly described therein

13.     Matters contained in that certain document

Entitled: San Joaquin Hills Declaration of Restrictions (Knolls, Phase 17)
Executed by: Shapell Industries, Inc., a Delaware corporation
Recording Date: April 30, 2002
Recording No.: 2002-362794, of Official Records

Reference is hereby made to said document for full particulars

14.     Matters contained in that certain document

Entitled: Notice of Declaration of Elections Under California Senate Bill 800 (San Joaquin Hills-Knolls)
Dated: January 14, 2003
Executed by: Shapell Industries, Inc., a Delaware corporation
Recording Date: January 31, 2003
Recording No.: 2003-122365, of Official Records

Reference is hereby made to said document for full particulars

15.     Matters contained in that certain document

Entitled: Easements, Covenants and Conditions contained in the Deed
Executed by: Shapell Industries, Inc. and Brian Ackerman, a married man as his sole and separate property
Recording Date: March 19, 2003
Recording No.: 2003-292891, of Official Records

Reference is hereby made to said document for full particulars

CLTA Preliminary Report Form (02/03/2023)

Page 5

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 60

**LAWYERS TITLE COMPANY**

**PRELIM NO. LT1257804157
UPDATE 2**

16.     Any rights of the parties, if other than the vestees, in possession of the Parking Space shown in the legal description herein.

17.     A deed of trust to secure an indebtedness in the amount shown below, and any other obligations Secured thereby

Amount: $700,000.00
Dated: January 27, 2014
Trustor/Grantor: Jeff Gomez a married man as his sole and separate property
Trustee: Unionbancal Mortgage Corporation
Beneficiary: Union Bank, N.A., a National Banking Association
Loan No.: 696 2417114
Recording Date: January 29, 2014
Recording No: 2014-37516, of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:         Quality Loan Service Corporation
Recording Date:   June 6, 2024
Recording No.:    2024-140614, Official Records

A notice of default under the terms of said trust deed

Recording Date:   June 27, 2024
Recording No:     2024-159460, Official Records

A notice of trustee's sale under said deed of trust

Time and Place of Sale: 11/15/2024 at 9:00:00 AM Place of Sale: At the Doubletree by Hilton Hotel Anaheim - Orange County, 100 The City Drive, Orange, CA 92868 in the Auction.com Room
Recording Date: September 30, 2024
Recording No.: 2024-251941, Official Records

18.     A pending Court Action as disclosed by a recorded notice:

Plaintiff: Kristina Smith
Defendant: Jeffrey Adams Gomez
County: Orange
Court: Superior Court of the State of California
Case No.: 17 D 00-05-90
Nature of Action: Title affects to real property
Recorded: May 10, 2018
Recording No.: 2018-170624, of Official Records

CLTA Preliminary Report Form (02/03/2023)

Page 6

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 61

**LAWYERS TITLE COMPANY**

19.     An abstract of judgment for the amount shown below and any other amounts due:

Amount: $353,500.00
Debtor: Jeffrey Adams Gomez
Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP
Date Entered: March 11, 2019
County: Orange
Court: Superior Court of California
Case No.: 17 D 00-05-90
Recording Date: April 1, 2019 as instrument no. 2019-102304, of Official Records

Matters contained in that certain document

Entitled: Acknowledgment of Satisfaction of Judgement (Partial)
Recording Date: July 22, 2020 as instrument no. 2020-352459, of Official Records

Reference is hereby made to said document for full particulars

20.     An abstract of judgment for the amount shown below and any other amounts due:

Amount: $3,373.56
Debtor: Jeff Gomez, aka Jeffery A. Gomez, aka Jeffery Adam Gomez, aka Jeffrey A. Gomez, an individual
Creditor: American Express National Bank, successor by Merger to American Express Bank, FSB
Date Entered: August 13, 2021
County: Orange
Court: Superior
Case No.: 30-2020-01125756-CL-CL-CJC
Recording Date: September 9, 2021
Recording No: 2021-564588, of Official Records

21.     An abstract of judgment for the amount shown below and any other amounts due:

Amount: $3,373.56
Debtor: Jeff Gomez, aka Jeffery A. Gomez, aka Jeffery Adam Gomez, aka Jeffrey A. Gomez, an individual
Creditor: American Express National Bank, successor by Merger to American Express Bank, FSB
Date Entered: August 13, 2021
County: Orange
Court: Superior
Case No.: 30-2020-01125756-CL-CL-CJC
Recording Date: September 9, 2021
Recording No: 2021-564869, of Official Records

22.     An abstract of judgment for the amount shown below and any other amounts due:

Amount: $73,681.88
Debtor: Jeff Adams Gomez aka Jeff A. Gomez, or Jeff Gomez or Jeff Adams
Creditor: The Neshanian Law Firm, Inc.
Date Entered: July 8, 2021
County: Orange
Court: Superior
Case No.: 30-2021-01191914-CU-PA-CJC
Recording Date: February 8, 2022
Recording No: 2022-52681, of Official Records

CLTA Preliminary Report Form (02/03/2023)

Page 7

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 62

**PRELIM NO. LT1257804157**

**LAWYERS TITLE COMPANY**                                              **UPDATE 2**

23. A lien for attorney's fees in the amount shown below, and any other amounts as therein provided, as disclosed by Decree of Distribution

  Amount: $300,000.00
  Case No.: 17 D 00-05-90
  Recording Date: January 5, 2023
  Recording No.: 2023-2404, of Official Records

24. An abstract of judgment for the amount shown below and any other amounts due:

  Amount: $131,143.94
  Debtor: Jeffrey Adams aka Jeffrey A. Gomez
  Creditor: R & S Law Group, APC
  Date Entered: March 14, 2023
  County: Orange
  Court: Superior
  Case No.: 30-2022-01280774-CU-Co-CJC
  Recording Date: March 31, 2023
  Recording No: 2023-74125, of Official Records

25. An abstract of judgment for the amount shown below and any other amounts due:

  Amount: $77,396.19
  Debtor: Kristina Smith aka Kristina Smith Gomez
  Creditor: White Zuckerman Warsavsky Luna and Hunt, LLP
  Date Entered: June 14, 2023
  County: Los Angeles
  Court: Superior
  Case No.: 23VECV00570
  Recording Date: June 30, 2023
  Recording No: 2023-157395, of Official Records

26. A state tax lien for the amount shown and any other amounts due,

  State ID No.:  25285000516
  Filed by:  The Franchise Tax Board of the State of California
  Taxpayer:  Kristina Smith
  Amount:  $4,936.75
  Recording Date:  October 14, 2025
  Recording No.:  2025-281304, Official Records

**END OF EXCEPTIONS**

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

CLTA Preliminary Report Form (02/03/2023)

Page 8

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 63

**PRELIM NO. LT1257804157**

**LAWYERS TITLE COMPANY**                                                    **UPDATE 2**

## REQUIREMENTS

1.  In order to complete this report, the Company requires a Statement of Information to be completed by the following party(ies),

    Party(ies):  All Parties

    The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

    NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name.  Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.  Satisfactory evidence must be furnished from the secretary or other duly qualified officer of the Association showing that all assessments and fees, including special assessments or payments due to others, such as master associations, are paid in full through the date of closing.

### END OF REQUIREMENTS

CLTA Preliminary Report Form (02/03/2023)

Page 9

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 64

PRELIM NO. LT1257804157

**LAWYERS TITLE COMPANY**                                                                    **UPDATE 2**

### INFORMATIONAL NOTES

1.      The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

2.      California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans,  accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

        **For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

3.      Lawyers Title is a division of Commonwealth Land Title Insurance Company.  The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

4.      Notice:  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

CLTA Preliminary Report Form (02/03/2023)

Page 10

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 65

**LAWYERS TITLE COMPANY**

**PRELIM NO. LT1257804157**
**UPDATE 2**

5.    Note:  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note:  The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land:  a single family residence - Planned Unit Development (PUD)
Known as:  27591 Kathy Court, City of Laguna Niguel, California

Note:  There are no conveyances affecting said Land recorded within 24 months of the date of this report.

Note:  The Company requires current beneficiary demands prior to closing.  If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)    If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment.  This hold will be in addition to the verbal hold the lender may have stipulated.

b)    If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

c)    All payoff figures are verified at closing.  If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

6.    Note:  Association Assessments are periodically due from holders of title to said Land to the Homeowner's Association and transfer fees may be due whenever there is a transfer of title of any of the units.  In order to ascertain seller's/buyer's association assessments and transfer fee requirements prior to transfer of a unit, Escrow companies are requested to contact said Homeowner's Association.

7.    The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

To protect the private information contained in the attached form and photo ID, please return via a secured method.

8.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

9.    Property taxes, including any personal property taxes and any assessments collected with taxes, are paid.    For proration purposes the amounts were:

| | |
|---|---|
| Tax Identification No.: | 636-632-34 |
| Fiscal Year: | 2024-2025 |
| 1st Installment: | $5,802.71 |
| 2nd Installment | $5,802.71 |
| Exemption: | $0.00 |
| Code Area: | 29-084 |

**END OF INFORMATIONAL NOTES**

CLTA Preliminary Report Form (02/03/2023)

Page 11

Printed:  11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 4
Page 66

**LAWYERS TITLE COMPANY**

Exhibit 4
Page 67

### FIDELITY NATIONAL FINANCIAL
### CALIFORNIA PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy.  This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at ***Prospective California Employees***.

Some subsidiaries maintain separate California Privacy Notices or privacy statements.  If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information**:

In the preceding twelve (12) months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;

- Characteristics of protected classifications under California or Federal law;

- Commercial information, including records of personal property, products or services purchased, or other purchasing or consuming histories;

- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;

- Geolocation data;

- Unique biometric data used to authenticate a specific individual such as a fingerprint, retina, or iris image;

- Professional or employment information;

- Education Information.

**This Personal Information is collected from the following sources**:

- Information we receive from you on applications or other forms;

- Information about your transactions with FNF, our affiliates, or others;

- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities, or from internet service providers, data analytics providers, and social networks;

- Information from the use of our websites and mobile applications;

- Information we receive directly from you related to doing business with us.

**This Personal Information is collected for the following business purposes**:

- To provide products and services to you or in connection with a transaction involving you;

- To perform a contract between FNF and the Consumer;

- To improve our products and services;

- To comply with legal obligations;

- To detect and protect against fraudulent or illegal activity;

Privacy Statement
SSCORPD0911.doc

Page 1

Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 68

- To communicate with you about FNF or our affiliates;

- To maintain an account with FNF or our affiliates;

- To maintain the security of our systems, tools, accounts, and applications;

- To verify and authenticate identities and credentials;

- To provide, support, personalize, and develop our websites, products, and services;

- To directly market our products to consumers;

- As described to you when collecting your Personal Information or as otherwise set forth in the California Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose:**

In the preceding twelve (12) months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of third parties:

- FNF affiliates and subsidiaries;

- Non-affiliated third parties, with your prior consent;

- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;

- Service Providers and non-affiliated third parties such as data analytics providers;

- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information:**

In the preceding twelve (12) months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

**Retention Periods:**

Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

**Personal Information of minors:**

FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under sixteen (16) years of age.

**Sensitive Personal Information:**

FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

**Right to know:**

Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer. Consumers have the right to request FNF disclose what Personal Information it collected, used, and disclosed in the past twelve (12) months.

Privacy Statement
SSCORPD0911.doc
Page 2
Printed: 11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 69

**Right to request deletion:**

Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

**Right to Correct:**

Consumers have the right to correct inaccurate Personal Information.

**Right to non-discrimination:**

Consumers have a right not to be discriminated against because of exercising their consumer privacy rights.  We will not discriminate against Consumers for exercising any of their California Privacy Rights.

**Privacy Requests:**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit *California Privacy Request* (FNF.com/California-privacy), call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.

A Consumer may use an Authorized Agent to submit any CCPA request.  Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites").  The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice.  The sections of this Privacy Notice describing the categories, sources, and uses of your Personal Information do not apply to the Service Websites.  The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information.  FNF does not share Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice - Effective Date:**

This California Privacy Notice was last updated on January 1, 2025.

**Contact for more information:**

For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any of your California Privacy Rights, please visit *California Privacy (FNF.com/California-privacy)*, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Companies** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC - Chicago Title Company | CTIC - Chicago Title Insurance Company |
| CLTC - Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Co. |
| FNTC - Fidelity National Title Company | FNTIC - Fidelity National Title Insurance Co. |
| FNTCCA – Fidelity National Title Company of California | NTINY - National Title Insurance of New York |
| TICOR - Ticor Title Company of California | |
| LTC - Lawyer's Title Company | |
| SLTC - ServiceLink Title Company | |

## Available Discounts

### CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, CLTIC, FNTIC, NTINY)
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected.  The charge for a lender's policy shall be forty percent (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

### DISASTER AREA TRANSACTIONS (CTIC, CLTIC, FNTIC, NTINY)
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a Lender's Policy (Standard or Extended), or an Owner's Policy (Standard or Homeowners coverage).  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.

Notice of Available Discounts
SCA0002598.doc / Updated:  12.13.24

Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 71

# Notice of Available Discounts

(continued)

## DISASTER AREA ESCROWS (CTC, CLTC, FNTC, TICOR, LTC)

This rate is available for individuals or entities that were victims of a national or state disaster. The rate can be used for a loan or a sale escrow transaction. To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster. Standard minimum charge applies based upon property type. No other discounts or special rates, or combination of discounts or special rates, shall be applicable. Applies to a single transaction per property.

This rate is applicable to the following Zones/Counties:

Zone 1.A:  Orange County
Zone 1.B:  Riverside and San Bernardino Counties
Zone 2:  Los Angeles County
Zone 3:  Ventura County
Zone 10:  San Diego County
Zone 12:  Imperial County

If used for a sale transaction, the application of this rate assumes the charge for the Residential Sale Escrow Services (RSES) fee will be split evenly between buyer and seller. As such and regardless of how the calculated applicable RSES will be split between the disaster victim and the other principal, the rate will be applied only to one half (1/2) of the calculated applicable RSES fee, regardless of whether the disaster victim is paying half (1/2) of the RSES fee (as is customary) or paying the entire fee. The rate under this provision will be fifty percent (50%) of disaster victims' one half (1/2) portion only and shall not apply to any portion paid by non-disaster victim. Additional services will be charged at the normal rates.

## MILITARY DISCOUNT RATE (CTIC, CLTIC, FNTIC)

Upon the Company being advised in writing and prior to the closing of the transaction that an active duty, honorably separated, or retired member of the United States Military or Military Reserves or National Guard is acquiring or selling an owner occupied one-to-four family property, the selling owner or acquiring buyer, as applicable, will be entitled to a discount equal to fifteen percent (15%) of the otherwise applicable rates such party would be charged for title insurance policies. Minimum charge:  Four Hundred Twenty-Five And No/100 Dollars ($425.00)

The Company may require proof of eligibility from the parties to the transaction verifying they are entitled to the discount as described. No other discounts or special rates, or combination of discounts or special rates, shall be applicable.

## MILITARY RATE (SLTC)

A discount of twenty percent (20%) off the purchase transaction closing and settlement fee or a discount of One Hundred And No/100 Dollars ($100.00) off the refinance closing and settlement fee, will be applied when the loan is guaranteed by the United States Veterans Administration and the escrow fee is being paid by the consumer and is listed as paid by borrower on the Closing Disclosure and final Settlement Statement.

Notice of Available Discounts                                    Printed:  11.06.25 @ 09:39 AM by
SCA0002598.doc / Updated:  12.13.24                              CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 72

**WIRE SAFE**™ | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*          *Internet Crime Complaint Center:*
*http://www.fbi.gov*                         *http://www.ic3.gov*

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

Exhibit 4
Page 73

## ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY - 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

# ATTACHMENT ONE
## (CONTINUED)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.
   Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law.  This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (7-01-21)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement on the Land;
   iii. the subdivision of land; or
   iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2. Any power to take the Land by condemnation.  Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4. Lack of a right:
   a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
   i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
   ii. for any other reason not stated in Covered Risk 30.
7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9. Any lien on Your Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.   Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19 and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $  5,000.00 |

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a. building;
    b. zoning;
    c. land use;
    d. improvements on the Land;
    e. land division; and
    f. environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
    a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c. that result in no loss to You; or
    d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5. Failure to pay value for Your Title.

6. Lack of a right:
    a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b. in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $  5,000.00 |

## ATTACHMENT ONE
### (CONTINUED)

### ALTA OWNER'S POLICY (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
       i.   the occupancy, use, or enjoyment of the Land;
       ii.  the character, dimensions, or location of any improvement on the Land;
       iii. the subdivision of land; or
       iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain.  Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
       i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
       ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust.  Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.  Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law.  This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated.  Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE:  The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage.  In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

# ATTACHMENT ONE
## (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i)   the occupancy, use, or enjoyment of the Land;

      (ii)   the character, dimensions, or location of any improvement erected on the Land;

      (iii)   the subdivision of land; or

      (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)   Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.   Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters

    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date Insured Claimant became an Insured under this policy;

    (c)   resulting in no loss or damage to the Insured Claimant;

    (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)   a fraudulent conveyance or fraudulent transfer; or

    (b)   a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

*NOTE:  The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.   Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.   Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.   Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.]

7.   Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Exhibit 4
ALTA Form 4e (11/04/22)
Page 79



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

Order: LT1257804157                                    Page 1 of 1                    Requested By: Sergio Pimentel , Printed: 6/13/2025 10:26 AM
Doc: 636-63 MAP ASSESSOR

Exhibit 4
Page 80



# ALTA INFORMATION COLLECTION FORM

Under 31 U.S.C. § 5326(a), the Treasury Department's Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order to title insurance companies requiring the collection of beneficial ownership information for certain real estate transactions.

Please complete the below questionnaire. This Company will rely on the answers provided to meet its reporting obligations.

**Who is completing this form?**

| Name | Position/Title | Company/Law Firm | |
|------|----------------|------------------|---|
| Postal Address (Headquarters) | City | State | Zip |
| Phone | Email | Fax | |

## Transactional Information

| Property Address (*If multiple properties see NOTE below*): | | | | |
|---|---|---|---|---|
| City | | State | Zip | County |
| Date of Settlement | Total purchase price (*If multiple properties see NOTE below*) $ | | | |
| Type of Transaction:  ☐ Residential (1-4 family)    ☐ Commercial | | Bank Financing:  ☐ Yes  ☐ No | | |
| Purchaser type:  ☐ Natural Person    ☐ Corporation    ☐ LLC    ☐ Partnership    ☐ Other | | | | |

**NOTE**: *If more than one property is purchased, list each address and purchase price on an addendum.*

## Purchase Funds Information

| Total Amount paid by below instruments:  $ | |
|---|---|
| Which type of Monetary Instruments were used (*Use check boxes below*) | |
| ☐ U.S. Currency (Paper money and coin) | |
| ☐ Foreign Currency | Country: |
| ☐ Cashier's check(s) | ☐ Money order(s) |
| ☐ Certified check(s) | ☐ Personal or Business check(s) |
| ☐ Wire or other funds transfer(s) | ☐ Virtual Currency |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 1

Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 81



# ALTA INFORMATION COLLECTION FORM

## Individual Primarily Representing Purchaser

*(Defined as the individual authorized by the entity to enter into legally binding contracts.)*

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

## Purchaser's Name and Address

| Name of Purchaser | | | |
|---|---|---|---|
| Taxpayer ID No. or EIN *(if none write N/A)* | | Doing Business Name (DBA) *(If none write N/A)* | |
| Address | City | State | Zip |

***Complete the following pages if the real estate purchase is being made by a corporation, LLC, partnership, or other legal entity. (Do not report trusts.)***

***For Corporations, LLCs, Partnerships and Other Entities provide the information for:***

- Each **BENEFICIAL OWNER** defined as an individual who, directly or indirectly, owns Twenty-Five Percent (25%) or more of the equity interests of the Purchaser.

- If a legal entity or a series of legal entities own the equity interests of the Purchaser, provide information for each **BENEFICIAL OWNER**, of each legal entity in the series of legal entities.

**(Note: It is NOT necessary to complete the address fields if the information is on a legible copy of the government issued ID submitted to the title underwriter.)**

Exhibit 4
Page 82



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 3                    Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 83



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 4

Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 84



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

I declare that to the best of my knowledge, the information I have furnished is true, correct and complete.  I understand that this Title Company will rely on this information for the purposes of completing any reports made pursuant to an obligation under 31 U.S.C. § 5326(a).

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

| Signature: | Date: |
|---|---|
| Type or Print Name: | Title: |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 5

Printed:  11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 4
Page 85



**STATEMENT OF INFORMATION
CONFIDENTIAL INFORMATION
FOR YOUR PROTECTION**

**Escrow No.:** LT1257804157

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents.  Complete all blanks (please print) or indicate "none" or "N/A."  If more space is needed for any item(s), use the reverse side of the form.  Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

### NAME AND PERSONAL INFORMATION

_____ Date of Birth _____
First Name          Middle Name          Last Name          Maiden Name
                                        (If none, indicate)

Home Phone _____ Business Phone _____ Birthplace _____

Cell Phone _____ Fax _____ Email _____

Social Security No. _____ Driver's License No. _____

List any other name you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

Are you currently married? ☐ Yes    ☐ No    Are you currently a registered domestic partner? ☐ Yes    ☐ No

If yes, complete the following information:

    Date and place of marriage _____

    Spouse/Domestic Partner _____ Date of Birth _____
               First Name          Middle Name          Last Name          Maiden Name
                      (If none, indicate)

    Home Phone _____ Business Phone _____ Birthplace _____

    Cell Phone _____ Fax _____ Email _____

    Social Security No. _____ Driver's License No. _____

    List any other name you have used or been known by _____

    State of residence _____ I have lived continuously in the U.S.A. since _____

### CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____
(if more space is required, use reverse side of form)

### RESIDENCES (LAST 10 YEARS)

_____
Number & Street                              City                              From (date) to (date)

_____
Number & Street                              City                              From (date) to (date)
(if more space is required, use reverse side of form)

### OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

_____
Firm or Business Name                        Address                           From (date) to (date)

_____
Firm or Business Name                        Address                           From (date) to (date)
(if more space is required, use reverse side of form)

### SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

_____
Firm or Business Name                        Address                           From (date) to (date)

_____
Firm or Business Name                        Address                           From (date) to (date)
(if more space is required, use reverse side of form)

## STATEMENT OF INFORMATION
## CONFIDENTIAL INFORMATION FOR YOUR PROTECTION
(continued)

### PRIOR MARRIAGE(S) and PRIOR DOMESTIC PARTNERSHIP(S)

Any prior marriages or domestic partnerships for either person? _____ If yes, complete the following:

Prior spouse's (Party A) name: _____ Prior Spouse of Party A: _____

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification    Date of Death/Divorce: _____

Prior spouse's (Party B) name: _____ Prior Spouse of Party B: _____ Spouse

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification    Date of Death/Divorce: _____

(if more space is required, use reverse side of form)

### INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction: ☐ Yes    ☐ No

### Owner to complete the following items

Street Address of Property in this transaction: _____

The land is ☐ unimproved; or improved with a structure of the following type: ☐ A Single or 1-4 Family ☐ Condo Unit ☐ Other _____

Improvements, remodeling or repairs to this property have been made within the past six (6) months: ☐ Yes    ☐ No

If yes, have all costs for labor and materials arising in connection therewith been paid in full?    ☐ Yes    ☐ No

Any current loans on property? _____ If yes, complete the following:

Lender_____ Loan Amount_____ Loan Account No. _____

Lender_____ Loan Amount_____ Loan Account No. _____

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____        _____
            Signature                              Date

_____
Print Name

_____        _____
            Signature                              Date

_____
Print Name

(Note:  If applicable, both spouses/domestic partners must sign.)
**THANK YOU.**

# EXHIBIT 5

Exhibit 5
Page 88

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

$106.00

```
*$R 0 0 1 5 7 7 9 0 0 0 $*
```

**2025000244699 01:54 pm 09/04/25**

90 CR-SC06 A45 4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00 75.00 10.00

**RECORDING REQUESTED BY
LOURDES R. SLINSKY, ESQ.**

WHEN RECORDED MAIL TO:

LOURDES R. SLINSKY, ESQ.
SBN: 231537
MODLIN SLINSKY, P.A.
1551 SAWGRASS CORPORATE PKWY
SUITE 110 SUNRISE, FL 33323

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# TITLE(S)

ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT

Exhibit 5
Page 89

19158281          **EJ-100**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*

After recording, return to:
Lourdes R. Slinsky, Esq. SBN 231537
Kambrie L. Keith, Esq. SBN 303847
Modlin Slinsky, P.A.
1551 Sawgrass Corporate Parkway, Suite 110
Sunrise, FL 33323
DFPI License # 11136-99

TELEPHONE NO.: 888-323-4577     FAX NO. 754-551-5791
E-MAIL ADDRESS (*Optional*): PLEADINGS@LSSMLAW.COM
☒ ATTORNEY   ☒ JUDGMENT   ☐ ASSIGNEE
FOR          CREDITOR      OF RECORD

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 700 CIVIC CENTER DR WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA CA 92702
BRANCH NAME: CENTRAL JUSTICE CENTER

*FOR RECORDER'S OR SECRETARY OF STATE'S USE ONLY*

PLAINTIFF: American Express National Bank, Successor by Merger to American Express Bank, FSB
DEFENDANT: Jeff Gomez, aka Jeffery A Gomez, aka Jeffery Adam Gomez, aka Jeffrey A Gomez, an individual

CASE NUMBER:
30-2020-01125756-CL-CL-CJC

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**
☒ **FULL**    ☐ **PARTIAL**    ☐ **MATURED INSTALLMENT**

*FOR COURT USE ONLY*

1. Satisfaction of the judgment is acknowledged as follows:
   a. ☒ Full satisfaction
      (1) ☐   Judgment is satisfied in full.
      (2) ☒   The judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment.
   b. ☐ Partial satisfaction
      The amount received in partial satisfaction of the judgment is $
   c. ☐ Matured installment
      All matured installments under the installment judgment have been satisfied as of (*date*):

2. Full name and address of judgment creditor:*
   American Express National Bank, Successor by Merger to American Express Bank, FSB
   c/o Modlin Slinsky, P.A. 1551 Sawgrass Corporate Parkway, Suite 110, Sunrise FL, 33323

3. Full name and address of assignee of record, if any:

4. Full name and address of judgment debtor being fully or partially released:*
   Jeff Gomez, aka Jeffery A Gomez, aka Jeffery Adam Gomez, aka Jeffrey A Gomez, an individual
   1388 AUGUSTA DR, UPLAND CA 91786

5. a. Judgment entered on (*date*): AUGUST 13, 2021
   b. ☐ Renewal entered on (*date*):

6. ☒ An ☒ abstract of judgment ☐ certified copy of the judgment has been recorded as follows (*complete all information for each county where recorded*):

| COUNTY | DATE OF RECORDING | INSTRUMENT NUMBER |
|---|---|---|
| ORANGE | 09/09/2021 | 2021000564588 |
| ORANGE | 09/09/2021 | 2021000564869 |

7. A notice of judgment lien has been filed in the office of the Secretary of State as file number *(specify)*:

**NOTICE TO JUDGMENT DEBTOR:** If this is an acknowledgment of full satisfaction of judgment, it will have to be recorded in each county shown in item 6 above, if any, in order to release the judgment lien, and will have to be filed in the office of the Secretary of State to terminate any judgment lien on personal property.

Date: 08/25/2025 _____ ►

_____
*(SIGNATURE OF JUDGMENT CREDITOR OR ASSIGNEE OF CREDITOR OR ATTORNEY**)*

*The names of the judgment creditor and judgment debtor must be stated as shown in any Abstract of Judgment which was recorded and is being released by this satisfaction. ** A separate notary acknowledgment must be attached for each signature.*

Form Approved for Optional Use
Judicial Council of California
EJ-100 [Rev. July 1, 2014]

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**

Page 1 of 1
Code of Civil Procedure, §§ 724.060
724.120, 724.250

Exhibit 5
Page 90

State of Florida

County of Broward

Subscribed and sworn to (or affirmed) before me on this _4th_ day of
_SeptemBer_, 20 _25_

by _Lourdes R. Slinsky_ proved to me on the basis of satisfactory evidence to be the
person who appeared before me.

(Signature of Notary)

MARIA PAULA HERNANDEZ
Commission # HH 230796
Expires June 18, 2026

Exhibit 5
Page 91

**PROOF OF SERVICE**

STATE OF FLORIDA, COUNTY OF BROWARD

I am employed in the County of Broward, State of Florida, I am over the age of eighteen years and am not a party to this action; my business address is Modlin Slinsky, P.A., 1551 Sawgrass Corporate Parkway, Suite 110, Sunrise, FL 33324, and my business email address is pleadings@lssmlaw.com.

On September 4, 2025, I served a copy of the foregoing document(s) described as

**SATISFACTION OF JUDGMENT, CASE # 30-2020-01125756-CL-CL-CJC** on the interested

parties in this action at their last known address as set forth below by taking the action

described below:

Jeff Gomez, aka Jeffery A Gomez, aka Jeffery Adam Gomez, aka Jeffrey A Gomez, an individual
1388 AUGUSTA DR
UPLAND CA 91786

☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I understand that service shall be presumed invalid upon motion of a party served if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained on this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at **Sunrise, Florida.**

☐ **BY ELECTRONIC SERVICE VIA NATIONWIDE LEGAL:** I caused the above entitled document(s) to be served through the Nationwide Legal e-filing portal. A copy of the Nationwide Legal receipt/confirmation will be maintained with the document(s) served by this office.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 4, 2025, at Sunrise, Florida.

_Lourdes Slinsky_
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

**SERVICE SATISFACTION OF JUDGMENT, VERIFICATION OF SIGNATURE FOR SATISFACTION OF JUDGMENT, PROOF OF SERVICE SATISFACTION OF JUDGMENT**

Exhibit 5
Page 92