1  **NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
2  3090 Bristol Street #400
Costa Mesa, CA 92626
3  Tel: 949.312.1377
Fax: 949.288.2054
4  *ben@nexusbk.com*

5  Attorney for Plaintiff

6  **UNITED STATES BANKRUPTCY COURT**

7  **CENTRAL DISTRICT OF CALIFORNIA**

8  **SANTA ANA DIVISION**

9  In re:                                  **Case No: 8:24-bk-12527-SC**

10  KRISTINA LYNN SMITH,                   **Chapter 7**

11        Debtor.                          **Adv. No:**

12                                         **ADVERSARY COMPLAINT FOR:**

13  JEFFREY ADAMS GOMEZ, an individual,        1.  **DECLARATORY RELIEF**

14        Plaintiff,                               **(28 U.S.C. §2201)**

15  v.                                         2.  **DISALLOWANCE OF CLAIMS**

16                                                 **(11 U.S.C. §502)**

17  STEGMEIER, GELBART, SCHWARTZ &
BENAVENTE, LLP, THE NESHANIAN
    LAW FIRM, INC. and R & S LAW GROUP,
18  APC,

19        Defendants.

20

21        Plaintiff JEFFREY ADAMS GOMEZ ("Plaintiff") alleges as follows against Defendants

22  STEGMEIER, GELBART, SCHWARTZ & BENAVENTE, LLP ("SGSB"), THE

23  NESHANIAN LAW FIRM, INC. ("Neshanian"), and R&S LAW GROUP, APC, ("R&S").

24                          **I. JURISDICTION AND VENUE**

2   1.  This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

26        U.S.C. §§1334 and 157(a).

27

28

2. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(K) (determinations of the validity, extent, or priority of liens) and §157(b)(2)(B), and (O) (allowance of claims against estate or exemptions; proceedings affecting the liquidation of assets).

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. §1409(a) because the underlying Chapter 7 bankruptcy case, *In re Kristina Lynn Smith*, Case No. 8:24-bk-12527-SC, is pending in this Court.

4. This Court has retained jurisdiction over the proceeds of the sale of the subject real property pursuant to its Order approving the sale entered following the hearing on February 17, 2026. As stated in the Court's tentative ruling, "[a]ny dispute regarding lien amounts, priorities, or allocation attaches to the sale proceeds and may be addressed in subsequent proceedings."

## II. PARTIES

5. Plaintiff, Jeffrey Adams Gomez ("Plaintiff" or "Gomez"), is a party in interest in the underlying bankruptcy case, co-owner of the Kathy Court Property, and former spouse of the Debtor.

6. Defendant, Stegmeier, Gelbart, Schwartz & Benavente ("SGSB"), is a law firm that is alleging a claim against the sale proceeds and against Plaintiff's homestead exemption.

7. Defendant, The Neshanian Law Firm, is a law firm that is alleging a claim against the sale proceeds and against Plaintiff's homestead exemption.

8. Defendant, R & S Law Group, is a law firm that is alleging a claim against the sale proceeds and against Plaintiff's homestead exemption.

## III. FACTUAL BACKGROUND

9. Plaintiff is a retired Los Angeles County Firefighter and real estate investor. While employed as a firefighter and continuing thereafter, Plaintiff founded and operated the nationally recognized home buying service WeBuyHousesForCash.com, which had affiliates across the country. **See Company Website, a true and correct screenshot of**

**which is attached hereto as Exhibit A.** Plaintiff's livelihood has depended on his ability to buy, sell, and refinance real property.

10. The Plaintiff and Debtor were married in 2003. The parties separated in 2016 and initiated dissolution proceedings (Orange County Case No. 17D000590). The nearly decade-long divorce case has been extremely contentious and expensive.

11. Although the Plaintiff vacated the Kathy Court Property upon separation, because it is undivided community property and the Debtor continuously resided there, Plaintiff retained his homestead exemption rights pursuant to California Code of Civil Procedure § 704.720(d).

12. Throughout the divorce proceeding, SGSB billed approximately $1.5 million in attorneys' fees, of which they successfully collected approximately $1.2 million. Plaintiff personally paid $353,500 of that amount as part of a staggering fee award issued by a private *pro tem* judge who had a personal and professional relationship with SGSB's counsel, which had not been disclosed prior to his appointment. While Plaintiff disputed the award, he ultimately complied with the judgement and made the required payment.

13. When Plaintiff filed a motion in Superior Court to remove the case from this private judge, SGSB vehemently opposed it. After Plaintiff prevailed and the *pro tem* judge was removed, SGSB abandoned its representation of the Debtor. Recently, SGSB returned to the case in furtherance of the Debtor's attempt to invalidate the parties' Premarital Agreement, which directly impacts SGSB's ability to collect its own fees.

14. To secure these disputed fees, SGSB pursued an aggressive asset-freeze strategy which repeatedly interfered with Plaintiff's ability to maintain continuous legal representation. SGSB filed liens across Plaintiff's real estate portfolio and went so far as to place liens on the client trust accounts of Plaintiff's prospective legal counsel. This included a lien on the trust account of retained attorney James Bastian, and similar tactics which forced the law firm of Navid Moshtael to withdraw as counsel of record. **See Correspondence from James Bastian, a true and correct copy which is attached as Exhibit B.**

15. This overly aggressive collection strategy directly resulted in the defective, redundant, and misapplied liens that now burden this bankruptcy estate. The coordinated asset freeze effectively prevented Plaintiff from accessing equity in his properties, forced him to represent himself in family court for years, and destroyed his ability to conduct real estate transactions during a period of historic appreciation in California real estate values.

16. Furthermore, SGSB's claims run directly contrary to the parties' August 4, 2003 Premarital Agreement which was notarized and certified by independent counsel. **See Premarital Agreement, attached hereto as Exhibit C.** Paragraph 7 provides:

**"Any debt or obligation generated during the marriage shall be the sole responsibility of the party generating said debt or obligation. As between the parties, and any third party creditors, only the assets and income of the generating party shall be available for paying the debts and obligations of the party generating the debt, and not any separate property of the non-generating party."**

Despite this provision, SGSB continually sought to enforce the Debtor's attorney fee obligations against Plaintiff's separate property.

17. SGSB and the Debtor filed multiple liens and Family Law Attorney Real Property Liens ("FLARPLs") against the parties' community property and Plaintiff's sole and separate properties located throughout Southern California, including the following twelve properties, which compromise both community and unequivocally separate property:

- 1388 Augusta Drive, Upland
- 12942 Chestnut Ave, Rancho Cucamonga
- 7013 Ramona Ave, Rancho Cucamonga
- 404 Rancho Ave, San Bernardino
- 739 West H Street, Ontario
- 1010 Moffat Street, Rialto
- 4343 Alamitos Street, Montclair
- 14227 Weeping Willow Lane, Fontana

- 587 West Winchester Drive, Rialto
- 3588 North Lugo Avenue, San Bernardino
- 137 South Terrace Road, San Bernardino
- 27591 Kathy Ct, Laguna Niguel

18. On March 14, 2019, an order was entered against Plaintiff in favor of SGSB for approximately $353,500.00 (the "Fee Award"). To satisfy this Fee Award, Plaintiff was forced to liquidate four of his separate properties.

19. Through the sale of the Home Street property on August 1, 2019, escrow directed a payment of $125,000.00 to SGSB. **See Home St. Final Closing Statement, attached hereto as Exhibit D**. During this closing, SGSB interfered with the escrow process when Saul Gelbart, attorney and firm partner, contacted the escrow company at the eleventh hour to instruct them to remove his name from closing documents. **See Amendment to Stipulation and Order, attached hereto as Exhibit E.** When Plaintiff halted the closing in response, Gelbart threatened an ex parte motion and the appointment of an elisor to force terms favorable to SGSB. **See Email from Saul Gelbart, attached hereto as Exhibit F.** Ultimately, SGSB received the $125,000.00 from escrow but credited Plaintiff with only $62,500.00, diverting the remaining 50% to the Debtor without any court order or other legal basis to do so.

20. Despite full payment of the Fee Award through these multiple property sales, SGSB refuses to release its lien. Because this judgment falsely appears on title and in public records as partially unsatisfied, it continues to directly interfere with Plaintiff's business. SGSB now asserts a claim against the bankruptcy estate for approximately $85,000, alleging unpaid balances and accrued interest.

21. In addition to the Fee Award lien, SGSB recorded a FLARPL against the Kathy Court Property on January 5, 2023. SGSB asserts a claim against the estate for approximately $300,000 pursuant to this FLARPL.

22. This additional FLARPL is procedurally defective and void. It was recorded in direct violation of California Family Code § 2033(c), which governs the allowance of

*Adversary Complaint*

FLARPLs. Plaintiff timely served a written objection to the FLARPL, which strictly required SGSB to obtain court authorization before recording. SGSB ignored this statutory requirement, set no court hearing, and recorded the lien anyway.

23. Furthermore, the additional FLARPL was recorded in violation of a prior, executed stipulation between the parties that expressly prohibited FLARPLs from being recorded against the Kathy Court property. **See Stipulation Regarding Kathy Court, attached hereto as Exhibit G**.

24. Additionally, Defendant R&S, who also represented Debtor, is now attempting to enforce a claim against the sale proceeds of the Kathy Court property by seeking to attach to Plaintiff's homestead exemption.

25. Defendant Neshanian, who also represented Debtor, similarly asserts a judgment lien of approximately $98,000.00 against the Property and seeks to attach to Plaintiff's homestead exemption.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Declaratory Relief & Disallowance of Claim - R&S Law Group)

26. Plaintiff realleges and incorporates Paragraphs 1 through 25.

27. Plaintiff and Debtor are entitled to an automatic homestead exemption in the Kathy Court Property and in the proceeds of its forced sale.

28. To the extent R&S asserts a claim or lien against the proceeds of the Kathy Court Property, said claim is junior to, and cannot impair, Plaintiff's valid homestead exemption.

29. R&S's claim should be disallowed and/or declared unenforceable to the extent that it impairs Plaintiff's homestead exemption.

///

///

///

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief & Disallowance of Claim - SGSB)

30. Plaintiff realleges and incorporates Paragraphs 1 through 29.

31. The claim asserted by SGSB based upon the March 14, 2019 Fee Award should be disallowed in its entirety pursuant to 11 U.S.C. § 502, as the debt has been satisfied and paid in full via the proceeds from the sales of the Home Street, Ashbury Lane, Rancho, and Chestnut properties.

32. Additionally, any claim asserted by SGSB against Plaintiff's share of the proceeds must be disallowed because the August 4, 2003 Premarital Agreement expressly prohibits the collection of Debtor's generated debts and attorney fees from Plaintiff's separate assets.

33. Furthermore, the $300,000 claim asserted by SGSB pursuant to the FLARPL recorded against the Kathy Court property must be disallowed, and the lien declared void as a matter of law. The FLARPL was recorded in violation of California Family Code § 2033(c) because Plaintiff timely objected to the recording of the lien, yet SGSB recorded the instrument without obtaining the requisite court order authorizing the lien.

34. The FLARPL is additionally void and unenforceable because it was recorded in direct breach of a valid, executed stipulation between the parties expressly prohibiting the recording of a FLARPL against the Kathy Court property.

35. To the extent any portion of SGSB's claim is found to be valid, it should be disallowed and declared unenforceable to the extent it impairs Plaintiff's homestead exemption.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief & Disallowance of Claim - Neshanian)

36. Plaintiff realleges and incorporates Paragraphs 1 through 35.

37. To the extent Neshanian asserts a judgment lien against the proceeds of the Kathy Court Property, said lien is junior to Plaintiff's Homestead Exemption.

38. Neshanian's claim should be disallowed and declared unenforceable to the extent that it impairs Plaintiff's homestead exemption.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1. For a determination that R&S's claim is disallowed to the extent it impairs Plaintiff's homestead exemption in the Kathy Court Property;

2. For an order disallowing SGSB's claim regarding the Fee Award in its entirety as having been paid and satisfied in full;

3. For a determination that the Premarital Agreement bars collection of SGSB's claims from Plaintiff's assets;

4. For an order declaring the FLARPL recorded by SGSB against the Kathy Court Property void, invalid, and unenforceable for failure to comply with California Family Code § 2033 and for breach of the parties' prior stipulation;

5. For a determination that any remaining valid portion of SGSB's claim is disallowed to the extent it impairs Plaintiff's homestead exemption in the Kathy Court Property;

6. For a determination that the Neshanian claim is disallowed to the extent it impairs Plaintiff's homestead exemption in the Kathy Court Property;

7. For costs of suit and attorneys' fees; and

8. For such other and further relief as the Court deems just and proper.

NEXUS BANKRUPTCY

Date: March 14, 2026                                    /s/Benjamin Heston
                                                        BENJAMIN HESTON,
                                                        Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
2
26
27
28

# EXHIBIT A



# WeBuyHousesForCash.com
## "America's #1 Home Buying Service"

SELL YOUR HOUSE FAST | STOP FORECLOSURE | CONTACT YOUR LOCAL AFFILIATE | ABOUT US



## Instant Cash Offer

For an instant cash offer on your property within 48 hours or less

Click Here Now!

## Free Report
( $ 47 Value )

Amazing Secrets of Selling Your House For Cash In 7 Days Or Less!

Click Here Now!

## Stop Foreclosure

For a free report on how to stop foreclosure

Click Here Now!

## Ask An Expert

If you have a real estate question that you need answered.

# WE BUY HOUSES!
## Any Reason, Any Condition

- Are you behind in payments?
- Relocation / Job Transfer?
- Is your house vacant?
- Need to settle an estate?
- Expired Listing?

- Bad Tenants?
- Facing Foreclosure?
- Divorce?
- Tax Liens?
- Fire Damage?

### Get A Cash Offer On Your House Today!

Full Name:*

Email:*

Daytime Phone with Area Code:*

Evening Phone with Area Code:*

Property Address: *

City: *

Zip Code: *

State / Province:*

County:*
None Near Me

How did you hear about us?
Select

Repairs Needed / Comments:

Click Here To Get A Cash Offer NOW >>>

## We'll Give You A Quick Offer

### Testimonials

"We had our property listed with a realtor for more than 6 months with no offers. We contacted our local **WeBuyHousesForCash** affiliate, and they presented to us an all cash offer within 48 hours. The service that **WeBuyHousesForCash** provides is invaluable. Not only did they offer us a fair price on our property, they closed escrow in less than 7 days!"

Steve Larson
Atlanta, Georgia

"I accepted a job transfer out of state and had two weeks to sell my house. WeBuyHousesForCash had a solution for my problem.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

# EXHIBIT B

16
17
18
19
20
21
22
23
24
2
26
27
28

# M Gmail

Jeff Adams <jeffadamsrei@gmail.com>

---

## RE: Jim Bashon called last night @ 5:25- 949 340-3405 or his cell # 949 689-4394

2 messages

---

**Jim Bastian** <JBastian@shbllp.com>
To: Saul Gelbart <sgelbart@sgsblaw.com>

Fri, Aug 9, 2019 at 11:41 AM

Saul:

We received a levy at our office earlier this week and responded that we have no funds for Jeff Gomez. I also see that you have levied Jeff's accounts, including an account that holds his exempt disability and pension benefits from LA Fire. The attached documentation shows that the funds in the B of A account you levied are fully exempt.

Further, the funds he collects on his pension and disability are used to pay the mortgage on Kathy Ct. and other accounts are used to maintain the mortgage payments and related expenses on the rental properties still at issue in the dissolution proceeding.

I was a bit surprised to see you take this aggressive collection action given the amounts just paid to you and your client from the sale of Ashbury and Home St. While I understand you have a substantial balance remaining, it seemed odd to me that you would be pursuing funds that appear to directly benefit your client and the community estate. Was that your intention? Given the attached documentation supports the exempt status of the funds you levied, are you willing to release the levy on this account?

Further, as to other accounts you have levied, if you can confirm that the funds will only be used to maintain the real properties, are you willing to release those levies?

Jeff is in the process of getting new counsel and the first order of business will be to address your collection actions which appear to be at odds with your client's interests. In order to avoid needless litigation over this and the associated costs, would you be amenable to withdrawing the levies against his exempt retirement funds and any accounts that are necessary to maintain the rental properties? Further, as I have said before, I would like to see if I can help the parties resolve the property issues. Are you open to that?

Let me know. Thanks.

Jim

James C. Bastian, Jr.

Saul Gelbart, Esq. | Partner

Certified Family Law Specialist

Fellow, American Academy of Matrimonial Lawyers

Fellow, International Academy of Family Lawyers

 STEGMEIER
GELBART
SCHWARTZ
BENAVENTE

19762 MacArthur Boulevard, Suite 200 | Irvine, California 92612

Tel: 949.337.4050 | Fax: 949.337.4059 | www.sgsblaw.com

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Tuesday, July 23, 2019 4:49 PM
**To:** Saul Gelbart <sgelbart@sgsblaw.com>
**Subject:** Lien against attorney trust account

Hi Saul.

I have been advised that you apparently levied or put a lien against Jeff's FL attorney's trust account which is apparently causing them to want to withdraw from the representation. Given the sums you will be paid out of the pending sales of real property starting tomorrow, are you willing to withdraw any lien or levy so that I can try to restore Jeff's representation?

I am trying to help him (and indirectly, you) resolve various issues right now that will hopefully lead to an environment where I can work with you on a global settlement between him and Kristina. Let me know. Thanks.

Jim

**James C. Bastian, Jr.**
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

Gmail - RE: Smith: Lien against attorney trust account    Case 8:26-ap-01028-SC    Doc 1    Filed 03/14/26    Entered 03/14/26 14:25:41    Desc
Main Document    Page 14 of 43

1/7/26, 1:37 PM

**M** Gmail

Jeff Adams <jeffadamsrei@gmail.com>

## RE: Smith: Lien against attorney trust account
1 message

**Jim Bastian** <JBastian@shbllp.com>
To: Saul Gelbart <sgelbart@sgsblaw.com>

Wed, Jul 24, 2019 at 11:18 AM

Saul:

I have no intention of representing Jeff in the dissolution proceedings.  Jeff has asked me to assist him in connection
with some discrete issues in light of his financial condition and to avoid incurring thousands of dollars in fees and
costs, which is having a huge impact on him.  Given the amounts that have already been spent, and the remaining
issues to be resolved or litigated, it is clear to me that a large chunk of the remaining marital estate will be eroded if a
settlement is not reached.  I serve as a mediator and arbitrator, and have built a career on settling complicated cases.
Given my understanding of the assets that remain to be fought over, and the financial condition of the parties, I think it
makes sense for the parties to try and settle the property issues.  I have offered my assistance to Jeff in this regard
and he has asked me to reach out to you to see if you and your client are willing to work with me toward a settlement
of these issues.

Further to this, because debt collection matters are within my expertise, Jeff has also asked me about the liens you
have asserted and to see if I can help resolve those issues so he can confirm representation in the dissolution
proceeding by his current counsel.  Ironically, I am assisting our common client on similar issues given the debt
collection activity he is facing.  I am simply trying to clear the decks in the Smith/Gomez case now that you and your
client are going to be receiving substantial sums (which is in large part the result of my efforts) and try to create an
environment where litigation can be avoided and some resolution achieved.

This is not really that complicated.  I cannot make you engage with me on this but it seems to make a whole lot of
sense for everyone, your client included.

Let me know if you are interested in exploring this.  Thanks.

Jim


James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

Fellow, American Academy of Matrimonial Lawyers

Fellow, International Academy of Family Lawyers



19762 MacArthur Boulevard, Suite 200 | Irvine, California 92612

Tel: 949.337.4050 | Fax: 949.337.4059 | www.sgsblaw.com

---

**From:** Jill Mertan <jmertan@sgsblaw.com>
**Sent:** Friday, August 9, 2019 8:30 AM
**To:** Saul Gelbart <sgelbart@sgsblaw.com>
**Subject:** Jim Bashon called last night @ 5:25- 949 340-3405 or his cell # 949 689-4394

Best,

Jill Mertan | Receptionist



19762 MacArthur Boulevard, Suite 200 | Irvine, California 92612

Tel: 949.337.4050 | Fax: 949.337.4059 | www.sgsblaw.com

---

**2 attachments**

 **CCF09082019.pdf**
1896K

**bank statement june19.pdf**
362K

*Partner*
jbastian@shbllp.com
http://www.shbllp.com



SHULMAN
HODGES &
BASTIAN LLP

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000

**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303



Follow us on Linked In! 

-

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment is is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** Saul Gelbart <sgelbart@sgsblaw.com>
**Sent:** Friday, August 9, 2019 10:08 AM
**To:** Jim Bastian <JBastian@shbllp.com>
**Subject:** FW: Jim Bashon called last night @ 5:25- 949 340-3405 or his cell # 949 689-4394

Jim,

I'm in San Diego this week. I cannot step out easily to make calls. What do you need?

Saul Gelbart, Esq. | Partner

Certified Family Law Specialist

# EXHIBIT C

# PREMARITAL AGREEMENT

On _Aucust 4th_, 2003, in the City of Upland, County of San Bernardino, State of California, the parties hereto, enter into this agreement with respect to their respective marital rights for the following reasons and with reference to the following facts:

## Parties

1. **Jeffery Adam Gomez** and **Kristina Smith**, in contemplation of their future marriage, do hereby enter into this Premarital Agreement.

## Purpose

2. **(a) Intent to define property rights:** The parties enter into this Agreement for the purpose of defining their respective property rights following their contemplated marriage. They intend that all property owned by either of them at the time of the marriage, acquired before marriage, shall remain the separate property of the party who acquired, and owned that property. The parties further intend to avoid any interests which, except for the operation of this Agreement, each of them might acquire in the property of the other as incidents of their marital relationship.

   **(b) Conditioned upon marriage:** This agreement is entered into in consideration of marriage, and its effectiveness is expressly conditioned upon such marriage between the parties actually taking place; and if, for any reason, the marriage is not consummated, the agreement will be of no force or effect.

   **(c) Intent to provide for spouse and children:** Jeffery Adam Gomez desires to make a fair and adequate provision for Kristina Smith and for the children they may have in the future.

   **(d) Respective Contributions to Household:** The parties desire to define the respective contributions each will make to the expansion and maintenance of the household from their efforts and property as set forth herein.

   **(e) Intent that Property Remain Separate:** The parties desire that all property owned by either of them before marriage shall remain separate, but property which they acquire from earnings during their marriage shall be community property.

2

## Disclosure of Property

3. (a)  Each party has made a full and complete disclosure to the other party of all property which he or she owns.  A list of all property owned by Jeffery Adam Gomez, is set forth in Exhibit A, which is attached to and made a part of this contract.  A list of all property owned by Kristina Smith, is set forth in Exhibit B, which is attached to and made a part of this Agreement.

(b)  The parties understand that the figures and amounts set forth in Exhibits A and B are approximately correct and not necessarily exact, and that they reflect the values of the listed property on or about the date of this Agreement.

(c)  Each party acknowledges that he or she has read Exhibits A and B, that he or she is entering into this Agreement freely and voluntarily, and that he or she understands the contents of this Agreement.

## Children of Prospective Spouses

4.  The parties acknowledge and represent each to the other that neither of them has any child from any prior relationship prior to this marriage.

5.      (a) Kristina Smith  agrees that all property of any nature or in any place, belonging to Jeffery Adam Gomez at the commencement of the marriage, shall be the separate property of Jeffery Adam Gomez and shall be subject to his disposition as his separate property, in the same manner as if no marriage had been entered into.

(b) Jeffery Adam Gomez agrees that all property of any nature or in any place, belonging to Kristina Smith at the commencement of the marriage, shall be the separate property of Kristina Smith and shall be subject to her disposition as separate property, in the same manner as if no marriage had been entered into.

3

## Release of Marital Rights to Separate Property

6.    (a)  The parties mutually agree to waive and release any and all equitable or legal claims and rights, actual, inchoate, or contingent which he or she may acquire in the separate property of the other by reason of their marriage, including but not limited to:

(1)  The right to a family allowance.
(2)  The right to a probate homestead.
(3)  The right to claims of dower, curtesy, or any statutory substitutes provided by the laws of the state in which the parties or either of them die domiciled or in which they own real property.
(4)  The right of election to take against the Will of the other.
(5)  The right to a distributive share in the estate of the other should he or she die intestate.
(6)  The right to declare a homestead in the separate property of the other.
(7)  The right to act as personal representative, trustee, or attorney-in-fact, of the other's estate.
(8)   All community property rights except as stated herein.

(b)  Nothing in this Agreement shall be deemed to constitute a waiver by either party of any bequest or devise that the other party may choose to make to him or her by Will, Codicil, or any Trust Declaration which may be entered by either party after marriage.  However, the parties acknowledge that neither of them has made promises of any kind to the other regarding any bequest or devise.

(c) Nothing in this Agreement is intended to prohibit the parties, after marriage, from voluntarily contributing from their respective separate assets and earnings to acquisition of jointly held investments, or from taking title to property or assets as "Husband and Wife, as community property".

4

## Living Expenses

5.      Kristina Smith is currently self-employed as a recruiter and is 33 years of
age; Jeffery Adam Gomez is currently employed as a fire captain as well as
being self-employed as a real estate developer/investor and is 38 years of age.
Both are in good health.  The parties agree that upon marriage they will open a
joint checking account which they shall maintain for the purpose of paying
their joint living expenses such as food, utilities, residential property taxes,
insurance and maintenance, and transportation costs. Jeffery Adam Gomez
intends to deposit into that joint account all income from his employment as
well as a reasonable salary from management of his separate investment assets.
All contributions to the joint account shall be deemed the community property
of the parties, once deposited there.
        Except for funds contributed by the parties to the joint account, neither
party shall be entitled to make a claim on the earnings and income of the other
spouse, of whatever nature.

## Joint Residential Property

6.  Prior to marriage, Jeffery Adam Gomez became the owner of two separate
residences in which he resides.  The parties anticipate using one of those
residences, that one located at 1388 Augusta Drive, Upland, as their initial
marital residence, but ownership and the liabilities of both of these homes shall
remain the separate property and obligation of Jeffery Adam Gomez. Jeffery
Adam Gomez intends, after marriage, to purchase a home selected by the
couple together.  That home shall be their joint family residence, title to which
will be taken in the names of both husband and wife as community property,
or placed in a living trust for the benefit of both parties and their children, if
any.
        During the time that the parties are living in the residence on Augusta
Drive in Upland, all mortgage payments, property taxes, homeowner's
insurance, repairs and interior décor shall be community expenses paid from
the joint account of the couple.

        The provisions of this section shall apply to any replacement residential
property that the parties may acquire during the course of their marriage,
whether the residence is another home, condominium, or retirement dwelling.

5

## Debts Incurred During Marriage

7.  The parties agree that any debts or obligations generated during the marriage shall be the sole responsibility of the party generating said debt or obligation.  As between the parties, and any third party creditors, only the assets and income of the generating party shall be available for paying the debts and obligations of the party generating the debt, and not any separate property of the non-generating party.  If for any reason the non-generating party makes any payment on behalf of the person who generated the debt, he or she shall be entitled to reimbursement from the party who incurred the debt, unless the paying party agreed in writing to undertake the obligation.

The parties have set forth on Exhibits "C" and "D" hereto a complete list of all debts and obligations for which either of them is liable at the time this Agreement is entered.  Jeffery Adam Gomez warrants that the obligations listed on Exhibit "C" are each and every debt he currently owes to any creditor. Kristina Smith warrants that the obligations listed on Exhibit "D" are each and every debt she currently owes to any creditor.  Each party hereby agrees to pay for the debts and obligations he or she has incurred prior to marriage, and hold the other party harmless and indemnify the other against any obligation to any third party incurred by him or her.

## Child Custody & Support

8.       In the event the couple should have children during their marriage together, and in the event that they should ever become separated or divorced, they shall be entitled to share jointly in the custody of the children, with support awarded in a manner that will assure the children may enjoy a lifestyle in both homes comparable to that which they enjoyed while living with both parents together.  If the separation or divorce results from the unfaithfulness of Jeffery Adam Gomez, sole physical custody of the children shall be awarded to Kristina, the children's mother, with child support awarded pursuant to the normal guidelines of the court.

## Retirement Benefits

9.  Both parties acknowledge that Jeffery Adam Gomez is a member of the Los Angeles County Employee Retirement Association, and that at the time of this marriage he has accrued 14 years of retirement benefits which are his separate property and that he intends to continue working for some period after the marriage until he is qualified for retirement at a level desirable to him.

6

Kristina knows that as a spouse to Jeffery she may acquire a legal right to receive a portion of these retirement benefits with her entitlement to share in his retirement benefits based on the proportion of his total period of employment comprised by the number of years of marriage.  Kristina hereby waives, surrenders and agrees to forfeit any right, title, or interest in Jeffery's retirement benefits in Los Angeles county Retirement Association to which she might become entitled by reason of her marriage to Jeffery.  Kristina freely enters such waiver recognizing that other benefits may be available to her from the marriage to Jeffery.

Kristina acknowledges that Jeffery also has investments in a 401K plan through his employment and that she may acquire an interest in those retirement benefits.  Kristina does *NOT* hereby waive, surrender, and or agree to forfeit any right, title, or interest in Jeffery's 401K plan to which she might become entitled by reason of her marriage to Jeffery, and she may also participate in his deferred compensation and thrift plan, to the extent of any accumulations to those funds after marriage to Jeffery.  Kristina knowingly waives any right to benefits accrued prior to her marriage to Jeffery.

The parties acknowledge they will each be entitled to Social Security benefits upon retiring and under the law may be entitled to claim spousal benefits in income from the other.

## Agreement to Provide Life and Health Insurance

10. Jeffery agrees that he will designate Kristina as the primary beneficiary on a policy of life insurance on his life within thirty days after the marriage of the parties.  Jeffery reserves the right to name alternate beneficiaries in the event he survives the primary beneficiary.

Jeffery further agrees to continue making payments of the insurance premiums in order to keep the policy in full force and effect so long as the parties remain man and wife and will not encumber the policy in any; way during their marriage.

In addition to providing life insurance, Jeffery shall pay for and provide a major medical health insurance to provide medical and dental care for Kristina so long as the parties shall remain married.

## Execution of Other Instruments

11. Each party agrees, upon the request of the other, to execute, deliver, and

properly acknowledge whatever additional instruments may be required to carry out the intention of this Agreement and to execute, deliver, and properly acknowledge any deeds or other documents in order that good and marketable title to any separate property can by conveyed by one party free from any claim of the other party acquired by him or her by reason of their marriage. Kristina acknowledges that it may be necessary to execute documents provided by Los Angeles County Employee Retirement Association waiving her right to accrue an interest in Jeffery's retirement benefits, and she freely and voluntarily agrees to sign any and all additional documentation to disclaim and waive such benefits.

## Representation by Separate Counsel

12. Each party acknowledges that he or she has been represented by independent counsel in the negotiation of this Agreement; that counsel representing each party is one of his or her own choosing; and that each party has read this Agreement and that the meaning and legal consequences of this Agreement have been explained to them by their respective counsel.

## Effect of Partial Invalidity

13. If any term, provision, promise, or condition of this Agreement is determined by a court of competent jurisdiction to be invalid, void, or unenforceable, in whole or in part, the remainder of this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

## Binding Effect

14. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, personal representatives, successors, and assigns.

## Integration Clause

15. This Agreement constitutes the entire understanding between the parties concerning the subject matter that it covers. Any oral representations or modification made prior to or after execution of this Agreement shall have no force or effect; provided, however, that this Agreement may be subsequently modified by a writing specifically referring to this Agreement and signed by both parties.

8

## Governing Law

16. This Agreement shall be governed by the laws of the State of California.

## Attorneys' Fees

17. In the event suit or other proceedings are instituted to enforce any of the terms or conditions of this Agreement, the prevailing party in such litigation or proceedings shall be entitled, as an additional item of damages, to such reasonable attorneys' fees and court costs or costs of such other proceedings as may be fixed by any court of competent jurisdiction or other judicial or quasi-judicial body having jurisdiction thereof, whether or not such litigation or proceedings proceed to a final judgment or award.

## Joint Preparation

18. This Agreement shall be deemed to have been prepared jointly by the parties, and any uncertainty or ambiguity, if any, shall not be interpreted against any party but according to the application of the rules of interpretation of contracts.

## Headings

19. The headings of the various paragraphs in this Agreement are for convenience only, and none of them is intended to be any part of the text of this Agreement, nor intended to be referred to in construing any of the provisions of it.

Executed on _Aubust 4th_ , 2003

_Jeffery Adam Gomez_    8/4/2003
**Jeffery Adam Gomez**

_Kristina Smith_ 8/4/2003
**Kristina Smith**

9

State of California          )
County of San Bernardino )  SS.

On _Augest 4_, 2003, before me, Marjorie M. Mikels, NOTARY
PUBLIC personally appeared Jeffery Adam Gomez, personally known to me or
proved to me on the basis of satisfactory evidence to be the person whose
name is subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity and that by his signature on the
instrument the person executed the instrument.

WITNESS my hand and official seal.



State of California          )
County of ~~San Bernardino~~ ) SS.
         Los Angeles

On _August 4_, 2003, before me, Mary Ellen Sambrano NOTARY
PUBLIC, personally appeared Kristina Smith, personally known to me or
proved to me on the basis of satisfactory evidence to be the person whose
name is subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity and that by her signature on the
instrument the person executed the instrument.

WITNESS my hand and official seal.



10

### Certification of Attorney for Kristina Smith

The undersigned hereby certifies that _Steven Brown_ (he or she) is an attorney licensed to practice and admitted to practice in the State of California; that ___he___ (he or she) has been retained by Kristina Smith, a party to the above agreement, and that ___he___ (he or she) has advised that party with respect to this Agreement and has explained to Kristina its meaning an legal effect; and that Kristina Smith has acknowledged her full and complete understanding of the Agreement and its legal consequences, and has freely and voluntarily executed the Agreement in my presence.

_Steven J. Brown_ (Typed name of attorney)

_[signature]_ (Signature of attorney)

_8/04_ ,2003 (Date of Execution)

### Certification of Attorney for Jeffery Adam Gomez

The undersigned hereby certifies that _____ (he or she) is an attorney licensed to practice and admitted to practice in the State of California; that ___she___ (he or she) has been retained by Jeffery Adam Gomez, a party to the above agreement, and that ___she___ (he or she) has advised that party with respect to this Agreement and has explained to Jeffery its meaning and legal effect; and that Jeffery Adam Gomez has acknowledged his full and complete understanding of the Agreement and its legal consequences, and has freely and voluntarily executed the Agreement in my presence.

_[Typed name]_ (Typed name of Attorney)

_[signature]_ (Signature of Attorney)

_August 4_ , 2003  (Date of Execution)

11

# Exhibit A

## Schedule of Separate Property of
## Jeffery Adam Gomez

Retirement:
> LACERA—Los Angeles County employee Retirement Association
>> P.O. Box 7060, Pasadena, CA 91109-7060
>
> Horizons Deferred Compensation and Thrift Plan

Real Property Assets:

> 156 E. 18th Street Trust—dated September 1, 2001, $70,000 owed
> 12942 Chestnut Ave. Trust—dated September 1, 2001, Paid in Full
> 2646 Genevieve Street Trust—dated September 1, 2001, Paid in Full
> 7094-98- Dwight Way Trust—dated September 1, 2001, Paid in Full
> 404 Rancho Ave. Trust—dated September 1, 2001, Paid in Full
> 1388 Augusta Drive Trust—dated December 1, 2002
> 213- 40th Street Trust—dated June 1, 2003

Bank Accounts:

> F & A Federal Credit Union--$200,000

Businesses:

> 2nd Alarm Inc., 100% of the issued shares of stock; (business corporation).

12

## Exhibit B

## Schedule of Separate Assets of
## Kristina Smith

Business:

### KRISTIAN KELLER

Proceeds from pending lawsuit:
Case No. _____ See below in the _____ County
Superior Court, in which Kristina Smith is a plaintiff.


SMITH VS SPHERION , orange county, ca                    LS
attorney Russell Thomas
sexual harassment, breach of contract, hostile work
environment, and cause of emotional and physical
duress.


SMITH vs. Spherion , orange County, Ca              KS
attorney Lora Herveter
Workmans Compensation Lawsuit

13

## Exhibit C

## Schedule of Separate Obligations
## Of Jeffery Adam Gomez

Loan from Vineyard Bank                              $25,000

Note Secured by Deed of Trust on Augusta Dr. property
                                                    $278,000

Note Secured by Deed of Trust on Newport Beach property
                                                    $650,000

Note Secured by Deed of Trust on 18th Street property
                                                    $70,000

## Exhibit D

### Schedule of Separate Obligations
### Of Kristina Smith

- credit card                    $14,500.00              KS

- auto lease                     $466.30 / 14 months  KS

Art, Antiques, collectibles        worth approx. $30,000 (asset)  KS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
# EXHIBIT D
16
17
18
19
20
21
22
23
24
2
26
27
28



**BELLE VISTA ESCROW, INC.**
273 North Euclid Ave., Upland, CA 91786
**Tel.** 909-946-9188   **Fax.** 909-946-7846

## SELLER(S) FINAL CLOSING STATEMENT

**ESCROW NO:** 27479 - MT
**LOAN NUMBER:**
**DATE:** 5/11/2020
**TIME:** 02:16 PM
**SELLER(S):** JEFF GOMEZ and KRISTINA LYNN SMITH

**REVISED DATE:**
**CLOSING DATE:** 8/1/2019
**SETTLEMENT DATE:**
**DISBURSEMENT DATE:**

**PROPERTY ADDRESS:** 951 E. HOME STREET, RIALTO, CA 92376

| | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | $   300,000.00 |
| **Prorations** | | |
| County Taxes @ $1,329.39 for 6  Months  From 7/1/2019 Thru 8/1/2019 | $      228.95 | |
| **Commissions** | | |
| NEW HARVEST REALTY, INC. | $    7,500.00 | |
| SYNERGY ONE REAL ESTATE SERVICES | $    6,000.00 | |
| **Title Charges - WESTMINSTER TITLE COMPANY** | | |
| **[Total Title Charges: $8,435.46]** | | |
| Title - Owners Policy For $300,000.00 | $    1,166.00 | |
| Title - Sub Escrow Fee | $       62.50 | |
| Title - Messenger Fee | $       18.00 | |
| Title - Wire Fee | $       45.00 | |
| title recording service fee | $       20.00 | |
| County Transfer Tax | $      330.00 | |
| Delinquent Tax | $    6,793.96 | |
| **Recording Charges** | | |
| **[Total Recording Charges: $89.00]** | | |
| DEED | $       89.00 | |
| **Escrow Charges - BELLE VISTA ESCROW, INC.** | | |
| **[Total Escrow Charges: $795.00]** | | |
| Escrow Fee | $      750.00 | |
| Messenger Fee | $       45.00 | |
| **Expenses For Outside Services** | | |
| **[Total Expenses For Outside Services: $50.00]** | | |
| notary | $       50.00 | |
| **Loan Payoff** | | |
| **Loan Payoff to: BURRTEC- CITY OF RIALTO** | $       20.00 | |
| **[Total Charges: $20.00]** | | |

ESCROW NO: 27479-MT

| | DEBITS | CREDITS |
|---|---|---|
| **Additional Disbursements** | | |
| FRANCHISE TAX BOARD | $ 9,990.00 | |
| MYNHD, INC | $ 74.95 | |
| The Law Office of Stegmeier, Gelbart, Schwartz and Benavente, LLP | $ 125,000.00 | |
| KRISTINA LYNN SMITH | $ 101,816.64 | |
| JEFF GOMEZ | $ 20,000.00 | |
| | | |
| The Law Office of Shulman, Hodges & Bastian, LLP | | |
| | $ 20,000.00 | |
| | | |
| **\*Totals\*** | $ 300,000.00 | $ 300,000.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
2
26
27
28

# EXHIBIT E

## Amendment to STIPULATION AND ORDER entered 06/13/2019

It is hereby Stipulated by the Parties, by and through their counsel of record, that the STIPULATION AND ORDER entered on 06/13/2019 shall be modified and amended as follows:

Section 1 of the Stipulation and Order providing for distribution of proceeds from the Moffatt property shall be supplanted in total with the following:

Escrow and the Parties are directed to pay from Escrow of sale of 951 E. Home Street as follows:

| | | |
|---|---|---|
| $125,000 | to Stegmeier, Gelbart, Schwartz & Benavente, LLP(SGSB) | |
| | For attorney fees (to be credited towards attorney fee order of $353k to SGSB); | |
| 100,000 | To Kristina Smith | |
| | | |
| 20,000 | to Schulman, Hodges & Bastian (for Bastian attorney fees); | |
| 20,000 | to Jeff Gomez for living expenses | |

It is understood that the Section 1 language above replaces in total the Section one language pertaining to the Moffatt Property and that the Moffatt property shall at execution and entry of this Stipulation and Order no longer be subject to any conditions should it be sold in the future.

Section 2 of the Stipulation and Order shall be modified to include:

In the event that Jeffrey Gomez replaces Moshtael Family Law (MFL) with alternative or substitute counsel, then the F.L.A.R.P.L. which has been recorded in favor of MFL shall be withdrawn and a new F.L.A.R.P.L. recorded in favor of the counsel replacing MFL in the same
Amount.

All other terms and conditions of the 06/13/2019 STIPULATION AND ORDER shall remain in full force and effect.

SO AGREED:

Dated: ___7/31/___, 2019      _Kristina Smith_
                                    Petitioner
                                    Kristina Smith

Dated: ___7/31___, 2019      _____
                                    Respondent
                                    Jeffrey Adams Gomez

Dated: ___07/31___, 2019      _____
                                    Saul Gelbart
                                    SGSB, Counsel for Petitioner
                                    Kristina Smith

Dated: _____, 2019      _____
                                    James L. Wellman
                                    MFL, Counsel for Respondent
                                    Jeffrey Adams Gomez

1
2
3
4
5
6
7
8
9
10
11
12
13
14

# EXHIBIT F

16
17
18
19
20
21
22
23
24
2
26
27
28

 Gmail

Jeff Adams <jeffadamsrei@gmail.com>

---

## Re: Smith & Gomez - ex parte notice

3 messages

---

**James Wellman** <James@moshtaellaw.com>                    Tue, Jul 30, 2019 at 5:08 PM
To: jeff adams <jeffadamsrei@gmail.com>
Cc: wellman <wellman@moshtaellaw.com>

Jeff,

Call me asap.

Jim

> On Jul 30, 2019, at 4:57 PM, Saul Gelbart <sgelbart@sgsblaw.com> wrote:

Dear Mr. Wellman:

**Please be advised that this office shall proceed with an *ex parte* application on
Thursday, August 1, 2019, at 9:00 a.m.** The *ex parte* will be conducted by
telephone and call-in instructions will be provided to you tomorrow. The *ex
parte* shall proceed before The Honorable David Weinberg, who was appointed for
all purposes in this case and before whom you have already appeared in this case.

We shall be seeking the following Orders:

1. A transfer or setting of your Motion to Withdraw, said Motion having been
   set in error before The Honorable Claudia Silbar.
2. That the escrow for the sale of 951 E. Home Street, Rialto, California, be
   closed forthwith pursuant to the terms consistent with the documents
   already by the buyers.
3. The appointment of an elisor to sign – on behalf of Jeff Gomez - all
   documents required to close the above-referenced escrow, forthwith.
4. The approval of disbursement of sales proceeds held by Stegmeier,
   Gelbart, Schwartz & Benavente LLP, from the Ashbury residence, such that
   ½ of same is directed to Kristina Smith and ½ of same is directed to
   Stegmeier, et al, and credited against the fees owed by Jeff Gomez to
   Stegmeier, et al.
5. The payment of $5,000 from Mr. Gomez' present attorneys to Stegmeier, et
   al, to be credited against the fees owed by Mr. Gomez to Stegmeier et al.
6. Attorneys fee of no less than $10,000 for the handling of these issues.
7. The shortening of time for service and an expedited setting of this hearing.
8. The requirement that Mr. Gomez advance the costs of the hearing and, if
   he should fail to do so, reimbursement to Stegmeier et al for said costs with
   interest at the legal rate.

9. Such other Orders the Court feels appropriate to carry out the intention of
   and/or enforce prior Orders.

Very truly yours,

Saul Gelbart, Esq. | Partner
Certified Family Law Specialist
Fellow, American Academy of Matrimonial Lawyers
Fellow, International Academy of Family Lawyers
<image001.png>
19762 MacArthur Boulevard, Suite 200 | Irvine, California 92612
Tel: 949.337.4050 | Fax: 949.337.4059 | www.sgsblaw.com

---

**James Wellman** <James@moshtaellaw.com>                                                    Tue, Jul 30, 2019 at 5:50 PM
To: jeff Adams <jeffadamsrei@gmail.com>

On Jul 30, 2019, at 5:08 PM, James Wellman <James@moshtaellaw.com> wrote:

Jeff,

Call me asap.

Jim

On Jul 30, 2019, at 4:57 PM, Saul Gelbart <sgelbart@sgsblaw.com> wrote:

Dear Mr. Wellman:

**Please be advised that this office shall proceed with an *ex
parte* application on Thursday, August 1, 2019, at 9:00 a.m.** The *ex
parte* will be conducted by telephone and call-in instructions will be
provided to you tomorrow. The *ex parte* shall proceed before The
Honorable David Weinberg, who was appointed for all purposes in this
case and before whom you have already appeared in this case.

We shall be seeking the following Orders:

1. A transfer or setting of your Motion to Withdraw, said Motion
   having been set in error before The Honorable Claudia Silbar.
2. That the escrow for the sale of 951 E. Home Street, Rialto,
   California, be closed forthwith pursuant to the terms consistent
   with the documents already by the buyers.
3. The appointment of an elisor to sign – on behalf of Jeff Gomez -
   all documents required to close the above-referenced escrow,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
2
26
27
28

# EXHIBIT G

☐ - File
1 - Petitioner
1 - Respondent

CONTINUATION OF STIPULATION AND ORDER

Case No. __17 D 00.05.90__  __K. SMITH__   and   __J. GOMEZ__
                                    PETITIONER                              RESPONDENT

__06/13__ 20 __19__    Dept _____  Page __2__ of __2__

Continued from Page __1__

①   ESCROW & PARTIES ARE DIRECTED TO PAY FROM ESCROW
OF SALE OF 1010 MOFFATT, RIALTO, CA. :

    # 125,000  TO  STEGMEIER, GELBART, SCHWARTZ &
              BENAVENTE, LLP.
    # 65,000  TO  KRISTINA SMITH
    # 50,000  TO  THE FEDERAL TRADE COMMISSION
    # 20,000  TO  SHULMAN HODGES & BASTIAN LLP
    BALANCE  TO  JEFFREY GOMEZ AND/OR
             COSTS OF SALE (E.G. ESCROW,
             TAXES, AGENTS' FEES).

②   A $200,000 F.L.A.R.P.L. MAY BE RECORDED IN
FAVOR OF MOSHTAEL FAMILY LAW AGAINST
THE PROPERTY AT 12942 CHESTNUT AVE.,
ETIWANDA, CA.  PETITIONER TO WITHDRAW HER
LIS PENDENS AGAINS SAID PROPERTY.

③   NO OTHER ISSUES REMAIN FOR THE PRESENT HEARING.
  RESP. WARRANTS THAT F.L.A.R.P.L.S HAVE NOT BEEN
  RECORDED - AND WILL NOT - AGAINST KATITY COURT
  &/OR ALAMITOS.

_____        _____
Attorney for Petitioner                    Attorney for Respondent

SIGNATURE OF PARTIES

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and
agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court
and may be punished by fine and imprisonment. We waive all further notice of this order.

_____        _____
Petitioner                                    Respondent

IT IS SO ORDERED

__6-13-19__                        _____
Date                                Judge/Commissioner of the Superior Court
For Court Use Only

**BELLE VISTA ESCROW, INC.**
273 North Euclid Ave., Upland, CA 91786
Tel. 909-946-9188   Fax. 909-946-7846

## SELLER(S) FINAL CLOSING STATEMENT

**ESCROW NO:** 27479 - MT
**LOAN NUMBER:**
**DATE:** 5/11/2020
**TIME:** 02:16 PM
**SELLER(S):** JEFF GOMEZ and KRISTINA LYNN SMITH

**REVISED DATE:**
**CLOSING DATE:** 8/1/2019
**SETTLEMENT DATE:**
**DISBURSEMENT DATE:**

**PROPERTY ADDRESS:** 951 E. HOME STREET, RIALTO, CA 92376

|  | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** |  | $    300,000.00 |
| **Prorations** |  |  |
| County Taxes @ $1,329.39 for 6  Months  From 7/1/2019 Thru 8/1/2019 | $      228.95 |  |
| **Commissions** |  |  |
| NEW HARVEST REALTY, INC. | $    7,500.00 |  |
| SYNERGY ONE REAL ESTATE SERVICES | $    6,000.00 |  |
| **Title Charges - WESTMINSTER TITLE COMPANY** |  |  |
| **[Total Title Charges: $8,435.46]** |  |  |
| Title - Owners Policy For $300,000.00 | $    1,166.00 |  |
| Title - Sub Escrow Fee | $        62.50 |  |
| Title - Messenger Fee | $        18.00 |  |
| Title - Wire Fee | $        45.00 |  |
| title recording service fee | $        20.00 |  |
| County Transfer Tax | $      330.00 |  |
| Delinquent Tax | $    6,793.96 |  |
| **Recording Charges** |  |  |
| **[Total Recording Charges: $89.00]** |  |  |
| DEED | $        89.00 |  |
| **Escrow Charges - BELLE VISTA ESCROW, INC.** |  |  |
| **[Total Escrow Charges: $795.00]** |  |  |
| Escrow Fee | $      750.00 |  |
| Messenger Fee | $        45.00 |  |
| **Expenses For Outside Services** |  |  |
| **[Total Expenses For Outside Services: $50.00]** |  |  |
| notary | $        50.00 |  |
| **Loan Payoff** |  |  |
| **Loan Payoff to: BURRTEC- CITY OF RIALTO** | $        20.00 |  |
| **[Total Charges: $20.00]** |  |  |

ESCROW NO: 27479-MT

|  | DEBITS | CREDITS |
|---|---|---|
| **Additional Disbursements** | | |
| FRANCHISE TAX BOARD | $ 9,990.00 | |
| MYNHD, INC | $ 74.95 | |
| The Law Office of Stegmeier, Gelbart, Schwartz and Benavente, LLP | $ 125,000.00 | |
| KRISTINA LYNN SMITH | $ 101,816.64 | |
| JEFF GOMEZ | $ 20,000.00 | |
| | | |
| The Law Office of Shulman, Hodges & Bastian, LLP | $ 20,000.00 | |
| | | |
| **\*Totals\*** | $ 300,000.00 | $ 300,000.00 |