YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501

Attorneys for Richard A. Marshack,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:24-bk-12527-SC |
| Kristina Lynn Smith, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE, RICHARD MARSHACK'S MOTION FOR ORDER APPROVING COMPROMISES WITH CREDITOR WHITE ZUCKERMAN WARSAVSKY LUNA AND HUNT, LLP AND CREDITOR STEGMEIER, GELBART, SCHWARTZ AND BENAVENTE, LLP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND DECLARATION OF RICHARD A. MARSHACK** |
| | Date: June 2, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, California 92701 |

1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Richard A. Marshack, Chapter 7 Trustee ("Trustee") of the estate ("Estate") of Debtor Kristina Lynn Smith ("Debtor") in the above-captioned bankruptcy case ("Case"), does and hereby moves this Court for an Order Approving Compromises with Creditors, White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt") and Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB") ("Motion"). Specifically, the Trustee moves this Court for an order that finds and directs as follows:

1. The settlement agreement between the Estate and SGSB, attached hereto as **Exhibit 1**, ("SGSB Settlement Agreement") is approved. As a result, SGSB shall be paid $240,00 of its $300,000 claim secured by a Family Law Attorney Real Property Lien ("Non-Subordinated Claim"), the $60,000 balance of the FLARPL shall be subordinated to all allowed general unsecured and administrative creditors ("Subordinated Claim"), and the lien securing the Subordinated Claim shall be transferred to the Estate. Additionally, all known claims between SGSB and Trustee shall be fully and finally resolved.

2. The settlement agreement between the Estate and Hunt, attached hereto as **Exhibit 2**, ("Hunt Settlement Agreement") is approved. As a result, Hunt shall have a reduced secured claim in the amount of $50,000 instead of $77,396.19. Additionally, all known claims between Hunt and Trustee shall be fully and finally resolved.

3. Notice of the Motion is adequate and proper; and

4. Such other relief as the Court deems just and proper.

The complete scope and terms of the relief requested are detailed in the supporting Memorandum of Points and Authorities.

**PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, 11 U.S.C. § 105, and Rules 2002-1 and 9013-1 of the Local Bankruptcy Rules for the Central District of California ("LBR") on grounds that the SGSB Settlement Agreement and the Hunt Agreement (collectively, "Settlement Agreements") represent

2

a sound exercise of Trustee's business judgment and is in the best interests of the Estate's creditors. Approving the Settlement Agreements will reduce the amount of claims asserted to be secured by proceeds from the sale of real property and thus will increase distributions to creditors. Likewise, the Settlement Agreements will resolve the relevant claims without the need for costly litigation and the delays that necessarily flow from such litigation.

**NOTICE IS FURTHER GIVEN** that this Motion is based upon (a) this Notice of Motion and Motion, (b) the attached Memorandum of Points and Authorities, and the (c) Declaration of Richard Marshack and exhibits thereto.

**NOTICE IS FURTHER GIVEN** that a hearing to consider the Motion will take place before the Honorable Scott C. Clarkson in Courtroom 5C of the United States Bankruptcy Court, located at 411 West Fourth Street, Santa Ana, California 92701, on June 2, 2026 at 11:00 a.m.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), any response or opposition to the Motion must be (i) in writing and include a complete written statement of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely and any responding memorandum of points and authorities, and (ii) filed with the Court and served on the Trustee, counsel for the Trustee, the Debtor, and the United States Trustee no later than 14 days prior to the hearing on this Motion.

**NOTICE IS FURTHER GIVEN** that written opposition to the Motion must be filed with the Court no later than May 19, 2026.

**PLEASE TAKE FURTHER NOTICE** that any party wishing to appear at the hearing should review the Court's tentative ruling prior to the hearing, which will provide information on whether in-person appearances are required and any remote access information for the hearing on the Motion. Parties are directed to obtain accessibility information on Judge Clarkson's posted hearing calendar which may be viewed online at: **http://ecfciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.**

/ / /

/ / /

3

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely response to the Motion or request a hearing on the Motion may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

Dated: May 12, 2026                          Respectfully submitted,

                                             DINSMORE & SHOHL LLP


                                             By:/s/ Yosina M. Lissebeck
                                                 Yosina M. Lissebeck
                                             Attorneys for Richard A. Marshack, Chapter 7
                                             Trustee

4

**TABLE OF CONTENTS**

I.    INTRODUCTION.............................................................................................7

II.   STATEMENT OF RELEVANT FACTS ........................................................7

   A.   The Bankruptcy Case ...........................................................................7

   B.   Pre-Petition State Court Divorce Proceedings .................................8

   C.   Sale Of The Property.............................................................................8

   D.   SGSB'S FLARPL ...................................................................................9

   E.   Hunt's Lien ...........................................................................................10

III.  THE COMPROMISES .....................................................................................10

   A.   The SGSB Settlement Agreement.....................................................10

   B.   The Hunt Settlement Agreement......................................................11

IV.   THE COURT MAY APPROVE THE COMPROMISE.................................12

   A.   Approval under Bankruptcy Rule 9019 ..........................................12

V.    CONCLUSION ................................................................................................19

# **TABLE OF AUTHORITIES**

**Cases**

*In re A & C Properties,* 784 F.2d at 1381 ................................................................................ 12, 13

*In re Blair*, 538 F.2d 849 (9th Cir. 1976) ...................................................................................... 13

*In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987).......................................................... 12

*In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986) ..................................... 12

*In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D.Ohio 1990)...................................... 13

*In re Marriage of Ramirez*, 198 Cal. App. 4th 336, 343 (2011) ............................................... 14, 15

*In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 348 (2013)............................... 14, 15

*In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985)........................ 12

*In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983) ..................................................... 13

*Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983) .......................... 12

*Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1380-81 (9th Cir. 1986)...................... 12

*Matter of Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984) ................................... 13

*Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982) ............................................. 13

*Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972) ................................................................. 13

*United States v. Alaska National Bank (In re Walsh Constr., Inc.),* 669 F.2d 1325, 1328 (9th Cir.
   1982)............................................................................................................................................ 12

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988) .......... 12

**Statutes**

Federal Rule of Bankruptcy Procedure 9019(a)............................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this Motion, Richard A. Marshack ("Trustee"), the duly appointed chapter 7 Trustee of the bankruptcy estate ("Estate") of Debtor, Kristina Lynn Smith ("Debtor" or "Smith") seeks Court approval of two separate, but related, settlement agreements.

The first settlement agreement is between Trustee and creditor, and Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB") ("SGSB Settlement Agreement"). The SGSB Settlement Agreement settles all known claims between SGSB and Trustee as it relates to SGSB's interest in sales proceeds, secured by a Family Law Attorney Real Property Lien ("FLARPL"). The SGSB Settlement Agreement provides for a $240,000 payment to SGSB on account of the $300,000 FLARPL and a transfer of the balance of the lien, $60,000, and the related security interest to the Estate for the benefit of general unsecured and administrative creditors.

The second settlement agreement is between Trustee and creditor, White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt") ("Hunt Settlement Agreement"). The Hunt Settlement Agreement settles all known claims between Hunt and Trustee as it relates to Hunt's security interest in sale proceeds and their proof of claim. The Hunt Settlement Agreement provides Hunt with a reduced claim in the amount of $50,000, instead of $77,396.19, which unencumbers $27,396.19 of the sales proceeds held by Trustee for the benefit of general unsecured and administrative creditors.

This Motion is supported by the Declaration of Richard A. Marshack ("Marshack Decl."), and its exhibits.

### II.   STATEMENT OF RELEVANT FACTS

#### A.   The Bankruptcy Case

On October 3, 2024 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code), commencing the above-captioned bankruptcy case ("Case"). [Dk. 1]. On the same date, Trustee was appointed as Chapter 7 Trustee of Debtor's Estate and assumed all authority to administer Debtor's Estate in this Case. [Dk. 4].

/ / /

/ / /

## B. Pre-Petition State Court Divorce Proceedings

Debtor and her husband, Jeffrey Adams Gomez ("Gomez") have been in marriage dissolution proceedings in Orange County Superior Court for many years – since approximately September 2016.

On October 1, 2024, two days prior the Petition Date, Debtor and Gomez appeared before Judge Carmen Luege in Orange County Superior Court to address the sale of real property located at, and commonly known as, 27591 Kathy Court, Laguna Niguel, California 92677 ("Property") as part of the marriage dissolution proceedings. At that hearing, the court Ordered the sale of the Property ("Sale Order").[1]

## C. Sale Of The Property

Trustee, now in control of property of the Estate, including the Property, as a result of the filing of the Case, devised a plan that, in his business judgment, not only complied with the Sale Order, but resulted in sufficient proceeds to provide distributions to unsecured creditors. This was due to, among other things as more fully described below, the agreement between Trustee and the Court-approved real estate broker to carve out a percentage of the broker's commission and earmark those funds specifically for unsecured creditors. [*See* Dks. 67, 79].

Additionally, Trustee stipulated with all known lienholders, with one exception, to sell the Property free and clear of the liens, with the proceeds of the sale to be collected and held until further order of the Court ("Sale Stipulation"). [Dk. 129].

The Sale Stipulation provided that the proceeds from the sale of the Property would first pay, off the top, the first priority lien, Trustee's fees, Dinsmore & Shohl LLP's fees, miscellaneous taxes and costs (including certain reimbursements of expenses that were necessary for the sale), and the broker's commission. Next, the remaining proceeds would be halved, representing Debtor's and Gomez's respective "homestead" exemption interests. From there, Debtor's share is to be used to provide Debtor with an agreed reduced $25,000 homestead exemption payment and the remainder of her share from the "split" is to be used to pay *her* liens encumbering the Property.[2] Gomez's share

---

[1] The sale was ordered pre-petition even though the order was not entered until October 21, 2024, as that was just a "ministerial" act, which related back to the date of the hearing.

[2] The FLARPL held by SGSB and the lien held by Hunt based on an abstract of judgment.

8

is likewise be used to pay *his* liens encumbering the property.[3] The Court approved the Sale Stipulation. [Dk. 130].

Thereafter, on December 23, 2025, Trustee filed a *Motion For: (1) Order Authorizing Sale of Real Property Located At 27591 Kathy Court, Laguna Niguel, California 92677 (the "Property"): (a) Outside the Ordinary course of business; (b) Free and clear of liens under 363(f); (c) subject to overbids; And (d) for determination of Good faith purchaser under § 363(m)*. [Dk. 139] ("Sale Motion"). On February 27, 2026, after notice, a hearing, and conducting an auction, the Court entered an order granting the Sale Motion, which, *inter alia*, authorized the sale of the Property for $1,999,000.00 ("Sale") [Dk. 162] ("Bankruptcy Sale Order"). After the Sale, and pursuant to the Bankruptcy Sale Order, certain expenses and liens were paid as authorized from the sales proceeds and Trustee is holding the remaining net proceeds ("Proceeds").

The SGSB Settlement Agreement and the Hunt Agreement (collectively, "Settlement Agreements") now resolve all known issues affecting the only remaining liens encumbering Debtor's/Estate's share of the Proceeds. [Marshack Decl., ¶ 14].

### D.    SGSB'S FLARPL

SGSB is one of the attorneys who represented Debtor during the contentious divorce proceedings with Gomez, which remains pending. [Marshack Decl., ¶ 5]. As a result of this representation, Debtor granted SGSB a FLARPL as and for security of her reasonable attorney's fees and costs. [Marshack Decl., ¶ 5]. The FLARPL was recorded against the Property on January 5, 2023, and the underlying claim has an asserted remaining balance owed of $300,000. [Marshack Decl., ¶ 5, **Exhibit 3**].

The Bankruptcy Sale Order held that SGSB's FLARPL would attach to Debtor's portion of the Proceeds from the Sale. [Dks. 129, 130]. As laid out in the Sale Motion and Sale Stipulation, SGSB's FLARPL attached to Debtor's share of the Proceeds in the same validity, extent and priority as the lien had under applicable law, which, after payment of Debtor's reduced $25,000 homestead exemption, was first priority. [Dks. 129, 139; Marshack Decl., ¶ 6].

/ / /

---

[3] Liens held by SGSB (not a FLARPL), The Neshanian Law Firm, and R&S Law Group.

### E.  Hunt's Lien

Hunt is a Certified Public Accountant firm that represented Debtor during her ongoing divorce proceedings. Hunt held a lien that attached to the Property as a result of the recording of an abstract of judgment on June 30, 2023. [Marshack Decl., ¶ 9]. Hunt also filed a proof of claim, Claim 10-1, in the Case, for the amount of $77,396.19. [Claim 10-1].

The Bankruptcy Sale Order held that Hunt's Lien would attach to Debtor's portion of the Proceeds from the Sale. [Dk. 129, 130]. As laid out in the Sale Motion and Sale Stipulation, Hunt's Lien attached to Debtor's share of the Proceeds in the same validity, extent and priority as the lien had under applicable law, which, after payment of Debtor's reduced $25,000 homestead exemption, was second priority to SGSB's FLARPL. [Dks. 129, 139; Marshack Decl., ¶ 10].

## III.  THE COMPROMISES

### A.  The SGSB Settlement Agreement

The essential terms under the SGSB Settlement Agreement, attached to the Declaration of Richard A. Marshack as **Exhibit 1**, are as follows:

Subject to Court approval:

1.  SGSB, on account of its FLARPL shall be paid $240,000.00 ("Non-Subordinated Claim"). The remaining balance of the FLARPL, $60,000.00, shall be subordinated to all allowed administrative and unsecured claims ("Subordinated Claim").

2.  The lien that secures the Subordinated Claim of $60,000.00 shall be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). In other words, the Estate shall hold the lien against the Debtor's/Estate's portion of the proceeds that secures the Subordinated Claim and be entitled to use such funds to make distributions to allowed administrative and unsecured claims.

3.  Within 14 days after entry of an order approving the SGSB Settlement Agreement, the Trustee shall pay the Non-Subordinate Claim from the Debtor's/Estate's portion of the Proceeds currently held by Trustee.

4.  In the event Trustee is holding insufficient funds from the Debtor's/Estate's portion of the Proceeds subject to the FLARPL to pay the Non-Subordinated Claim and Subordinated Claim in full, SGSB shall receive a payment from funds on hand that are subject to

the FLARPL equal to the ratio of the Non-Subordinated Claim to the Subordinated Claim.

5.      To the extent that the Non-Subordinated Claim is not paid in full, the unpaid balance of the Non-Subordinated Claim shall be allowed as a general unsecured claim and receive distributions pro rata with all other unsecured claims as controlled by the Cooperation Stipulation [Dk. 126] and the Sale Stipulation.

6.      Payment of the Non-Subordinated Claim as set forth above shall be deemed full and complete satisfaction of SGSB's claim against the Estate.

7.      SGSB shall release Trustee and Debtor's Estate from any and all known claims SGSB has subject to their rights under the SGSB Settlement Agreement and Trustee shall release SGSB from any and all known claims, subject to the rights under the SGSB Settlement Agreement.

8.      The SGSB Settlement Agreement does not impact other party in interests' rights to litigate against SGSB with respect to the Abstract of Judgment held by SGSB that attaches Gomez's share of the Proceeds.

**B.      The Hunt Settlement Agreement**

The essential terms under the Cooper Settlement Agreement, attached to the Declaration of Richard A. Marshack as **Exhibit 2**, are as follows:

Subject to Court approval:

1.      Hunt shall reduce its claim and lien asserted against the Debtor's/Estate's portion of the Proceeds being held by Trustee from $77,396.19 to $50,000.00 ("Reduced Claim").

2.      Within 14 days after entry of an order approving the Hunt Settlement Agreement, the Trustee shall pay the Reduce Claim, as a second-priority distribution, from the Debtor's/Estate's portion of the Proceeds currently held by Trustee.

/ / /

/ / /

/ / /

/ / /

/ / /

11

3.      If Trustee holds insufficient funds from the Debtor's/Estate's share of the Proceeds to pay the Reduced Claim in full, any unpaid balance shall be allowed as a general unsecured claim against the Estate. Any unsecured portion shall be paid pro rata in accordance with the pro rata distributions expected to be made from the funds associated with the Subordinated Claim in the SGSB Settlement Agreement and in accordance with the pro rata distributions Trustee otherwise makes in general.

4.      Payment of the Reduced Claim as set forth above shall be deemed full and complete satisfaction of Hunt's claim against the Estate.

5.      Hunt shall release Trustee and Debtor's Estate from any and all known claims Hunt has subject to their rights under the Hunt Settlement Agreement and Trustee shall release Hunt from any and all known claims, subject to the rights under the Hunt Settlement Agreement.

## IV.   THE COURT MAY APPROVE THE COMPROMISE

### A.   Approval under Bankruptcy Rule 9019

The authority granted to a trustee to compromise a controversy or agree to a settlement is set forth in Federal Rule of Bankruptcy Procedure 9019(a) ("Rule 9019"), which provides in pertinent part that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Under these circumstances, the decision of whether a compromise should be accepted or rejected lies within the sound discretion of the court. *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. denied 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought

12

to be compromised. *See United States v. Alaska National Bank (In re Walsh Constr., Inc.),* 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See In re A & C Properties,* 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

(a)    the probability of success in the litigation;

(b)    the difficulties, if any, to be encountered in the matter of collection;

(c)    the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

(d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A & C Properties,* 784 F.2d at 1381 (the "A & C Factors").

A court should not substitute its own judgment for the judgment of the trustee. *Matter of Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984). A court, in reviewing a proposed settlement, is not to decide the numerous questions of law and fact but rather to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), accord, *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849 (9th Cir. 1976). "It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D.Ohio 1990).

### 1.    **The Probability of Success in the Litigation**

#### a.    **SGSB**

Trustee has engaged in informal discovery with SGSB with respect to its FLARPL. [Marshack Decl., ¶ 7]. Through review of documents in support of the FLARPL, Trustee believes that he could potentially bring litigation challenging its validity and enforceability; however, Trustee believes that SGSB would hold potentially valid defenses. [Marshack Decl., ¶ 7]. This factor weighs

heavily in favor of granting this Motion.

Cal. Fam. Code § 2033(a), the statutory grounds for a FLARPL, provides:

Either party may encumber the party's interest in community real property to pay reasonable attorney's fees in order to retain or maintain legal counsel in a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties. This encumbrance shall be known as a "family law attorney's real property lien" and attaches only to the encumbering party's interest in the community real property.

Debtor provided SGSB with a FLARPL. This is not in dispute. Further, the billing and account statements provided in support of the secured amount appear to support the same and take into account payments already made. [Marshack Decl., ¶ 7]. However, what is in dispute is both Debtor's ability to have provided a FLARPL, as well as its' validity.

For a FLARPL to be valid, a notice of the lien must be served either personally or on the other party's attorney of record at least 15 days before the encumbrance is recorded with a declaration signed under penalty of perjury containing various items.[4] *In re Marriage of Ramirez*, 198 Cal. App. 4th 336, 343 (2011). The other party of record here, was Gomez, who asserts he did not receive the required notice. [Marshack Decl., ¶ 7].

On the other hand, SGSB asserts that they have complied with this requirement and have provided a notice that contains the relevant requirements; however, after review of documents informally provided to Trustee, the notice does not attach a poof of service and one has not otherwise been provided. [Marshack Decl., ¶ 7].

Nonetheless, even without a proof of service, it is clear that Gomez has had knowledge of the FLARPL. [Marshack Decl., ¶ 7]. With this knowledge, the doctrines of waiver and equitable estoppel could possibly bar a party, including Trustee, from seeking to expunge the FLARPL. *In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 352 (2013).[5]

/ / /

---

[4] (1) A full description of the real property; (2) The party's belief as to the fair market value of the property and documentation supporting that belief; (3) Encumbrances on the property as of the date of the declaration; (4) A list of community assets and liabilities and their estimated values as of the date of the declaration; (5) The amount of the family law attorney's real property lien.

[5] Trustee notes that even if the FLARPL were to be adjudicated invalid, this would have no impact on Gomez as the FLARPL is to be paid from the Debtor's/Estate's share of the Proceeds. The impact would solely affect the Estate and/or Debtor.

14

While Trustee believes he could potentially be successful in challenging the validity and enforceability of the FLARPL, SGSB likely holds strong equitable defenses. [Marshack Decl., ¶ 7]. Furthermore, litigation is always uncertain and in this instance is emphasized as "[t]he reported case law interpreting or applying sections 2033 and 2034, or their predecessor sections, is scant. Only one reported California case exists interpreting or applying these sections in any measure, *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336 . . ." *In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 348 (2013).

Therefore, this factor weighs in favor of approving the SGSB Settlement Agreement.

b.    **Hunt**

Trustee likewise wishes to resolve all issues related to the validity of Hunt's lien and its amount and Hunt's Claim 10-1.

On June 14, 2023, the Superior Court of California, County of Los Angeles entered judgment in favor of Hunt and against Debtor in the amount of $77,396.19, inclusive of damages, prejudgment interest, attorney fees, and costs. [Marshack Decl., ¶ 9]. Hunt recorded a lien against the Property securing the judgment. [Marshack Decl., ¶ 9, Exhibit 3].

Trustee's review of the claim filed by Hunt tends to evidence the validity and amount of the claim. [Marshack Decl., ¶ 11]. Nonetheless, the parties wish to fully and finally resolve all issues regarding the same.

Therefore, the parties have agreed to reduce the Hunt claim from $77,396.19 to $50,000 and so this factor weighs in favor of approving the Hunt Settlement Agreement.

2.    **The Difficulties, if any, to be Encountered in the Matter of Collection**

This factor is not applicable given the issues underlying the Settlement Agreements and is thus neutral when considering whether to grant this Motion and approve the Settlement Agreements.

/ / /

/ / /

/ / /

/ / /

/ / /

15

3.    **The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending It**

a.    **SGSB**

As noted, this dispute involves a FLARPL. While the issues surrounding the FLARPL appear to be relatively straightforward conceptually, case law regarding FLARPLs is scarce and makes any litigation more complex.

Moreover, to prevail in such litigation Trustee would still require significant investment in attorneys fees, especially considering the potential equitable defenses. Additionally, such litigation would likely have to be adjudicated in state court. State court litigation would likely be drawn out and encounter lengthy delays that will prejudice the Estate's creditors by delaying case administration and the ultimate distributions to creditors.

Any litigation is further complicated by the fact that the percipient witness is Debtor's ex-spouse, Gomez, who could take positions contrary to those asserted by Trustee. Trustee is aware that Gomez has filed an adversary proceeding naming SGSB as one of the Defendants which, *inter alia*, challenges the validity and enforceability of the FLARPL.[6] Trustee, however, fails to see any basis upon which Gomez could assert standing to challenge the FLARPL as it only attaches to Debtor's/Estate's share of the Proceeds and so he cannot benefit in any way from the Gomez Adversary as it relates to the FLARPL. Gomez also has nothing to gain by any successful litigation initiated by the Trustee involving the FLARPL as, again, it only attaches to Debtor's/Estate's share of the Proceeds and any "freed" funds as a result of any successful litigation would be to the benefit of all administrative claimants and general unsecured creditors, except Gomez, with any remainder going to Debtor on account of her subordinated homestead exemption. [Dk. 129, ¶¶ 4,8 ("Debtor agrees to waive any remaining homestead exemption with respect to all amounts necessary to pay all administrative fees and costs and timely filed unsecured claims, other than the claim of Gomez.") ("For clarity, homestead funds that are otherwise attributable to one spouse, shall not be used to pay the other spouse's debts or liens.")).

///

---

[6] Adversary Case No.: 8:24-bk-12527-SC ("Gomez Adversary").

16

Therefore, this factor weighs heavily in support of granting this Motion and approving the SGSB Settlement Agreement.

### b.     **Hunt**

With respect to Hunt's claim, the issues of the validity and amount owed on account of a judgment lien are relatively straightforward. However, to prevail in any related litigation, Trustee would still have to incur attorney's fees in connection with any further investigation or initiation of litigation. Such an investment of attorneys' fees considering the amount of the involved claim would, in Trustee's judgment, diminish the amount of funds available for distribution to creditors. [Marshack Decl., ¶ 12].

Further, any litigation would likewise delay case administration and the ultimate distributions to creditors considering that the Settlement Agreements resolve all known issues affecting the only remaining liens encumbering Debtor's/Estate's share of the Proceeds. [Marshack Decl., ¶ 14].

Therefore, this factor weighs heavily in support of granting this Motion and approving the Hunt Settlement Agreement.

### 4.     **The Paramount Interest of the Creditors**

This factor weighs heavily in favor of granting this Motion. Trustee has carefully considered whether the Settlement Agreements is in the best interests of the Estate's creditors. [Marshack Decl., ¶ 13]. After extensive discussions with his general counsel, SGSB, and Hunt, Trustee unequivocally believes these two agreements represent a positive outcome for the Estate's creditors. [Marshack Decl., ¶ 13].

### a.     **SGSB**

The SGSB Settlement Agreement provides the Estate with a security interest in the Proceeds from the Sale. The Subordinated Claim will directly provide the Estate with an additional $60,000 for distributions to creditors, except Gomez. This $60,000 will almost double the amount of cash the Estate has on hand to pay unsecured creditors. [Marshack Decl., ¶ 8]. The Estate currently has $55,000, from the sale of the Property, available to make pro rata distributions to general unsecured creditors. [Marshack Decl., ¶ 8]. The SGSB Settlement Agreement, however, will provide general

unsecured creditors, excluding Gomez, with a much a larger distribution than they otherwise would without the influx of this $60,000. As Gomez stipulated that any portion of the Proceeds representing Debtor's homestead funds shall not be used to pay any of his claims, the $60,000 will be used to pay the other general unsecured creditors, which is a much smaller pool, approximately $78,528.22 total (excluding Gomez's Claim 12-1) versus $353,528.22, resulting in a much larger pro rata distribution (including Gomez's Claim 12-1). [Marshack Decl., ¶ 8; Dk. 129, ¶¶ 4,8 ("Debtor agrees to waive any remaining homestead exemption with respect to all amounts necessary to pay all administrative fees and costs and timely filed unsecured claims, other than the claim of Gomez.") ("For clarity, homestead funds that are otherwise attributable to one spouse, shall not be used to pay the other spouse's debts or liens.")).

Without the SGSB Settlement Agreement, Trustee would have to litigate the validity of the FLARPL which could result in no benefit to the Estate. [Marshack Decl., ¶ 13]. In fact, considering that this is not a surplus Estate, any litigation could directly affect and reduce any distributions to general unsecured creditors. [Marshack Decl., ¶ 13].

Additionally, as noted, the issues related to the FLARPL are one of two final matters that need to be addressed to fully and finally resolve all issues with respect to the Proceeds from the Sale that impact Debtor's/Estate's share. Thus, the SGSB Settlement Agreement provides for a more cost-efficient resolution that will result in creditors of the Estate receiving distributions they would not otherwise receive and in a more expeditious fashion.

Therefore, this factor weighs heavily in support of granting this Motion and approving the SGSB Settlement Agreement.

### b.    **Hunt**

The Hunt Settlement Agreement also provides an undeniable benefit to the creditors of the Estate. The Reduced Claim results in Trustee distributing $27,396.19 less than he would otherwise have to on account of Hunt's claim. This $27,396.19 will have a direct benefit to general unsecured creditors as the amount is now unencumbered by security interests and available for distributions to general unsecured creditors. [Marshack Decl., ¶ 13]. It also provides a sum certain, not able to increase, pending the administration of the Estate.

Therefore, this factor weighs heavily in support of granting this Motion and approving the Hunt Settlement Agreement.

## V.    CONCLUSION

Based upon all of the foregoing, the Trustee respectfully requests the Court to enter an order:

a.    Granting the Motion in its entirety;

b.    Finding that notice of the Motion was proper;

c.    Approving the SGSB Settlement Agreement;

d.    Approving the Hunt Settlement Agreement; and

e.    Granting any further relief the Court deems just and proper.

Dated: May 12, 2026                    Respectfully submitted,

DINSMORE & SHOHL LLP


By:/s/ *Yosina M. Lissebeck*
        Yosina M. Lissebeck
Attorneys for Richard A. Marshack, Chapter 7 Trustee

19

**DECLARATION OF RICHARD A. MARSHACK**

I, RICHARD A. MARSHACK, declare:

1.    I am the Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Kristine Lynn Smith ("Debtor") in the above-captioned bankruptcy case. As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.    I submit this Declaration in support of my Motion For Order Approving Compromises with Creditor White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt") and Creditor Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB") ("Motion").[7]

3.    A true and correct copy of the SGSB Settlement Agreement is attached hereto as **Exhibit 1**.

4.    A true and correct copy of the Hunt Settlement Agreement is attached hereto as **Exhibit 2**.

5.    I am informed and believe that SGSB is one of the attorneys who represented Debtor during the contentious divorce proceeds with Gomez, which remains pending. I am informed and believe that as a result of this representation, Debtor granted SGSB a FLARPL as and for security of her reasonable attorney's fees and costs. I am informed and believe, through a review of the preliminary title report, a true and correct copy of which is attached hereto as **Exhibit 3**, the FLARPL was recorded against the Property on January 5, 2023, and the underlying claim has an asserted remaining balance owed of $300,000.

6.    As a result of the Sale Stipulation, and the Bankruptcy Sale Order, SGSB's FLARPL attached to Debtor's share of the Proceeds in the same validity, extent and priority as the lien had under applicable law, which, after payment of Debtor's reduced $25,000 homestead exemption, was first priority.

7.    I have engaged in informal discovery with SGSB with respect to its FLARPL. Through review of documents provided in support of the FLARP by SGSB, the amount appears to be supported. I believe I could potentially bring litigation challenging its validity and enforceability

---

[7] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

as I have not been provided with a proof of service of service regarding the FLARPL and I am informed and believe that Gomez asserts he did not receive the requisite notice; however, I believe that SGSB would hold potentially valid defenses as I am informed and believe that Gomez had knowledge of the FLARPL in light of his filings in state court that reference the FLARPL.

8. With respect to the SGSB Settlement Agreement, I believe the terms thereunder are fair and reasonable. Specifically, the $60,000 will almost double the amount of cash the Estate has on hand to pay unsecured creditors. The Estate currently has $55,000, from the sale of the Property, available to make pro rata distributions to general unsecured creditors. The influx of the funds from the Subordinated Claim will provide general unsecured creditors, excluding Gomez, with a much a larger distribution than they otherwise would. As Gomez stipulated that any portion of the Proceeds representing Debtor's homestead funds shall not be used to pay any of his claims, the $60,000 will be used to pay the other general unsecured creditors, which is a much smaller pool, approximately $78,528.22 total (excluding Gomez's Claim 12-1) versus $353,528.22 (including Gomez's Claim 12-1), resulting in a much larger pro rata distribution. Again, although the issues surrounding SGSB's FLARPL are not conceptually complex, litigation is always expensive and uncertain especially here considering the lack of published case law on the issues. To mitigate those risks while maximizing the recovery for the Estate's creditors, I agreed to the terms in the SGSB Settlement Agreement.

9. I am informed and believe that Hunt is a Certified Public Accountant firm that represented Debtor during her ongoing divorce proceedings, that Hunt held a lien that attached to the Property as a result of the recording of an abstract of judgment on June 30, 2023 (*see* Exhibit 3), and that Hunt also filed a proof of claim, Claim 10-1, in the Case, for the amount of $77,396.19.

10. As a result of the Sale Stipulation, and the Bankruptcy Sale Order, Hunt's Lien attached to Debtor's share of the Proceeds in the same validity, extent and priority as the lien had under applicable law, which, after payment of Debtor's reduced $25,000 homestead exemption, was second priority to SGSB's FLARPL.

/ / /

/ / /

21

11.     My review of Hunt's claims tends to evidence the validity and amount of the claim.

12.     In my business judgment, I do not believe I could obtain a superior outcome than what is reflected in the Hunt Settlement Agreement. Furthermore, while the issues involved are not, themselves, particularly complex, I believe further investigation or litigation would be costly and subject to the delays that almost invariably attend such litigation, which, considering the amount of the claim involved, would negatively impact the Estate and reduce distributions to creditors. Moreover, after examining the information available, Hunt's claim does appear to have merit.

13.     The Hunt and SGSB Settlement Agreements were reached after considerable good faith arms' length negotiation free from collusion or any undue influence. The reduction of Hunt's claim by $27,396.19 will have a direct benefit to general unsecured creditors as the amount is now unencumbered by security interests and available for distributions to general unsecured creditors. I sincerely believe settling the claims as set forth above is in the best interests of the Estate's creditors because it guarantees the availability of funds that can be distributed the Estate's creditors.

14.     Further, the Settlement Agreements resolve all known issues affecting the only remaining liens encumbering Debtor's/Estate's share of the Proceeds.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of May 2026, at Santa Ana, California.

_____
Richard A. Marshack

22

# EXHIBIT 1

Exhibit 1
Page 23

## Settlement Agreement & Limited Release

This Settlement Agreement ("Agreement") is made and entered into as of this 11th day of May 2026 ("Effective Date"), by and between Richard A. Marshack ("Trustee"), Chapter 7 Trustee for the Bankruptcy Estate ("Estate") of the Kristina Lynn Smith ("Debtor" or "Smith") and Creditor, Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB"), Debtor's pre-petition state court counsel. The Trustee and SGSB are referred to herein collectively as the "Parties," and each a "Party."

### Recitals

A. On or about October 3, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, commencing case no. 8:24-12527-SC ("Bankruptcy Case"). Richard A. Marshack is the Chapter 7 trustee for the Bankruptcy Case.

B. The Debtor and Jeffrey Adams Gomez ("Gomez") were married in 2003. The Parties separated in 2016 and initiated dissolution proceedings (Orange County Case No. 17D000590). SGSB is one of the attorneys who represented the Debtor during this contentions divorce, which is still pending.

C. On October 17, 2024, Debtor filed her Bankruptcy Schedules. On November 5, 2024, Debtor filed Amended Schedules A/B and C. In her Amended Schedules, Debtor scheduled an interest in 27591 Kathy Court, Laguna Niguel, California 92677 ("Property" or "Kathy Court Property").

D. As of the Petition Date, the Kathy Court Property was in an abysmal state of disrepair. On August 20, 2025, Trustee, Debtor and Gomez entered into the Stipulation re: Cooperation with Trustee During Marketing and Sale of Real Property Located at 27591 Kathy Court, Laguna Niguel, California ("Cooperation Stipulation"). On September 26, 2025, Trustee, along with all known lienholders (excepting one), entered into a stipulation for the sale of the Kathy Court Property free and clear of liens ("Sale Stipulation"). The Sale Stipulation was approved by the Court by order on October 6, 2025. The Cooperation Stipulation and the Sale Stipulation (collectively "Stipulations") addressed how proceeds were going to be disbursed and held pending further court orders.

E. SGSB held two liens that attached to the Property:

### 1. Abstract of Judgment ("Abstract")– against Mr. Gomez
a. Amount: $353,500
b. Debtor: Jeffrey Gomez
c. Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP
d. Date Entered: March 11, 2019
e. County: Orange
f. Court: Superior Court of California
g. Case No.: 17 D 00-05-90
h. Recording Date: April 1, 2019 as instrument no. 2019-102304 of Official Records
i. Acknowledgement of Satisfaction of Judgment (Partial)
   i. Recording Date: July 22, 2020 instrument no. 2020-352459.

### 2. Family Law Attorney Real Property Lien ("FLARPL")– against Debtor

a. Amount: $300,000
b. Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP.
c. Case No. 17 D 00-05-90

1

Exhibit 1
Page 24

    d.  County: Orange
    e.  Court: Superior Court of California
    f.  Recording Date: January 5, 2023
    g.  Recording No.: 2023-2404.

F.      SGSB did not file a proof of claim.

G.      On February 17, 2026, the Court held a hearing on the Trustee's Motion to Approve the Sale of the Property; and on February 27, 2026, an Order approving the sale was entered ("Sale Order"). The Sale Order, incorporating the Stipulations and those orders, required certain payments to be made from the proceeds of the sale. After the payment of those specified amounts, the balance would be split between Debtor and Mr. Gomez. Various liens would attach to the Debtor's/Estate's portion of the proceeds, and various liens would attach to Mr. Gomez's portion of the proceeds. SGSB's Abstract attached to Mr. Gomez share of the proceeds; SGSB's FLARPL attached to Debtor/Estate's share of the proceeds. The Trustee is required to hold all funds until further court order stating how those proceeds should be disbursed.

H.      On March 14, 2026, Mr. Gomez filed an adversary proceeding (Case No. 26:01028-SC) for Declaratory Relief and Disallowance of Claims. In that case Mr. Gomez asserts various arguments against both the Abstract and the FLARPL.

I.      The Trustee and SGSB, do not believe that Mr. Gomez has standing to dispute the FLARPL, as that lien right only attaches to the Debtor/Estate's share of the proceeds. Further, pursuant to the Stipulations and Sale Order, Mr. Gomez could never "reach" the Debtor/Estate's share of the proceeds, even as an unsecured creditor. Mr. Gomez certainly has the ability to assert the litigation against SGSB as to the Abstract, as that attaches directly to Mr. Gomez's share of the proceeds.

J.      Accordingly, the Trustee and SGSB worked together and exchanged documents, which the Trustee and his counsel reviewed, to determine both the validity and the amount of the FLARPL. The Trustee also did a careful analysis of the creditors in the case, taking into consideration the Stipulations and the Sale Order, as to how funds can be disbursed to creditors. Thus, rather than litigate the validity of the FLARPL, the parties entered into settlement discussions and have now reached the following agreement, subject to Bankruptcy Court approval.

## Agreement

NOW THEREFORE, in consideration of the foregoing Recitals and of the mutual agreements, covenants and releases set forth set forth below, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, the Parties agree as follows:

**1.**    **Incorporation of Recitals**. The foregoing Recitals are incorporated by reference as though set forth in full and are acknowledged by the Parties to be material representations which form the basis of this Agreement.

**2.**    **Rules of Construction.** Each party acknowledges that is has participated in the drafting of this Agreement and reviewed the terms of the Agreement and, as such, no rule of construction shall apply in any interpretation of this Agreement which might result in this Agreement

2

Exhibit 1
Page 25

being construed in favor or against either of them, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

**3.**      **Settlement.** On account of its claim and FLARPL, SGSB shall be paid $240,000 ("Non-Subordinated Claim"). SGSB subordinates the $60,000 balance of its claim to all allowed administrative and unsecured claims ("Subordinated Claim"). The lien that secures the Subordinated Claim of $60,000 shall be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). In other words, the Estate shall hold the lien against the Debtor's/Estate's portion of the proceeds that secures the Subordinated Claim and be entitled to use such funds to make distributions to allowed administrative and unsecured claims.

Within 14 days after entry of an order approving this Settlement Agreement, the Trustee shall pay the Non-Subordinated Claim from the Debtor's/Estate's portion of the proceeds currently held by the Trustee. In the event the Trustee is holding insufficient funds from the Debtor's/Estate's portion of the proceeds subject to the FLARPL to pay the Non-Subordinated Claim and Subordinated Claim in full, SGSB shall receive a payment from funds on hand that are subject to the FLARPL equal to the ratio of the Non-Subordinated Claim to the Subordinated Claim. To the extent that the Non-Subordinated Claim is not paid in full, the unpaid balance of the Non-Subordinated Claim shall be allowed as a general unsecured claim and receive distributions pro rata with all other unsecured claims as controlled by the Stipulations.

Payment of the Non-Subordinated Claim as set forth above shall be deemed full and complete satisfaction of SGSB's claim against the Estate.

**4.**      **Representation as to Authority to Enter Agreement.** Each party represents and warrants that it has authority to enter into this Agreement and agree to the terms and conditions set forth herein.

**5.**      **Consultation with Counsel.** The Parties have been given adequate opportunity to consult with legal counsel before entering into this settlement and executing this Agreement.

**6.**      **Limited Mutual Release.** For purposes of this Agreement, "Claim" or "Claims" means any and all liabilities, obligations, duties, claims, counterclaims, actions, demands, causes of action, suits, counterclaims, defenses, debts, sums of money due or owed, accounts, covenants, contracts, agreements, any amendments or modification thereto, arrangements, promises, obligations, warranties, trespasses, torts, injuries and losses of any kind, character, type, nature and description (including without limitation reasonable legal fees, costs and expenses relating thereto), in law or in equity, known as of the Parties execution of this Agreement, and expressly identified, whether absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated in amount, due or to become due and whether arising in contract, tort, or otherwise relating to the Bankruptcy Case that were asserted or could have been asserted against the Estate, excluding any claims or rights expressly reserved in this Agreement.

Upon this Agreement being final, by way of a non-appealable order approving this Agreement, the SGSB releases the Trustee and the Debtor's estate from any and all known Claims SGSB has subject to their rights under this Agreement, and the Trustee releases SGSB from any and all known Claims, subject to their rights under this Agreement

3

Exhibit 1
Page 26

**7.**     **Attorneys' Fees and Costs.** The Parties shall each bear the cost of their own respective attorneys' fees and costs incurred in connection with the dispute regarding SGSB's claim and the negotiation and documentation of the settlement and compromise represented by this Agreement.

**8.**     **Bankruptcy Court Approval.** This Agreement is subject to Bankruptcy Court approval and entry of an Order. If an Order is not entered, this Agreement is unenforceable. The Trustee, with the cooperation of SGSB, will file the necessary documents in the Bankruptcy Court to obtain Court approval.

**9.**     **Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of California applicable to contracts made and is to be performed entirely within such state. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division shall be the exclusive forum to resolve such dispute.

**10.**    **Entire Agreement.** The Parties to this Agreement represent and warrant that they have read this Agreement in its entirety, that they fully understand their rights and obligations under this Agreement, that they have executed this Agreement freely and voluntarily, that this Agreement constitutes the entire understanding and agreement between the Parties with respect to the matters referred to herein, and that there are no other representations, covenants, or other prior or contemporaneous agreements which are not specifically incorporated herein.

**11.**    **Headings.** The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

**12.**    **Counterparts.** This Agreement may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This Agreement shall not be binding until signed by both Parties.

**13.**    **Time is of the Essence.** Time is of the essence as to each and every term of this Agreement.

**14.**    **Amendments.** Any amendment, modification, or other change to this Agreement must be in writing and signed by the duly authorized representative of all Parties hereto and must expressly state the intent of the Parties to amend, modify or otherwise change this Agreement.

**15.**    **No Waiver.** Except as expressed in the Agreement, this Agreement is not a waiver of any additional rights and remedies.

Dated: _____          _____

                                        RICHARD A. MARSHACK, Chapter 7 Trustee

Dated: ___*05-06-26*___          STEGMEIER, GELBART, SCHWARTZ & BENAVENTE

                                        By: _____

                                        Its: ___*MANAGING PARTNER*___

                                        4

Exhibit 1
Page 27

# EXHIBIT 2

Exhibit 2
Page 28

## Settlement Agreement & Limited Release

This Settlement Agreement ("Agreement") is made and entered into as of this 11th day of May 2026 ("Effective Date"), by and between Richard A. Marshack ("Trustee"), Chapter 7 Trustee for the Bankruptcy Estate ("Estate") of the Kristina Lynn Smith ("Debtor" or "Smith") and Creditor, White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt"), Debtor's pre-petition certified public accountants. The Trustee and Hunt are referred to herein collectively as the "Parties," and each a "Party."

### Recitals

A. On or about October 3, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, commencing case no. 8:24-12527-SC ("Bankruptcy Case"). Richard A. Marshack is the Chapter 7 trustee for the Bankruptcy Case.

B. The Debtor and Jeffrey Adams Gomez ("Gomez") were married in 2003. The Parties separated in 2016 and initiated dissolution proceedings (Orange County Case No. 17D000590). Hunt is one of the certified public accounts who represented the Debtor during this contentions divorce, which is still pending.

C. On October 17, 2024, Debtor filed her Bankruptcy Schedules. On November 5, 2024, Debtor filed Amended Schedules A/B and C. In her Amended Schedules, Debtor scheduled an interest in 27591 Kathy Court, Laguna Niguel, California 92677 ("Property" or "Kathy Court Property").

D. As of the Petition Date, the Kathy Court Property was in an abysmal state of disrepair. On August 20, 2025, Trustee, Debtor, and Gomez entered into the Stipulation re: Cooperation with Trustee During Marketing and Sale of Real Property Located at 27591 Kathy Court, Laguna Niguel, California ("Cooperation Stipulation"). On September 26, 2025, Trustee, along with all known lienholders (excepting one), entered into a stipulation for the sale of the Kathy Court Property free and clear of liens ("Sale Stipulation"). The Sale Stipulation was approved by the Court by order entered on October 6, 2025. The Cooperation Stipulation and the Sale Stipulation (collectively "Stipulations") addressed how proceeds were going to be disbursed and held pending further court orders.

E. Hunt held a lien that attached to the Property:

### 1. Abstract of Judgment ("Abstract")– against Debtor
   a. Amount: $77,396.19
   b. Debtor: Kristina Smith aka Kristina Smith Gomez
   c. Creditor: White Zuckerman Warsavsky Luna and Hunt, LLP
   d. Date Entered: June 14, 2023
   e. County: Los Angeles
   f. Court: Superior Court of California
   g. Case No.: 23VECV00570
   h. Recording Date: June 30, 2023
   i. Recording No.: 2023-157395.

On 4/29/25, Hunt also filed a Proof of Claim, Claim 10-1 in the bankruptcy action in the amount of $77,396.19 ("POC").

1

Exhibit 2
Page 29

F. On February 17, 2026, the Court held a hearing on the Trustee's Motion to Approve the Sale of the Property; and on February 27, 2026, an Order approving the sale was entered ("Sale Order"). The Sale Order, incorporating the Stipulations and those orders, required certain payments to be made from the proceeds of the sale. After the payment of those specified amounts, the balance would be split between Debtor and Mr. Gomez. Various liens would attach to the Debtor's/Estate's portion of the proceeds, and various liens would attach to Mr. Gomez's portion of the proceeds. Hunt's Abstract attached to Debtor/Estate's share of the proceeds. The Trustee is required to hold all funds until further court order stating how those proceeds should be disbursed.

G. Pursuant to a settlement agreement with Stegmeier, Gelbart, Schwartz and Benavente, LLP, it will have a first priority position in the amount of $240,000 on the Debtor's/Estate's portion of the proceeds currently held by the Trustee. The Estate will assume and succeed to the first priority position of the remaining balance of $60,000 from the Debtor's/Estate's portion of the sale proceeds. Pursuant to the Stipulations, it is anticipated that the Trustee will utilize this $60,000 to make distributions to allowed administrative, and unsecured creditors (pro-rata) except for Mr. Gomez.

H. Pursuant to the sale of the Property, the Trustee believes he will have approximately $55,000 in additional proceeds from which he will be able to make distributions to allowed administrative, and unsecured creditors (pro-rata) including Mr. Gomez.

I. Accordingly, the Trustee and Hunt are now desirous of resolving the issues related to the validity of the lien, and its amount. Thus, the parties entered into settlement discussions and have now reached the following agreement, subject to Bankruptcy Court approval.

<u>Agreement</u>

NOW THEREFORE, in consideration of the foregoing Recitals and of the mutual agreements, covenants, and releases set forth set forth below, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, the Parties agree as follows:

 **1.** **<u>Incorporation of Recitals</u>**. The foregoing Recitals are incorporated by reference as though set forth in full and are acknowledged by the Parties to be material representations which form the basis of this Agreement.

 **2.** **<u>Rules of Construction.</u>** Each party acknowledges that is has participated in the drafting of this Agreement and reviewed the terms of the Agreement and, as such, no rule of construction shall apply in any interpretation of this Agreement which might result in this Agreement being construed in favor or against either of them, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

 **3.** **<u>Settlement</u>**. Hunt shall reduce its claim and lien asserted against the Debtor's/Estate's portion of the proceeds being held by the Trustee to $50,000 ("Reduced Claim").

Within 14 days after entry of an order approving this Settlement Agreement, the Trustee shall disburse the Reduced Claim to Hunt, as a second-priority distribution, from the Debtor's/Estate's portion of the proceeds currently held by the Trustee. If the Trustee holds insufficient funds from the Debtor's/Estate's portion to pay the Reduced Claim in full, any unpaid balance shall be allowed as a general unsecured claim against the Estate. The unsecured portion shall be paid pro rata in accordance with paragraphs G and H, above.

2

Exhibit 2<br>Page 30

Payment of the Reduced Claim as set forth above shall be deemed full and complete satisfaction of Hunt's claim against the Estate.

**4.** **Representation as to Authority to Enter Agreement.** Each party represents and warrants that it has authority to enter into this Agreement and agree to the terms and conditions set forth herein.

**5.** **Consultation with Counsel.** The Parties have been given adequate opportunity to consult with legal counsel before entering into this settlement and executing this Agreement.

**6.** **Limited Mutual Release.** For purposes of this Agreement, "Claim" or "Claims" means any and all liabilities, obligations, duties, claims, counterclaims, actions, demands, causes of action, suits, counterclaims, defenses, debts, sums of money due or owed, accounts, covenants, contracts, agreements, any amendments or modification thereto, arrangements, promises, obligations, warranties, trespasses, torts, injuries and losses of any kind, character, type, nature and description (including without limitation reasonable legal fees, costs and expenses relating thereto), in law or in equity, known as of the Parties execution of this Agreement, whether absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated in amount, due or to become due and whether arising in contract, tort, or otherwise relating to the Bankruptcy Case that were asserted or could have been asserted against the Estate, excluding any claims or rights expressly reserved in this Agreement.

Upon this Agreement being final, by way of a non-appealable order approving this Agreement, the Hunt releases the Trustee and the Debtor's estate from any and all known Claims Hunt has subject to their rights under this Agreement, and the Trustee releases the Hunt from any and all known Claims, subject to their rights under this Agreement

**7.** **Attorneys' Fees and Costs.** The Parties shall each bear the cost of their own respective attorneys' fees and costs incurred in connection with the dispute regarding Hunt's claim and the negotiation and documentation of the settlement and compromise represented by this Agreement.

**8.** **Bankruptcy Court Approval.** This Agreement is subject to Bankruptcy Court approval and entry of an Order. If an Order is not entered, this Agreement is unenforceable. The Trustee, with the cooperation of Hunt, will file the necessary documents in the Bankruptcy Court to obtain Court approval.

**9.** **Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of California applicable to contracts made and is to be performed entirely within such state. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division shall be the exclusive forum to resolve such dispute.

**10.** **Entire Agreement.** The Parties to this Agreement represent and warrant that they have read this Agreement in its entirety, that they fully understand their rights and obligations under this Agreement, that they have executed this Agreement freely and voluntarily, that this Agreement constitutes the entire understanding and agreement between the Parties with respect to the matters referred to herein, and that there are no other representations, covenants, or other prior or contemporaneous agreements which are not specifically incorporated herein.

3

Exhibit 2
Page 31

**11.** **Headings.** The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

**12.** **Counterparts.** This Agreement may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This Agreement shall not be binding until signed by both Parties.

**13.** **Time is of the Essence.** Time is of the essence as to each and every term of this Agreement.

**14.** **Amendments.** Any amendment, modification, or other change to this Agreement must be in writing and signed by the duly authorized representative of all Parties hereto and must expressly state the intent of the Parties to amend, modify or otherwise change this Agreement.

**15.** **No Waiver.** Except as expressed in the Agreement, this Agreement is not a waiver of any additional rights and remedies.

Dated: _____          _____

                                        RICHARD A. MARSHACK, Chapter 7 Trustee

Dated: _May 6, 2026_                     WHITE, ZUCKERMAN, WARSAVSKY, LUNA
                                         AND HUNT, LLP

                                         By: _____

                                         Its: _Credit Manager_

4

Exhibit 2
Page 32

# EXHIBIT 3

Exhibit 3
Page 33

**PRELIMINARY REPORT**

 Lawyers Title

|  |  |
|---|---|
| | Prelim Number: |
| | **LT1257804157**<br>**Update 2** |

7530 N Glenoaks Blvd
Burbank, CA 91504
Phone No.: 800-747-7777

Issuing Policies of **Commonwealth Land Title Insurance Company**

Order No.: LT1257804157

| A&A Escrow Services | Title Officer: | Michael Chediak & Ed Amaya Title Unit 78 |
|---|---|---|
| 15250 Ventura Blvd #715 | Phone No.: | 818-252-3778 |
| Sherman Oaks, CA 91403 | Fax No.: | |
| Attn: Antonia Delgado | Email: | TU78@Ltic.com |
| Email: antonia@aaescrow.com | | |

**Ref No.:**

Property:    27591 Kathy Ct, Laguna Niguel, CA

In response to the application for a policy of title insurance referenced herein, **Lawyers Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of a defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Exclusions from Coverage, and Conditions of said policy forms.

With respect to any contemplated owner's policy, the printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA/ALTA Homeowner's Policy of Title Insurance, which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a binder or commitment should be requested.

Countersigned By:

*Michele Weill*

Authorized Officer or Agent
Michele Weill, County Manager

CLTA Preliminary Report Form (02/03/2023)

Page 1

Printed: 11.06.25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 3
Page 34

PRELIM NO. LT1257804157
UPDATE 2

**LAWYERS TITLE COMPANY**

**Effective date:  July 2, 2025 at 07:30 AM, Update 2**

The form of Policy or Policies of Title Insurance contemplated by this Report is:

ALTA Homeowner's Policy of Title Insurance 2021

ALTA Loan Policy 2021

1.  The estate or interest in the Land hereinafter described or referred to covered by this Report is:

    **Fee simple as to Parcel(s) 1;**
    **Easement(s) more fully described below as to Parcel(s) 2**

2.  Title to said estate or interest at the date hereof is <u>vested in</u>:

    **Jeff Gomez and Kristina Smith Gomez, husband and wife as joint tenants, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

    **Name of Debtor: Kristina Lynn Smith**
    **Date of Filing: October 3, 2024**
    **U.S. district Court: District of Central**
    **Case No.: 8:24-bk-12527-SC**

3.  The Land referred to in this Report is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Exhibit 3
Page 35

## EXHIBIT A
Legal Description

**For APN/Parcel ID(s):    636-632-34**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 94 OF TRACT NO. 15962, IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 804, PAGES 5 THROUGH 9, INCLUSIVE OF MISCELLANEOUS MAPS, AS AMENDED BY THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JANUARY 29, 2001 AS INSTRUMENT NO. 01-48700 OF OFFICIAL RECORDS, ALL IN RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE AND ENCROACHMENT, SUPPORT, AND FOR OTHER PURPOSES ALL AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, RECORDED JUNE 26, 1997 AS INSTRUMENT NO. 1997-296011, AS AMENDED BY INSTRUMENT RECORDED JULY 21, 1997 AS INSTRUMENT NO. 1997-342349, AND THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR SAN JOAQUIN HILLS, (KNOLLS/PHASE 17) RECORDED APRIL 30, 2002 AS INSTRUMENT NO. 2002-362793, ALL OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

Exhibit 3
Page 36

**LAWYERS TITLE COMPANY**

## EXCEPTIONS

At the date hereof, items to be considered and exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

1. Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2025-2026.

2. The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

3. Water rights, claims or title to water, whether or not disclosed by the public records.

4. Non-exclusive easements over and through the common area for ingress, egress, public utility, enjoyment, support and repair of the common area and each unit, as provided in the above mentioned declaration and as disclosed by various deeds of record.

   Affects:  Common Area

5. Matters contained in that certain document

   Entitled: Lease Agreement
   Executed by: Moulton Niguel Water District and Los Angeles SMSA limited partnership, a California limited partnership
   Recording Date: September 3, 1996
   Recording No.: 1996-448970, of Official Records

   Reference is hereby made to said document for full particulars

6. Matters contained in that certain document

   Entitled: Covenant and Agreement
   Executed by: S&S Construction Co., a Division of Shapell Industries, Inc., a
   Delaware corporation and the City of Laguna Niguel, a Municipal
   Corporation
   Recording Date: May 21, 1997
   Recording No.: 97-235461, of Official Records

   Reference is hereby made to said document for full particulars

7. All easements, recitals, offers and dedications as shown on the official map

   Tract of: 15962

8. The matters set forth in the document shown  below which, among other things, contains or provides for: certain easements; liens and the subordination thereof; provisions relating to partition; restrictions on severability of component parts; and covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

   Recording Date:    June 26, 1997
   Recording No.:     1997-296011, Official Records

Exhibit 3
Page 37

**LAWYERS TITLE COMPANY**

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

9.      Modification(s) of said covenants, conditions and restrictions

Recording Date: July 21, 1997
Recording No: 1997-342349, of Official Records

10.     The provisions of said covenants, conditions and restrictions were extended to include the herein described land by an instrument

Recording Date: April 30, 2002
Recording No.: 2002-362793, of Official Records

11.     Modification(s) of said covenants, conditions and restrictions

Recording Date: December 22, 2011
Recording No.: 2011-671693, of Official Records

12.     Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

Granted To: Pacific Bell Telephone Company, a California corporation
Purpose: Underground communication facilities
Recording Date: November 2, 2000
Recording No: 2000-593934, of Official Records
Affects: said land more particularly described therein

13.     Matters contained in that certain document

Entitled: San Joaquin Hills Declaration of Restrictions (Knolls, Phase 17)
Executed by: Shapell Industries, Inc., a Delaware corporation
Recording Date: April 30, 2002
Recording No.: 2002-362794, of Official Records

Reference is hereby made to said document for full particulars

14.     Matters contained in that certain document

Entitled: Notice of Declaration of Elections Under California Senate Bill 800 (San Joaquin Hills-Knolls)
Dated: January 14, 2003
Executed by: Shapell Industries, Inc., a Delaware corporation
Recording Date: January 31, 2003
Recording No.: 2003-122365, of Official Records

Reference is hereby made to said document for full particulars

15.     Matters contained in that certain document

Entitled: Easements, Covenants and Conditions contained in the Deed
Executed by: Shapell Industries, Inc. and Brian Ackerman, a married man as his sole and separate property
Recording Date: March 19, 2003
Recording No.: 2003-292891, of Official Records

Reference is hereby made to said document for full particulars

Exhibit 3
Page 38

16.   Any rights of the parties, if other than the vestees, in possession of the Parking Space shown in the legal description herein.

17.   A deed of trust to secure an indebtedness in the amount shown below, and any other obligations Secured thereby

Amount: $700,000.00
Dated: January 27, 2014
Trustor/Grantor: Jeff Gomez a married man as his sole and separate property
Trustee: Unionbancal Mortgage Corporation
Beneficiary: Union Bank, N.A., a National Banking Association
Loan No.: 696 2417114
Recording Date: January 29, 2014
Recording No: 2014-37516, of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:           Quality Loan Service Corporation
Recording Date:    June 6, 2024
Recording No.:     2024-140614, Official Records

A notice of default under the terms of said trust deed

Recording Date:    June 27, 2024
Recording No:      2024-159460, Official Records

A notice of trustee's sale under said deed of trust

Time and Place of Sale: 11/15/2024 at 9:00:00 AM Place of Sale: At the Doubletree by Hilton Hotel Anaheim - Orange County, 100 The City Drive, Orange, CA 92868 in the Auction.com Room
Recording Date: September 30, 2024
Recording No.: 2024-251941, Official Records

18.   A pending Court Action as disclosed by a recorded notice:

Plaintiff: Kristina Smith
Defendant: Jeffrey Adams Gomez
County: Orange
Court: Superior Court of the State of California
Case No.: 17 D 00-05-90
Nature of Action: Title affects to real property
Recorded: May 10, 2018
Recording No.: 2018-170624, of Official Records

Exhibit 3
Page 39

19.    An abstract of judgment for the amount shown below and any other amounts due:

Amount: $353,500.00
Debtor: Jeffrey Adams Gomez
Creditor: Stegmeier, Gelbart, Schwartz and Benavente, LLP
Date Entered: March 11, 2019
County: Orange
Court: Superior Court of California
Case No.: 17 D 00-05-90
Recording Date: April 1, 2019 as instrument no. 2019-102304, of Official Records

Matters contained in that certain document

Entitled: Acknowledgment of Satisfaction of Judgement (Partial)
Recording Date: July 22, 2020 as instrument no. 2020-352459, of Official Records

Reference is hereby made to said document for full particulars

20.    An abstract of judgment for the amount shown below and any other amounts due:

Amount: $3,373.56
Debtor: Jeff Gomez, aka Jeffery A. Gomez, aka Jeffery Adam Gomez, aka Jeffrey A. Gomez, an individual
Creditor: American Express National Bank, successor by Merger to American Express Bank, FSB
Date Entered: August 13, 2021
County: Orange
Court: Superior
Case No.: 30-2020-01125756-CL-CL-CJC
Recording Date: September 9, 2021
Recording No: 2021-564588, of Official Records

21.    An abstract of judgment for the amount shown below and any other amounts due:

Amount: $3,373.56
Debtor: Jeff Gomez, aka Jeffery A. Gomez, aka Jeffery Adam Gomez, aka Jeffrey A. Gomez, an individual
Creditor: American Express National Bank, successor by Merger to American Express Bank, FSB
Date Entered: August 13, 2021
County: Orange
Court: Superior
Case No.: 30-2020-01125756-CL-CL-CJC
Recording Date: September 9, 2021
Recording No: 2021-564869, of Official Records

22.    An abstract of judgment for the amount shown below and any other amounts due:

Amount: $73,681.88
Debtor: Jeff Adams Gomez aka Jeff A. Gomez, or Jeff Gomez or Jeff Adams
Creditor: The Neshanian Law Firm, Inc.
Date Entered: July 8, 2021
County: Orange
Court: Superior
Case No.: 30-2021-01191914-CU-PA-CJC
Recording Date: February 8, 2022
Recording No: 2022-52681, of Official Records

Exhibit 3
Page 40

LAWYERS TITLE COMPANY

PRELIM NO. LT1257804157
UPDATE 2

23.   A lien for attorney's fees in the amount shown below, and any other amounts as therein provided, as disclosed by Decree of Distribution

Amount: $300,000.00
Case No.: 17 D 00-05-90
Recording Date: January 5, 2023
Recording No.: 2023-2404, of Official Records

24.   An abstract of judgment for the amount shown below and any other amounts due:

Amount: $131,143.94
Debtor: Jeffrey Adams aka Jeffrey A. Gomez
Creditor: R & S Law Group, APC
Date Entered: March 14, 2023
County: Orange
Court: Superior
Case No.: 30-2022-01280774-CU-Co-CJC
Recording Date: March 31, 2023
Recording No: 2023-74125, of Official Records

25.   An abstract of judgment for the amount shown below and any other amounts due:

Amount: $77,396.19
Debtor: Kristina Smith aka Kristina Smith Gomez
Creditor: White Zuckerman Warsavsky Luna and Hunt, LLP
Date Entered: June 14, 2023
County: Los Angeles
Court: Superior
Case No.: 23VECV00570
Recording Date: June 30, 2023
Recording No: 2023-157395, of Official Records

26.   A state tax lien for the amount shown and any other amounts due,

State ID No.:    25285000516
Filed by:       The Franchise Tax Board of the State of California
Taxpayer:       Kristina Smith
Amount:         $4,936.75
Recording Date: October 14, 2025
Recording No.:  2025-281304, Official Records

**END OF EXCEPTIONS**

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

CLTA Preliminary Report Form (02/03/2023)
Page 8
Printed: 11 06 25 @ 09:39 AM
CA-CW-FXDB-03410.204099-SPS-1-25-LT1257804157

Exhibit 3
Page 41

**LAWYERS TITLE COMPANY**

## REQUIREMENTS

1.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(ies),

Party(ies):  All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name.  Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.      Satisfactory evidence must be furnished from the secretary or other duly qualified officer of the Association showing that all assessments and fees, including special assessments or payments due to others, such as master associations, are paid in full through the date of closing.

**END OF REQUIREMENTS**

Exhibit 3
Page 42

**LAWYERS TITLE COMPANY**

PRELIM NO. LT1257804157
UPDATE 2

## INFORMATIONAL NOTES

1. The information on the attached plat is provided for your convenience as a guide to the general location of the subject property. The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

2. California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed. All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

   **For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

3. Lawyers Title is a division of Commonwealth Land Title Insurance Company. The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

4. Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

Exhibit 3
Page 43

**LAWYERS TITLE COMPANY**

5.    Note:  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note:  The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land: a single family residence - Planned Unit Development (PUD)
Known as:  27591 Kathy Court, City of Laguna Niguel, California

Note:  There are no conveyances affecting said Land recorded within 24 months of the date of this report.

Note:  The Company requires current beneficiary demands prior to closing.  If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)    If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment.  This hold will be in addition to the verbal hold the lender may have stipulated.

b)    If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

c)    All payoff figures are verified at closing.  If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

6.    Note:  Association Assessments are periodically due from holders of title to said Land to the Homeowner's Association and transfer fees may be due whenever there is a transfer of title of any of the units.  In order to ascertain seller's/buyer's association assessments and transfer fee requirements prior to transfer of a unit, Escrow companies are requested to contact said Homeowner's Association.

7.    The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

To protect the private information contained in the attached form and photo ID, please return via a secured method.

8.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

9.    Property taxes, including any personal property taxes and any assessments collected with taxes, are paid.    For proration purposes the amounts were:

| | |
|---|---|
| Tax Identification No.: | 636-632-34 |
| Fiscal Year: | 2024-2025 |
| 1st Installment: | $5,802.71 |
| 2nd Installment: | $5,802.71 |
| Exemption: | $0.00 |
| Code Area: | 29-084 |

**END OF INFORMATIONAL NOTES**

Exhibit 3
Page 44

**LAWYERS TITLE COMPANY**

Exhibit 3
Page 45

**FIDELITY NATIONAL FINANCIAL**
**CALIFORNIA PRIVACY NOTICE**

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at *Prospective California Employees*.

Some subsidiaries maintain separate California Privacy Notices or privacy statements. If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information:**

In the preceding twelve (12) months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial information, including records of personal property, products or services purchased, or other purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;
- Geolocation data;
- Unique biometric data used to authenticate a specific individual such as a fingerprint, retina, or iris image;
- Professional or employment information;
- Education Information.

**This Personal Information is collected from the following sources:**

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities, or from internet service providers, data analytics providers, and social networks;
- Information from the use of our websites and mobile applications;
- Information we receive directly from you related to doing business with us.

**This Personal Information is collected for the following business purposes:**

- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To detect and protect against fraudulent or illegal activity;

Exhibit 3
Page 46

- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To maintain the security of our systems, tools, accounts, and applications;
- To verify and authenticate identities and credentials;
- To provide, support, personalize, and develop our websites, products, and services;
- To directly market our products to consumers;
- As described to you when collecting your Personal Information or as otherwise set forth in the California Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose**:

In the preceding twelve (12) months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of third parties:

- FNF affiliates and subsidiaries;
- Non-affiliated third parties, with your prior consent;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers and non-affiliated third parties such as data analytics providers;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information**:

In the preceding twelve (12) months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

**Retention Periods**:

Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

**Personal Information of minors**:

FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under sixteen (16) years of age.

**Sensitive Personal Information**:

FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

**Right to know**:

Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer. Consumers have the right to request FNF disclose what Personal Information it collected, used, and disclosed in the past twelve (12) months.

Exhibit 3
Page 47

**Right to request deletion:**

Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

**Right to Correct:**

Consumers have the right to correct inaccurate Personal Information.

**Right to non-discrimination:**

Consumers have a right not to be discriminated against because of exercising their consumer privacy rights.  We will not discriminate against Consumers for exercising any of their California Privacy Rights.

**Privacy Requests:**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit *California Privacy Request (FNF.com/California-privacy)*, call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.

A Consumer may use an Authorized Agent to submit any CCPA request.  Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites").  The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice.  The sections of this Privacy Notice describing the categories, sources, and uses of your Personal Information do not apply to the Service Websites.  The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information.  FNF does not share Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice - Effective Date:**

This California Privacy Notice was last updated on January 1, 2025.

**Contact for more information:**

For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any of your California Privacy Rights, please visit *California Privacy (FNF.com/California-privacy)*, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

Exhibit 3
Page 48

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Companies**
CTC - Chicago Title Company
CLTC - Commonwealth Land Title Company
FNTC - Fidelity National Title Company
FNTCCA - Fidelity National Title Company of California
TICOR - Ticor Title Company of California
LTC - Lawyer's Title Company
SLTC - ServiceLink Title Company

**Underwritten by FNF Underwriters**
CTIC - Chicago Title Insurance Company
CLTIC - Commonwealth Land Title Insurance Co.
FNTIC - Fidelity National Title Insurance Co.
NTINY - National Title Insurance of New York

**Available Discounts**

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, CLTIC, FNTIC, NTINY)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected.  The charge for a lender's policy shall be forty percent (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**DISASTER AREA TRANSACTIONS (CTIC, CLTIC, FNTIC, NTINY)**
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a Lender's Policy (Standard or Extended), or an Owner's Policy (Standard or Homeowners coverage).  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.

Notice of Available Discounts
SCA0002598.doc / Updated: 12.13.24

Printed: 11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT 1257804157

Exhibit 3
Page 49

## Notice of Available Discounts
(continued)

**DISASTER AREA ESCROWS (CTC, CLTC, FNTC, TICOR, LTC)**
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a loan or a sale escrow transaction.  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.  Standard minimum charge applies based upon property type.  No other discounts or special rates, or combination of discounts or special rates, shall be applicable. Applies to a single transaction per property.

This rate is applicable to the following Zones/Counties:

Zone 1.A:  Orange County
Zone 1.B:  Riverside and San Bernardino Counties
Zone 2:  Los Angeles County
Zone 3:  Ventura County
Zone 10:  San Diego County
Zone 12:  Imperial County

If used for a sale transaction, the application of this rate assumes the charge for the Residential Sale Escrow Services (RSES) fee will be split evenly between buyer and seller.  As such and regardless of how the calculated applicable RSES will be split between the disaster victim and the other principal, the rate will be applied only to one half (1/2) of the calculated applicable RSES fee, regardless of whether the disaster victim is paying half (1/2) of the RSES fee (as is customary) or paying the entire fee.  The rate under this provision will be fifty percent (50%) of disaster victims' one half (1/2) portion only and shall not apply to any portion paid by non-disaster victim. Additional services will be charged at the normal rates.

**MILITARY DISCOUNT RATE (CTIC, CLTIC, FNTIC)**
Upon the Company being advised in writing and prior to the closing of the transaction that an active duty, honorably separated, or retired member of the United States Military or Military Reserves or National Guard is acquiring or selling an owner occupied one-to-four family property, the selling owner or acquiring buyer, as applicable, will be entitled to a discount equal to fifteen percent (15%) of the otherwise applicable rates such party would be charged for title insurance policies.  Minimum charge:  Four Hundred Twenty-Five And No/100 Dollars ($425.00)

The Company may require proof of eligibility from the parties to the transaction verifying they are entitled to the discount as described.  No other discounts or special rates, or combination of discounts or special rates, shall be applicable.

**MILITARY RATE (SLTC)**
A discount of twenty percent (20%) off the purchase transaction closing and settlement fee or a discount of One Hundred And No/100 Dollars ($100.00) off the refinance closing and settlement fee, will be applied when the loan is guaranteed by the United States Veterans Administration and the escrow fee is being paid by the consumer and is listed as paid by borrower on the Closing Disclosure and final Settlement Statement.

Notice of Available Discounts
SCA0002598.doc / Updated: 12.13.24

Printed: 11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410.204099-LT1257804157

Exhibit 3
Page 50

**WIRE SAFE** | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

Wire Fraud Alert
Original Effective Date:  5/11/2017
Current Version Date:  5/11/2017

*TM and ® Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

Page 1

LT1257804157

Exhibit 3
Page 51

## ATTACHMENT ONE

**CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY - 1990 (11-09-18)**

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

Attachment One (11/04/22)

Exhibit 3
Page 52

## ATTACHMENT ONE
### (CONTINUED)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   a.   any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
     i.    the occupancy, use, or enjoyment of the Land;
     ii.   the character, dimensions, or location of any improvement on the Land;
     iii.  the subdivision of land; or
     iv.   environmental remediation or protection.
     b.   any governmental forfeiture, police, regulatory, or national security power.
     c.   the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
     Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.   Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.   Any defect, lien, encumbrance, adverse claim, or other matter:
     a.   created, suffered, assumed, or agreed to by the Insured Claimant;
     b.   not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
     c.   resulting in no loss or damage to the Insured Claimant;
     d.   attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
     e.   resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
     a.   fraudulent conveyance or fraudulent transfer;
     b.   voidable transfer under the Uniform Voidable Transactions Act; or
     c.   preferential transfer:
          i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
          ii.  for any other reason not stated in Covered Risk 9.b.
5.   Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.   Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.
     Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.   Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

#### PART I

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.   Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.   Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.   Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.   Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

#### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

Attachment One (11/04/22)

Exhibit 3
Page 53

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (7-01-21)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   a.   any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
   - i.   the occupancy, use, or enjoyment of the Land;
   - ii.   the character, dimensions, or location of any improvement on the Land;
   - iii.   the subdivision of land; or
   - iv.   environmental remediation or protection.
     b.   any governmental forfeiture, police, or regulatory, or national security power.
     c.   the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2. Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
     a.   created, suffered, assumed, or agreed to by You;
     b.   not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
     c.   resulting in no loss or damage to You;
     d.   attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
     e.   resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4. Lack of a right:
     a.   to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
     b.   in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
     a.   fraudulent conveyance or fraudulent transfer;
     b.   voidable transfer under the Uniform Voidable Transactions Act; or
     c.   preferential transfer:
   - i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
   - ii.   for any other reason not stated in Covered Risk 30.
7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9. Any lien on Your Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

* For Covered Risk 16, 18, 19 and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

Attachment One (11/04/22)

Exhibit 3
Page 54

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $  5,000.00 |

Attachment One (11/04/22)

Exhibit 3
Page 55

## ATTACHMENT ONE
### (CONTINUED)

### ALTA OWNER'S POLICY (07-01-2021)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement on the Land;
   iii. the subdivision of land; or
   iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Attachment One (11/04/22)

Exhibit 3
Page 56

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)   the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a) a fraudulent conveyance or fraudulent transfer; or

    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.]

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Attachment One (11/04/22)

Exhibit 3
Page 57



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

Order LT1257804157                    Page 1 of 1           Requested By Sergio Pimentel    Printed 6/13/2025 10 26 AM
Doc 636-63 MAP ASSESSOR

Exhibit 3
Page 58

 **American Land Title Association** Protecting the American Dream Since 1907

# ALTA INFORMATION COLLECTION FORM

Under 31 U.S.C. § 5326(a), the Treasury Department's Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order to title insurance companies requiring the collection of beneficial ownership information for certain real estate transactions.

Please complete the below questionnaire. This Company will rely on the answers provided to meet its reporting obligations.

**Who is completing this form?**

| Name | Position/Title | Company/Law Firm | |
|---|---|---|---|
| Postal Address (Headquarters) | City | State | Zip |
| Phone | Email | Fax | |

**Transactional Information**

| Property Address *(If multiple properties see NOTE below):* | | | | |
|---|---|---|---|---|
| City | | State | Zip | County |
| Date of Settlement | Total purchase price *(If multiple properties see NOTE below)* $ | | | |
| Type of Transaction: ☐ Residential (1-4 family)   ☐ Commercial | | Bank Financing: ☐ Yes  ☐ No | | |
| Purchaser type: ☐ Natural Person   ☐ Corporation   ☐ LLC   ☐ Partnership   ☐ Other | | | | |

**NOTE**: *If more than one property is purchased, list each address and purchase price on an addendum.*

**Purchase Funds Information**

| Total Amount paid by below instruments:  $ | |
|---|---|
| Which type of Monetary Instruments were used *(Use check boxes below)* | |
| ☐ U.S. Currency (Paper money and coin) | |
| ☐ Foreign Currency | Country: |
| ☐ Cashier's check(s) | ☐ Money order(s) |
| ☐ Certified check(s) | ☐ Personal or Business check(s) |
| ☐ Wire or other funds transfer(s) | ☐ Virtual Currency |

Exhibit 3
Page 59


**American Land
Title Association**
Protecting the American Dream Since 1907

**ALTA INFORMATION COLLECTION FORM**

**Individual Primarily Representing Purchaser**

*(Defined as the individual authorized by the entity to enter into legally binding contracts.)*

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

**Purchaser's Name and Address**

| Name of Purchaser | | | |
|---|---|---|---|
| Taxpayer ID No. or EIN *(if none write N/A)* | Doing Business Name (DBA) *(If none write N/A)* | | |
| Address | City | State | Zip |

*Complete the following pages if the real estate purchase is being made by a corporation, LLC, partnership, or other legal entity. (Do not report trusts.)*

*For Corporations, LLCs, Partnerships and Other Entities provide the information for:*

- Each **BENEFICIAL OWNER** defined as an individual who, directly or indirectly, owns Twenty-Five Percent (25%) or more of the equity interests of the Purchaser.

- If a legal entity or a series of legal entities own the equity interests of the Purchaser, provide information for each **BENEFICIAL OWNER**, of each legal entity in the series of legal entities.

**(Note: It is NOT necessary to complete the address fields if the information is on a legible copy of the government issued ID submitted to the title underwriter.)**

Exhibit 3
Page 60



**American Land
Title Association**
Protecting the American Dream Since 1907

# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

Exhibit 3
Page 61



## American Land Title Association
*Protecting the American Dream Since 1907*

# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | | |
|---|---|---|---|---|---|
| Type of ID | | Issuing State or Country | | Gov't ID No. | |
| Last Name | | First Name | | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | | % of ownership | |
| Address | | City | | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | | |
|---|---|---|---|---|---|
| Type of ID | | Issuing State or Country | | Gov't ID No. | |
| Last Name | | First Name | | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | | % of ownership | |
| Address | | City | | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | | |
|---|---|---|---|---|---|
| Type of ID | | Issuing State or Country | | Gov't ID No. | |
| Last Name | | First Name | | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | | % of ownership | |
| Address | | City | | State | Zip |

Exhibit 3
Page 62

American Land
Title Association
Protecting the American Dream Since 1907

**ALTA INFORMATION COLLECTION FORM**

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

I declare that to the best of my knowledge, the information I have furnished is true, correct and complete. I understand that this Title Company will rely on this information for the purposes of completing any reports made pursuant to an obligation under 31 U.S.C. § 5326(a).

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

| Signature: | Date: |
|---|---|
| Type or Print Name: | Title: |

Exhibit 3
Page 63

 **Lawyers Title**

**STATEMENT OF INFORMATION
CONFIDENTIAL INFORMATION
FOR YOUR PROTECTION**

Escrow No.: LT1257804157

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents. Complete all blanks (please print) or indicate "none" or "N/A." If more space is needed for any item(s), use the reverse side of the form. Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

### NAME AND PERSONAL INFORMATION

_____ Date of Birth _____

First Name          Middle Name              Last Name                      Maiden Name
                                        (If none, indicate)

Home Phone _____ Business Phone _____ Birthplace _____

Cell Phone _____ Fax _____ Email _____

Social Security No. _____ Driver's License No. _____

List any other name you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

Are you currently married? ☐ Yes   ☐ No   Are you currently a registered domestic partner? ☐ Yes   ☐ No

If yes, complete the following information:

    Date and place of marriage _____

    Spouse/Domestic Partner _____ Date of Birth _____
               First Name          Middle Name        Last Name      Maiden Name
                           (If none, indicate)

    Home Phone _____ Business Phone _____ Birthplace _____

    Cell Phone _____ Fax _____ Email _____

    Social Security No. _____ Driver's License No. _____

    List any other name you have used or been known by _____

    State of residence _____ I have lived continuously in the U.S.A. since _____

### CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____
(if more space is required, use reverse side of form)

### RESIDENCES (LAST 10 YEARS)

| Number & Street | City | From (date) to (date) |
|---|---|---|
| Number & Street | City | From (date) to (date) |

(if more space is required, use reverse side of form)

### OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business Name | Address | From (date) to (date) |

(if more space is required, use reverse side of form)

### SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business Name | Address | From (date) to (date) |

(if more space is required, use reverse side of form)

Exhibit 3
Page 64

## STATEMENT OF INFORMATION
## CONFIDENTIAL INFORMATION FOR YOUR PROTECTION
(continued)

### PRIOR MARRIAGE(S) and PRIOR DOMESTIC PARTNERSHIP(S)

Any prior marriages or domestic partnerships for either person? _____ If yes, complete the following:

Prior spouse's (Party A) name: _____ Prior Spouse of Party A: _____

Marriage ended by: ☐ Death  ☐ Divorce/Dissolution  ☐ Nullification    Date of Death/Divorce: _____

Prior spouse's (Party B) name _____ Prior Spouse of Party B: _____ Spouse

Marriage ended by: ☐ Death  ☐ Divorce/Dissolution  ☐ Nullification    Date of Death/Divorce: _____

(if more space is required, use reverse side of form)

### INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction: ☐ Yes    ☐ No

### Owner to complete the following items

Street Address of Property in this transaction: _____

The land is ☐ unimproved; or improved with a structure of the following type: ☐ A Single or 1-4 Family ☐ Condo Unit ☐ Other _____

Improvements, remodeling or repairs to this property have been made within the past six (6) months: ☐ Yes  ☐ No

If yes, have all costs for labor and materials arising in connection therewith been paid in full?        ☐ Yes  ☐ No

Any current loans on property? _____ If yes, complete the following:

Lender_____ Loan Amount_____ Loan Account No. _____

Lender_____ Loan Amount_____ Loan Account No. _____

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____        _____
              Signature                                                Date

_____
Print Name

_____        _____
              Signature                                                Date

_____
Print Name

(Note: If applicable, both spouses/domestic partners must sign.)
**THANK YOU.**

Statement of Information (UE-34 (Rev. 06-08))
SCA0000279.doc / Updated: 02.14.25                    Page 2                    Printed: 11.06.25 @ 09:39 AM by
CA-CW-FXDB-03410 204099-LT 1257804157

Exhibit 3
Page 65

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is **655 West Broadway, Suite 800, San Diego, CA 92101**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE, RICHARD MARSHACK'S MOTION FOR ORDER APPROVING COMPROMISES WITH CREDITOR WHITE ZUCKERMAN WARSAVSKY LUNA AND HUNT, LLP AND CREDITOR STEGMEIER, GELBART, SCHWARTZ AND BENAVENTE, LLP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND DECLARATION OF RICHARD A. MARSHACK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Attorneys for Wells Fargo Bank NA
  **David Coats** - dacoats@raslg.com

- Attorneys for Jeffrey Adams Gomez
  **Benjamin Heston** - bhestonecf@gmail.com, benheston@recap.email, NexusBankruptcy@jubileebk.net

- Attorneys for Richard Heston & Kerry Kavanaugh
  **Richard G. Heston** - rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com, HestonRR41032@notify.bestcase.com, hestonlaw@recap.email

- Attorneys for Richard A. Marshack, Chapter 7 Trustee
  **Yosina M Lissebeck** - Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; linda.dominguez@dinsmore.com

- **Richard A Marshack (TR)** - pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

- Courtesy NEF
  **Eric Marcus Neshanian** - neshanianlawfirm@gmail.com

- Attorneys for Richard A. Marshack, Chapter 7 Trustee
  **Jacob Newsum-Bothamley** - jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com

- Attorneys for Richard A. Marshack, Chapter 7 Trustee
  **Matthew J Stockl** - mstockl@otterbourg.com, nregina@otterbourg.com

- **United States Trustee (SA)** - ustpregion16.sa.ecf@usdoj.gov

- **Attorneys for Howard & Kristina Smith**
  **Julie J Villalobos** - julie@oaktreelaw.com, oakecfmail@gmail.com;
  villalobosjr51108@notify.bestcase.com; gus@oaktreelaw.com

- **Attorneys for US Bank National Association**
  **Jennifer C Wong** - bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) <u>May 12, 2026</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130/Ctrm 5C
Santa Ana, CA 92701-4593

Clarence Yoshikane
Berkshire Hathaway
1400 Newport Center Drive, Suite 200
Newport Beach, CA 92660

Kerry Kavanaugh
4511 Isabella Lane
Dallas, TX 75229

Howard Smith
28822 Via De Luna
Laguna Niguel, CA 92677

Michelle Sherwood, Esq
R & S Law Group, APC
400 West First St
Tustin, CA 92780

Hahn Fife & Company LLP
1055 E. Colorado Blvd 5
Pasadena, CA 91106

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 12, 2026 | Wendy A. Yones | /s/ Wendy A. Yones |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |