YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501

Attorneys for Richard A. Marshack, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No. 8:24-bk-12527-SC |
| Kristina Lynn Smith, | Chapter 7 |
| Debtor. | **REPLY TO LIMITED OPPOSITION TO INTERIM APPLICATION FOR COMPENSATION (DOCKET #180) AND MOTION TO APPROVE COMPROMISE (DOCKET #182) [DKT. 186]; DECLARATION OF YOSINA M. LISSEBECK** |
| | Date:       June 2, 2026 |
| | Time:       11:00 a.m. |
| | Honorable Scott C. Clarkson |
| | Courtroom 5C |

Dinsmore & Shohl LLP ("Dinsmore"), as both the applicant of the First Interim Application for Allowance and Payment of Fees and Reimbursement for Expenses for the Period of October 23, 2024, through April 30, 2026, filed May 12, 2026 [Dkt. 180] ("Application") and as counsel to Richard A. Marshack, the duly appointed, qualified, and acting Chapter 7 Trustee ("Trustee") of the above-captioned bankruptcy estate ("Estate") of the above captioned debtor ("Debtor"), respectfully submits this reply ("Reply") to Jeffrey Adams Gomez' ("Gomez") Limited Opposition to Interim Application for Compensation (Docket #180) and Motion to Approve Compromise (Docket #182) filed May 19, 2026 [Dkt. 186] ("Opposition") as follows:

I.      **INTRODUCTION**

For several reasons, and as more fully discussed herein, the Opposition should be overruled in its entirety.

1

Gomez, by way of the Opposition, attempts to argue his way around the stipulated treatment of his alleged, disputed, unliquidated claim under California Family Code § 2640 ("2640 Claim") for reimbursement of separate property contributions. The alleged 2640 Claim, however, under the circumstances of the case, is of no impact to Dinsmore's Application or Trustee's Motion for Order Approving Compromises with Creditor White Zuckerman Warsavsky Luna and Hunt, LLP and Creditor Stegmeier, Gelbart, Schwartz and Benavante, LLP ("9019 Motion").

The Opposition fails to address the fact that Gomez stipulated that his alleged 2640 Claim would be subordinate to administrative costs, which includes Dinsmore's fees, with respect to any proceeds from the sale of the real property located at and commonly known as 27591 Kathy Court, Laguna Niguel California ("Property").

Additionally, no division of the Property occurred pre-petition which renders the Property, and its sales proceeds, community property and property of the Estate. Any purported 2640 Claim does not change the community property nature of the Property and its sales proceeds.

Even more, the purported 2640 Claim does not affect the enforceability of any liens that previously attached to the Property or the proceeds derived from a sale thereof. As such, irrespective of a 2640 Claim, the liens involved in the underlying settlement agreements must otherwise be paid from the proceeds of the sale of the Property. The Settlement Agreements (defined below), however, compromise a resolution involving only otherwise encumbered funds not reachable by Gomez' alleged 2640 Claim due to both the Sale Stipulation and by operation of law.

Accordingly, the Application and the 9019 Motion are not premature, do not use funds that are not property of the Estate, and the relief requested in each may be granted in full by the Court at this time.

II. **ARGUMENT**

    A. <u>**The Application is Not Premature as it Seeks Payment from Property of the Estate and Gomez Stipulated to Such Payment from the Sale Proceeds**</u>

The Opposition asserts that the Bankruptcy Court does not permit the payment of estate professionals from the separate property of a non-debtor and, because Gomez' 2640 Claim could render a portion of the sales proceeds from the sale of the Property his separate property, the

Application is premature to the extent it assumes the entirety of the cash on hand is available for Estate administration. These assertions are incorrect for two specific reasons. First, Gomez stipulated to the subordination of his 2640 Claim to the payment of Dinsmore's fees sought in the Application. Second, no division of property occurred in the Superior Court of California, County of Orange case *In re Marriage of Kristina Lynn Smith and Jeffrey Adams Gomez*, Case No. 17D000590 ("Divorce Proceedings") prior to the filing of Debtor's bankruptcy petition, rendering the Property, and subsequently the related sales proceeds, community property and property of the Estate. As there was no pre-petition division of the Property, Gomez' alleged 2640 Claim will not change the community property nature of the proceeds.

> i.     Gomez Stipulated to the Subordination of his Claim to Administrative Claims in the Sale Stipulation

On September 26, 2025, Trustee filed with the Court a Stipulation for Sale of Real Property Located at 27591 Kathy Court, Laguna Niguel, California Free and Clear of Liens [Dkt. 129] ("Sale Stipulation"). On October 6, 2025, the Court entered an order approving the Sale Stipulation [Dkt. 130]. In the Sale Stipulation, signed by Gomez and approved as to substance and form by his counsel, Gomez stipulated to subordinate his liens or interests, which includes the 2640 Claim, to the payment of, *inter alia*, all administrative claims from proceeds stemming from the sale of the Property. Therefore, the Application is not premature as the subordinated 2640 Claim can have no impact on the Application.

The Sale Stipulation, in relevant part, provides:

> The lienholders identified in paragraphs F(2) – (9), and all other signatories to this stipulation, except for The Neshanian Law Firm, **agree to subordinate payment of their liens or _interests_ to** the costs of the sale (including commissions and maintenance), payment of all applicable taxes, and **allowed administrative claims** (collectively, "Administrative Costs"). **Under 11 U.S.C. § 510(c)(2), the liens securing the amounts necessary to pay the Administrative Costs are transferred to the estate. In other words, the Administrative Costs will be secured by liens and the lienholders will retain the balance of their liens and the full amount of their claims.**

[Sale Stipulation, Section II., ¶ 3 (emphasis added)].

In turn, paragraph G(2)[1] identifies the following, which is the Divorce Proceedings to which the alleged 2640 Claim ties:

> Pending Court Action – Plaintiff: Kristina Smith – Defendant: Jeffrey Gomez – County of Orange – Court: Superior Court of California – Case No. 17 D 00-05-90 – Nature of Action: Title affects to real property – Recorded: May 10, 2018; Recording No.: 2018-170624.

[Sale Stipulation, Section I., ¶ G.2.] ("Gomez Lien").[2]

The Sale Stipulation is therefore clear that any allowed administrative claims are in a higher priority position than Gomez' alleged 2640 Claim, as it is an interest subordinated by Gomez, and are moreover secured by the respective lien against the proceeds from the sale of the Property that Gomez transferred to the Estate under 11 U.S.C. § 510(c)(2).[3]

The Application seeks allowance and payment of, on an interim basis, Dinsmore's fees and expenses under 11 U.S.C. § 330(a). An award for compensation and reimbursement under § 330(a) shall be an allowed administrative expense under § 503. 11 U.S.C. § 503(b)(2).

Therefore, if approved, the Application provides Dinsmore with an allowed administrative claim for purposes of, *inter alia*, the Sale Stipulation.

Accordingly, the Gomez Lien nor the 2640 Claim can have any impact on the stipulated fact that the fees and costs requested in Application, if approved, have a higher priority claim to the sales proceeds.

/ / /

/ / /

/ / /

---

[1] Due to a scrivener's error, the Sale Stipulation at Section II, ¶ 3 references paragraphs (**F**)(2)-(9); however, it should have referenced paragraphs (**G**)(2)-(9) as these are the paragraphs that list the known liens against the Property. Trustee does not believe this is in dispute.

[2] Gomez has concurrently filed a motion for relief from stay related to the 2640 Action, filed as docket number 187 ("2640 MRAS"). Trustee will file a separate opposition to the same.

[3] Gomez has acknowledged that the 2640 Claim is an interest tied to the Divorce Proceedings, which is the basis of the Gomez Lien, in the 2640 MRAS [Dk. 187]. In the 2640 MRAS Gomez seeks relief from stay as to the nonbankruptcy action 17D000590, the Divorce Proceedings, and unequivocally states that he seeks relief "to allow the Orange County Superior Court to adjudicate and liquidate his reimbursement claim under California Family Code § 2640." [Dk. 187, pg. 9 of 10: 18-20].

4

ii.    <u>No Division of the Property Occurred Pre-Petition Rendering the Property
and its Sales Proceeds Community Property and Property of the Estate</u>

While the Sale Stipulation alone provides for subordination of the alleged 2640 Claim to administrative claims, it must be noted that the 2640 Claim cannot create a dispute as to whether the sales proceeds are community property.

Debtor filed her voluntary Chapter 7 bankruptcy petition on October 3, 2024 ("Petition Date"). [Dkt. 1]. Despite the Divorce Proceedings having been pending since 2016, no division of property has occurred with respect to the Property. [Declaration of Yosina M. Lissebeck ("Lissebeck Decl."), ¶¶ 3, 5]. As a result, the Property and the sales proceeds related thereto are community property and property of the Estate, which can be administered by Trustee.

Section 541(a) of the Bankruptcy Code provides that property of the estate includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case . . . ." 11 U.S.C. § 541(a)(2). For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate. *Dumas v. Mantle (In Re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998). "When a bankruptcy petition is filed prior to the final disposition of property between divorcing spouses, the community property comes within the jurisdiction of the bankruptcy court to assure fairness to the creditors of the individual spouses and the marital estate." *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799-800 (B.A.P. 9th Cir. 1995). "[N]o California case holds that the operation of § 2640 may result in the transmutation of community property into separate property prior to the division by the state court." *Id*. at 1086.[4]

The *In re Mantle* decision is on point, and binding, in this instance. There, husband and wife were married, but later husband filed a petition for dissolution of marriage. *Id*. at 1083. With the divorce proceedings pending, a community property house was sold and the sales proceeds placed in an escrow account pending further order of the state court. *Id.* There was no dispute as to the community property nature of the property prior to its sale. *Id.* at 1085. Thereafter, and before the

---

[4] All references herein to "§ 2640" are to California Family Code § 2640.

5

marriage was dissolved, husband filed a bankruptcy petition. *Id.* at 1083-84. In the bankruptcy, wife claimed she was entitled to reimbursement from the sale proceeds under § 2640 for her separate property contribution to the downpayment of the community property house. *Id.* The Ninth Circuit held that "[w]hen the property was sold, the proceeds from the sale remained community property. Because the superior court had not yet divided the property at the commencement of the bankruptcy proceedings, the escrowed community property funds became property of the bankruptcy estate." *Id.* at 1086. It was further held that although wife "retain[ed] her § 2640 right to reimbursement for her separate property contribution to the community, this separate property interest does not render the sale proceeds her separate property prior to division by the superior court." *Id.*

Here, Debtor and Gomez were married but the Divorce Proceedings commenced in 2016. [Lissebeck Decl., ¶ 3]. With the Divorce Proceedings pending, Debtor filed a bankruptcy petition. [*Id*. at ¶ 4]. During the bankruptcy proceedings, the Property was sold. [Dkt. 162].[5] Gomez, in the Opposition, does not dispute the community property nature of the property, but simply asserts that he has a reimbursement claim "from his separate property contributions toward the acquisition, improvement, and preservation of the [Property]." [Dkt. 186, pg. 3:3-6; *see also* Dkt. 187, pg. 10 of 14: 9-10].[6]

The Superior Court, however, as of the Petition Date, had not yet divided the Property. [Lissebeck Decl., ¶ 5]. Therefore, the Property and the sales proceeds derived therefrom are community property and are thus property of the bankruptcy Estate. While Gomez may retain his alleged § 2640 right to reimbursement, this interest does not render the sale proceeds his separate property. *In re Mantle, supra,* at 1086. As Gomez' alleged § 2640 Claim does not render any of the proceeds his separate property, Trustee can distribute the proceeds without regard to the claim.

Accordingly, Gomez' purported 2640 Claim cannot establish that any portion of the sale proceeds are his separate property as, on the Petition Date, the superior court had not yet divided

---

[5] The Property was ordered to be sold by the superior court in the days prior to the filing of the Debtor's bankruptcy petition. The fact that the state court ordered the sale has no impact on the analysis as the Ninth Circuit found it to be immaterial as to whether the state court ordered the sale of the real property during the divorce proceedings. *In re Mantle, supra,*. at 1086.

[6] The Sale Stipulation also described the Property as community property. [Sale Stipulation, I.C. ("The Property is a community property asset of this bankruptcy case.")].

6

the at-issue property. Therefore, Gomez cannot look to the sales proceeds from the Property to pay any alleged 2640 Claim if successfully liquidated.

The Application is therefore not premature as Gomez stipulated to subordinate any 2640 Claim to administrative claims, which includes Dinsmore's fees and expenses, if approved. Moreover, the Application does not seek payment from disputed funds as, on the Petition Date, the superior court had not yet divided the Property and so the Property and its proceeds retain its community property nature.

**B.      The 9019 Motion is not Premature and Only Involves Estate Assets**

Trustee's 9019 Motion is not premature and the Settlement Agreements[7] only involve Estate property. Moreover, any § 2640 claim cannot impact the enforceability of a lien attaching to community property.

The Opposition argues that Trustee's Motion is premature to the extent it uses potentially non-Estate property to fund such settlements. This argument is again premised on the fact that Gomez holds a disputed, unliquidated § 2640 claim and asserts that the "Court cannot meaningfully evaluate the economic reasonableness" of the settlement agreements underlying the 9019 Motion.

This argument, however, is legally incorrect as (1) the Property and its sale proceeds are community property and while Gomez may retain his 2640 Claim, an alleged right to reimbursement for his separate property contribution to the community property, this potential separate property interest does not render the sale proceeds his separate property as the superior court did not divide property pre-petition, (2) any 2640 Claim has no effect on the enforceability of any liens that previously attached to Property and now the proceeds, and (3) Gomez stipulated that Debtor's "homestead" would be used to pay Debtor's liens and the order approving the sale of the Property provides the same.

i.      The Property and its Sale Proceeds are Community Property

As discussed *supra*, the Property had not been divided by the state court in divorce

---

[7] "Settlement Agreements" refers to, collectively, the settlement agreement between Trustee and creditor, and Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB") ("SGSB Settlement Agreement") attached as Exhibit 1 to the 9019 Motion and the settlement agreement between Trustee and creditor, White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt") ("Hunt Settlement Agreement") attached as Exhibit 2 to the 9019 Motion.

proceedings as of Debtor's Petition Date. [Lissebeck Decl., ¶ 5]. As a result, the Property was community property. *In re Mantle, supra,* at 1086. For the same reason, upon the sale of the Property, the sales proceeds retained their community property nature and are property of the Estate. *Id*. While Gomez may retain his alleged § 2640 right to reimbursement for his purported contributions of separate property toward the Property, this interest does not render the sale proceeds his separate property. *Id*. As there was no pre-petition division of the Property, Trustee need not consider Gomez' asserted § 2640 claim when distributing the proceeds.

Therefore, any funds to be used from the sale of the Property in connection with the Settlement Agreements are not disputed.

ii.    A § 2640 Claim Does not Affect the Enforceability of any Liens

Gomez argues that the reasonableness of the Settlement Agreements cannot be evaluated in light of the alleged 2640 Claim. This is inaccurate, however, as the Settlement Agreements resolve all issues with two lienholders and a § 2640 claim has no impact on the enforceability of liens.

Under California state law, "a valid lien attached to community property follows the property even after the court awards it to the non-unencumbering spouse in property division." *In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 349 (2013) (citing *In re Marriage of Ramirez*, 198 Cal. App. 4th 336, 343-44 (2011)).

Here, there has not even been a division of property; clearly the liens that encumbered the Property attached to the sale proceeds, which are also community property, and the § 2640 Claim is of no impact or consideration. As such, the Settlement Agreements can be meaningfully evaluated given that, regardless of any § 2640 claim, the liens (in the absence of the Settlement Agreements) must be paid from the proceeds of the sale of the Property.

iii.    The "Funding" of the Settlement Agreements

The only funds involved in the Settlement Agreements are the sale proceeds from the sale of the Property. Therefore, there are no non-Estate funds at-issue for the reasons articulated above and those below.

As noted *supra*, Gomez entered into the Sale Stipulation that was later approved by the Court. [Dkts. 129, 130]. The Sale Stipulation addressed the treatment of the claimed homestead

8

exemptions by Gomez and Debtor in the Property as well as the liens or interests attached to the Property. As discussed below, only the stipulated share of Debtor's homestead exemption interest is being used to "fund" the Settlement Agreements. [Lissebeck Decl., ¶ 6].

Pursuant to the Sale Stipulation, after the payment of the first priority lienholder's claim, Trustee's fees, Dinsmore's fees, miscellaneous taxes and costs, and the broker commission, Debtor and Gomez are each allocated one half of the funds available on account of their respective "homestead" exemption interests ("Debtor's Share" and "Gomez' Share," respectively). [Dkt. 129] Debtor agreed to reduce and limit Debtor's Share to $25,000 and waived the remainder to all amounts necessary to pay all administrative fees and costs and timely filed unsecured claims, other than the claim of Gomez. [*Id*].

In turn, the Sale Order provides the following liens attached to Debtor's Share:

1.      A Family Law Attorney Real Property Lien ("FLARPL") held by Stegmeier, Gelbart, Schwartz and Benavente, LLP ("SGSB") in the amount of $300,000.

2.      An abstract of judgment held by White Zuckerman Warsavsky Luna and Hunt, LLP ("Hunt") in the amount of $77,396.19.

[Dkt. 162, ¶¶ 16, 18].

These two liens, combined, encumbered the entire amount of Debtor's Share. [Lissebeck Decl., ¶ 7]. Yet, the Settlement Agreements provide a way by which the encumbered funds can be used for the benefit of the Estate. The Settlement Agreements do not involve Gomez' Share. [*Id*. at ¶ 6].

The Hunt Settlement Agreement, as far as funds are involved, simply reduces Hunt's secured claim and asserted lien against Debtor's Share from $77,396.19 to $50,000. [9019 Motion, Exhibit 2]. This results in Trustee distributing $27,396.19 less to Hunt than otherwise would be required as a result of Hunt's lien. This $27,396.19 is now unencumbered by Hunt's security interest though Debtor's homestead exemption interest persists; however, the Sale Stipulation provides that Debtor has waived her homestead interest in these funds to the extent necessary to pay all timely filed claims, except for that of Gomez. [Dkt. 129]. Therefore, the $27,396.17 will directly benefit creditors of the Estate. [9019 Motion, Marshack Decl., ¶ 13].

9

If it were not for the Sale Stipulation, the $27,396.17 would be provided to Debtor on account of her homestead exemption and would not be Estate property. *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 585 (B.A.P. 9th Cir. 1996); *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012). As the funds stem from Debtor's Share, Gomez' Share is not involved and any § 2640 Claim has no impact.

The SGSB Settlement Agreement provides, in relevant part, that SGSB shall be paid $240,000 of its $300,000 claim secured by the proceeds from the sale of the Property. [9019 Motion, Exhibit 1]. The remaining balance of the claim, $60,000, and the lien that secures it, shall be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). This directly provides the Estate with $60,000 that otherwise would be paid to SGSB on account of their lien. [9019 Motion, Marshack Decl., ¶ 8; Lissebeck Decl., ¶ 8]. As a § 2640 claim has no effect on the enforceability of a lien, it is of no impact or consideration and the funds involved are those from Debtor's Share, not Gomez' Share.

At bottom, the funds leaving the Estate to SGSB and Hunt are funds that are secured by liens and such liens will not be disturbed by any § 2640 claim, let alone one that was not finalized before the petition date and remains undisputed and unliquidated. The funds remaining in the Estate and to be used for distributions to unsecured creditors, for the reasons discussed *supra*, stem from Debtor's Share, not Gomez' Share and thus are property of the Estate. In other words, the only funds involved in the Settlement Agreements are ones which would otherwise be encumbered and not be reachable by Gomez' alleged 2640 Claim due to both the Sale Stipulation and by operation of law.

## III.    CONCLUSION

For the foregoing reasons, Dinsmore and the Trustee respectfully request that the Court: (1) overrule the Opposition in its entirety; (2) enter an order approving the Application and the relief requested therein; and (3) enter an order granting the 9019 Motion and the relief requested therein.

Dated: May 26, 2026                    Respectfully submitted,

DINSMORE & SHOHL LLP

By: */s/ Yosina M. Lissebeck*
            Yosina M. Lissebeck
Counsel to Richard A. Marshack, Chapter 7 Trustee

10

## DECLARATION OF YOSINA M. LISSEBECK

I, Yosina M. Lissebeck, declare:

1.    I am an attorney admitted to practice law before this Court and I am a partner in the law firm of Dinsmore & Shohl LLP ("Dinsmore"), general bankruptcy counsel to Richard A. Marshack, in his capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Kristina Lynn Smith ("Debtor"). As such, unless expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify thereto if requested to do so.

2.    I submit this Declaration in support of this Reply to Gomez' Opposition.[8]

3.    The Divorce Proceedings were initiated in 2016.

4.    On the Petition Date, the Divorce Proceedings remained pending and remains pending as of the date hereof.

5.    As of the Petition Date, the Property had not been divided by the superior court in the Divorce Proceedings or otherwise.

6.    The Settlement Agreements only involve funds that have been stipulated to as Debtor's Share. There are no funds involved that have been stipulated to as Gomez' Share.

7.    The amount of the FLARPL held by SGSB and the abstract of judgment held by Hunt, combined, exceeds the amount of funds stipulated to as Debtor's Share.

8.    If not for the SGSB Settlement Agreement, the $60,000 and respective lien that will be transferred from SGSB to the Estate would have to be paid to SGSB on account of their lien.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of May 2026.

/s/ Yosina M. Lissebeck
YOSINA M. LISSEBECK

---

[8] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Reply.

11

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is **655 West Broadway, Suite 800, San Diego, CA 92101**

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO LIMITED OPPOSITION TO INTERIM APPLICATION FOR COMPENSATION (DOCKET #180) AND MOTION TO APPROVE COMPROMISE (DOCKET #182) [DKT. 186]; DECLARATION OF YOSINA M. LISSEBECK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>May 26, 2026</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- <u>Attorneys for Wells Fargo Bank NA</u>
  **David Coats** - dacoats@raslg.com

- <u>Attorneys for Jeffrey Adams Gomez</u>
  **Benjamin Heston** - bhestonecf@gmail.com, benheston@recap.email, NexusBankruptcy@jubileebk.net

- <u>Attorneys for Richard Heston & Kerry Kavanaugh</u>
  **Richard G. Heston** - rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com, HestonRR41032@notify.bestcase.com, hestonlaw@recap.email

- <u>Attorneys for Richard A. Marshack, Chapter 7 Trustee</u>
  **Yosina M Lissebeck** - Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; linda.dominguez@dinsmore.com

- **Richard A Marshack (TR)** - pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

- <u>Courtesy NEF</u>
  **Eric Marcus Neshanian** - neshanianlawfirm@gmail.com

- <u>Attorneys for Richard A. Marshack, Chapter 7 Trustee</u>
  **Jacob Newsum-Bothamley** - jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com

- <u>Attorneys for Richard A. Marshack, Chapter 7 Trustee</u>
  **Matthew J Stockl** - mstockl@otterbourg.com, nregina@otterbourg.com

- **United States Trustee (SA)** - ustpregion16.sa.ecf@usdoj.gov

- <u>Attorneys for Howard & Kristina Smith</u>
  **Julie J Villalobos** - julie@oaktreelaw.com, oakecfmail@gmail.com; villalobosjr51108@notify.bestcase.com; gus@oaktreelaw.com

12

- <u>Attorneys for US Bank National Association</u>
  **Jennifer C Wong** - bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On (*date*) <u>May 26, 2026</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130/Ctrm 5C
Santa Ana, CA 92701-4593

Clarence Yoshikane
Berkshire Hathaway
1400 Newport Center Drive, Suite 200
Newport Beach, CA 92660

Kerry Kavanaugh
4511 Isabella Lane
Dallas, TX 75229

Howard Smith
28822 Via De Luna
Laguna Niguel, CA 92677

Michelle Sherwood, Esq.
R & S Law Group, APC
400 West First St
Tustin, CA 92780

Hahn Fife & Company LLP
1055 E. Colorado Blvd 5
Pasadena, CA 91106

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 26, 2026 | Wendy A. Yones | /s/ Wendy A. Yones |
| *Date* | *Printed Name* | *Signature* |

13