**NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
ben@nexusbk.com
3090 Bristol Street #400
Costa Mesa, CA 92626
Tel: 949.312.1377
Fax: 949.288.2054

Attorney for Jeffrey Adams Gomez

**DINSMORE & SHOHL LLP**
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
TAYLOR F. DUNCAN (353158)
taylor.duncan@dinsmore.com
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501

Attorneys for Richard A. Marshack,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>KRISTINA LYNN SMITH,<br><br>Debtor. | Case No: 8:24-bk-12527-SC<br><br>Chapter 7<br><br>**JOINT MOTION TO (1) APPROVE GLOBAL SETTLEMENT UNDER FED R. BANKR. P. 9019; (2) AUTHORIZE DISTRIBUTIONS; AND (3) AUTHORIZE REGISTRY DEPOSIT; DECLARATION OF RICHARD A. MARSHACK**<br><br>[*No hearing required*] |

## TABLE OF CONTENTS

**I. INTRODUCTION ........ 4**

**II. JURISDICTION AND PROCEDURAL BASIS ........ 5**

**III. STATEMENT OF RELEVANT FACTS ........ 6**

A. THE BANKRUPTCY CASE ........ 6

B. PRE-PETITION STATE COURT DIVORCE PROCEEDINGS ........ 6

C. SALE OF THE PROPERTY AND RELATED AGREEMENTS THUS FAR ........ 6

D. THE ADVERSARY PROCEEDING ........ 8

**IV. THE COMPROMISE ........ 8**

**V. THE COURT MAY APPROVE THE COMPROMISE ........ 11**

A. APPROVAL UNDER BANKRUPTCY RULE 9019 ........ 11

B. THE AGREEMENT SATISFIES THE *A&C* FACTORS ........ 12

1. The Probability of Success ........ 12

2. Difficulties in Collection ........ 13

3. The Complexities of Litigation ........ 14

4. The Paramount Interests of Creditors ........ 14

**VI. THE COURT CAN AUTHORIZE THE DEPOSIT OF FUNDS INTO THE COURT REGISTRY ........ 15**

**VII. CONCLUSION ........ 17**

## TABLE OF AUTHORITIES

**Cases**

*In re Blair*, 538 F.2d 849 (9th Cir. 1976)........ 12
*In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D.Ohio 1990) ........ 12
*In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336........ 13
*In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 348 (2013) ........ 13
*In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983)........ 12
*Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986)........ 11
*Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984)........ 12
*Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982)........ 12
*Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972)........ 12
*United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) ........ 12
*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988)........ 11

**Statutes**

28 U.S.C. §§ 1334 and 157........ 5

**Rules**

FRBP 9014(c) ........ 15
FRBP 7067........ 15
FRCP 67(a) ........ 15
LBR 7067-1 ........ 6, 15, 17
LBR 7067-1(e)(2) ........ 6
LBR 9019-1 ........ 5
Local Bankruptcy Rule 7067-1(e)(2)........ 16
Rule 7067........ 6, 16
Rule 9019........ 5, 11, 15
Rule 9019(a)........ 5

# I. INTRODUCTION

Richard A. Marshack, the Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Kristina Lynn Smith ("Debtor"), and Jeffrey Adams Gomez ("Gomez") creditor and plaintiff in the related Adversary Proceeding (defined below), jointly move for an order approving the Global Settlement Agreement and Mutual Release attached hereto as **Exhibit A** ("Agreement") and related relief as discussed herein.[1]

The Agreement resolves, among other things, all issues arising from and related to (1) the adversary proceeding styled *Gomez v. Stegmeier, Gelbart, Schwartz & Benavente, LLP et al.*, Case No. 8:26-ap-01028-SC ("Adversary Proceeding"); (2) the claims and liens of (a) Stegmeier, Gelbart, Schwartz & Benavente, LLP ("SGSB"), (b) The Neshanian Law Firm, Inc. ("Neshanian"), and (c) R&S Law Group, APC ("R&S"); (3) every proof of claim filed by or on behalf of Gomez in the Estate; and (4) fully distributes the funds currently being held by Trustee, in accordance with the *Order Approving Stipulation for Sale of Real Property Located at 27591 Kathy Court, Laguna Niguel, California Free and Clear of Liens* [Dk. 130] ("Order re Sale Stipulation"), constituting the Gomez Share (defined below).

Within three business days after entry of an order approving the Agreement ("Approval Order"), and pursuant to the same, Trustee will distribute:

a. $155,000.00 to R&S;

b. $98,035.00 to Neshanian; and

c. The remainder of the Gomez Share to Gomez. (a-c, collectively, "Disbursements")

The foregoing Disbursements shall be in full satisfaction of, and permanently extinguish, any claims, liens, judgments, notices, and related encumbrances of (a) R&S and Neshanian against Gomez and proceeds ("Sale Proceeds") from the sale of the real property located at 27591 Kathy Court, Laguna Niguel, California 92677 (the "Property"), and of (b) Gomez against the bankruptcy Estate, except that Gomez's rights to seek reimbursement or other relief in the Divorce Proceedings, or regarding property later determined to be community property, are preserved.

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

SGSB will receive no portion of the Gomez Share and will instead deposit, within 14 calendar days after entry of the Approval Order, $50,000.00 into the Court registry ("Registry Funds"). This shall satisfy in full and permanently extinguish all claims, liens, judgments, notices, FLARPLs, and related encumbrances asserted by SGSB against Gomez, the Sale Proceeds, or related property. The Registry Funds shall be disbursed to Gomez or SGSB based on the Orange County Superior Court's ("State Court") ruling, in Case No. 17D000590 ("Divorce Proceedings"), regarding the validity of the August 4, 2003 Premarital Agreement ("PMA") between Gomez and Debtor ("PMA Ruling").

The Agreement will likewise provide certain releases by and between Trustee, Gomez, SGSB, R&S, and Neshanian (collectively, "Parties").

The Agreement replaces overlapping bankruptcy and family-law disputes with fixed distributions, lien-release obligations, a separately funded $50,000 registry deposit, dismissal of an adversary proceeding, and a defined method for disbursing the Registry Funds after the State Court rules on the PMA.

Gomez and Trustee (collectively, "Movants") jointly file the Motion and every other party to the Agreement and the Adversary Proceeding has agreed not to oppose the relief sought herein.

The compromise is fair, equitable, and reasonable because it eliminates substantial litigation risk and expense, permits administration of the Gomez Share, resolves Gomez's claims against the Estate upon distribution, and ends the Adversary Proceeding. For the same reasons, the Motion represents a sound exercise of Trustee's business judgment.

## II. JURISDICTION AND PROCEDURAL BASIS

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157 because the compromise concerns administration of Estate-held proceeds from the sale of the Property, claims against the Estate, and resolution of an adversary proceeding arising from the Bankruptcy Case.

Rule 9019(a) authorizes approval of a compromise. LBR 9019-1 requires filing the motion in the main case and notice in the related adversary proceeding. The Agreement resolves all claims as to all parties in the Adversary Proceeding.

/ / /

Rule 7067 and LBR 7067-1 govern the $50,000 registry deposit and later disbursement. Sections 3.2 through 3.4 of the Agreement constitute the parties' written stipulation under LBR 7067-1(e)(2). The Movants request approval of such terms so the mandatory disbursement order may be lodged after the PMA Ruling without new signatures or consent.

## III. STATEMENT OF RELEVANT FACTS

### A. THE BANKRUPTCY CASE

On October 3, 2024 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code"), commencing the above-captioned bankruptcy case ("Case"). [Dk. 1]. On the same date, Trustee was appointed as Chapter 7 Trustee of Debtor's Estate and assumed all authority to administer Debtor's Estate in this Case. [Dk. 4].

### B. PRE-PETITION STATE COURT DIVORCE PROCEEDINGS

Debtor and Gomez have been in marriage dissolution proceedings in State Court for many years – since approximately September 2016.

On October 1, 2024, two days prior to the Petition Date, Debtor and Gomez appeared before Judge Carmen Luege in Orange County Superior Court to address the sale of the Property as part of the marriage dissolution proceedings. At that hearing, the court ordered the sale of the Property ("Sale Order").[2]

### C. SALE OF THE PROPERTY AND RELATED AGREEMENTS THUS FAR

Trustee, now in control of property of the Estate, including the Property, as a result of the filing of the Case, devised a plan that, in his business judgment, not only complied with the Sale Order, but resulted in sufficient proceeds to provide distributions to unsecured creditors. This was due to, among other things as more fully described below, the agreement between Trustee and the Court-approved real estate broker to carve out a percentage of the broker's commission and earmark those funds specifically for unsecured creditors. [See Dks. 67, 79].

Additionally, Trustee stipulated with all known lienholders, with one exception, to sell the Property free and clear of the liens, with the proceeds of the sale to be collected and held until

[2] The sale was ordered pre-petition. Even though the Sale Order was not entered until October 21, 2024, as that was just a "ministerial" act, it related back to the date of the hearing.

further order of the Court (“Sale Stipulation”). [Dk. 129]. The Sale Stipulation provided that the proceeds from the sale of the Property would first pay, off the top, the first priority lien, Trustee’s fees, Dinsmore & Shohl LLP’s fees, miscellaneous taxes and costs (including certain reimbursements of expenses that were necessary for the sale), and the broker’s commission. Next, the remaining proceeds would be halved, representing Debtor’s and Gomez’s respective “homestead” exemption interests (“Debtor Share and Gomez Share, respectively). From there, the Debtor Share was to be used to provide Debtor with an agreed reduced $25,000 homestead exemption payment and the remainder of her share from the “split” was to be used to pay her liens encumbering the Property. The Gomez Share was likewise to be used to pay his liens encumbering the property. The Court approved the Sale Stipulation. [Dk. 130] (“Order re Sale Stipulation”).

Thereafter, on December 23, 2025, Trustee filed a Motion For: (1) Order Authorizing Sale of Real Property Located At 27591 Kathy Court, Laguna Niguel, California 92677: (a) Outside the Ordinary course of business; (b) Free and clear of liens under 363(f); (c) subject to overbids; And (d) for determination of Good faith purchaser under § 363(m). [Dk. 139] (“Sale Motion”). On February 27, 2026, after notice, a hearing, and conducting an auction, the Court entered an order granting the Sale Motion, which, inter alia, authorized the sale of the Property for $1,999,000.00 (“Sale”) [Dk. 162] (“Bankruptcy Sale Order”). After the Sale, and pursuant to the Bankruptcy Sale Order, certain expenses and liens were paid as authorized from the sales proceeds and Trustee is holding the remaining net proceeds (“Proceeds”).

On May 12, 2026, Trustee filed a *Motion for Order Approving Compromises with Creditor White Zuckerman Warsavsky Lune and Hunt, LLP and Creditor Stegmeier, Gelbart, Schwartz and Benavente, LLP* (“Debtor Share 9019 Motion”). [Dk. 182]. The Debtor Share 9019 Motion resolves all issues concerning the liens attached to the Debtor Share of the Proceeds and provided the Estate with a security interest in the same up to $60,000.00. [*Id*.]. On June 12, 2026, the Court entered an order approving the Debtor Share 9019 Motion. [Dk. 197] (“Order re Debtor Share 9019 Motion”).

/ / /

/ / /

### D. THE ADVERSARY PROCEEDING

On March 14, 2026, Gomez initiated the Adversary Proceeding which named SGSB, Neshanian, and R&S as defendants. The Adversary Proceeding seeks declaratory relief and disallowance of claims. Included in the relief sought, *inter alia*, are requests for determinations that (a) SGSB's Family Law Attorney Real Property Lien ("FLARPL") is invalid, (b) that SGSB's Claim (defined below), R&S' Claim (defined below) and Neshanian's Claim (defined below) are disallowed to the extent they impair Gomez's homestead exemption in the Property, and (c) the PMA bars collection of SGSB's claims from Gomez's assets.

The Agreement fully resolves all claims as to all parties in the Adversary Proceeding.

## IV. THE COMPROMISE

Pursuant to the Order re Sale Stipulation and the Bankruptcy Sale Order, Trustee holds Proceeds from the sale of the Property constituting the Gomez Share. Gomez commenced the Adversary Proceeding to determine disputes concerning claims and liens asserted against the Gomez Share. The Adversary Proceeding directly affects the administration of the Estate as it involves proceeds held by Trustee.

The asserted interests in the Gomez Share, by those other than Gomez, are as follows: (i) R&S asserts Proof of Claim No. 8-1 and related judgment liens ("R&S Claim"); (ii) Neshanian asserts Proof of Claim No. 2-1 and related liens ("Neshanian Claim"); and (iii) SGSB asserts claims arising from a March 14, 2019 attorney-fee award, including approximately $85,000 plus interest and its FLARPL ("SGSB Claim") (collectively, "Claims Against Gomez"). Gomez disputes the SGSB Claim and contends the award was fully paid. Gomez disputes the enforceability of the R&S Claim and the Neshanian Claim to the extent they impair Gomez's asserted homestead exemption in the Property. Gomez also asserts an interest in the Gomez Share on account of his asserted homestead exemption.

The validity and enforceability of the Claims Against Gomez and the extent of Gomez's interests are dependent upon the outcome of the Adversary Proceeding and the PMA Ruling in State Court. These two issues impact Trustee's administration of the Estate as he is holding funds constituting the Gomez Share, which cannot otherwise be administered for the benefit of the

Estate's creditors, and so cannot proceed to finalizing and closing the Estate while maintaining such funds.

Accordingly, the Parties negotiated the Agreement to resolve the overlapping disputes without further litigation within the Bankruptcy Case or the Adversary Proceeding.

The essential terms of the Agreement, attached to the Declaration of Richard A. Marshack as **Exhibit A**, are as follows:

1. Trustee shall distribute from the Gomez Share and within 3 business days after entry of the Approval Order:

a. $155,000.00 to R&S;

b. $98,035.00 to Neshanian;

c. The remainder of the Gomez Share to Gomez (a-c, collectively, "Disbursements").

2. After the respective Disbursements have been made, the following shall be deemed satisfied in full and permanently extinguished as to each party and each party shall perform as obligated:

a. R&S: All claims, judgments, liens, proofs of claim, notices, and encumbrances held by R&S against Gomez, the Sale Proceeds, or any property in which Gomez has or had an interest in ("Gomez Property"). Within 3 business days of actually receiving its respective Disbursement, R&S shall (a) file a withdrawal of Proof of Claim No. 8-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment sufficient to release each judgment lien asserted by R&S against the Gomez Property.

b. Neshanian: All claims, judgments, liens, proofs of claim, notices, and encumbrances held by Neshanian against the Gomez Property. Within 3 business days of actually receiving its respective Disbursement, Neshanian shall (a) file a withdrawal of Proof of Claim No. 2-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment sufficient to release each judgment lien asserted by Neshanian against the Gomez Property.

c. Gomez: Every proof of claim filed by or on behalf of Gomez against the bankruptcy Estate, including every amendment to such a claim, is fully satisfied, paid, settled, and resolved. Gomez shall have no further right to payment, distribution, dividend, or recovery from the bankruptcy Estate on account of any such claim. This does not release, limit, determine, or prejudice Gomez's right to seek reimbursement or other relief in the State Court, in the Divorce Proceedings, against Debtor or property later determined to be community property.

3. SGSB shall receive no further portion of the Sale Proceeds.[3]

4. SGSB shall deposit, within 14 calendar days after entry of the Approval Order, $50,000.00, constituting the Registry Funds, with the Clerk of the United States Bankruptcy Court for the Central District of California into the registry of the Adversary Proceeding in accordance with the Agreement (“Court Registry”). This shall satisfy in full and permanently extinguish all claims, liens, judgments, notices, FLARPLs, and related encumbrances asserted by SGSB against the Gomez Property. Within one business day after making the deposit, SGSB shall serve Trustee and all other Parties with the Clerk’s receipt confirming the date and amount of the deposit. Within three business days after depositing the full Registry Funds, SGSB shall execute, deliver, file, and record every withdrawal, acknowledgment of satisfaction, release, and other document necessary to remove any claims and encumbrances against the Gomez Property from any docket, title report, or public record.

5. Authorized registry fees and taxes may not be deducted from the Registry Funds’ principal.

6. Trustee’s distributions of the Disbursements are not conditioned upon SGSB placing the Registry Funds in the Court Registry.

7. The Registry Funds shall be held on deposit unless and until the State Court issues a PMA Ruling deciding the validity of the PMA in the Divorce Proceedings.

/ / /

---

[3] For the sake of clarity, SGSB has already received funds constituting Sale Proceeds as a result of the Order approving the *Motion for Order Approving Compromises with Creditor White Zuckerman Warsavsky Lune and Hunt, LLP and Creditor Stegmeier, Gelbart, Schwartz and Benavente, LLP* [Dk. 197] (“Order re Debtor Share 9019 Motion”). The relief sought herein, and any related order, shall have no effect or impact on the relief provided in the Order re Debtor Share 9019 Motion.

8. If the State Court determines that the PMA is valid, the Registry Funds shall be distributed to Gomez. If the State Court determines that the PMA is invalid, the Registry Funds shall be distributed to SGSB.

9. The PMA Ruling need not be final or non-appealable. An appeal, writ petition, motion for reconsideration, motion for new trial, motion to vacate, or other post-ruling proceeding shall not delay disbursement unless a court of competent jurisdiction enters an order expressly staying or prohibiting disbursement before the Registry Funds are disbursed.

10. The party entitled to the Registry Funds as a result of a PMA Ruling shall file, within 3 business days after such ruling, in the Adversary Proceeding the PMA Ruling and lodge the mandatory registry fund disbursement order as outlined in and pursuant to the Agreement.

11. Gomez shall seek the dismissal the Adversary Proceeding with prejudice within five court days after (a) SGSB has deposited the Registry Funds, (b) R&S, Neshanian, and Gomez have actually received the Disbursements, and (c) R&S, Neshanian, and SGSB have delivered the documents as required under the Agreement.

12. The Court retains jurisdiction to hold and disburse the Registry Funds and to enforce the Agreement and its related order.

## V. <u>THE COURT MAY APPROVE THE COMPROMISE</u>

### A. <u>APPROVAL UNDER BANKRUPTCY RULE 9019</u>

A compromise may be approved under Rule 9019 when it is fair, equitable, and within the range of reasonableness. *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986). The Court considers (1) probability of success; (2) collection difficulties; (3) complexity, expense, inconvenience, and delay; and (4) creditors' interests and reasonable views. Id. The Court need not try the settled disputes, but must have sufficient information to exercise informed, independent judgment. *Id.* at 1381.

The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated

with litigating sharply contested and dubious claims." *In re A & C Properties*, *supra*, 1380-81. Accordingly, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised. *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See In re A & C Properties*, 784 F.2d at 1381.

A court should not substitute its own judgment for the judgment of the trustee. *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984). A court, in reviewing a proposed settlement, is not to decide the numerous questions of law and fact but rather to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), accord, *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849 (9th Cir. 1976). "It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D.Ohio 1990).

**B. THE AGREEMENT SATISFIES THE *A&C* FACTORS**

Each of the *A&C* factors weighs in favor of approving the Agreement and the Agreement represents a sound exercise of Trustee's business judgment. Accordingly, the Agreement should be approved.

**1. The Probability of Success**

The Adversary Proceeding presents genuine disputes concerning multiple claims and liens against the Sale Proceeds and Gomez's asserted homestead interest, including issues that overlap with the PMA dispute in State Court. Thus, the Adversary Proceeding poses concern for the Estate as it seeks relief Trustee construes as interfering with orders already entered by this Court with respect to the Sale Proceeds. [Declaration of Richard Marshack ("Marshack Decl."), ¶¶ 12-13].

/ / /

/ / /

/ / /

Trustee is not a party to the Adversary Proceeding and would likely have to seek to join the Adversary Proceeding to protect the Estate's interests. [*Id*. at ¶ 12].[4]

While Trustee believes he could be successful in challenging the problematic relief sought in the Adversary Proceeding, there is effectively no on-point authority with respect to the overlap of homestead exemptions, FLARPLs, and settlement agreements. [*Id*. at ¶ 13]. Litigation is always uncertain but in this instance is emphasized as "[t]he reported case law interpreting or applying sections [related to FLARPLs], or their predecessor sections, is scant. Only one reported California case exists interpreting or applying these sections in any measure, *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336 . . ." *In re Marriage of Turkanis & Price*, 213 Cal. App. 4th 332, 348 (2013). The foregoing, coupled with the fact that there is a parallel 10-year-long divorce pending in the State Court involving the validity of a premarital agreement, poses potential significant difficulties in succeeding. [Marshack Decl., ¶ 13].

By contrast, the Agreement replaces the risk of further merits litigation with fixed obligations without requiring this Court to potentially have to interpret and apply orders entered in the Divorce Proceedings in the Adversary Proceeding or even the main bankruptcy Case. [*Id*. at ¶ 14].

Accordingly, this factor weighs in favor of approving the Agreement.

**2. <u>Difficulties in Collection</u>**

Collection risk is neutral and not applicable to Trustee as he is not seeking to collect funds but is instead distributing funds from the Gomez Share. [*Id*. at ¶ 15]. Collection risk, however, is limited for Gomez and weighs in favor of approving the Agreement. [*Id*.].

The principal Disbursements come from the Gomez Share, attributable to the Sale Proceeds, which are already held by the Trustee, and SGSB's separate $50,000 contribution is a fixed obligation due after approval. The Agreement therefore provides concrete performance

---

[4] Movants note that the Adversary Proceeding is stayed as a result of the Court's *Order Abstaining in Part, Staying Adversary Proceeding, and Continuing Status Conference* entered on May 28, 2026. [Adversary Proceeding, Dk. 14] ("Abstention Order"). The Court, in the Abstention Order, held that it "will abstain from deciding predicate state-law and family law issues and will stay [] the [A]dversary [P]roceeding so those issues may be resolved . . ." [*Id*. at 5:22-25]. Those predicate issues, and the remaining bankruptcy consequences, if any, are resolved in full by the Agreement.

rather than a speculative future recovery which could potentially involve Gomez attempting to seek payment or reimbursement from the Estate.

Thus, this factor weighs in favor of approving the Agreement.

**3. <u>The Complexities of Litigation</u>**

Absent settlement, the Parties would continue litigating multiple claims and liens, the Sale Proceeds, Gomez's asserted homestead interest, and other issues overlapping with the Divorce Proceedings including a State Court PMA determination.

The triple pursuit of the administration of the funds, in the main bankruptcy Case, in the Adversary Proceeding, and in the Divorce Proceedings, renders litigation complex. [*Id*. at ¶ 12-13]. Moreover, as discussed above, facets of the litigation do not have on-point case law making the matter even more complex. [*Id*.].

To continue with the relevant litigation it would require, from the Parties, additional motion practice, discovery or evidentiary proceedings, fees, and delay all with an uncertain outcome. [*Id*. at ¶ 12]. The Agreement instead fixes distributions, extinguishes settled claims and liens upon performance, and permits dismissal after Closing.

Accordingly, this factor weighs heavily in favor of approving the Agreement.

**4. <u>The Paramount Interests of Creditors</u>**

The Agreement gives the Trustee a defined path to administer the remainder of the Sale Proceeds. While the Gomez Share does not necessarily constitute property of the Estate, the Trustee is holding such funds until further order from the Court as required under the Bankruptcy Sale Order. [*Id*. at ¶ 12; Order re Sale Stipulation]. On the other hand, the Agreement resolves claims against the Estate, an Adversary Proceeding that if not defended by Trustee could impact the administration of the Estate and will permit the Trustee to proceed toward finalizing the administration of the Estate. [*Id*. at ¶¶ 16-18].

Specifically, R&S and Neshanian will receive specified payments in full satisfaction of their claims and liens; Gomez receives the remainder of the Gomez Share and resolves his proofs of claim against the Estate; and SGSB separately funds the Registry Funds. This removes the competing claims and permits the case to move toward completion. [*Id*. at ¶ 11].

Trustee and Gomez file this Motion jointly and all parties to the Adversary Proceeding consent to the Agreement and to the bringing of this Motion. All creditors and parties in interest retain the opportunity to object and request a hearing.

Viewed as a whole, the Agreement provides immediate distributions, a separately funded registry obligation, claim and lien releases upon performance, preservation of the identified State Court rights, and dismissal of the Adversary Proceeding after Closing. That negotiated exchange is fair, equitable, and within the range of reasonableness under Rule 9019 and *A & C Properties*.

Accordingly, this factor weighs heavily in favor of approving the Agreement.

## VI. THE COURT CAN AUTHORIZE THE DEPOSIT OF FUNDS INTO THE COURT REGISTRY

The Court should authorize SGSB to deposit the Registry Funds with the Court Registry pursuant to the Agreement so Trustee can proceed with the administration of the Estate and move the toward filing his Final Report and closing of the Case.

Federal Rule of Civil Procedure, made applicable to this proceeding by FRBP 7067 and 9014(c), provides, in relevant part, that where any relief sought is a money judgment or the disposition of a sum of money, a party may, with notice to every other party and by leave of court, deposit with the court all or part of the money, whether or not that party claims any of it. FRCP 67(a). Additionally, LBR 7067-1 and the Amended General Order 13-01 re Deposit and Investment of Registry Funds issued by the United States Bankruptcy Court, Central District of California provide requirements and procedures concerning the deposit of funds into a court's registry.

The Adversary Proceeding demonstrates that absent the Agreement, there is a clear dispute by and amongst SGSB, Neshanian, R&S Law, and Gomez with respect to who is entitled to the Gomez Share. The Agreement resolves all these issues; however, it also requires the deposit of the Registry Funds with the Court Registry as the entitlement to those funds will not be decided until the State Court issues a PMA Ruling. Thus, there is a clear issue regarding the disposition of a sum of money.

/ / /

The Court should authorize the deposit of the Registry Funds as it will avoid further delays in the administration of the Estate. Trustee has been holding the Gomez Share for approximately 6 months, since March 23, 2026. [Marshack Decl., ¶ 9]. The Agreement resolves all issues that involve the Trustee related to the Gomez Share. [*Id*. at ¶ 11]. Trustee is in the final stages of administration of the Estate and so the approval of the Agreement, along with authorization for SGSB to deposit the funds, will permit the Trustee to complete a final review of claims, abandon certain property of the Estate, and then initiate closing procedures. [*Id*. at ¶ 16]. If the deposit is not authorized, however, Trustee will not be able to close the Estate as expeditiously as he will remain in custody and control of the Gomez Share. [*Id*.].

Thus, in Trustee's business judgment, it is appropriate to approve the Agreement which provides for the deposit the Registry Funds with the Court and is in the best interests of the Estate and its creditors as it will avoid any prejudicial delay to the administration and closing of the Estate, including distributions to creditors. [*Id*. at ¶¶ 17-18].

The Agreement further provides specific instructions on how and when the Registry Funds would be sought and released and to who. Specifically, the Agreement provides that the first PMA Ruling fixes entitlement to the Registry Funds for all purposes of the Agreement. [Agreement, § 3.2]. If the PMA Ruling determines that the PMA is valid, all principal and net earnings shall be disbursed to Gomez. [*Id*.]. If the PMA Ruling determines that the PMA is invalid, then all principal and net earnings shall be disbursed to SGSB. [*Id*.]. The Agreement further discusses a disbursement procedure:

> Within three business days after the PMA Ruling is filed or entered in the Family Case, the Party entitled to the Registry Funds under Section 3.2 shall file the PMA Ruling in the Adversary Proceeding and lodge the mandatory registry-fund disbursement order. Either Gomez or SGSB may make those filings sooner or may do so if the entitled Party fails to act within that period. The Parties irrevocably stipulate and consent under Local Bankruptcy Rule 7067-1(e)(2) to entry of an order, without further notice or hearing, disbursing all Registry Funds to the party entitled under Section 3.2. No later signature, consent, authorization, approval, or joint instruction from any Party is required. Each Party waives any objection inconsistent with this Agreement and shall not oppose or delay entry of the disbursement order.

[Agreement, § 3.3] (Sections 3.2 and 3.3, collectively, "Disbursement Procedures").

/ / /

Based upon the foregoing, Movants request that the Court authorize SGSB to deposit the Registry Funds into the Court Registry in accordance with the requirements and procedures of LBR 7067-1 and the Amended General Order 13-01 re Deposit and Investment of Registry Funds issued by the United States Bankruptcy Court, Central District of California and approve the disbursement procedure and related requirements outlined in the Agreement.

## VII. CONCLUSION

For the foregoing reasons, Gomez and the Trustee respectfully request that the Court enter an order that finds and directs as follows:

1. The Agreement is approved in its entirety.

2. The parties to the Agreement are authorized to take the actions prescribed by the Agreement.

3. The Trustee is authorized to distribute funds he is holding, in accordance with the Order re Sale Stipulation, constituting the Gomez Share of the proceeds from the sale of Property as follows:

a. $155,000.00 to R&S;

b. $98,035.00 to Neshanian;

c. The remainder of the Gomez Share to Gomez.

4. After the respective Disbursements have been made, the following shall be deemed satisfied in full and permanently extinguished as to each party and each party shall perform as obligated:

a. R&S: All claims, judgments, liens, proofs of claim, notices, and encumbrances held by R&S against the Gomez Property. Within 3 business days of actually receiving its respective Disbursement, R&S shall (a) file a withdrawal of Proof of Claim No. 8-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment sufficient to release each judgment lien asserted by R&S against the Gomez Property.

b. Neshanian: All claims, judgments, liens, proofs of claim, notices, and encumbrances held by Neshanian against the Gomez Property. Within 3 business days b of actually

receiving its respective Disbursement, Neshanian shall (a) file a withdrawal of Proof of Claim No. 2-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment sufficient to release each judgment lien asserted by Neshanian against the Gomez Property.

c. Gomez: Every proof of claim filed by or on behalf of Gomez against the bankruptcy Estate, including every amendment to such a claim, is fully satisfied, paid, settled, and resolved. Gomez shall have no further right to payment, distribution, dividend, or recovery from the bankruptcy Estate on account of any such claim. This does not release, limit, determine, or prejudice Gomez's right to seek reimbursement or other relief in the State Court, in the Divorce Proceedings, against Debtor or property later determined to be community property.

5. SGSB shall receive no further portion of the Sale Proceeds.

6. Any later disbursement of the Registry Funds to SGSB shall not revive any claim, lien, judgment, FLARPL, notice, or encumbrance released or extinguished under the Agreement.

7. SGSB shall deposit, within 14 calendar days after entry of the Approval Order, $50,000.00, constituting the Registry Funds, with the Clerk of the United States Bankruptcy Court for the Central District of California into the registry of the Adversary Proceeding in accordance with the Agreement ("Court Registry"). This shall satisfy in full and permanently extinguish all claims, liens, judgments, notices, FLARPLs, and related encumbrances asserted by SGSB against the Gomez Property. Within one business day after making the deposit, SGSB shall serve Trustee and all other Parties with the Clerk's receipt confirming the date and amount of the deposit. Within three business days after depositing the full Registry Funds, SGSB shall execute, deliver, file, and record every withdrawal, acknowledgment of satisfaction, release, and other document necessary to remove any claims and encumbrances against the Gomez Property from any docket, title report, or public record.

8. Authorized registry fees and taxes may not be deducted from the Registry Funds' principal.

9. Trustee's distribution of the Disbursements are not conditioned upon SGSB placing the Registry Funds in the Court Registry.

10. The Registry Funds shall be held on deposit unless and until the State Court issues a PMA Ruling deciding the validity of the PMA in the Divorce Proceedings.

11. If the State Court determines that the PMA is valid, the Registry Funds shall be distributed to Gomez. If the State Court determines that the PMA is invalid, the Registry Funds shall be distributed to SGSB.

12. The PMA Ruling need not be final or non-appealable. An appeal, writ petition, motion for reconsideration, motion for new trial, motion to vacate, or other post-ruling proceeding shall not delay disbursement unless a court of competent jurisdiction enters an order expressly staying or prohibiting disbursement before the Registry Funds are disbursed.

13. The Disbursement Procedures provided in the Agreement at sections 3.2 and 3.3 are approved which provide, *inter alia*, that the party entitled to the Registry Funds as a result of a PMA Ruling shall file, within 3 business days after such ruling, in the Adversary Proceeding the PMA Ruling and lodge the mandatory registry fund disbursement order as outlined in and pursuant to the Agreement.

14. Gomez shall seek the dismissal of the Adversary Proceeding with prejudice within five court days after (a) SGSB has deposited the Registry Funds and delivered documents as required under the Agreement, (b) R&S, Neshanian, and Gomez have actually received the Disbursements, and (c) R&S and Neshanian have delivered the documents as required under the Agreement.

15. The Court retains jurisdiction to hold and disburse the Registry Funds and to enforce the Agreement and its related order.

16. Notice of the Motion is adequate and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17. Such other relief as the Court deems just and proper.

Dated: October 6, 2026

Respectfully submitted,

DINSMORE & SHOHL LLP

By: */s/ Taylor F. Duncan*
Yosina M. Lissebeck
Taylor F. Duncan
Attorneys for Richard A. Marshack, Chapter 7 Trustee

Dated: October 6, 2026

NEXUS BANKRUPTCY

By: ______________________
Benjamin Heston
Attorneys for Jeffrey Adams Gomez

**DECLARATION OF RICHARD A. MARSHACK**

I, RICHARD A. MARSHACK, declare:

1. I am the Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Kristina Lynn Smith ("Debtor") in the above-captioned bankruptcy case ("Case"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2. I submit this Declaration in support of the *Joint Motion to (1) Approve Global Settlement Under Fed. R. Bankr. P. 9019; (2) Authorize Distributions; and (3) Authorize Registry Deposit* ("Motion").

3. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

4. On or about December 22, 2025, the Estate received a $60,000 deposit in connection with the sale of the Property.

5. On or about March 23, 2026, as a result of the sale of the Property, the Estate received two checks: (1) $838,355.95, which represented the net proceeds from the sale and (2) $39,980.00, the negotiated 2% commission carve out for unsecured creditors.

6. On or about May 18, 2026, the Estate received $7,124.89 as a result of a release of funds held in escrow for potential expenses in connection with the Sale.

7. From the total sale proceeds received ($945,460.84) necessary, authorized payments for fees were made leaving a total balance of the sale proceeds at $942,181.36.

8. From the Proceeds, "off the top" distributions are expected to be made as follows: (1) 2% commission carve out ($39,980.00), (2) Dinsmore's fees ($172,174.20 fees allowed, $478.71 expenses allowed, $50,000 estimated future fees), and (3) Trustee's fees ($82,470.00).

9. Based on the foregoing calculations, the Gomez Share of the Proceeds is $311,039.23. I have been holding the Gomez Share for approximately 6 months, since March 23, 2026. I have not distributed any portion of the Gomez Share. I will not distribute the Gomez Share absent further order from this Court. The Gomez Share is not property of the Estate.

10. I entered into the Agreement, a true and correct copy of which is attached hereto as **Exhibit A**.

11. In my business judgment, I believe that the Agreement represents a fair and reasonable settlement agreement by and between the Parties as it, *inter alia*, (a) resolves all competing claims and asserted interests to and against the funds I am holding constituting Sale Proceeds, (b) resolves claims against the Estate including Gomez's $275,000.00 claim, and (c) resolves the Adversary Proceeding.

12. While I, in my capacity as Trustee, am not a named Defendant in the Adversary Proceeding, it poses concerns for the Estate. Specifically, it seeks relief concerning the FLARPL held by SGSB and other interests in the Sale Proceeds beyond those limited to the Gomez Share; however, the Court has already entered orders related thereto such as the Order re Debtor Share 9019 Motion and the Order re Sale Stipulation. Even though the Gomez Share does not constitute property of the Estate, the Adversary Proceeding certainly impacts property of the Estate. As such, absent the Agreement, I would likely have to seek to join the adversary and related State Court litigation to protect the Estate's interest in the Sale Proceeds. This would result in additional motion practice, discovery or evidentiary proceedings, and delay all with an uncertain outcome.

13. While I believe that I could be successful in challenging the problematic relief sought in the Adversary, I am not aware of any on-point authority with respect to issues overlapping homestead exemptions, FLARPLs, and settlement agreements related thereto. This, coupled with the fact that there is a parallel 10-year long divorce pending in the State Court involving the validity of the PMA, poses potential difficulties in succeeding. Moreover, the triple pursuit of the administration of the Sale Proceeds in the main bankruptcy Case, in the Adversary Proceeding, and in the Divorce Proceedings renders such litigation more complex.

14. In my business judgment, the Agreement beneficially replaces the risk of further merits litigation before any court with fixed obligations as outlined in the Agreement itself.

15. Even though the difficulties in collection do not apply to me as I am not seeking to collect funds but instead distribute funds held in the Estate, the collection risk is limited for Gomez

by the Agreement. The Agreement provides a sum certain in exchange for certain releases and provides the Registry Funds to resolve all pertinent issues.

16. I am proceeding towards the end stages of the administration of the Estate and to avoid any delays I believe that approval of the Agreement, along with authorization for SGSB to deposit the funds, will permit me to complete a final review of claims against the Estate, abandon certain property of the Estate if required and in the best interests of creditors, and then initiate closing procedures. However, I will not be able to close the Estate if I remain in custody and control of the Gomez Share.

17. In my business judgment, I believe that depositing the Registry Funds with the Court is in the best interests of the Estate and its creditors as it will avoid any prejudicial delay to the administration and closing of the Estate, including distributions to creditors.

18. The Agreement was reached after considerable good faith arms' length negotiations free from collusion or any undue influence. I sincerely believe settling the claims as set forth in the Motion is in the best interests of the Estate and its creditors because it ensures finality related to the disbursement of the Sale Proceeds, avoids further litigation related to the same, resolves the Adversary Proceeding, and avoids litigation that would otherwise deplete Estate assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 6 day of October 2026.

Richard A. Marshack

# EXHIBIT A

# GLOBAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

*Bankruptcy Case No. 8:24-bk-12527-SC | Adversary Proceeding No. 8:26-ap-01028-SC*

This Global Settlement Agreement and Mutual Release (the "Agreement") is entered into by Jeffrey Adams Gomez ("Gomez"); Richard A. Marshack, solely as Chapter 7 Trustee of the bankruptcy estate of Kristina Lynn Smith (the "Trustee"); R&S Law Group, APC ("R&S"); The Neshanian Law Firm, Inc. ("Neshanian"); and Stegmeier, Gelbart, Schwartz & Benavente, LLP ("SGSB"). They are collectively the "Parties."

**RECITALS**

**A.** The Trustee holds proceeds from the sale of 27591 Kathy Court, Laguna Niguel, California (the "Sale Proceeds") in In re Kristina Lynn Smith, Case No. 8:24-bk-12527-SC (the "Bankruptcy Case").

**B.** Gomez commenced Adversary Proceeding No. 8:26-ap-01028-SC (the "Adversary Proceeding") to determine claims and liens asserted against the Sale Proceeds and Gomez's homestead interest.

**C.** R&S asserts Proof of Claim No. 8-1 and related judgment liens. R&S has agreed to accept $155,000 in full satisfaction of all claims and liens against Gomez and his property.

**D.** Neshanian asserts Proof of Claim No. 2-1 and related judgment liens. Neshanian has agreed to accept $98,035 in full satisfaction of all claims and liens against Gomez and his property.

**E.** SGSB asserts claims arising from a March 14, 2019 attorney-fee award, including an asserted remaining balance of approximately $85,000 plus interest and Family Law Attorney's Real Property Liens. Gomez disputes those claims and contends that the award was fully paid.

**F.** Gomez and Smith are parties to Orange County Superior Court Case No. 17D000590 (the "Family Case"), in which the validity of their August 4, 2003 Premarital Agreement (the "PMA") is at issue.

**G.** The Parties intend one integrated settlement that pays R&S and Neshanian, distributes the remaining homestead proceeds to Gomez in full satisfaction and resolution of every proof of claim filed by or on behalf of Gomez against the bankruptcy estate, extinguishes the settled claims and liens, places $50,000 funded by SGSB in the Bankruptcy Court's registry pending the PMA determination, and resolves the Adversary Proceeding.

**NOW, THEREFORE,** for good and valuable consideration, the Parties agree as follows:

# 1. COURT APPROVAL AND REGISTRY ORDERS

1.1 **Approval Motion.** Within three court days after this Agreement has been executed by all Parties, Gomez shall file and prosecute a motion under Federal Rule of Bankruptcy Procedure 9019 seeking orders approving this Agreement and directing the

Trustee to make the distributions stated below. Gomez shall also seek any order required under Federal Rule of Bankruptcy Procedure 7067 and Local Bankruptcy Rule 7067-1 to authorize the registry deposit and later disbursement contemplated by this Agreement.

1.2 **Consent.** The Trustee consents to the motion, requests approval, and authorizes the Trustee's performance. R&S, Neshanian, and SGSB consent to approval and shall not oppose the requested relief. The Parties shall execute or approve any stipulation, notice, or proposed order reasonably required to implement this Agreement, provided it does not alter the economic terms or the PMA disbursement standard.

# 2. PAYMENTS AND CLOSING

2.1 **SGSB Registry Deposit and Receipt.** Within fourteen calendar days after entry of the order approving this Agreement (the "Approval Order") and an order authorizing the deposit, SGSB shall deposit $50,000 with the Clerk of the United States Bankruptcy Court for the Central District of California into the registry of the Adversary Proceeding (the "Registry Funds"). SGSB shall timely comply with LBR 7067-1(b). The Registry Funds shall be administered through the Court Registry Investment System. Authorized registry fees and taxes may not be deducted from the $50,000 principal. Within one business day after making the deposit, SGSB shall serve the Trustee and all other Parties with the Clerk's receipt confirming the date and amount of the deposit.

2.2 **Trustee Distributions.** Within three business days after entry of the Approval Order, the Trustee shall distribute $155,000 to R&S, $98,035 to Neshanian, and all remaining Sale Proceeds attributable to Gomez's homestead exemption to Gomez. The distribution to Gomez shall constitute full satisfaction, payment, settlement, and resolution of every proof of claim filed by or on behalf of Gomez against the bankruptcy estate, and no further distribution shall be made on account of any such claim. SGSB shall receive no Sale Proceeds. The Trustee's distributions are not conditioned on SGSB's deposit of the Registry Funds or performance of any other obligation under this Agreement. The Trustee shall not condition any distribution on R&S or Neshanian first withdrawing a proof of claim, acknowledging satisfaction of a judgment, or releasing a claim or lien.

2.3 **R&S Documents.** After R&S actually receives the full $155,000 in cleared funds, and not before, R&S shall, within three business days, (a) file a withdrawal of Proof of Claim No. 8-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment sufficient to release each judgment lien asserted by R&S against Gomez or his property. Those documents shall not be a condition to the Trustee's payment.

2.4 **Neshanian Documents.** After Neshanian actually receives the full $98,035 in cleared funds, and not before, Neshanian shall, within three business days, (a) file a withdrawal of Proof of Claim No. 2-1 in the Bankruptcy Case and (b) execute, deliver, and, where applicable, file or record an Acknowledgment of Satisfaction of Judgment

sufficient to release each judgment lien asserted by Neshanian against Gomez or his property. Those documents shall not be a condition to the Trustee's payment.

2.5 **SGSB Documents.** Within three business days after depositing the full Registry Funds, SGSB shall execute, deliver, file, and record every withdrawal, acknowledgment of satisfaction, release, and other document necessary to remove the claims and encumbrances described in Section 4.3 from any docket, title report, or public record.

2.6 **Closing.** The "Closing" occurs when (a) SGSB has deposited the full Registry Funds and delivered the documents required by Section 2.5, (b) R&S, Neshanian, and Gomez have actually received the distributions required by Section 2.2, and (c) R&S and Neshanian have delivered the documents required by Sections 2.3 and 2.4. No release by Gomez becomes effective before the applicable consideration has been fully performed.

# 3. PMA DETERMINATION AND REGISTRY DISBURSEMENT

3.1 **PMA Ruling.** The first filed or entered written determination by the Superior Court of California, County of Orange, deciding whether the PMA is valid between Gomez and Smith is the "PMA Ruling." A PMA Ruling includes a minute order, judgment, findings and order after hearing ("FOAH"), stipulated order entered by the court, or any other written order resolving the PMA's validity. A contested hearing is not required. The PMA Ruling may result from a hearing, motion, stipulation adopted by the court, or any other proceeding. No particular form or title is required if the substance of the writing resolves the issue.

3.2 **Entitlement.** The first PMA Ruling fixes entitlement to the Registry Funds for purposes of this Agreement. All principal and net earnings shall be disbursed to Gomez if the PMA Ruling determines that the PMA is valid, or to SGSB if the PMA Ruling determines that the PMA is invalid. Disbursement is not conditioned on any later tracing, forensic accounting, reimbursement, allocation, characterization, or other issue in the Family Case, and no such issue may delay or prevent disbursement.

3.3 **Disbursement Procedure.** Within three business days after the PMA Ruling is filed or entered in the Family Case, the Party entitled to the Registry Funds under Section 3.2 shall file the PMA Ruling in the Adversary Proceeding and lodge the mandatory registry-fund disbursement order. Either Gomez or SGSB may make those filings sooner or may do so if the entitled Party fails to act within that period. The Parties irrevocably stipulate and consent under Local Bankruptcy Rule 7067-1(e)(2) to entry of an order, without further notice or hearing, disbursing all Registry Funds to the party entitled under Section 3.2. No later signature, consent, authorization, approval, or joint instruction from any Party is required. Each Party waives any objection inconsistent with this Agreement and shall not oppose or delay entry of the disbursement order.

3.4 **No Finality Requirement.** The PMA Ruling need not be final or nonappealable. A notice of appeal, appeal, writ petition, motion for reconsideration, motion for new trial, motion to vacate, request for relief, request for a stay, or any other post-ruling proceeding by Gomez, Smith, SGSB, or any other person does not suspend, delay, condition, or alter the required disbursement. A filing, request, or unilateral objection is ineffective. Disbursement may be delayed only by an entered order of a court of competent jurisdiction that expressly stays or prohibits disbursement and is served on the Bankruptcy Court before the Registry Funds are disbursed.

# 4. SATISFACTION OF CLAIMS AND LIENS

4.1 **R&S.** Upon R&S's actual receipt of cleared funds totaling $155,000, all R&S claims, judgments, interest, proofs of claim, abstracts, liens, notices, and encumbrances against Gomez, the Sale Proceeds, or any property in which Gomez has or had an interest are fully satisfied, released, withdrawn, and permanently extinguished.

4.2 **Neshanian.** Upon Neshanian's actual receipt of cleared funds totaling $98,035, all Neshanian claims, judgments, interest, proofs of claim, abstracts, liens, notices, and encumbrances against Gomez, the Sale Proceeds, or any property in which Gomez has or had an interest are fully satisfied, released, withdrawn, and permanently extinguished.

4.3 **SGSB.** Upon SGSB's deposit of the full Registry Funds and delivery of the documents required by Section 2.5, all SGSB claims and liens against Gomez, the Sale Proceeds, Gomez's homestead exemption, or any property in which Gomez has or had an interest are released and permanently extinguished without payment from the Sale Proceeds. This includes the March 14, 2019 fee-award claim, the asserted balance of approximately $85,000 plus interest, every FLARPL, and every related judgment, abstract, notice, lis pendens, lien, or encumbrance.

4.4 **Gomez Proofs of Claim.** Upon Gomez's actual receipt of the remaining Sale Proceeds attributable to his homestead exemption, every proof of claim filed by or on behalf of Gomez against the bankruptcy estate, including every amendment to such a claim, is fully satisfied, paid, settled, and resolved. Gomez shall have no further right to payment, distribution, dividend, or recovery from the bankruptcy estate on account of any such claim. This provision does not release, limit, determine, or prejudice Gomez's right to seek reimbursement or other relief in the Family Case against Smith or property later determined to be community property.

4.5 **Permanent Effect.** Disbursement of the Registry Funds to SGSB, if it occurs, does not revive any released claim, debt, fee award, interest demand, lien, FLARPL, abstract, notice, lis pendens, or collection right. Each creditor shall, at its own expense, promptly execute, file, and record any additional document reasonably necessary to remove a released claim or lien from a docket, title report, account, or public record.

# 5. RELEASES

5.1 **Creditor Releases of Gomez.** R&S's release is effective upon its actual receipt of cleared funds totaling $155,000. Neshanian's release is effective upon its actual receipt of cleared funds totaling $98,035. SGSB's release is effective upon its deposit of the full Registry Funds and delivery of the documents required by Section 2.5. Upon the applicable event, each such creditor releases Gomez from every known and unknown claim arising from any fact, transaction, service, fee, judgment, payment, lien, encumbrance, collection effort, or dispute occurring on or before that event.

5.2 **Gomez Releases of R&S and Neshanian.** Upon R&S's actual receipt of cleared funds totaling $155,000, Gomez releases R&S from every known and unknown claim arising from its judgments, proof of claim, liens, collection activity, Sale Proceeds, or Adversary Proceeding occurring on or before that payment. Upon Neshanian's actual receipt of cleared funds totaling $98,035, Gomez grants Neshanian the same release as to Neshanian's judgments, proof of claim, liens, collection activity, Sale Proceeds, and the Adversary Proceeding.

5.3 **Gomez Release of SGSB and Related Parties.** Upon SGSB's deposit of the full Registry Funds and delivery of the documents required by Section 2.5, Gomez, for himself and his heirs, personal representatives, successors, assigns, and every person or entity claiming by, through, or under him (collectively, the "Gomez Releasing Parties"), generally and specifically releases and forever discharges SGSB and its current and former partners, members, owners, officers, directors, shareholders, employees, agents, attorneys, insurers, representatives, predecessors, successors, assigns, affiliates, and subsidiaries, solely in their respective capacities as persons or entities associated with SGSB (collectively, the "SGSB Released Parties"), from every claim, demand, debt, loss, obligation, cost, expense, right of action, and cause of action of every kind, whether legal or equitable, known or unknown, suspected or unsuspected, accrued or unaccrued, that any Gomez Releasing Party ever had, now has, or later acquires arising from any act, omission, fact, transaction, or occurrence from the beginning of time through the date this release becomes effective. This includes all claims relating to or arising from SGSB's representation of Smith, the March 14, 2019 fee award, SGSB's collection efforts, the Adversary Proceeding, or the disputes resolved by this Agreement. This release expressly includes unknown and unsuspected claims and incorporates the waiver in Section 5.5. Each SGSB Released Party is an intended third-party beneficiary of this Section 5.3. Without limiting the foregoing, the release includes claims based on Gomez's contentions concerning:

(a) procuring, calculating, allocating, collecting, or enforcing the fee award against Gomez or property in which he held an interest;

(b) requiring Gomez to liquidate four separate properties and pay approximately $353,500, while continuing to assert an additional balance of approximately $85,000 plus interest after Gomez contended the award had been fully satisfied and overpaid;

(c) changing the Home Street escrow instructions shortly before closing, threatening ex parte relief and appointment of an elisor when Gomez objected, receiving $125,000 from that closing, and allegedly crediting Gomez with only $62,500;

(d) asserting or recording FLARPLs and other encumbrances, including the FLARPL recorded against the Kathy Court property on or about January 5, 2023, after Gomez's written objection, without prior court authorization, and contrary to the written stipulation that Gomez contends prohibited a FLARPL against that property;

(e) attempting to reach Gomez's separate property, homestead, Sale Proceeds, or other assets notwithstanding the PMA; and

(f) impairing or delaying property sales, refinancing, title clearance, access to equity, business activity, retention of counsel, or use of Gomez's property through the asserted claims and encumbrances.

5.4 **No Validation.** The settlement and Gomez's release do not admit or validate any SGSB debt, balance, lien, FLARPL, collection position, payment calculation, or characterization of the PMA. The release is a negotiated relinquishment of disputed claims and remedies, including claims for restitution, disgorgement, damages, interest, sanctions, attorneys' fees, costs, declaratory relief, and injunctive relief.

5.5 **Unknown Claims and Civil Code Section 1542 Waiver.** Each releasing Party acknowledges that facts or claims may exist in its favor that it does not presently know or suspect, and that those facts or claims, if known, might have materially affected its decision to enter this Agreement. Each releasing Party knowingly and voluntarily assumes that risk, expressly waives every right and benefit conferred by California Civil Code section 1542 and any similar law, and intends each release in this Agreement to include all unknown and unsuspected claims within its stated scope. Each releasing Party acknowledges that it has had the opportunity to consult counsel concerning this waiver.

# 6. ESTATE, FAMILY CASE, AND DISMISSAL

6.1 **Estate Resolution.** Upon Gomez's actual receipt of the remaining Sale Proceeds attributable to his homestead exemption, Gomez releases the Trustee and the bankruptcy estate from every proof of claim filed by or on behalf of Gomez and from claims arising from the administration, reservation, or distribution of the Sale Proceeds. At the same time, the Trustee, solely for the estate, releases Gomez from any estate claim to the Sale Proceeds distributed to Gomez and from claims arising from Gomez's homestead assertion or prosecution of the Adversary Proceeding.

6.2 **Preserved Family Case Rights.** Nothing in this Agreement releases, limits, determines, or prejudices Gomez's right to seek reimbursement or other relief in the Family Case against Smith or property later determined to be community property. This Agreement does not determine the PMA's validity.

6.3 **Dismissal.** Within five court days after the Closing, Gomez shall dismiss the entire Adversary Proceeding with prejudice. No dismissal is required before all Closing conditions are satisfied. Dismissal does not impair the Bankruptcy Court's retained jurisdiction to hold and disburse the Registry Funds or to enforce this Agreement and the Approval Order.

# 7. MISCELLANEOUS

7.1 **Enforcement and Jurisdiction.** The Bankruptcy Court retains jurisdiction to interpret and enforce this Agreement and the Approval Order, including after dismissal of the Adversary Proceeding. A nonbreaching Party may obtain specific performance, injunctive relief, damages, and all other available remedies. The prevailing Party in an enforcement proceeding may recover reasonable attorneys' fees and costs.

7.2 **No Unilateral Termination.** Upon approval, this Agreement is binding and specifically enforceable. Delay or nonperformance does not create a unilateral termination right, and no Party may benefit from a condition that the Party wrongfully caused to fail. Time is of the essence.

7.3 **No Admission.** This Agreement is a compromise of disputed claims and is not an admission of liability or wrongdoing. Nothing in it is an admission by Gomez that he owed any unpaid balance to SGSB or that any claim, lien, FLARPL, payment calculation, or collection position was valid, properly calculated, perfected, or enforceable.

7.4 **Authority and No Assignment.** Each signatory has authority to bind the Party identified in the signature block. Each Party represents that it has not assigned a released claim.

7.5 **Entire Agreement; Amendments; Counterparts.** This Agreement is the complete agreement on its subject and supersedes prior settlement drafts and agreements concerning the settled claims. It may be amended only in a writing signed by all Parties. No amendment may impose a later consent, signature, finality, or joint-instruction requirement for disbursement of the Registry Funds. Counterparts and electronic signatures are effective as originals.

**SIGNATURES**

The Parties and their counsel have executed or approved this Agreement as of the dates stated below.

Date: 9/20/2026

[signature]

**JEFFREY ADAMS GOMEZ**
*Plaintiff*

Date: 9/21/2026

[signature]

**BENJAMIN HESTON**
*Counsel for Plaintiff*

Date: 09 / 18 / 2026

**R&S LAW GROUP, APC**
*Defendant*

Date: 9/18/2026

**STEGMEIER, GELBART, SCHWARTZ & BENAVENTE, LLP**
*Defendant*

Date: 9/18/2026

**THE NESHANIAN LAW FIRM, INC.**
*Defendant*

Date: 9/21/26

**RICHARD A. MARSHACK**
*Chapter 7 Trustee*

Date: 9/21/2026

**YOSINA LISSEBECK**
*Counsel for Chapter 7 Trustee*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**655 West Broadway, Suite 800 San Diego, CA 92101**

A true and correct copy of the foregoing document entitled (*specify*): **JOINT MOTION TO (1) APPROVE GLOBAL SETTLEMENT UNDER FED R. BANKR. P. 9019; (2) AUTHORIZE DISTRIBUTIONS; AND (3) AUTHORIZE REGISTRY DEPOSIT; DECLARATION OF RICHARD A. MARSHACK;** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **10/08/2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **10/08/2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California, Santa Ana Division
411 W. Fourth St., Ste 5130/Ctrm 5C
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/08/2026 | Cynthia Lam | /s/Cynthia Lam |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- David Coats on behalf of Creditor Wells Fargo Bank, N.A. dacoats@raslg.com
- Benjamin Heston on behalf of Creditor Jeffrey Adams Gomez bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
- Benjamin Heston on behalf of Plaintiff Jeffrey Adams Gomez bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
- Richard G. Heston on behalf of Creditor Richard G Heston rheston@hestonlaw.com, yflores@hestonlaw.com,docs@hestonlaw.com, HestonRR41032@notify.bestcase.com,hestonlaw@recap.email
- Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR) yosina.lissebeck@dinsmore.com, caron.burke@dinsmore.com; Cynthia.Lam@Dinsmore.com
- Richard A Marshack (TR) pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- Eric Marcus Neshanian on behalf of Defendant The Neshanian Law Firm, Inc neshanianlawfirm@gmail.com
- Eric Marcus Neshanian on behalf of Interested Party Courtesy NEF neshanianlawfirm@gmail.com
- Matthew J Stockl on behalf of Trustee Richard A Marshack (TR) mstockl@otterbourg.com, nregina@otterbourg.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Julie J Villalobos on behalf of Debtor Kristina Lynn Smith julie@oaktreelaw.com, oakecfmail@gmail.com;
- villalobosjr51108@notify.bestcase.com;gus@oaktreelaw.com
- Jennifer C Wong on behalf of Creditor U.S. Bank National Association bknotice@mccarthyholthus.com ,
- jwong@ecf.courtdrive.com
- Jennifer C Wong on behalf of Interested Party Courtesy NEF bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL:**

Michelle Sherwood, Esq
R & S Law Group, APC
400 West First St
Tustin, CA 92780

Stegmeier, Gelbart, Schwartz &
Benavente, LLP
19762 MacArthur Boulevard
Suite 200
Irvine, CA 92612

Jeffrey Adams Gomez
1388 Augusta Drive
Upland, CA 91786

Jeffrey Adams Gomez
27591 Kathy Court
Laguna Niguel, CA 92677

Richard G Heston
Heston & Heston, Attorneys at Law
19700 Fairchild Rd., Suite 280
Irvine, CA 92612

Kerry Kavanaugh
4511 Isabella Lane
Dallas, TX 75229

Howard Smith
28822 Via De Luna
Laguna Niguel, CA 92677

Wells Fargo Bank, N.A.
Robertson, Anschutz, Schneid, Crane & Pa
13010 Morris Road., Suite 450
Alpharetta, GA 30004

A center for Children
1111 W Chapman Ave
Orange, CA 92868

ADT
1501 Yamato RD
Boca Raton, FL 33431

Allergy and Asthma Assc
28202 Cabot Rd Ste 105
Laguna Niguel, CA 92677

AT&T
208 S Akard Rd
Dallas, TX 75201

AT&T Services, Inc.
by AIS InfoSource LP as agent
Karen Cavagnaro, Esq. ,
AT&T Way, Room 3A104
Bedminster, NJ 07921

Bank of America
Attn: Bankruptcy
4909 Savarese Circle
Tampa, FL 33634

Clineva Urgent Care
25461 Rancho Niguel
Laguna Niguel, CA 92677

Community Orthopaedic And MRI
26401 Crown Valley Pkwy 101
Mission Viejo, CA 92691

Cox Communications
6205 Peachtree Dunwoody Rd
Atlanta, GA 30328
Drew Hunt
4 Park Plaza Suite 200
Irvine, CA 92614

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952 , Sacramento CA 95812-2952

Head And Neck Associates of OC
26726 Crown Valley Pkwy 200
Mission Viejo, CA 92691

Heston & Heston, Attorneys at Law
19700 Fairchild Rd.
Suite 280
Irvine, CA 92612

Jeff Gomez
PO Box 1718
Upland, CA 91785

Jeffrey Adams Gomez
1388 Augusta Drive
Upland, CA 91785

Kohl's
Attn: Credit Administrator
Po Box 3043
Milwaukee, WI 53201

Leon Baginski MD
27800 Medical Center Rd 310
Mission Viejo, CA 92691

Macys Corporate
151 West 34th Street
New York, NY 10001

Mission Heritage Gasterology
Dr Chang
27799 Medical Center Rd #310
Mission Viejo, CA 92691

Mission Heritage Internal Medicine
Dr Mayet
26800 Crown Valley Pkwy 305
Mission Viejo, CA 92691

Mission Heritage Nephrology
Dr Tran
26800 Crown Valley Pkwy 250
Mission Viejo, CA 92691

Mission Heritage TCU
27799 Medical Center Rd
Mission Viejo, CA 92691

Mission Pediatric Dentistry
27800 Medical Center Rd 332
Mission Viejo, CA 92691

Mission Providence Hospital
27799 Medical Center Rd
Mission Viejo, CA 92691

Moulton Water
26161 Gordon RD
Laguna Hills, CA 92653

Nellie Gail Urgent Care
27001 Moulton Pkwy 102
Aliso Viejo, CA 92656

Pediatrics Dermatology
3500 Barranca Pkwy 160
Newport Beach, CA 92696

Progressive Insurance
6300 Wilson Mills Rd
Cleveland, OH 44143

Providence Mission Radiology
27799 Medical Center Rd
Mission Viejo, CA 92691

Quality Loan Service
2763 Camino del Rios S 1st Fl
San Diego, CA 92108

R&S LAW GROUP, APC
230 Newport Center Drive
SUITE 210
Newport Beach, CA 92660

Retina Associates of OC
23521 Paseo De Valencia #207
Laguna Hills, CA 92653

Rowan Dorcy Medical
27799 Medical Center Rd
Mission Viejo, CA 92691

SDGE
PO Box 25111
Santa Ana, CA 92799

Sea Country Dental
32341 Golden Lantern Ste C
Laguna Niguel, CA 92677

Seabreeze Property
Management
PO Box92799
Aliso Viejo, CA 92656

SGSB Law
19762 MacArthur Blvd Ste 200
Irvine, CA 92612

So Cal Gas
1801 S Atlantic Blvd
Monterey Park, CA 91754

The Neshanian Law Firm
Amy Neshanian
5 Corporate Park, Ste 250
Irvine, CA 92606

Tina M. Talbot, ESQ.
230 Newport Center Dr
Suite 210
Newport Beach, CA 92660

Toll Roads
PO Box 57011
Irvine, CA 92619

US Acute Care Solution
4535 Dressier Rd NW
Canton, OH 44718

US Bank
PO BOX 108
Saint Louis, MO 63166

US Courts Pacer
PO Box 5208
Portland, OR 97208

U.S. Bank National Association
c/o McCarthy & Holthus, LLP
2763 Camino Del Rio South,
Suite 100
San Diego, CA 92108